## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | NO.  15-CR-4268-JB |
| | § | |
| ANGEL DELEON, ET AL., | § | |
| | § | |
| Defendants. | § | |

### MOTION FOR DISCOVERY OF THE ARREST AND
### CONVICTION REPORTS OF WITNESSES' CRIMINAL HISTORY

Come now Defendants, **Joe Lawrence Gallegos, Andrew Gallegos, Arturo Garcia, Billy Garcia** and **Edward Troup** by and through counsel, and respectfully moves this Honorable Court to require the Federal Government to provide the Defendants with a copy of the Arrest and Conviction Reports information, or alternatively to require the Federal Government to remit to Defendant to inspect and copy such Arrest and Conviction Reports information of all jurors that it conducts in preparation for voir dire. The undersigned and many other counsel have been prior prosecutors and know that the United States will presumably conduct background checks on the prospective jurors in this case. This work could conceivably be considered work product. The Court is requested to order production of this material as it is only available to one party and provides the Government with an unfair look into the panel members. Said reports if run, are vital and material to the adequate defense of Defendants' case, the decision to keep or strike a possible juror and are unavailable to Defendants' counsel.  In the event the Federal Government has information reflecting that any juror has a criminal record, this could affect trial strategy and proper preparation and presentation of the Government's or Defendants' case.

1

Thus, if the Federal Government does not reveal this to the Defendants there will be secreting evidence, of which they will be the only party to which access is provided, which could alter the verdict in such cause.  Further, the presence of any prior arrests on the part of any of the jurors could materially affect the validity of any statements they make as further prosecution of any particular arrest may have been hindered, delayed, or impeded as inducement to these jurors to speak truthfully in this cause.

All other defendants not joined are presumed to be not opposed to this request and the Government is presumed to be opposed.

WHEREFORE, Defendants respectfully pray that this Honorable Court order and direct the Federal Government to furnish the Defendants with a copy of the Arrest and Conviction Reports or in the alternative, to require the Federal Government to allow the Defendants to inspect and copy the Arrest and Conviction Reports of all prospective jurors, and any other further relief which this Honorable Court may deem appropriate.

Respectfully Submitted,

*/s/ Brock Benjamin*
**Brock Benjamin**
Benjamin Law Firm
747 E. San Antonio, Suite 203
El Paso, TX 79901
Phone:(915)412-5858
Fax:(915)503-2224
Email: brock@brockmorganbenjamin.com
Co-counsel for Joe Lawrence Gallegos

2

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 2nd day of March, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and service to all CM/ECF registrants.


_/s/ Brock Benjamin_____

BROCK BENJAMIN

**FILED**

UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

MAR − 2 2018 

**MATTHEW J. DYKMAN**
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

No. CR 15-4268 JB

ANGEL DELEON, JOE LAWRENCE
GALLEGOS, EDWARD TROUP, a.k.a.
"Huero Troup," LEONARD LUJAN,
BILLY GARCIA, a.k.a. "Wild Bill,"
EUGENE MARTINEZ, a.k.a. "Little
Guero," ALLEN PATTERSON,
CHRISTOPHER CHAVEZ, a.k.a. "Critter,"
JAVIER ALONSO, a.k.a. "Wineo,"
ARTURO ARNULFO GARCIA, a.k.a.
"Shotgun," BENJAMIN CLARK, a.k.a.
"Cyclone," RUBEN HERNANDEZ;
JERRY ARMENTA, a.k.a. "Creeper,"
JERRY MONTOYA, a.k.a. "Boxer,"
MARIO RODRIGUEZ, a.k.a. "Blue,"
TIMOTHY MARTINEZ, a.k.a. "Red,"
MAURICIO VARELA, a.k.a. "Archie,"
a.k.a. "Hog Nuts," DANIEL SANCHEZ,
a.k.a. "Dan Dan," GERALD ARCHULETA,
a.k.a. "Styx," a.k.a. "Grandma," CONRAD
VILLEGAS, a.k.a. "Chitmon," ANTHONY
RAY BACA, a.k.a. "Pup," ROBERT
MARTINEZ, a.k.a. "Baby Rob," ROY
PAUL MARTINEZ, a.k.a. "Shadow,"
CHRISTOPHER GARCIA, CARLOS
HERRERA, a.k.a. "Lazy," RUDY PEREZ,
a.k.a. "Ru Dog," ANDREW GALLEGOS,
a.k.a. "Smiley," SANTOS GONZALEZ;
PAUL RIVERA, SHAUNA GUTIERREZ,
and BRANDY RODRIGUEZ,
          Defendants.

## COURT'S NINTH PROPOSED JURY INSTRUCTIONS
(with citations)

# JURY INSTRUCTION NO. 1

Members of the Jury:

In any jury trial there are, in effect, two judges.  I am one of the judges, you are the other.
I am the judge of the law.  You, as jurors, are the judges of the facts.  I presided over the trial and
decided what evidence was proper for your consideration.  It is also my duty at the end of the
trial to explain to you the rules of law that you must follow and apply in arriving at your verdicts.

In explaining the rules of law that you must follow, first, I will give you some general
instructions which apply in every criminal case -- for example, instructions about burden of proof
and insights that may help you to judge the believability of witnesses.  Then I will give you some
specific rules of law that apply to this particular case and, finally, I will explain the procedures
you should follow in your deliberations, and the possible verdicts you may return.  These
instructions will be given to you for use in the jury room, so you need not take notes.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY
INSTRUCTION NO. 1,** at 1, 2, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED
INSTRUCTION NO. 3,** at 1, 2, 17, filed January 12, 2018 (Doc. 1641)(3) 1.03 Introduction to
Final Instructions)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY
INSTRUCTIONS (DOC. 1635),** at 1, filed January 19, 2018 (Doc. 1663)("United States'
Proposed Jury Instruction No. 1: No objection to unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth
Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL
MATTERS** 1.03, at i, 7, (**2011 Edition** Updated January, 2017)(INTRODUCTION TO FINAL
INSTRUCTIONS)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc.
1827)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 5

DNM 429

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 1, at 3, filed February 25, 2018 (Doc. 1827-1)

Fifth Circuit Pattern Instruction 1.05

Ninth Circuit Pattern Instruction 3.05

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 6

DNM 430

## JURY INSTRUCTION NO. 2

You, as jurors, are the judges of the facts. But in determining what actually happened -- that is, in reaching your decision as to the facts -- it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences. However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdicts should be. These should be entirely up to you.

It is also your duty to base your verdicts solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 2**, at 1, 3, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 4**, at 1, 2, 18, filed January 12, 2018 (Doc. 1641)(4) 1.04 Duty to Follow Instructions)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, filed January 19, 2018 (Doc. 1662)("United States Proposed Jury Instruction No. 2: No objection to unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.04, at i, 8 (**2011 Edition** Updated January 2017)(DUTY TO FOLLOW INSTRUCTIONS)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 2, at 4, filed February 25, 2018 (Doc. 1827-1)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 7

DNM 431

## JURY INSTRUCTION NO. 3

The government has the burden of proving defendants Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, and Rudy Perez guilty beyond a reasonable doubt. The law does not require any individual defendant to prove his innocence or produce any evidence at all. The government has the burden of proving each defendant, individually, guilty beyond a reasonable doubt, and if it fails to do so for any individual defendant, you must find that defendant not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of a defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the government's proof exclude any "reasonable doubt" concerning any individual defendant's guilt. A reasonable doubt is a doubt based on reason and common sense. It may arise after careful and impartial consideration of all the evidence, or from lack of evidence. If, based on your consideration of the evidence, you are firmly convinced that a defendant is guilty of the crimes charged, you must find him guilty of that charge. If on the other hand, you think there is a reasonable doubt about the truth of any charge, then you must give the defendant the benefit of the doubt and find him not guilty of that charge.

It is your duty to consider the evidence applicable to each defendant, separately. You must consider whether a reasonable doubt exists as to each count charged against each individual defendant.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **5,** at 1, 17, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS   [sic]   PROPOSED   JURY   INSTRUCTIONS,   REQUESTED INSTRUCTION NO. 5,** at 1, 2, 19, filed January 12, 2018 (Doc. 1641)(modified 1.05)(5) 1.05 Presumption of Innocence -- Burden of Proof -- Reasonable Doubt)(modified)

**DEFENDANTS   [sic]   PROPOSED   JURY   INSTRUCTIONS,   REQUESTED INSTRUCTION NO. 6,** at 1, 2, 20 filed January 12, 2018 (Doc. 1641)(6) 1.05.1 Preponderance of Evidence)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 4-5, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 5: The Defendants' objected to the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.05, at 1, 9 (**2011 Edition** Updated January 2017) (PRESUMPTION OF INNOCENCE -- BURDEN OF PROOF -- REASONABLE DOUBT)(adapted)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.05.1, at i, 10 (**2011 Edition** Updated January 2017) (PREPONDERANCE OF EVIDENCE )(modified)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 3, at 5, filed February 25, 2018 (Doc. 1827-1)

DNM 433

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 10

## JURY INSTRUCTION NO. 4

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations that the lawyers agreed to.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked. I also ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 24**, at 1, 41, filed January 12, 2018 (Doc. 8)(Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 7**, at 1, 2, 21, filed January 12, 2018 (Doc. 1641)(7) 1.06 Evidence -- Defined)

DNM 434

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 24: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.06, at i, 11 (**2011 Edition** Updated January 2017)(EVIDENCE -- DEFINED)(modified)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 4, at 7, filed February 25, 2018 (Doc. 1827-1)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 11

DNM 435

## JURY INSTRUCTION NO. 5

During the course of this trial, and on multiple occasions throughout the trial, you have heard evidence that was admitted for a limited purpose and as to a particular defendant, only.

Each time this type of evidence was admitted, I instructed you of the specific limitations placed on your use of that evidence. By providing these instructions, I was not suggesting that you must or should find the particular evidence credible or probative of any issue in this case. However, in the event you decide to consider the limited evidence, then you may only use it only for the limited purpose, and only as to the particular defendant, for which it was admitted.

You are not to consider any limited evidence for any other purpose than the particular purpose for which it was admitted. And, you may not use it in any way during your deliberations concerning any defendant against whom the evidence was not admitted.

**DEFENDANT DANIEL SANCHEZ'S PROPOSED LIMITING INSTRUCTION,** at 1, 2-3, filed February 23, 2018 (Doc. 1821)

Authority Federal Rule of Evidence 105; 9th Cir. Pattern Instruction 2.11 Evidence for Limited Purpose (no comparable 10th Circuit or 5th Circuit Limiting Instruction could be located); *See United States v. Armijo*, 5 F3d 1229, 1232 (9th Cir. 1993). For example, in *United States v Sauza-Martinez*, 217 F.3d 754, 760 (9th Cir. 2000), the Ninth Circuit held the trial court "had no alternative" but to give the jury a limiting instruction *sua sponte* when a testifying co-defendant's post-arrest statements were admitted as substantive evidence against her under Fed. R. Evid. 801(d)(2)(A), but were not admissible against another co-defendant "under *any* theory" (emphasis in original). Under the circumstances of the case, it was plain error to fail to give the limiting instruction *sua sponte*. *Id.* at 761.

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 12

DNM 436

## JURY INSTRUCTION NO. 6

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case.  One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience.  An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusion that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 27**, at 1, 44, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 8**, at 1, 2, 22, filed January 12, 2018 (Doc. 1641)(8) 1.07 Evidence -- Direct and Circumstantial -- Influences)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 27: No objection to the unmodified Tenth Circuit instruction.")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 9-10, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 27: Defendants object to this instruction because the United States

- 10 -

have omitted the first two paragraphs of the pattern instruction . . . . Defendants propose using the entire instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.07, at i, 13 (**2011 Edition** Updated January 2017)(EVIDENCE -- DIRECT AND CIRCUMSTANTIAL -- INFERENCES)(adapted)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 5, at 8, filed February 25, 2018 (Doc. 1827-1)

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 14

DNM 438

## JURY INSTRUCTION NO. 7

I remind you that it is your job to decide whether the government has proved the guilt of Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez beyond a reasonable doubt. In doing so, you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses who testified in this case. You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was. In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome in this case? Did the witness have any relationship with the government or Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he/she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent misrecollection -- like failure of recollection -- is not uncommon.

Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez did not testify and I remind you that you cannot consider their decision not to testify as evidence of guilt. I want you to clearly understand, please, that the Constitution of the United States grants to Mr. Sanchez, Mr. Baca,

DNM 439

Mr. Herrera, and Mr. Perez the right to remain silent. That means the right not to testify or call any witnesses. That is a constitutional right in this country, it is very carefully guarded, and you should understand that no presumption of guilt may be raised and no inference of any kind may be drawn from the fact that a defendant did not take the witness stand and testify or call any witnesses.

In reaching a conclusion on a particular point, or ultimately in reaching a verdict in this case, do not make any decisions simply because there were more witnesses on one side than on the other. What is important is how believable a witness was and how much weight you think that their testimony deserves.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY **INSTRUCTION NO. 28**, at 1, 45-46, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY **INSTRUCTION NO. 6**, at 1, 18, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 9,** at 1, 2, 23-24, filed January 12, 2018 (Doc. 1641)(9) 1.08 Credibility of Witnesses)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 10,** at 1, 2, 25, filed January 12, 2018 (Doc. 1641)(10) 1.08.1 Non-Testifying Defendant)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 6: No objection to the unmodified Tenth Circuit instruction.")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 8: Defendants object to the use of this instruction.")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 10, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 28: No objection as this is the unmodified Tenth Circuit

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 16

DNM 440

instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.08, at i, 14-15 (**2011 Edition** Updated January 2017)(CREDIBILITY OF WITNESSES)(adapted)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.08.1, at i, 16 (**2011 Edition** Updated January 2017)(NON-TESTIFYING DEFENDANT)(modified)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 6, at 9-10, filed February 25, 2018 (Doc. 1827-1)

Fifth Circuit Pattern Instruction 1.08

Appellate Case: 20-2058    Document: 010110415670    Date Filed: 09/29/2020    Page: 17

DNM 441

## JURY INSTRUCTION NO. 8

You have heard evidence that, before this trial, witnesses have made statements that may be different from the witnesses' testimony here in court.

These earlier statements were brought to your attention only to help you decide how believable the witnesses' testimony in this trial was.  You cannot use the witnesses' prior statements as proof of anything else.  You can only use them as one way of evaluating the witnesses' testimony here in court.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 29**, at 1, 47, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 11** at 1, 2, 26, filed January 12, 2018 (Doc. 1641)(11) 1.10 Impeachment by Prior Inconsistencies)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 10, filed January 19, 2018 (Doc. 1663)(object until completed with the Use Note)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.10, at i, 21 (**2011 Edition** Updated January 2017)(IMPEACHMENT BY PRIOR INCONSISTENCIES)(adapted)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 7, at 11, filed February 25, 2018 (Doc. 1827-1)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 18

DNM 442

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 19

DNM 443

## JURY INSTRUCTION NO. 9

You have heard evidence that a defendant has been convicted of a felony, that is, a crime punishable by imprisonment for a term of years.  The fact that a defendant has been convicted of another crime does not mean that a defendant committed the crime charged in this case, and you must not use a defendant's prior conviction as proof of the crime charged in this case.  You may find them guilty of the crimes charged here only if the government has proved beyond a reasonable doubt that they committed them.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 30**, at 1, 48, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 12,** at 1, 2, 27 filed January 12, 2018 (Doc. 1641)(12) 1.11 Impeachment by Prior Conviction (Defendant's Testimony))(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 10, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 30: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.11, at i, 22 (**2011 Edition** Updated January 2017)(IMPEACHMENT BY PRIOR CONVICTION Defendant's Testimony)(adapted)

## JURY INSTRUCTION NO. 10

The testimony of a witness may be discredited or impeached by showing that the witness previously has been convicted of a felony, that is, of a crime punishable by imprisonment for a term of years or of a crime of dishonesty or false statement. A prior conviction does not mean that a witness is not qualified to testify, but is merely one circumstance that you may consider in determining the credibility of the witness. You may decide how much weight to give any prior felony conviction or crime of dishonesty that was used to impeach a witness.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 13,** at 1, 2, 28, filed January 12, 2018 (Doc. 1641)(13) 1.12 Impeachment by Prior Conviction (Witness Other Than Defendant)(modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.12, at i, 23 (**2011 Edition** Updated January 2017)(IMPEACHMENT BY PRIOR CONVICTION (Witness Other Than Defendant)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 8, at 12, filed February 25, 2018 (Doc. 1827-1)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 20

DNM 444

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 21

**JURY INSTRUCTION NO. 11**

You have heard the testimony of Eric Duran, who was a witness in the government's case. You also heard testimony from Officer Clint Snodgrass concerning his opinion about Mr. Duran's character for truth-telling. It is up to you to decide from what you heard here whether Mr. Duran's was telling the truth in this trial.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 14,** at 1, 2, 29, filed January 12, 2018 (Doc. 1641)(14) Impeachment by Evidence of Untruthful Character) (modified)

<u>Authority:</u> Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.13, at i, 24 (**2011 Edition** Updated January 2017)((IMPEACHMENT BY EVIDENCE OF UNTRUTHFUL CHARACTER)(modified)

DNM 445

## JURY INSTRUCTION NO. 12

### Accomplice

An accomplice is someone who joined with another person in committing a crime, voluntarily and with common intent. The testimony of an accomplice may be received in evidence and considered by you, even though it is not supported by other evidence. You may decide how much weight it should have.

You are to keep in mind, however, that accomplice testimony should be received with caution and considered with great care. You should not convict any defendant based on the unsupported testimony of an alleged accomplice, unless you believe the unsupported testimony beyond a reasonable doubt.

### Informant

An informant is someone who provides evidence against someone else for a personal reason or advantage. The testimony of an informant alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt, even though not corroborated or supported by other evidence. You must examine and weigh an informant's testimony with greater care than the testimony of an ordinary witness. You must determine whether the informant's testimony has been affected by self-interest, by an agreement the witness has with the government, by the witness's own interest in the outcome of the case, or by prejudice against and defendant.

You should not convict any defendant based on the unsupported testimony of an informant, unless you believe the unsupported testimony beyond a reasonable doubt.

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 22

DNM 446

Immunity

A person may testify under a grant of immunity (an agreement with the government). His testimony alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt even though it is not corroborated or supported by other evidence. You should consider testimony given under a grant of immunity with greater care and caution than the testimony of an ordinary witness. You should consider whether testimony under a grant of immunity has been affected by the witness's self-interest, the government's agreement, the witness's interest in the outcome of the case, or by prejudice against any defendant.

On the other hand, you should also consider that an immunized witness can be prosecuted for perjury for making a false statement. After considering these things, you may give testimony given under a grant of immunity such weight as you find it deserves.

You should not convict any defendant based on the unsupported testimony of an immunized witness, unless you believe the unsupported testimony beyond a reasonable doubt.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **32**, at 1, 50, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **35**, at 1, 53, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **36**, at 1, 54, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, REQUESTED INSTRUCTION NO. **15**, at 1, 2, 30-32, filed January 12, 2018 (Doc. 1641)(15) 1.14 Accomplice -- Informant -- Immunity)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 32, filed January 19, 2018 (Doc. 1663)("United States'

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 23

DNM 447

Proposed Jury Instruction No. 32: Defendants object to the use of this unmodified Tenth Circuit instruction as it fails to include the "Accomplice" portion ….)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 11, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 35: Defendants object to this instruction. It is duplicative of the United States Proposed Instruction No. 32 . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 11-12, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 36: Defendants object to this instruction. It is duplicative of the United States Proposed Instruction No. 32 . . . .")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.14, at i, 25-26 (**2011 Edition** Updated January 2017)(ACCOMPLICE -- INFORMANT -- IMMUNITY)[as appropriate])(adapted)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 24

DNM 448

## JURY INSTRUCTION NO. 13

The government has called as witnesses, alleged accomplices, who were named as accomplices in this or related criminal cases. The government has entered into plea agreements with these alleged accomplices, Mario Rodriquez, Jerry Armenta, Jerry Montoya, Timothy Martinez, Lupe Urquizo, David Calbert, Roy Paul Martinez, Robert Martinez, Manuel Jacob Armijo, Frederico Munoz, Gerald Archuleta, Mario Montoya, and Ben Clark, providing for the possibility of a lesser sentence than he would otherwise likely receive. Plea bargaining is lawful and proper, and the rules of this court expressly provide for it.

An alleged accomplice, including one who has entered into a plea agreement with the government, is not prohibited from testifying. On the contrary, the testimony of an alleged accomplice may, by itself, support a guilty verdict. You should receive this type of testimony with caution and weigh it with great care. You should never convict any defendant upon the unsupported testimony of such an accomplice, unless you believe that testimony beyond a reasonable doubt. The fact that an accomplice has entered into a guilty plea to the offense charged is not evidence of the guilt of any other person.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 33**, at 1, 51, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 16,** at 1, 2, 33, filed January 12, 2018 (Doc. 1641)(16) 1.15 Accomplice – Co-Defendant -- Plea Agreement)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 33, filed January 19, 2018 (Doc. 1663)("The Defendants request that the Court use the unmodified pattern instruction.")

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 25

DNM 449

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.15, at i, 27 (**2011 Edition** Updated January 2017)(ACCOMPLICE -- AN ALLEGED ACCOMPLICE -- CO-DEFENDANT -- PLEA AGREEMENT)(modified)

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 26

DNM 450

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 27

## JURY INSTRUCTION NO. 14

The testimony of a drug abuser must be examined and weighed by the jury with greater caution than the testimony of a witness who does not abuse drugs.

Billy Cordova, Mario Montoya, Eric Duran, Roy Paul Martinez, Robert Martinez, Frederico Munoz, Javier Rubio, Manuel Jacob Armijo, Jerry Armenta, Mario Rodriguez, Lupe Urquizo, Jerry Montoya, Gerald Archuleta, David Calbert, Timothy Martinez, and Julian Romero may be considered to be an abuser of drugs.

You must determine whether the testimony of any witness has been affected by the use of drugs or the need for drugs.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 34**, at 1, 52, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 17**, at 1, 2, 24, filed January 12, 2018 (Doc. 1641)(17) 1.16 Witnesses' Use of Addictive Drugs)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 11, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 34: No objection as this is the unmodified Tenth Circuit instruction".)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.16, at i, 28 (**2011 Edition** Updated January 2017)(WITNESS'S USE OF ADDICTIVE DRUGS)(modified)

DNM 451

## JURY INSTRUCTION NO. 15

During the trial you heard the testimony of Tim Bryan, who expressed opinions regarding the forensic analysis of computer tablets, and Dr. Heather Brislen, who expressed opinions regarding Rudy Perez's medical conditions. In some cases, such as this one, scientific, technical, or other specialized knowledge may assist the jury in understanding the evidence or in determining a fact in issue. A witness who has knowledge, skill, experience, training or education, may testify and state an opinion concerning such matters.

You are not required to accept such an opinion. You should consider opinion testimony just as you consider other testimony in this trial. Give opinion testimony as much weight as you think it deserves, considering the education and experience of the witness, the soundness of the reasons given for the opinion, and other evidence in the trial.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **31**, at 1, 49, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 18,** at 1, 2, 35, filed January 12, 2018 (Doc. 1641)(18) 1.17 Expert Witness)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 19,** at 1, 3, 36-44, filed January 12, 2018 (Doc. 1641)(19) Expert Witness -- DNA Evidence)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 10, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 31: No objection to the use of the unmodified Tenth Circuit instruction.")

Authority: *United States v. Starzecpyzel,* 880 F.Supp. 1027, 1050-51 (S.D.N.Y. 1995); President's Council of Advisors on Science and Technology, *Forensic Science in Criminal Courts: Ensuring Scientific Validity of Feature Comparison Methods* (Sept. 20, 2016); President's Council of Advisors on Science and Technology, *An Addendum to the PCAST Report on Forensic Science in Criminal Court.*

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 28

DNM 452

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.17, at i, 29 (**2011 Edition** Updated January 2017)(EXPERT WITNESS)(adapted)

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 29

DNM 453

## JURY INSTRUCTION NO. 16

Evidence relating to any statement attributed to Mr. Baca, Mr. Herrera, or Mr. Perez alleged to have been made after the commission of the crime (or crimes) charged in this case but not made in court, should always be considered by you with caution and weighed with care. You should give any such statement the weight you think it deserves, after considering all the circumstances under which the statement was made.

In determining whether any such statement is reliable and credible, consider factors bearing on the voluntariness of the statement. For example, consider the age, gender, training, education, occupation, and physical and mental condition of Mr. Baca, Mr. Herrera, or Mr. Perez, and any evidence concerning his treatment while under interrogation if the statement was made in response to questioning by government officials or agents or informants working on behalf of the government, and all the other circumstances in evidence surrounding the making of the statement.

After considering all this evidence, you may give such weight to the statement as you feel it deserves under all the circumstances. If you determine that the statement is unreliable or not credible, you may disregard the statement entirely.

As I have previously instructed, any such statement may be considered against the declarant-defendant only, and cannot be considered in any way, whatsoever, as evidence with respect to any other defendant on trial.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 25,** at 1, 3, 5, filed January 12, 2018 (Doc. 1641)(25) 1.26 Confession -- Statement -- Voluntariness by Defendant)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 30

DNM 454

Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.26, at i, 40 (**2011 Edition** Updated January 2017)(CONFESSION-STATEMENT -- VOLUNTARINESS BY DEFENDANT)(Multiple Defendants))(adapted)

**DEFENDANTS      [sic]      PROPOSED      JURY      INSTRUCTIONS,      REQUESTED INSTRUCTION NO. 26,** at 1, 3, 52-53, filed January 12, 2018 (Doc. 1641)(26) Identification Testimony)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.29, at i, 44 (**2011 Edition** Updated January 2017)(IDENTIFICATION TESTIMONY)(modified)

**DEFENDANTS      [sic]      PROPOSED      JURY      INSTRUCTIONS,      REQUESTED INSTRUCTION NO. 27,** at 1, 3, 54, filed January 12, 2018 (Doc. 1641)(27) 1.30 Similar Acts) (modified)

**DEFENDANTS      [sic]      PROPOSED      JURY      INSTRUCTIONS,      REQUESTED INSTRUCTION NO. 27,** at 1, 5, 87, filed January 12, 2018 (Doc. 1641)(27) 1.30 Similar Acts)(modified)

**DEFENDANTS      [sic]      PROPOSED      JURY      INSTRUCTIONS,      REQUESTED INSTRUCTION NO. 50, LIMITING INSTRUCTION 404(b): EVIDENCE INTRODUCED AT TRIAL,** at 1, 5, 88, filed January 12, 2018 (Doc. 1641)(50) Limiting instruction 404(b): Evidence Introduced at Trial)(modified)

**DEFENDANTS      [sic]      PROPOSED      JURY      INSTRUCTIONS,      REQUESTED INSTRUCTION NO. 51,** at 1, 5, 89, filed January 12, 2018 (Doc. 1641)(51) Limiting Instruction 404(b): Evidence to be Issued at the Close of Trial)(modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.30, at i, 46 (**2011 Edition** Updated January 2017)(SIMILAR ACTS)

Authority: *United States v. Rodella,* 101 F.Supp. 3d 1075, 1085-86 (D.N.M. 2015)

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 37,** at 1, 55, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 37: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL**

**MATTERS** 1.25, at i, 38 (**2011 Edition** Updated January 2017)(VOLUNTARINESS OF STATEMENT BY DEFENDANT)(Single Defendants)(modified)

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 32

DNM 456

## JURY INSTRUCTION NO. 17

During this trial, you have heard sound recordings of certain conversations. These conversations may be considered by you as you would any other evidence. You were also shown transcripts of those recorded conversations.

Keep in mind that the transcripts are not evidence. They were shown to you only as a guide to help you follow what was being said. The recordings themselves are the evidence. If you noticed any differences between what you heard on the recordings and what you read in the transcripts, you must rely on what you heard, not what you read. If you could not hear or understand certain parts of the recordings, you must ignore the transcript as far as those parts are concerned.

As I have previously instructed, any such recordings may be considered as evidence against the defendant who is the subject of the recording, only, and cannot be considered in any way, whatsoever, as evidence with respect to any other defendant on trial.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 38**, at 1, 56, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 31,** at 1, 3, 60, filed January 12, 2018 (Doc. 1641)(31) 1.40 Cautionary Instruction During Trial -- Transcript)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 10, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 38: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.40, at ii, 61 (**2011 Edition** Updated January 2017)(CAUTIONARY INSTRUCTION DURING TRIAL Transcript of Recorded Conversation)

## JURY INSTRUCTION NO. 18

DNM 457

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 33

Certain charts and summaries have been shown to you to help explain the evidence in this case. Their only purpose is to help explain the evidence. These charts and summaries are not evidence or proof of any facts.

Appellate Case: 20-2058    Document: 010110415670    Date Filed: 09/29/2020    Page: 34

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 26**, at 1, 43, filed January 12, 2018 (Doc. 1635)(32) 1.41 Summaries and Charts)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 32,** at 1, 3, 61, filed January 12, 2018 (Doc. 1641)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 9, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 26: . . . . If the charts and summaries are not otherwise objectionable, Defendants would not object to the use of this instruction as it is an unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.41, at ii, 62 (**2011 Edition** Updated January 2017)(SUMMARIES AND CHARTS Not Received In Evidence)

## JURY INSTRUCTION NO. 19

The parties have agreed to certain facts that have been stated to you.  These facts are now conclusively established.

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("The defendants . . . request the Court to follow the Ninth Circuit Pattern Instructions, Sections . . . 2.4 . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("The defendants . . . request the Court to follow the Ninth Circuit Pattern Instructions, Sections 2.3 . . . .")

DNM 459

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 35

## JURY INSTRUCTION NO. 20

The word "racketeering" has certain implications in our society. Use of that term in the statute and in this courtroom should not be regarded as having anything to do with your determination of whether the guilt of any defendant has been proven. The term is only a term used by Congress to describe the statute.

**PROPOSED JURY INSTRUCTIONS,** UNITED STATES' PROPOSED JURY INSTRUCTION NO. 7, at 1, 19, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 48,** at 1, 4, 82, filed January 12, 2018 (Doc. 1641)(48) 2.74.1 Racketeer Influenced and Corrupt Organizations Act: Prejudice from the Word "Racketeering")(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 2, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 7: No objection to the unmodified Tenth Circuit instruction.")

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74.1, at v, 229 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT Prejudice From The Word "Racketeering")

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 37

## JURY INSTRUCTION NO. 21

Counts 6, 7, 9, and 10 charge specific defendants with committing violent crimes in aid of racketeering in violation of 18 U.S.C. § 1959.

That law makes it a crime for any person who, as consideration for a promise or agreement to pay anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the law of any State or the United States, or attempts or conspires so to do.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 8,** at 1, 20-21, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 8: Defendants object to the uses of this instruction . . . . ")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74, at v, 228 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT 18 U.S.C. § 1962(a)(Introductory Paragraph))(modified)

DNM 461

## JURY INSTRUCTION NO. 22

Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez are on trial before you upon an Indictment brought by the Grand Jury. Before reading the indictment to you, I remind you that the Indictment or formal charge against Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez is not evidence of guilt. Indeed, Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez are presumed by the law to be innocent.

In this case, the Indictment charges as follows:

### Count 6

### Conspiracy to Murder Javier Molina

In March 2014, in Doña Ana County, in the District of New Mexico and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, JERRY ARMENTA, a.k.a. "Creeper," JERRY MONTOYA, a.k.a. "JR," a.k.a. "Plaz," MARIO RODRIGUEZ, a.k.a. "Blue," TIMOTHY MARTINEZ, a.k.a. "Red," **ANTHONY RAY BACA, a.k.a. "Pup,"** MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts," **DANIEL SANCHEZ, a.k.a. "Dan Dan," CARLOS HERRERA, a.k.a. "Lazy,"** and **RUDY PEREZ, a.k.a. "Ru Dog,"** and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder Javier Molina, in violation of NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 38

DNM 462

## Count 7

### Murder of Javier Molina

On or about March 7, 2014, in Doña Ana County, in the District of New Mexico, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, JERRY ARMENTA, a.k.a. "Creeper," JERRY MONTOYA, a.k.a. "JR," a.k.a. "Plaz," MARIO RODRIGUEZ, a.k.a. "Blue," TIMOTHY MARTINEZ, a.k.a. "Red," **ANTHONY RAY BACA, a.k.a. "Pup,"** MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts," **DANIEL SANCHEZ, a.k.a. "Dan Dan," CARLOS HERRERA, a.k.a. "Lazy,"** and **RUDY PEREZ, a.k.a. "Ru Dog,"** did unlawfully, knowingly and intentionally murder Javier Molina, in violation of NMSA 1978, Sections 30-2-1 and 30-1-13.

All in violation of 18 U.S.C. §§ 1959(a)(1) and 2.

## Count 9

### Conspiracy to Murder Dwayne Santistevan

Starting on a date uncertain, but no later than 2013, and continuing to on or about the date of this Indictment, in Santa Fe County, in the District of New Mexico, and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **ANTHONY RAY BACA, a.k.a. "Pup,"** ROY MARTINEZ, a.k.a. "Shadow," and ROBERT

MARTINEZ, a.k.a. "Baby Rob," and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder  Dwayne Santistevan, in violation of  NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

### Count 10

### Conspiracy to Murder Gregg Marcantel

Starting on a date uncertain, but no later than 2013, and continuing to on or about the date of this Indictment, in Santa Fe County, in the District of New Mexico, and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the  Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **ANTHONY RAY BACA, a.k.a. "Pup,"** ROY MARTINEZ, a.k.a. "Shadow," ROBERT MARTINEZ, a.k.a. "Baby Rob," and CHRISTOPHER GARCIA, and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder Gregg Marcantel, in violation of  NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

Indictment at ¶¶ 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12a, 12b, 12c, 12d, 12e, 12f, 13a, 13b, 13c, 13d, 13e, 14, Count 6, Count 7, Count 8, Count 9 and Count 10, at 1-9, 12-13, filed March 9, 2017 (Doc. 947)(modified)

**PROPOSED   JURY   INSTRUCTIONS**, **UNITED   STATES'   PROPOSED   JURY INSTRUCTION NO. 3,** at 1, 4-15, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED   JURY   INSTRUCTIONS**, **UNITED   STATES'   PROPOSED   JURY INSTRUCTION NO. 4,** at 16, filed January 12, 2018 (Doc. 1635)(modified)

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 40

DNM 464

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 2-4, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 3: object to surplusage)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 4, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 4: objection)

## JURY INSTRUCTION NO. 23

I have just reviewed the charges brought by the Grand Jury through an indictment.  In this case, the only Defendants on trial before you are Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez.

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 4, filed January 19, 2018 (Doc. 1663)(Defendants' alternative)

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 42

DNM 466

## JURY INSTRUCTION NO. 24

Title 18, United States Code, Section 1959(a), makes it a crime for anyone to commit, threaten to commit, attempt to commit, or conspire to commit a violent crime in aid of an enterprise engaged in racketeering activity.

For you to find any defendant guilty of this crime, as charged in Counts 6, 7, 9, and 10, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

    *First:*        That the enterprise existed;

    *Second:*      That the enterprise was engaged in interstate commerce or that it's activities affected interstate commerce;

    *Third:*       That the enterprise was engaged in racketeering activity;

    *Fourth*:     That the defendant committed a crime of violence as alleged in the indictment:

    Count 6:      Conspiracy to murder Javier Molina;

    Count 7:      Murder of Mr. Molina;

    Count 9:      Conspiracy to murder Dwayne Santistevan; and

    Count 10:     Conspiracy to murder Mr. Marcantel.

I will instruct you on what the government must prove to establish that a particular defendant committed any one of these acts; and

    *Fifth:*        That the defendant's purpose in committing, threatening to commit, attempting to commit, conspiring to commit the crimes of violence was to gain entrance to, or to maintain, or to increase his position in the enterprise.

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 43

DNM 467

If the purpose is to "gain entrance to, or to maintain, or to increase his position in the enterprise," it is not necessary for the government to prove that this was the sole purpose of a defendant in committing the charged crime. You need only find that it was a substantial purpose, or that a defendant committed the charged crime as an integral aspect of membership in the enterprise. In determining a defendant's purpose in committing the alleged crime, you must determine what he had in mind. Because you cannot look into a person's mind, you have to determine purpose by considering only the facts and circumstances that have been admitted against an individual defendant during the course of the trial.

An "enterprise" includes any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate commerce.

Although the enterprise must be separate and apart from the pattern of racketeering activity in which the enterprise allegedly engaged, it is not necessary to find that the enterprise had some function wholly unrelated to the racketeering activity. The enterprise must be proved to have been an ongoing organization, formal or informal, that functioned as a continuing unit.

An enterprise is a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time. The personnel of the enterprise, however, may change and need not be associated with the enterprise for the entire period alleged in the indictment. Therefore, the government must prove the existence of an association-in-fact enterprise by evidence of an ongoing organization, formal or informal, and by evidence that the various associates functioned as a continuing unit. The enterprise must have the three following structural features: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. The

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 44

DNM 468

name of the organization itself is not an element of the offense and does not have to be proved. The government need not prove that the enterprise had any particular organizational structure.

The group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods -- by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, you may nonetheless find that the enterprise element is satisfied by finding a group whose associates engage in spurts of activity punctuated by periods of quiescence [inactivity].

The enterprise is "engaged in interstate commerce" if it directly engaged in the production, distribution, or acquisition of goods or services in such commerce. The enterprise's conduct "affected" interstate commerce if the conduct had a demonstrated connected or link with such commerce.

It is not necessary for the government to prove that a defendant knew or intended that the enterprise was engaged in commerce or that its conduct would affect commerce. It is only necessary that the natural consequences of the enterprise's conduct affected commerce in some way. Only a minimal effect on commerce is necessary.

There must be some nexus between the enterprise and the racketeering activity being conducted by members and/or associates of the enterprise.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 8**, at 1, 20-21, filed January 12, 2018 (Doc. 1635)(modified)

DNM 469

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 49,** at 1, 4, 83-86, filed January 12, 2018 (Doc. 1641)(49) Fifth Circuit Pattern Jury Instruction § 2.78 Violent Crimes in Aid of Racketeering, 18 U.S.C. § 1959(a))(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 20: Defendants object to the inclusion of [or from a foreign country] . . . .")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74.2, at 230 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT-- "SECTION A" Elements Of The Offense)(modified)

Authority: Fifth Circuit Pattern Jury Instruction Criminal §2.78 (2015 ed.)(modified)(**Violent Crimes in Aid of Racketeering** 18 U.S.C. § 1959(a))

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 18,** at 1, 33, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 18: Defendants object to this instruction . . . .")

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 46

## JURY INSTRUCTION NO. 25

The first element that the government must prove beyond a reasonable doubt is that an "enterprise" existed as alleged in the indictment.

The government has charged the following in the Indictment as constituting the enterprise: the Syndicato de Nuevo Mexico Gang (SNM) in Counts 6, 7, 8, 9, and 10.

An enterprise includes a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time. This group of people does not have to be a legally recognized entity, such as a partnership or corporation.  This group may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose. This group of people must have: (1) a common purpose; and (2) an ongoing organization, either formal or informal; and (3) personnel who function as a continuing unit.

If you find these three elements, then you may find that an enterprise existed.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 9**, at 1, 22-23, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 9: Defendants object to this instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74.3, at 231 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT-- "SECTION A" First Element -- The Enterprise)

Fifth Circuit Pattern Jury Instructions Criminal 2.78 (2015)(modified)(**Violent Crimes In Aid of Racketeering**)

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **10**, at 1, 24, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 10: Defendants object to this instruction.")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 20: Defendants object to the inclusion of [or from a foreign country] . . . . ")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74.4, at 234 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT -- "SECTION A" Second Element -- Effect On Interstate Commerce)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, REQUESTED INSTRUCTION NO. **42,** at 1, 4, 74, filed January 12, 2018 (Doc. 1641)(42) 1.39 Interstate and Foreign Commerce -- Defined in 18 U.S.C. Section 10)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 20: Defendants object to the inclusion of [or from a foreign country] . . . . ")

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.39, at ii, 59 (**2011 Edition** Updated January 2017)(INTERSTATE AND FOREIGN COMMERCE -- DEFINED, 18 U.S.C. SECTION 10)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 20: Defendants object to the inclusion of [or from a foreign country] . . . . ")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.39.1, at ii, 60 (**2011 Edition** Updated January 2017)(INTERSTATE AND FOREIGN COMMERCE -- EFFECT ON 18 U.S.C. § 10)

## JURY INSTRUCTION NO. 26

The third element which the government must prove beyond a reasonable doubt as to Counts 6, 7, 9, and 10 is that the enterprise was engaged in racketeering activity.

That racketeering activity may consist of state offenses as well federal offenses. The government has charged that the SNM engaged in multiple acts of racketeering activity consisting of the following: (1) murder and robbery, in violation of New Mexico law; (2) acts involving tampering with a witness, in violation of federal law; and, (3) offenses involving trafficking in narcotics, in violation of federal law.

In order for the state offense of murder to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that a member or an associate of the racketeering enterprise committed the offense as defined by law. The elements of that offense are as follows:

First:          someone killed a human being, and

Second:          the killing was with the deliberate intention to take away the life of that person.

In order for the federal offense of witness tampering to be considered as a racketeering act, the government must prove to you beyond a reasonable doubts that:

First:  a member, prospect or associate of the racketeering enterprise used or attempted to use intimidation or threats against another person;

Second:          that members, prospects, or associates acted knowingly and with the intent to influence or prevent the testimony of that other person with respect to an official proceeding.

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 49

DNM 473

In order for the offense of possession with intent to distribute a controlled substance to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that:

First:          a member, prospect, or associate of the SNM knowingly and intentionally possessed a controlled substance as charged, and

Second:      that person possessed the substance with the intent to distribute it.

To "possess with intent to distribute" means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.

Crack cocaine, powder cocaine, heroin, suboxone, marijuana, and methamphetamine are controlled substances within the meaning of the law.

In order for the offense of distribution of a controlled substance to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that a member, prospect, or associate of the SNM knowingly or intentionally distributed a controlled substance.

The term "distribute" means to deliver or to transfer possession or control of something from one person to another. The term "distribute" includes the sale of something by one person to another. It is not necessary, however, for the government to prove that any transfer of money or other thing of value occurred at the same time as, or because of, the distribution.

There must be some nexus between the enterprise and the racketeering activity being conducted by members and/or associates of the enterprise.

I instruct you that "racketeering activity" includes numerous offenses, including those listed above. It is for you to determine whether the enterprise engaged in these activities as charged. You should give the words "engaged in" their ordinary, everyday meaning. For an

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 50

enterprise to be engaged in racketeering activity it is enough to show that the enterprise committed or was planning to commit some racketeering activity within a period of time short enough under all of the circumstances so that it is appropriate to say that the enterprise was engaged in racketeering activity.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **11**, at 1, 25, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **12**, at 1, 26, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **13**, at 1, 27, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **14**, at 1, 28, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 6, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 11: Defendants object to this instruction . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 6, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 12: Defendants object to this instruction . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 6, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 13: Defendants object to this instruction . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 6, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 14: Defendants object to this instruction . . . .")

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 28,** at 1, 3, 55-56, filed January 12, 2018 (Doc. 1641)(28) 1.31 Actual or Constructive Possession)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL**

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 51

DNM 475

**MATTERS** 1.31, at i, 47 (**2011 Edition** Updated February 22, 2018)(ACTUAL OR CONSTRUCTIVE POSSESSION)(modified)

United States v. Little, 829 F.3d 1177 (10th Cir. 2016)

Henderson v. United States, 135 S. Ct. 1780 (2105)

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 52

DNM 476

## JURY INSTRUCTION NO. 27

For you to find any defendant guilty of first degree murder by a deliberate killing of Mr. Molina as charged in Count 7;

The government must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1.   The defendant killed Mr. Molina;

2.   The killing was with the deliberate intention to take away the life of Mr. Molina;

3.   This happened in New Mexico on or about March 7, 2014.

A deliberate intention refers to the state of mind of the defendant. A deliberate intention may be inferred from all of the facts and circumstances of the killing. The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at in a short period of time. A mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill. To constitute a deliberate killing, the slayer must weigh and consider the question of killing and his reasons for and against such a choice.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 47,** at 1, 4, 47, filed January 12, 2018 (Doc. 1641)(47) UJI 14-201 NMRA -- Willful and Deliberate Murder; Essential Elements)(modified)

Authority: UJI 14-201 NMRA (modified)(**Willful and deliberate murder; essential elements**)(adapted)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 53

DNM 477

## JURY INSTRUCTION NO. 28

For you to find the defendant guilty of second decree murder as charged in Count 7, the government must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1.  The defendant killed Mr. Molina;

2.  The defendant knew that his acts created a strong probability of death or great bodily harm to Mr. Molina;

3.  This happened in New Mexico on or about the 7th day of March 2014.

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 54

DNM 478

## JURY INSTRUCTION NO. 29

The fourth element which the government must prove beyond a reasonable doubt as to Count 6 is that Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez conspired to murder Javier Molina.

The fourth element which the government must prove beyond a reasonable doubt as to Count 9 is that Mr. Baca conspired to murder Dwayne Santistevan.

The fourth element which the government must prove beyond a reasonable doubt as to Count 10 is that Mr. Baca conspired to murder Gregg Marcantel.

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose. To find Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

1. Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez and another person by words or acts agreed together to commit murder;

2. Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez and the other person intended to commit murder;

3. This happened in New Mexico on or about March, 2014, as to Count 6, a date uncertain, but no later than 2013, and continuing to on or about March 9, 2017, as to Counts 9 and 10.

In proving a conspiracy to murder, it is not necessary to show a meeting of the alleged conspirators or the making of an express or formal agreement. The formation and existence of a conspiracy to murder may be inferred from all circumstances tending to show the common intent

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 55

DNM 479

and may be proved in the same way as any other fact may be proved, either by direct testimony of the fact or by circumstantial evidence, or by both direct and circumstantial evidence.

Evidence that a person was in the company of or associated with one or more other persons alleged or proved to have been members of a conspiracy is not, in itself, sufficient to prove that such person was a member of the alleged conspiracy.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 15,** at 1, 29-30, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 15: Defendants object to this instruction. ")

NM UJI 14-2810 NMRA

NM UJI 14-201 NMRA

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 37,** at 68-69, filed January 12, 2018 (Doc. 1641)(37) UJI 14-2810 NMRA -- Conspiracy: Essential Elements)(modified)

Authority:  UJI 14-2810 NMRA (modified)(**Conspiracy: Essential Elements**)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 38,** at 1, 3, 70, filed January 12, 2018 (Doc. 1641)(38) UJI 14-2810 NMRA -- Conspiracy: Evidence of Association Alone Does Not Prove Membership in Conspiracy)(modified)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 56

DNM 480

<u>Authority</u>: UJI 14-2810 NMRA (**Conspiracy: Evidence of Association Alone Does Not Prove Membership in Conspiracy**)

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 57

DNM 481

## JURY INSTRUCTION NO. 30

In this case, you must consider separately whether Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez are guilty or not guilty of each of the charged crimes. Even if you cannot agree upon a verdict as to any single defendant on any particular charge, you must return the verdict or verdicts upon which you agree.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 39,** at 1, 3-4, filed January 12, 2018 (Doc. 1641)(39) UJI 14-2812 NMRA -- Conspiracy: Multiple Defendants; Each Defendant Entitled to Individual Consideration)(modified)

Authority: UJI 14-2812 NMRA **(Conspiracy; multiple defendants; each defendant entitled to individual consideration)**

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 40,** at 1, 4, 72, filed January 12, 2018 (Doc. 1641)(40) UJI 14-2814 NMRA -- Conspiracy: Evidence of Association Alone Does Not Prove Membership in Conspiracy)(modified)

Authority: UJI 14-2814 NMRA **(Conspiracy; evidence of association alone does not prove membership in conspiracy)**

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 16,** at 1, 31, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 16: No objection . . . . ")

NM UJI 14-201 NMRA.

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 58

DNM 482

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("Defendants insist the New Mexico jury instructions be given, in particular NM UJI 14-323 . . . . ")

UJI 14-323. AGGRAVATED BATTERY; GREAT BODILY HARM; ESSENTIAL ELEMENTS (modified)

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 17,** at 1, 32, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 17: Defendants object to this instruction.")

2 Fed. Jury Prac. & Instr. § 25:09 (6th ed.)(modified)(**The essential elements of the offense charged**)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("Defendants insist the New Mexico jury instructions be given, in particular . . . NM UJI 14-131. ")

UJI 14-131. "GREAT BODILY HARM" DEFINED

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 18,** at 1, 33, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 18: Defendants object to this instruction . . . .")

## JURY INSTRUCTION NO. 31

When the word "knowingly" is used in these instructions, it means that the act was done voluntarily and intentionally, and not because of mistake or accident.

Appellate Case: 20-2058    Document: 010110415670    Date Filed: 09/29/2020    Page: 60

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **23**, at 1, 40, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 30,** at 59, filed January 12, 2018 (Doc. 1641)(30) 1.37 Knowingly -- Deliberate Ignorance)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 23: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.36, at ii, 56 (**2011 Edition** Updated January 2017)(KNOWINGLY -- DELIBERATE IGNORANCE)(adapted)

DNM 484

## JURY INSTRUCTION NO. 32

You will note that the indictment charges that the crimes charged in Count 6 and Count 7 were committed "on or about" March 2014; the crimes charged in Count 9 and Count 10 were committed "on or about" no later than 2013 and continuing to on or about March 9, 2017.  The government must prove beyond a reasonable doubt that the defendant committed the crimes reasonably near March 2014 (for Count 6 and Count 7); between 2003 and July 13, 2015 (for Count 8); and no later than 2013 and continuing to on or about March 9, 2017 (for Count 9 and Count 10).

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 22**, at 1, 39, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS  [sic]  PROPOSED  JURY  INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 20,** at 1, 3, 45, filed January 12, 2018 (Doc. 1641)(20) 1.18 On or About)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction  No. 22: . . . Defendants object to the modification of the Tenth Circuit pattern instruction in the fashion proposed by the United States.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL  PATTERN  JURY  INSTRUCTIONS  (Criminal  Cases)  GENERAL MATTERS** 1.18, at i, 38 (**2011 Edition** Updated January 2017)(ON OR ABOUT)(adapted)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 61

DNM 485

## JURY INSTRUCTION NO. 33

Each count of the indictment also charges a violation of 18 U.S.C. section 2, which provides that: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

This law makes it a crime to intentionally help someone else commit a crime. To find Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*:   someone else committed the charged crime, and

*Second*: Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the government must prove that Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez consciously shared the other person's knowledge of the underlying criminal act and intended to help him.

Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 19**, at 1, 34, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 36,** at 1, 3, 66, filed January 12, 2018 (Doc. 1641)(36) 2.06 Aid and Abet 18 U.S.C. § 2(a))(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 19: Defendants object to this instruction . . . .")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.06, at ii, 79 (**2011 Edition** Updated January 2017)(AID AND ABET  18 U.S.C. § 2(a))(adapted)

Fifth Circuit Pattern Jury Instructions Criminal 2.04 (2011)(**Aiding and Abetting**)

Abet 18 U.S.C. § 2(a)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 63

DNM 487

## JURY INSTRUCTION NO. 34

Evidence has been presented that Mr. Baca, was the subject of unfair inducement. Unfair inducement occurs when government agents unfairly cause the commission of a crime. "Government agents" include law enforcement officers or persons acting under their direction, influence or control.

Where Mr. Baca was not ready and willing to commit the crime of conspiracy to commit the murder of Mr. Santistevan and conspiracy to commit the murder of Mr. Marcantel, as charged in Counts 9-10 of the indictment before first being contacted or approached by a government agent, but is induced or persuaded to commit the crime by a government agent, Mr. Baca is a victim of unfair inducement. However, where Mr. Baca was ready and willing to commit the crime at the time of the first contact with the government agent, the mere fact that the government agent provided what appears to be an opportunity to commit the crime is not unfair inducement.

The burden is on the government to prove to your satisfaction beyond a reasonable doubt that Mr. Baca was not unfairly induced. If you have a reasonable doubt as to whether Mr. Baca was unfairly induced, you must find Mr. Baca not guilty.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 44,** at 1, 4, 77, filed January 12, 2018 (Doc. 1641)(44) UJI 14-5160 NMRA -- Entrapment; unfair Inducement, not Predisposed)(modified)

Authority: UJI 14-5160 NMRA (modified)(**Entrapment; unfair inducement; not predisposed**)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 45,** at 1, 4, 78-79, filed January 12, 2018 (Doc. 1641)(45) UJI 14-5161 NMRA -- Entrapment; law enforcement unconscionable methods and illegitimate purposes)(modified)

Authority: UJI 14-5161 NMRA (modified)(**Entrapment; law enforcement unconscionable methods and illegitimate purposes**)

Appellate Case: 20-2058    Document: 010110415670    Date Filed: 09/29/2020    Page: 64

DNM 488

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 46,** at 1, 4, 46, filed January 12, 2018 (Doc. 1641)(46) UJI 14-5181 NMRA -- Self-defense; Non deadly Force by Defendant)(modified)

<u>Authority</u>: UJI 14-5161 NMRA (**Self-defense; non-deadly force by defendant**)

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 65

DNM 489

## JURY INSTRUCTION NO. 35

Mr. Perez claims that if he committed the acts charged in the Indictment, he did so only because he was forced to commit the crime.  If you conclude that the government has proved beyond a reasonable doubt that Mr. Perez committed the crime as charged, you must then consider whether Mr. Perez should nevertheless be found ""not guilty"" because his actions are excusable because they were performed under duress or coercion.

If you find that Mr. Perez committed the crime as charged, his actions are justified by duress or coercion only if you find that he has proven the following three elements:

1.  Mr. Perez was under an unlawful and present, imminent and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury to himself or a family member, or others;

2.  Mr. Perez had no reasonable, legal alternative to violating the law, that he had no chance both to refuse to do the criminal act and also to avoid the threatened harm;

3.  a direct causal relationship could have been reasonably anticipated between engaging in the criminal action and avoiding the threatened harm.

Mr. Perez, asserting defense of duress or coercion must prove these elements by a preponderance of the evidence. To prove a fact by a preponderance of the evidence means to prove that the fact is more likely so than not so.  This is a lesser burden of proof than to prove a fact beyond a reasonable doubt.

**DEFENDANTS   [sic]   PROPOSED   JURY   INSTRUCTIONS,   REQUESTED INSTRUCTION NO. 29,** at 57-58, filed January 12, 2018 (Doc. 1641)(29) 1.36 Coercion or Duress)(modified)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 66

DNM 490

<u>Authority</u>: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.36, at 54-55 (**2011 Edition** Updated January 2017)(COERCION OR DURESS)(modified)

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 67

DNM 491

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 68

## JURY INSTRUCTION NO. 36

Preponderance of evidence is evidence sufficient to persuade you that a fact is more likely present than not present.

**DEFENDANTS   [sic]   PROPOSED   JURY   INSTRUCTIONS**,   **REQUESTED INSTRUCTION NO. 6,** at 1, 2, 20, filed January 12, 2018 (Doc. 1641)(6) 1.05.1 Preponderance of Evidence)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.05.1, at ii, 10 (**2011 Edition** Updated January 2017)(PREPONDERANCE OF EVIDENCE)(modified)

DNM 492

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 69

## JURY INSTRUCTION NO. 37

You are here to decide whether the government has proved beyond a reasonable doubt that the defendants are guilty of the crimes charged.  The defendants are not on trial for any act, conduct, or crime not charged in the indictment.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crimes charged.  The fact that another person *also* may be guilty is no defense to a criminal charge.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 21** at 1, 3, 46, filed January 12, 2018 (Doc. 1641)(21) 1.19 Caution -- Consider Only Crime Charged)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 51, LIMITING INSTRUCTION 404(b): EVIDENCE TO BE ISSUED AT THE CLOSE OF TRIAL,** at 1, 5, 88, filed January 12, 2018 (Doc. 1641)(51) Limiting Instruction 404(b): Evidence to be Issued at the Close of Trial)(modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.19, at i, 31 (**2011 Edition** Updated January 2017)(CAUTION – CONSIDER ONLY CRIME CHARGED)(modified)

Authority: *United States v. Rodella*, 101 F.Supp. 3d 1075, 1086 (D.N.M. 2015)

DNM 493

## JURY INSTRUCTION NO. 38

If you find any defendant guilty, it will be my duty to decide what the punishment will be. You should not discuss or consider the possible punishment in any way while deciding your verdict.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY **INSTRUCTION NO. 40**, at 1, 58, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 22** at 1, 3, 47, filed January 12, 2018 (Doc. 1641)(22) 1.20 Caution -- Punishment (Non-Capital Cases))(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury instruction No. 40: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.20, at i, 32 (**2011 Edition** Updated January 2017)(CAUTION -- PUNISHMENT)(NON-CAPITAL CASES)(adapted)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 70

DNM 494

## JURY INSTRUCTION NO. 39

The rights of Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez in this case are separate and distinct.  You must separately consider the evidence against Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez and return a separate verdict for each as to each crime charged.

Your verdict as to Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez, whether it is guilty or not guilty, should not affect your verdict as to any other defendant on any other charges.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 23,** at 1, 3, 48, filed January 12, 2018 (Doc. 1641)(23) 1.22 Multiple Defendants -- Multiple Counts)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS 1.21**, at i, 33 (**2011 Edition** Updated January 2017)(adapted)

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 39,** at 1, 57, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 23,** at 1, 3, 48, filed January 12, 2018 (Doc. 1641)(23) 1.22 Multiple Defendants -- Multiple Counts)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 39: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS 1.22**, at i, 34 (**2011 Edition** Updated January 2017)(MULTIPLE DEFENDANTS -- MULTIPLE COUNTS)

18 U.S.C. § 1959

United States v. Kamahele, 748 F.3d 984, 1012 (10th Cir. 2014)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 71

DNM 495

## JURY INSTRUCTION NO. 40

In a moment the Courtroom Deputy Clerk will escort you to the jury room and provide each of you with a copy of the instructions that I have just read. Any exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you should first select a foreperson, who will help to guide your deliberations and will speak for you here in the courtroom. The second thing you should do is review the instructions. Not only will your deliberations be more productive if you understand the legal principles upon which your verdicts must be based, but for your verdicts to be valid, you must follow the instructions throughout your deliberations. Remember, you are the judges of the facts, but you are bound by your oath to follow the law stated in the instructions.

To reach a verdict, whether it is guilty or not guilty, all of you must agree. Your verdict must be unanimous on each count of the indictment. Your deliberations will be secret. You will never have to explain your verdict to anyone.

You must consult with one another and deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong. But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times, you are judges -- judges of the facts. You must decide whether the government has proved Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez guilty beyond a reasonable doubt as to each of the charges individually made against them.

A verdict form has been prepared for your convenience.

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 72

DNM 496

[Explain the Verdict Form]

The foreperson will write the unanimous answer of the jury in the space provided for each count of the indictment, either guilty or not guilty. At the conclusion of your deliberations, the foreperson should date and sign the verdict form.

If you need to communicate with me during your deliberations, the foreperson should write the message and give it to the Court Security Officer. I will either reply in writing or bring you back into the court to respond to your message. Under no circumstances should you reveal to me the numerical division of the jury.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 41,** at 1, 59-60, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 24,** at 1, 3, 40, filed January 12, 2018 (Doc. 1641)(24) 1.23 Duty to Deliberate -- Verdict Form)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 34,** at 1, 3, 64, filed January 12, 2018 (Doc. 1641)(34) 1.43 Partial Verdict Instruction)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 41: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.23, at i, 35-36 (**2011 Edition** Updated January 2017)(DUTY TO DELIBERATE -- VERDICT FORM)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 33,** at 1, 3, 62-63, filed January 12, 2018 (Doc. 1641)(33) 1.43 Modified *Allen* Instruction)(modified)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 73

DNM 497

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 34,** at 1, 3, 64, filed January 12, 2018 (Doc. 1641)(34) 1.43 Partial Verdict Instruction)modified)

<u>Authority</u>: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS** 1.42, at 63-64 (**2011 Edition** Updated January 2017)(MODIFIED *ALLEN* INSTRUCTION)(modified)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 74

DNM 498

## JURY INSTRUCTION NO. 41

Let me remind you again that nothing I have said in these instructions, nor anything I have said or done during the trial, was meant to suggest to you what I think your decision should be.  That is your exclusive responsibility.

**DEFENDANTS   [sic]   PROPOSED   JURY   INSTRUCTIONS,   REQUESTED INSTRUCTION NO. 35,** at 1, 3, 65, filed January 12, 2018 (Doc. 1641)(35) 1.44 Communication with the Court)(modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS** 1.44, at ii, 66 (**2011 Edition** Updated January 2017)(COMMUNCIATION WITH THE COURT)(modified)

DNM 499

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 75

## JURY INSTRUCTION NO. 42

Faithful performance by you of your duties is vital to the administration of justice.

United States v. Gaspar Leal, No. CIV 16-3069 JB, Instruction No. 20, at 25, filed December 6, 2017 (Doc. 183)

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 76

DNM 500

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 77

DNM 501

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                              No. CR 15-4268 JB

DANIEL SANCHEZ, ANTHONY RAY
BACA, CARLOS HERRERA, and
RUDY PEREZ,

        Defendants.

## V E R D I C T

### DANIEL SANCHEZ

    **COUNT 6**

    WE, the Jury, find the defendant, **DANIEL SANCHEZ,** _____

                                              (guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of

the Indictment.

    **COUNT 7**

    WE, the Jury, find the defendant, **DANIEL SANCHEZ,** _____

                                              (guilty or not guilty)

of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the

Indictment.

### ANTHONY RAY BACA

    **COUNT 6**

    WE, the Jury, find the defendant, **ANTHONY RAY BACA,** _____

                                              (guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of

the Indictment.

### COUNT 7

WE, the Jury, find the defendant, **ANTHONY RAY BACA**, _____

(guilty or not guilty)

of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the

Indictment.

### COUNT 9

WE, the Jury, find the defendant, **ANTHONY RAY BACA**, _____

(guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Dwayne Santistevan, as charged in Count

9 of the Indictment.

### COUNT 10

WE, the Jury, find the defendant, **ANTHONY RAY BACA**, _____

(guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Gregg Marcantel, as charged in Count 10

of the Indictment.

## CARLOS HERRERA

### COUNT 6

WE, the Jury, find the defendant, **CARLOS HERRERA**, _____

(guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of

the Indictment.

### COUNT 7

WE, the Jury, find the defendant, **CARLOS HERRERA**, _____

(guilty or not guilty)

of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the

Indictment.

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 78

DNM 502

**RUDY PEREZ**

**COUNT 6**

WE, the Jury, find the defendant, **RUDY PEREZ,**

_____
(guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of

the Indictment.

**COUNT 7**

WE, the Jury, find the defendant, **RUDY PEREZ,**

_____
(guilty or not guilty)

of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the

Indictment.

Dated this _____ day of _____, 2018.


_____
FOREPERSON




**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, VERDICT,** at 1, 5, 89-92, filed
January 12, 2018 (Doc. 1641)(Verdict Form)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY
INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("The
[Government's] Verdict Forms are insufficient . . . .")

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 79

DNM 503

FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

MAR − 2 2018 

MATTHEW J. DYKMAN
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

No. CR 15-4268 JB

ANGEL DELEON, JOE LAWRENCE
GALLEGOS, EDWARD TROUP, a.k.a.
"Huero Troup," LEONARD LUJAN,
BILLY GARCIA, a.k.a. "Wild Bill,"
EUGENE MARTINEZ, a.k.a. "Little
Guero," ALLEN PATTERSON,
CHRISTOPHER CHAVEZ, a.k.a. "Critter,"
JAVIER ALONSO, a.k.a. "Wineo,"
ARTURO ARNULFO GARCIA, a.k.a.
"Shotgun," BENJAMIN CLARK, a.k.a.
"Cyclone," RUBEN HERNANDEZ;
JERRY ARMENTA, a.k.a. "Creeper,"
JERRY MONTOYA, a.k.a. "Boxer,"
MARIO RODRIGUEZ, a.k.a. "Blue,"
TIMOTHY MARTINEZ, a.k.a. "Red,"
MAURICIO VARELA, a.k.a. "Archie,"
a.k.a. "Hog Nuts," DANIEL SANCHEZ,
a.k.a. "Dan Dan," GERALD ARCHULETA,
a.k.a. "Styx," a.k.a. "Grandma," CONRAD
VILLEGAS, a.k.a. "Chitmon," ANTHONY
RAY BACA, a.k.a. "Pup," ROBERT
MARTINEZ, a.k.a. "Baby Rob," ROY
PAUL MARTINEZ, a.k.a. "Shadow,"
CHRISTOPHER GARCIA, CARLOS
HERRERA, a.k.a. "Lazy," RUDY PEREZ,
a.k.a. "Ru Dog," ANDREW GALLEGOS,
a.k.a. "Smiley," SANTOS GONZALEZ;
PAUL RIVERA, SHAUNA GUTIERREZ,
and BRANDY RODRIGUEZ,
     Defendants.

## COURT'S TENTH PROPOSED JURY INSTRUCTIONS
(with citations)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 80

DNM 504

DNM 505

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 81

## JURY INSTRUCTION NO. 1

Members of the Jury:

In any jury trial there are, in effect, two judges. I am one of the judges, you are the other. I am the judge of the law. You, as jurors, are the judges of the facts. I presided over the trial and decided what evidence was proper for your consideration. It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdicts.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every criminal case -- for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses. Then I will give you some specific rules of law that apply to this particular case and, finally, I will explain the procedures you should follow in your deliberations, and the possible verdicts you may return. These instructions will be given to you for use in the jury room, so you need not take notes.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 1,** at 1, 2, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 3,** at 1, 2, 17, filed January 12, 2018 (Doc. 1641)(3) 1.03 Introduction to Final Instructions)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 1: No objection to unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS** (**Criminal Case**s) **GENERAL MATTERS** 1.03, at i, 7, (**2011 Edition** Updated January, 2017)(INTRODUCTION TO FINAL INSTRUCTIONS)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

DNM 506

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 1, at 3, filed February 25, 2018 (Doc. 1827-1)

Fifth Circuit Pattern Instruction 1.05

Ninth Circuit Pattern Instruction 3.05

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 82

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 83

DNM 507

## JURY INSTRUCTION NO. 2

You, as jurors, are the judges of the facts. But in determining what actually happened -- that is, in reaching your decision as to the facts -- it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences. However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdicts should be. These should be entirely up to you.

It is also your duty to base your verdicts solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 2**, at 1, 3, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 4**, at 1, 2, 18, filed January 12, 2018 (Doc. 1641)(4) 1.04 Duty to Follow Instructions)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, filed January 19, 2018 (Doc. 1662)("United States Proposed Jury Instruction No. 2: No objection to unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.04, at i, 8 (**2011 Edition** Updated January 2017)(DUTY TO FOLLOW INSTRUCTIONS)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 2, at 4, filed February 25, 2018 (Doc. 1827-1)

DNM 508

Appellate Case: 20-2058    Document: 010110415670    Date Filed: 09/29/2020    Page: 84

## JURY INSTRUCTION NO. 3

The government has the burden of proving defendants Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, and Rudy Perez guilty beyond a reasonable doubt. The law does not require any individual defendant to prove his innocence or produce any evidence at all. The government has the burden of proving each defendant, individually, guilty beyond a reasonable doubt, and if it fails to do so for any individual defendant, you must find that defendant not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of a defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the government's proof exclude any "reasonable doubt" concerning any individual defendant's guilt. A reasonable doubt is a doubt based on reason and common sense. It may arise after careful and impartial consideration of all the evidence, or from lack of evidence. If, based on your consideration of the evidence, you are firmly convinced that a defendant is guilty of the crimes charged, you must find him guilty of that charge. If on the other hand, you think there is a reasonable doubt about the truth of any charge, then you must give the defendant the benefit of the doubt and find him not guilty of that charge.

It is your duty to consider the evidence applicable to each defendant, separately. You must consider whether a reasonable doubt exists as to each count charged against each individual defendant.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 5,** at 1, 17, filed January 12, 2018 (Doc. 1635)(modified)

DNM 509

Appellate Case: 20-2058     Document: 01011041567D     Date Filed: 09/29/2020     Page: 85

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 5,** at 1, 2, 19, filed January 12, 2018 (Doc. 1641)(modified 1.05)(5) 1.05 Presumption of Innocence -- Burden of Proof -- Reasonable Doubt)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 6,** at 1, 2, 20 filed January 12, 2018 (Doc. 1641)(6) 1.05.1 Preponderance of Evidence)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 4-5, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 5: The Defendants' objected to the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.05, at 1, 9 (**2011 Edition** Updated January 2017) (PRESUMPTION OF INNOCENCE -- BURDEN OF PROOF -- REASONABLE DOUBT)(adapted)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.05.1, at i, 10 (**2011 Edition** Updated January 2017) (PREPONDERANCE OF EVIDENCE )(modified)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 3, at 5, filed February 25, 2018 (Doc. 1827-1)

Appellate Case: 20-2058     Document: 01011041S670     Date Filed: 09/29/2020     Page: 86

## JURY INSTRUCTION NO. 4

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations that the lawyers agreed to.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked. I also ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 24**, at 1, 41, filed January 12, 2018 (Doc. 8)(Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 7**, at 1, 2, 21, filed January 12, 2018 (Doc. 1641)(7) 1.06 Evidence -- Defined)

DNM 511

Appellate Case: 20-2058     Document: 01011041567     Date Filed: 09/29/2020     Page: 87

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 24: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.06, at i, 11 (**2011 Edition** Updated January 2017)(EVIDENCE -- DEFINED)(modified)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 4, at 7, filed February 25, 2018 (Doc. 1827-1)

## JURY INSTRUCTION NO. 5

During the course of this trial, and on multiple occasions throughout the trial, you have heard evidence that was admitted for a limited purpose and as to a particular defendant, only.

Each time this type of evidence was admitted, I instructed you of the specific limitations placed on your use of that evidence. By providing these instructions, I was not suggesting that you must or should find the particular evidence credible or probative of any issue in this case. However, in the event you decide to consider the limited evidence, then you may only use it only for the limited purpose, and only as to the particular defendant, for which it was admitted.

You are not to consider any limited evidence for any other purpose than the particular purpose for which it was admitted. And, you may not use it in any way during your deliberations concerning any defendant against whom the evidence was not admitted.

**DEFENDANT DANIEL SANCHEZ'S PROPOSED LIMITING INSTRUCTION,** at 1, 2-3, filed February 23, 2018 (Doc. 1821)

Authority Federal Rule of Evidence 105; 9th Cir. Pattern Instruction 2.11 Evidence for Limited Purpose (no comparable 10th Circuit or 5th Circuit Limiting Instruction could be located); *See United States v. Armijo*, 5 F3d 1229, 1232 (9th Cir. 1993). For example, in *United States v Sauza-Martinez*, 217 F.3d 754, 760 (9th Cir. 2000), the Ninth Circuit held the trial court "had no alternative" but to give the jury a limiting instruction *sua sponte* when a testifying co-defendant's post-arrest statements were admitted as substantive evidence against her under Fed. R. Evid. 801(d)(2)(A), but were not admissible against another co-defendant "under *any* theory" (emphasis in original). Under the circumstances of the case, it was plain error to fail to give the limiting instruction *sua sponte*. *Id.* at 761.

DNM 513

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 89

## JURY INSTRUCTION NO. 6

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusion that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **27**, at 1, 44, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 8,** at 1, 2, 22, filed January 12, 2018 (Doc. 1641)(8) 1.07 Evidence -- Direct and Circumstantial -- Influences)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 27: No objection to the unmodified Tenth Circuit instruction.")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 9-10, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 27: Defendants object to this instruction because the United States

DNM 514

Page: 90

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

have omitted the first two paragraphs of the pattern instruction . . . . Defendants propose using the entire instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.07, at i, 13 (**2011 Edition** Updated January 2017)(EVIDENCE -- DIRECT AND CIRCUMSTANTIAL -- INFERENCES)(adapted)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 5, at 8, filed February 25, 2018 (Doc. 1827-1)

DNM 515

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 91

## JURY INSTRUCTION NO. 7

I remind you that it is your job to decide whether the government has proved the guilt of Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez beyond a reasonable doubt. In doing so, you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence that I have admitted as to any one defendant as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses who testified in this case. You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was. In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness admit prior instances of untruthfulness? Did the witness testify falsely on prior occasions? Did the witness make prior statements that were inconsistent with his or her testimony? Did the witness collude with others to create false evidence on prior occasions? Did the witness have the opportunity to collude with others prior to his testimony? Did the witness have a personal interest in the outcome in this case? Did the witness have any relationship with the government or a defendant? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he/she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you

should keep in mind that innocent misrecollection -- like failure of recollection -- is not uncommon.

You may not consider any defendant's decision not to testify as evidence of guilt. I want you to clearly understand, please, that the Constitution of the United States grants to Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez the right to remain silent. That means the right not to testify or call any witnesses. That is a constitutional right in this country, it is very carefully guarded, and you should understand that no presumption of guilt may be raised and no inference of any kind may be drawn from the fact that a defendant did not take the witness stand and testify or call any witnesses.

In reaching a conclusion on a particular point, or ultimately in reaching verdicts in this case, do not make any decisions simply because there were more witnesses on one side than on the other. What is important is how believable a witness was and how much weight you think that their testimony deserves.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 28**, at 1, 45-46, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 6**, at 1, 18, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 9,** at 1, 2, 23-24, filed January 12, 2018 (Doc. 1641)(9) 1.08 Credibility of Witnesses)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 10,** at 1, 2, 25, filed January 12, 2018 (Doc. 1641)(10) 1.08.1 Non-Testifying Defendant)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 6: No objection to the unmodified Tenth Circuit instruction.")

DNM 517

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 93

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 8: Defendants object to the use of this instruction.")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 10, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 28: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.08, at i, 14-15 (**2011 Edition** Updated January 2017)(CREDIBILITY OF WITNESSES)(adapted)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.08.1, at i, 16 (**2011 Edition** Updated January 2017)(NON-TESTIFYING DEFENDANT)(modified)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 6, at 9-10, filed February 25, 2018 (Doc. 1827-1)

Fifth Circuit Pattern Instruction 1.08

Appellate Case: 20-2058   Document: 01011041567   Date Filed: 09/29/2020   Page: 94

DNM 518

## JURY INSTRUCTION NO. 8

You have heard evidence that, before this trial, witnesses have made statements that may be different from the witnesses' testimony here in court.

These earlier statements were brought to your attention only to help you decide how believable the witnesses' testimony in this trial was.  You cannot use the witnesses' prior statements as proof of anything else.  You can only use them as one way of evaluating the witnesses' testimony here in court.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 29**, at 1, 47, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 11** at 1, 2, 26, filed January 12, 2018 (Doc. 1641)(11) 1.10 Impeachment by Prior Inconsistencies)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 10, filed January 19, 2018 (Doc. 1663)(object until completed with the Use Note)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.10, at i, 21 (**2011 Edition** Updated January 2017)(IMPEACHMENT BY PRIOR INCONSISTENCIES)(adapted)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 7, at 11, filed February 25, 2018 (Doc. 1827-1)

DNM 519

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 95

**JURY INSTRUCTION NO. 9**

You have heard evidence that a defendant has been convicted of a felony, that is, a crime punishable by imprisonment for a term of years.  The fact that a defendant has been convicted of another crime does not mean that a defendant committed the crime charged in this case, and you must not use a defendant's prior conviction as proof of the crime charged in this case.  You may find them guilty of the crimes charged here only if the government has proved beyond a reasonable doubt that they committed them.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 30,** at 1, 48, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 12,** at 1, 2, 27 filed January 12, 2018 (Doc. 1641)(12) 1.11 Impeachment by Prior  Conviction (Defendant's Testimony))(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 10, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 30: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.11, at i, 22 (**2011 Edition** Updated January 2017)(IMPEACHMENT BY PRIOR CONVICTION Defendant's Testimony)(adapted)

## JURY INSTRUCTION NO. 10

The testimony of a witness may be discredited or impeached by showing that the witness previously has been convicted of a felony, that is, of a crime punishable by imprisonment for a term of years or of a crime of dishonesty or false statement.  A prior conviction does not mean that a witness is not qualified to testify, but is merely one circumstance that you may consider in determining the credibility of the witness.  You may decide how much weight to give any prior felony conviction or crime of dishonesty that was used to impeach a witness.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 13,** at 1, 2, 28, filed January 12, 2018 (Doc. 1641)(13) 1.12 Impeachment by Prior Conviction (Witness Other Than Defendant)(modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.12, at i, 23 (**2011 Edition** Updated January 2017)(IMPEACHMENT BY PRIOR CONVICTION (Witness Other Than Defendant)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 8, at 12, filed February 25, 2018 (Doc. 1827-1)

## JURY INSTRUCTION NO. 11

You have heard the testimony of Eric Duran, who was a witness in the government's case. You also heard testimony from Officer Clint Snodgrass concerning his opinion about Mr. Duran's character for truth-telling. It is up to you to decide from what you heard here whether Mr. Duran's was telling the truth in this trial.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 14,** at 1, 2, 29, filed January 12, 2018 (Doc. 1641)(14) Impeachment by Evidence of Untruthful Character) (modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.13, at i, 24 (**2011 Edition** Updated January 2017)((IMPEACHMENT BY EVIDENCE OF UNTRUTHFUL CHARACTER)(modified)

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 97

DNM 521

DNM 522

Appellate Case: 20-2058    Document: 010110415670    Date Filed: 09/29/2020    Page: 98

### JURY INSTRUCTION NO. 12

Accomplice

An accomplice is someone who joined with another person in committing a crime, voluntarily and with common intent.  The testimony of an accomplice may be received in evidence and considered by you, even though it is not supported by other evidence.  You may decide how much weight it should have.

You are to keep in mind, however, that accomplice testimony should be received with caution and considered with great care.  You should not convict any defendant based on the unsupported testimony of an alleged accomplice, unless you believe the unsupported testimony beyond a reasonable doubt.

Informant

An informant is someone who provides evidence against someone else for a personal reason or advantage.  The testimony of an informant alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt, even though not corroborated or supported by other evidence.  You must examine and weigh an informant's testimony with greater care than the testimony of an ordinary witness.  You must determine whether the informant's testimony has been affected by self-interest, by an agreement the witness has with the government, by the witness's own interest in the outcome of the case, or by prejudice against any defendant.

You should not convict any defendant based on the unsupported testimony of an informant, unless you believe the unsupported testimony beyond a reasonable doubt.

Immunity

A person may testify under a grant of immunity (an agreement with the government). His testimony alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt even though it is not corroborated or supported by other evidence.  You should consider testimony given under a grant of immunity with greater care and caution than the testimony of an ordinary witness.  You should consider whether testimony under a grant of immunity has been affected by the witness's self-interest, the government's agreement, the witness's interest in the outcome of the case, or by prejudice against any defendant.

On the other hand, you should also consider that an immunized witness can be prosecuted for perjury for making a false statement.  After considering these things, you may give testimony given under a grant of immunity such weight as you find it deserves.

You should not convict any defendant based on the unsupported testimony of an immunized witness, unless you believe the unsupported testimony beyond a reasonable doubt.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **32**, at 1, 50, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **35**, at 1, 53, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **36**, at 1, 54, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 15,** at 1, 2, 30-32, filed January 12, 2018 (Doc. 1641)(15) 1.14 Accomplice -- Informant -- Immunity)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 32, filed January 19, 2018 (Doc. 1663)("United States'

Proposed Jury Instruction  No. 32: Defendants object to the use of this unmodified Tenth Circuit instruction as it fails to include the "Accomplice" portion ….)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 11, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction  No. 35: Defendants object to this instruction.  It is duplicative of the United States Proposed Instruction No. 32 . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 11-12, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction  No. 36: Defendants object to this instruction.  It is duplicative of the United States Proposed Instruction No. 32 . . . .")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.14, at i, 25-26 (**2011 Edition** Updated January 2017)(ACCOMPLICE -- INFORMANT -- IMMUNITY)[as appropriate])(adapted)

DNM 524

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 100

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 101

DNM 525

## JURY INSTRUCTION NO. 13

The government has called as witnesses, alleged accomplices, who were named as accomplices in this or related criminal cases. The government has entered into plea agreements with these alleged accomplices: Mario Rodriquez, Jerry Armenta, Jerry Montoya, Timothy Martinez, Lupe Urquizo, David Calbert, Roy Paul Martinez, Robert Martinez, Manuel Jacob Armijo, Frederico Munoz, Gerald Archuleta, Mario Montoya, and Ben Clark, providing for the possibility of a lesser sentence than he would otherwise likely receive. Plea bargaining is lawful and proper, and the rules of this court expressly provide for it.

An alleged accomplice, including one who has entered into a plea agreement with the government, is not prohibited from testifying. On the contrary, the testimony of an alleged accomplice may, by itself, support a guilty verdict. You should receive this type of testimony with caution and weigh it with great care. You should never convict any defendant upon the unsupported testimony of such an accomplice, unless you believe that testimony beyond a reasonable doubt. The fact that an accomplice has entered into a guilty plea to the offense charged is not evidence of the guilt of any other person.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **33**, at 1, 51, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, REQUESTED INSTRUCTION NO. **16,** at 1, 2, 33, filed January 12, 2018 (Doc. 1641)(16) 1.15 Accomplice – Co-Defendant -- Plea Agreement)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 33, filed January 19, 2018 (Doc. 1663)("The Defendants request that the Court use the unmodified pattern instruction.")

DNM 526

Page: 102

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.15, at i, 27 (**2011 Edition** Updated January 2017)(ACCOMPLICE -- AN ALLEGED ACCOMPLICE -- CO-DEFENDANT -- PLEA AGREEMENT)(modified)

**JURY INSTRUCTION NO. 14**

The testimony of a drug abuser must be examined and weighed by the jury with greater caution than the testimony of a witness who does not abuse drugs.

Billy Cordova, Mario Montoya, Eric Duran, Roy Paul Martinez, Robert Martinez, Frederico Muñoz, Javier Rubio, Manuel Jacob Armijo, Jerry Armenta, Mario Rodriguez, Lupe Urquizo, Jerry Montoya, Gerald Archuleta, David Calbert, Timothy Martinez, Bobby Delgado, and Julian Romero may be considered abusers of drugs.

You must determine whether the testimony of any witness has been affected by the use of drugs or the need for drugs.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 34**, at 1, 52, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 17**, at 1, 2, 24, filed January 12, 2018 (Doc. 1641)(17) 1.16 Witnesses' Use of Addictive Drugs)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 11, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 34: No objection as this is the unmodified Tenth Circuit instruction".)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.16, at i, 28 (**2011 Edition** Updated January 2017)(WITNESS'S USE OF ADDICTIVE DRUGS)(modified)

DNM 527

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 103

DNM 528

Appellate Case: 20-2058      Document: 010110415670      Date Filed: 09/29/2020      Page: 104

## JURY INSTRUCTION NO. 15

During the trial you heard the testimony of Tim Bryan, who expressed opinions regarding the forensic analysis of computer tablets, and Dr. Heather Brislen, who expressed opinions regarding Rudy Perez's medical conditions. In some cases, such as this one, scientific, technical, or other specialized knowledge may assist the jury in understanding the evidence or in determining a fact in issue. A witness who has knowledge, skill, experience, training or education, may testify and state an opinion concerning such matters.

You are not required to accept such an opinion. You should consider opinion testimony just as you consider other testimony in this trial. Give opinion testimony as much weight as you think it deserves, considering the education and experience of the witness, the soundness of the reasons given for the opinion, and other evidence in the trial.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 31**, at 1, 49, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 18**, at 1, 2, 35, filed January 12, 2018 (Doc. 1641)(18) 1.17 Expert Witness)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 19**, at 1, 3, 36-44, filed January 12, 2018 (Doc. 1641)(19) Expert Witness -- DNA Evidence)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 10, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction  No. 31: No objection to the use of the unmodified Tenth Circuit instruction.")

Authority: *United States v. Starzecpyzel,* 880 F.Supp. 1027, 1050-51 (S.D.N.Y. 1995); President's Council of Advisors on Science and Technology, *Forensic Science in Criminal Courts: Ensuring Scientific Validity of Feature Comparison Methods* (Sept. 20, 2016); President's Council of Advisors on Science and Technology, *An Addendum to the PCAST Report on Forensic Science in Criminal Court.*

DNM 529

Page: 105

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.17, at i, 29 (**2011 Edition** Updated January 2017)(EXPERT WITNESS)(adapted)

DNM 530

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 106

## JURY INSTRUCTION NO. 16

Evidence relating to any statement attributed to Mr. Baca, Mr. Herrera, or Mr. Perez alleged to have been made after the commission of the crime (or crimes) charged in this case but not made in court, should always be considered by you with caution and weighed with care. You should give any such statement the weight you think it deserves, after considering all the circumstances under which the statement was made.

In determining whether any such statement is reliable and credible, consider factors bearing on the voluntariness of the statement. For example, consider the age, gender, training, education, occupation, and physical and mental condition of Mr. Baca, Mr. Herrera, or Mr. Perez, and any evidence concerning his treatment while under interrogation if the statement was made in response to questioning by government officials, agents, or informants working on behalf of the government, and all the other circumstances in evidence surrounding the making of the statement.

After considering all this evidence, you may give such weight to the statement as you feel it deserves under all the circumstances. If you determine that the statement is unreliable or not credible, you may disregard the statement entirely.

As I have previously instructed, any such statement may be considered against the declarant-defendant only, and cannot be considered in any way, whatsoever, as evidence with respect to any other defendant on trial.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 25,** at 1, 3, 5, filed January 12, 2018 (Doc. 1641)(25) 1.26 Confession -- Statement -- Voluntariness by Defendant)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth

DNM 531

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 107

Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.26, at i, 40 (**2011 Edition** Updated January 2017)(CONFESSION-STATEMENT -- VOLUNTARINESS BY DEFENDANT)(Multiple Defendants))(adapted)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 26,** at 1, 3, 52-53, filed January 12, 2018 (Doc. 1641)(26) Identification Testimony)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.29, at i, 44 (**2011 Edition** Updated January 2017)(IDENTIFICATION TESTIMONY)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 27,** at 1, 3, 54, filed January 12, 2018 (Doc. 1641)(27) 1.30 Similar Acts) (modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 27,** at 1, 5, 87, filed January 12, 2018 (Doc. 1641)(27) 1.30 Similar Acts)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 50, LIMITING INSTRUCTION 404(b): EVIDENCE INTRODUCED AT TRIAL,** at 1, 5, 88, filed January 12, 2018 (Doc. 1641)(50) Limiting instruction 404(b): Evidence Introduced at Trial)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 51,** at 1, 5, 89, filed January 12, 2018 (Doc. 1641)(51) Limiting Instruction 404(b): Evidence to be Issued at the Close of Trial)(modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.30, at i, 46 (**2011 Edition** Updated January 2017)(SIMILAR ACTS)

Authority: *United States v. Rodella*, 101 F.Supp.3d 1075, 1085-86 (D.N.M. 2015)

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 37,** at 1, 55, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 37: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL**

DNM 532

Page: 108

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

**MATTERS** 1.25, at i, 38 (**2011 Edition** Updated January 2017)(VOLUNTARINESS OF STATEMENT BY DEFENDANT)(Single Defendants)(modified)

## JURY INSTRUCTION NO. 17

During this trial, you have heard sound recordings of certain conversations. These conversations may be considered by you as you would any other evidence. You were also shown transcripts of those recorded conversations.

Keep in mind that the transcripts are not evidence. They were shown to you only as a guide to help you follow what was being said. The recordings themselves are the evidence. If you noticed any differences between what you heard on the recordings and what you read in the transcripts, you must rely on what you heard, not what you read. If you could not hear or understand certain parts of the recordings, you must ignore the transcript as far as those parts are concerned.

As I have previously instructed, any such recordings may be considered as evidence against the defendant who is the subject of the recording, only, and cannot be considered in any way, whatsoever, as evidence with respect to any other defendant on trial.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 38**, at 1, 56, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 31,** at 1, 3, 60, filed January 12, 2018 (Doc. 1641)(31) 1.40 Cautionary Instruction During Trial -- Transcript)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 10, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 38: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.40, at ii, 61 (**2011 Edition** Updated January 2017)(CAUTIONARY INSTRUCTION DURING TRIAL Transcript of Recorded Conversation)

DNM 533

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 109

DNM 534

Appellate Case: 20-2058    Document: 010110415670    Date Filed: 09/29/2020    Page: 110

## JURY INSTRUCTION NO. 18

Certain charts and summaries have been shown to you to help explain the evidence in this case. Their only purpose is to help explain the evidence. These charts and summaries are not evidence or proof of any facts.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 26**, at 1, 43, filed January 12, 2018 (Doc. 1635)(32) 1.41 Summaries and Charts)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 32**, at 1, 3, 61, filed January 12, 2018 (Doc. 1641)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 9, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 26: . . . . If the charts and summaries are not otherwise objectionable, Defendants would not object to the use of this instruction as it is an unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.41, at ii, 62 (**2011 Edition** Updated January 2017)(SUMMARIES AND CHARTS Not Received In Evidence)

## JURY INSTRUCTION NO. 19

The parties have agreed to certain facts that have been stated to you.  These facts are now conclusively established.

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("The defendants . . . request the Court to follow the Ninth Circuit Pattern Instructions, Sections . . . 2.4 . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("The defendants . . . request the Court to follow the Ninth Circuit Pattern Instructions, Sections 2.3 . . . .")

DNM 536

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 112

## JURY INSTRUCTION NO. 20

The word "racketeering" has certain implications in our society. Use of that term in the statute and in this courtroom should not be regarded as having anything to do with your determination of whether the guilt of any defendant has been proven.  The term is only a term used by Congress to describe the statute.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 7, at 1, 19, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, REQUESTED INSTRUCTION NO. 48, at 1, 4, 82, filed January 12, 2018 (Doc. 1641)(48) 2.74.1 Racketeer Influenced and Corrupt Organizations Act: Prejudice from the Word "Racketeering")(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 2, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 7: No objection to the unmodified Tenth Circuit instruction.")

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74.1, at v, 229 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT Prejudice From The Word "Racketeering")

DNM 537

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 113

## JURY INSTRUCTION NO. 21

Counts 6, 7, 9, and 10 charge specific defendants with committing violent crimes in aid of racketeering in violation of 18 U.S.C. § 1959.

That law makes it a crime for any person who, as consideration for a promise or agreement to pay anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the law of any State or the United States, or attempts or conspires so to do.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 8**, at 1, 20-21, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 8: Defendants object to the uses of this instruction . . . . ")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74, at v, 228 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT 18 U.S.C. § 1962(a)(Introductory Paragraph))(modified)

DNM 538

Date Filed: 09/29/2020   Page: 114

Appellate Case: 20-2058   Document: 010110415670

**JURY INSTRUCTION NO. 22**

Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez are on trial before you upon an Indictment brought by the Grand Jury.   Before reading the indictment to you, I remind you that the Indictment or formal charge against Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez is not evidence of guilt.   Indeed, Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez are presumed by the law to be innocent.

In this case, the Indictment charges as follows:

Count 6

Conspiracy to Murder Javier Molina

In March 2014, in Doña Ana County, in the District of New Mexico and elsewhere,  as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the  Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants,  JERRY ARMENTA, a.k.a. "Creeper," JERRY MONTOYA, a.k.a. "JR," a.k.a. "Plaz," MARIO RODRIGUEZ, a.k.a. "Blue," TIMOTHY MARTINEZ, a.k.a. "Red," **ANTHONY RAY BACA, a.k.a.  "Pup," ** MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts," **DANIEL SANCHEZ, a.k.a. "Dan Dan," CARLOS HERRERA, a.k.a. "Lazy," ** and **RUDY PEREZ, a.k.a. "Ru Dog," ** and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder Javier Molina, in violation of  NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

DNM 539

Page: 115

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## Count 7

### Murder of Javier Molina

On or about March 7, 2014, in Doña Ana County, in the District of New Mexico, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, JERRY ARMENTA, a.k.a. "Creeper," JERRY MONTOYA, a.k.a. "JR," a.k.a. "Plaz," MARIO RODRIGUEZ, a.k.a. "Blue," TIMOTHY MARTINEZ, a.k.a. "Red," **ANTHONY RAY BACA, a.k.a. "Pup,"** MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts," **DANIEL SANCHEZ, a.k.a. "Dan Dan," CARLOS HERRERA, a.k.a. "Lazy,"** and **RUDY PEREZ, a.k.a. "Ru Dog,"** did unlawfully, knowingly and intentionally murder Javier Molina, in violation of NMSA 1978, Sections 30-2-1 and 30-1-13.

All in violation of 18 U.S.C. §§ 1959(a)(1) and 2.

## Count 9

### Conspiracy to Murder Dwayne Santistevan

Starting on a date uncertain, but no later than 2013, and continuing to on or about the date of this Indictment, in Santa Fe County, in the District of New Mexico, and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **ANTHONY RAY BACA, a.k.a. "Pup,"** ROY MARTINEZ, a.k.a. "Shadow," and ROBERT

MARTINEZ, a.k.a. "Baby Rob," and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder Dwayne Santistevan, in violation of NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

## Count 10

### Conspiracy to Murder Gregg Marcantel

Starting on a date uncertain, but no later than 2013, and continuing to on or about the date of this Indictment, in Santa Fe County, in the District of New Mexico, and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **ANTHONY RAY BACA, a.k.a. "Pup,"** ROY MARTINEZ, a.k.a. "Shadow," ROBERT MARTINEZ, a.k.a. "Baby Rob," and CHRISTOPHER GARCIA, and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder Gregg Marcantel, in violation of NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

Indictment at ¶¶ 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12a, 12b, 12c, 12d, 12e, 12f, 13a, 13b, 13c, 13d, 13e, 14, Count 6, Count 7, Count 8, Count 9 and Count 10, at 1-9, 12-13, filed March 9, 2017 (Doc. 947)(modified)

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 3,** at 1, 4-15, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 4,** at 16, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 2-4, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 3: object to surplusage)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 4, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 4: objection)

DNM 542

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 118

## JURY INSTRUCTION NO. 23

I have just reviewed the charges brought by the Grand Jury through an indictment.  In this case, the only Defendants on trial before you are Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez.

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 4, filed January 19, 2018 (Doc. 1663)(Defendants' alternative)

DNM 543

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 119

## JURY INSTRUCTION NO. 24

Title 18, United States Code, Section 1959(a), makes it a crime for anyone to commit, threaten to commit, attempt to commit, or conspire to commit a violent crime in aid of an enterprise engaged in racketeering activity.

For you to find any defendant guilty of this crime, as charged in Counts 6, 7, 9, and 10, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First:*       That the enterprise existed;

*Second:*       That the enterprise was engaged in interstate commerce or that it's activities affected interstate commerce;

*Third:*       That the enterprise was engaged in racketeering activity;

*Fourth:*       That the defendant committed a crime of violence as alleged in the indictment:

Count 6:       Conspiracy to murder Javier Molina;

Count 7:       Murder of Mr. Molina;

Count 9:       Conspiracy to murder Dwayne Santistevan; and

Count 10:       Conspiracy to murder Mr. Marcantel.

I will instruct you on what the government must prove to establish that a particular defendant committed any one of these acts; and

*Fifth:*       That the defendant's purpose in committing, threatening to commit, attempting to commit, conspiring to commit the crimes of violence was to gain entrance to, or to maintain, or to increase his position in the enterprise.

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 120

If the purpose is to "gain entrance to, or to maintain, or to increase his position in the enterprise," it is not necessary for the government to prove that this was the sole purpose of a defendant in committing the charged crime.  You need only find that it was a substantial purpose, or that a defendant committed the charged crime as an integral aspect of membership in the enterprise.  In determining a defendant's purpose in committing the alleged crime, you must determine what he had in mind.  Because you cannot look into a person's mind, you have to determine purpose by considering only the facts and circumstances that have been admitted against an individual defendant during the course of the trial.

An "enterprise" includes any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate commerce.

Although the enterprise must be separate and apart from the pattern of racketeering activity in which the enterprise allegedly engaged, it is not necessary to find that the enterprise had some function wholly unrelated to the racketeering activity.  The enterprise must be proved to have been an ongoing organization, formal or informal, that functioned as a continuing unit.

An enterprise is a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time. The personnel of the enterprise, however, may change and need not be associated with the enterprise for the entire period alleged in the indictment.  Therefore, the government must prove the existence of an association-in-fact enterprise by evidence of an ongoing organization, formal or informal, and by evidence that the various associates functioned as a continuing unit.  The enterprise must have the three following structural features: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose.  The

name of the organization itself is not an element of the offense and does not have to be proved. The government need not prove that the enterprise had any particular organizational structure.

The group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods -- by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, you may nonetheless find that the enterprise element is satisfied by finding a group whose associates engage in spurts of activity punctuated by periods of quiescence [inactivity].

The enterprise is "engaged in interstate commerce" if it directly engaged in the distribution or acquisition of goods or services in such commerce. The enterprise's conduct "affected" interstate commerce if the conduct had a demonstrated connected or link with such commerce.

It is not necessary for the government to prove that a defendant knew or intended that the enterprise was engaged in commerce or that its conduct would affect commerce. It is only necessary that the natural consequences of the enterprise's conduct affected commerce in some way. Only a minimal effect on commerce is necessary.

There must be some nexus between the enterprise and the racketeering activity being conducted by members and/or associates of the enterprise.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 8**, at 1, 20-21, filed January 12, 2018 (Doc. 1635)(modified)

DNM 546

Page: 122

Date Filed: 09/29/2020

Document: 01011045670

Appellate Case: 20-2058

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 49,** at 1, 4, 83-86, filed January 12, 2018 (Doc. 1641)(49) Fifth Circuit Pattern Jury Instruction § 2.78 Violent Crimes in Aid of Racketeering, 18 U.S.C. § 1959(a))(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 20: Defendants object to the inclusion of [or from a foreign country] . . . . ")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74.2, at 230 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT-- "SECTION A" Elements Of The Offense)(modified)

Authority: Fifth Circuit Pattern Jury Instruction Criminal §2.78 (2015 ed.)(modified)(**Violent Crimes in Aid of Racketeering** 18 U.S.C. § 1959(a))

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 18,** at 1, 33, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 18: Defendants object to this instruction . . . . ")

DNM 547

Appellate Case: 20-2058   Document: 01110415670   Date Filed: 09/29/2020   Page: 123

## JURY INSTRUCTION NO. 25

The first element that the government must prove beyond a reasonable doubt is that an "enterprise" existed as alleged in the indictment.

The government has charged the following in the Indictment as constituting the enterprise: the Syndicato de Nuevo Mexico Gang (SNM) in Counts 6, 7, 9, and 10.

An enterprise includes a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time. This group of people does not have to be a legally recognized entity, such as a partnership or corporation. This group may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose. This group of people must have: (1) a common purpose; and (2) an ongoing organization, either formal or informal; and (3) personnel who function as a continuing unit.

If you find these three elements, then you may find that an enterprise existed.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 9**, at 1, 22-23, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 9: Defendants object to this instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74.3, at 231 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT-- "SECTION A" First Element -- The Enterprise)

Fifth Circuit Pattern Jury Instructions Criminal 2.78 (2015)(modified)(**Violent Crimes In Aid of Racketeering)**

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. <u>10</u>, at 1, 24, filed January 12, 2018 (Doc. 1635)(modified)

<u>**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**</u>, at 1, 5, filed January 19, 2018 (Doc. 1663)("<u>United States'</u> <u>Proposed Jury Instruction No. 10</u>: Defendants object to this instruction.")

<u>**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**</u>, at 1, 8, filed January 19, 2018 (Doc. 1663)("<u>United States'</u> <u>Proposed Jury Instruction No. 20</u>: Defendants object to the inclusion of [or from a foreign country] . . . . ")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74.4, at 234 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT -- "SECTION A" Second Element -- Effect On Interstate Commerce)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, REQUESTED INSTRUCTION NO. **42,** at 1, 4, 74, filed January 12, 2018 (Doc. 1641)(42) 1.39 Interstate and Foreign Commerce -- Defined in 18 U.S.C. Section 10)

<u>**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**</u>, at 1, 8, filed January 19, 2018 (Doc. 1663)("<u>United States'</u> <u>Proposed Jury Instruction No. 20</u>: Defendants object to the inclusion of [or from a foreign country] . . . . ")

<u>Authority</u>: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.39, at ii, 59 (**2011 Edition** Updated January 2017)(INTERSTATE AND FOREIGN COMMERCE -- DEFINED, 18 U.S.C. SECTION 10)

<u>**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**</u>, at 1, 8, filed January 19, 2018 (Doc. 1663)("<u>United States'</u> <u>Proposed Jury Instruction No. 20</u>: Defendants object to the inclusion of [or from a foreign country] . . . . ")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.39.1, at ii, 60 (**2011 Edition** Updated January 2017)(INTERSTATE AND FOREIGN COMMERCE -- EFFECT ON 18 U.S.C. § 10)

DNM 549

Page: 125     Date Filed: 09/29/2020

Appellate Case: 20-2058     Document: 010110415670

## JURY INSTRUCTION NO. 26

The third element which the government must prove beyond a reasonable doubt as to Counts 6, 7, 9, and 10 is that the enterprise was engaged in racketeering activity.

That racketeering activity may consist of state offenses as well federal offenses. The government has charged that the SNM engaged in multiple acts of racketeering activity consisting of the following: (1) murder and robbery, in violation of New Mexico law; (2) acts involving tampering with a witness, in violation of federal law; and, (3) offenses involving trafficking in narcotics, in violation of federal law.

In order for the state offense of murder to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that a member or an associate of the racketeering enterprise committed the offense as defined by law. The elements of that offense are as follows:

First:          someone killed a human being, and

Second:          the killing was with the deliberate intention to take away the life of that person.

In order for the federal offense of witness tampering to be considered as a racketeering act, the government must prove to you beyond a reasonable doubts that:

First:   a member, prospect or associate of the racketeering enterprise used or attempted to use intimidation or threats against another person;

Second:          that members, prospects, or associates acted knowingly and with the intent to influence or prevent the testimony of that other person with respect to an official proceeding.

DNM 550

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 126

In order for the offense of possession with intent to distribute a controlled substance to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that:

First:        a member, prospect, or associate of the SNM knowingly and intentionally possessed a controlled substance as charged, and

Second:        that person possessed the substance with the intent to distribute it.

To "possess with intent to distribute" means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.

Crack cocaine, powder cocaine, heroin, suboxone, marijuana, and methamphetamine are controlled substances within the meaning of the law.

In order for the offense of distribution of a controlled substance to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that a member, prospect, or associate of the SNM knowingly or intentionally distributed a controlled substance.

The term "distribute" means to deliver or to transfer possession or control of something from one person to another. The term "distribute" includes the sale of something by one person to another. It is not necessary, however, for the government to prove that any transfer of money or other thing of value occurred at the same time as, or because of, the distribution.

There must be some nexus between the enterprise and the racketeering activity being conducted by members and/or associates of the enterprise.

I instruct you that "racketeering activity" includes numerous offenses, including those listed above. It is for you to determine whether the enterprise engaged in these activities as charged. You should give the words "engaged in" their ordinary, everyday meaning. For an

DNM 551

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 127

enterprise to be engaged in racketeering activity it is enough to show that the enterprise committed or was planning to commit some racketeering activity within a period of time short enough under all of the circumstances so that it is appropriate to say that the enterprise was engaged in racketeering activity.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **11**, at 1, 25, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **12**, at 1, 26, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **13**, at 1, 27, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **14**, at 1, 28, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 6, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 11: Defendants object to this instruction . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 6, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 12: Defendants object to this instruction . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 6, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 13: Defendants object to this instruction . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 6, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 14: Defendants object to this instruction . . . .")

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 28**, at 1, 3, 55-56, filed January 12, 2018 (Doc. 1641)(28) 1.31 Actual or Constructive Possession)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL**

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 128

DNM 552

**MATTERS** 1.31, at i, 47 (**2011 Edition** Updated February 22, 2018)(ACTUAL OR CONSTRUCTIVE POSSESSION)(modified)

United States v. Little, 829 F.3d 1177 (10th Cir. 2016)

Henderson v. United States, 135 S. Ct. 1780 (2105)

DNM 553

Page: 129   Date Filed: 09/29/2020   Document: 01011045670   Appellate Case: 20-2058

## JURY INSTRUCTION NO. 27

For you to find any defendant guilty of first degree murder by a deliberate killing of Mr. Molina as charged in Count 7;

The government must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant killed Mr. Molina;

2. The killing was with the deliberate intention to take away the life of Mr. Molina;

3. This happened in New Mexico on or about March 7, 2014.

A deliberate intention refers to the state of mind of the defendant. A deliberate intention may be inferred from all of the facts and circumstances of the killing. The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at in a short period of time. A mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill. To constitute a deliberate killing, the slayer must weigh and consider the question of killing and his reasons for and against such a choice.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 47**, at 1, 4, 47, filed January 12, 2018 (Doc. 1641)(47) UJI 14-201 NMRA -- Willful and Deliberate Murder; Essential Elements)(modified)

<u>Authority</u>: UJI 14-201 NMRA (modified)(**Willful and deliberate murder; essential elements)**(adapted)

DNM 554

Page: 130

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

**JURY INSTRUCTION NO. 28**

For you to find any defendant guilty of second degree murder as charged in Count 7, the government must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1.  The defendant killed Mr. Molina;

2.  The defendant knew that his acts created a strong probability of death or great bodily harm to Mr. Molina;

3.  This happened in New Mexico on or about the 7th day of March 2014.

DNM 555

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 131

## JURY INSTRUCTION NO. 29

The fourth element which the government must prove beyond a reasonable doubt as to Count 6 is that Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez conspired to murder Javier Molina.

The fourth element which the government must prove beyond a reasonable doubt as to Count 9 is that Mr. Baca conspired to murder Dwayne Santistevan.

The fourth element which the government must prove beyond a reasonable doubt as to Count 10 is that Mr. Baca conspired to murder Gregg Marcantel.

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose.   To find Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

1. Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez and another person by words or acts agreed together to commit murder;

2. Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez and the other person intended to commit murder;

3. This happened in New Mexico on or about March, 2014, as to Count 6, a date uncertain, but no later than 2013, and continuing to on or about March 9, 2017, as to Counts 9 and 10.

In proving a conspiracy to murder, it is not necessary to show a meeting of the alleged conspirators or the making of an express or formal agreement. The formation and existence of a conspiracy to murder may be inferred from all circumstances tending to show the common intent

DNM 556

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 132

and may be proved in the same way as any other fact may be proved, either by direct testimony of the fact or by circumstantial evidence, or by both direct and circumstantial evidence.

Evidence that a person was in the company of or associated with one or more other persons alleged or proved to have been members of a conspiracy is not, in itself, sufficient to prove that such person was a member of the alleged conspiracy.

Evidence of a defendant's membership in a gang, by itself, is insufficient to establish that person's guilt of a crime as a coconspirator.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 15**, at 1, 29-30, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 15: Defendants object to this instruction. ")

NM UJI 14-2810 NMRA

NM UJI 14-201 NMRA

**DEFENDANTS   [sic]   PROPOSED   JURY   INSTRUCTIONS**,   **REQUESTED INSTRUCTION NO. 37,** at 68-69, filed January 12, 2018 (Doc. 1641)(37) UJI 14-2810 NMRA -- Conspiracy: Essential Elements)(modified)

Authority:  UJI 14-2810 NMRA (modified)(**Conspiracy: Essential Elements**)

**DEFENDANTS   [sic]   PROPOSED   JURY   INSTRUCTIONS**,   **REQUESTED INSTRUCTION NO. 38,** at 1, 3, 70, filed January 12, 2018 (Doc. 1641)(38) UJI 14-2810

DNM 557

Page: 133

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

NMRA -- Conspiracy: Evidence of Association Alone Does Not Prove Membership in Conspiracy)(modified)

<u>Authority</u>: UJI 14-2810 NMRA (**Conspiracy: Evidence of Association Alone Does Not Prove Membership in Conspiracy)**

DNM 558

Appellate Case: 20-2058    Document: 010110415670    Date Filed: 09/29/2020    Page: 134

## JURY INSTRUCTION NO. 30

In this case, you must consider separately whether Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez are guilty or not guilty of each of the charged crimes.  Even if you cannot agree upon a verdict as to any single defendant on any particular charge, you must return the verdict or verdicts upon which you agree.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 39,** at 1, 3-4, filed January 12, 2018 (Doc. 1641)(39) UJI 14-2812 NMRA -- Conspiracy: Multiple Defendants; Each Defendant Entitled to Individual Consideration)(modified)

Authority: UJI 14-2812 NMRA **(Conspiracy; multiple defendants; each defendant entitled to individual consideration)**

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 40,** at 1, 4, 72, filed January 12, 2018 (Doc. 1641)(40) UJI 14-2814 NMRA -- Conspiracy: Evidence of Association Alone Does Not Prove Membership in Conspiracy)(modified)

Authority: UJI 14-2814 NMRA **(Conspiracy; evidence of association alone does not prove membership in conspiracy)**

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 16,** at 1, 31, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 16: No objection . . . . ")

NM UJI 14-201 NMRA.

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("Defendants insist the New Mexico jury instructions be given, in particular NM UJI 14-323 . . . . ")

UJI 14-323. AGGRAVATED BATTERY; GREAT BODILY HARM; ESSENTIAL ELEMENTS (modified)

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 17,** at 1, 32, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 17: Defendants object to this instruction.")

2 Fed. Jury Prac. & Instr. § 25:09 (6th ed.)(modified)(**The essential elements of the offense charged**)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("Defendants insist the New Mexico jury instructions be given, in particular . . . NM UJI 14-131. ")

UJI 14-131. "GREAT BODILY HARM" DEFINED

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 18,** at 1, 33, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 18: Defendants object to this instruction . . . .")

DNM 560

Page: 136

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 31

When the word "knowingly" is used in these instructions, it means that the act was done

voluntarily and intentionally, and not because of mistake or accident.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **23**, at 1, 40, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, REQUESTED **INSTRUCTION NO. 30,** at 59, filed January 12, 2018 (Doc. 1641)(30) 1.37 Knowingly -- Deliberate Ignorance)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 23: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.36, at ii, 56 (**2011 Edition** Updated January 2017)(KNOWINGLY -- DELIBERATE IGNORANCE)(adapted)

DNM 561

Page: 137     Date Filed: 09/29/2020     Document: 010110415670     Appellate Case: 20-2058

## JURY INSTRUCTION NO. 32

You will note that the indictment charges that the crimes charged in Count 6 and Count 7 were committed "on or about" March 2014; the crimes charged in Count 9 and Count 10 were committed "on or about" no later than 2013 and continuing to on or about March 9, 2017.  The government must prove beyond a reasonable doubt that the defendant committed the crimes reasonably near March 2014 (for Count 6 and Count 7); and no later than 2013 and continuing to on or about March 9, 2017 (for Count 9 and Count 10).

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 22**, at 1, 39, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS** **[sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 20,** at 1, 3, 45, filed January 12, 2018 (Doc. 1641)(20) 1.18 On or About)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 22: . . . Defendants object to the modification of the Tenth Circuit pattern instruction in the fashion proposed by the United States.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.18, at i, 38 (**2011 Edition** Updated January 2017)(ON OR ABOUT)(adapted)

## JURY INSTRUCTION NO. 33

Count 7 of the indictment also charges a violation of 18 U.S.C. section 2, which provides that: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

This law makes it a crime to intentionally help someone else commit a crime. To find Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*:  someone else committed the charged crime, and

*Second*: Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the government must prove that Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez consciously shared the other person's knowledge of the underlying criminal act and intended to help him.

Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

Evidence of a defendant's membership in a gang, by itself, is insufficient to establish that person's guilt of a crime as an aider and abettor.

DNM 563

Page: 139

Date Filed: 09/29/2020

Document: 01110415670

Appellate Case: 20-2058

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 19**, at 1, 34, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 36**, at 1, 3, 66, filed January 12, 2018 (Doc. 1641)(36) 2.06 Aid and Abet 18 U.S.C. § 2(a))(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 19: Defendants object to this instruction . . . .")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.06, at ii, 79 (**2011 Edition** Updated January 2017)(AID AND ABET 18 U.S.C. § 2(a))(adapted)

Fifth Circuit Pattern Jury Instructions Criminal 2.04 (2011)(**Aiding and Abetting**)

Abet 18 U.S.C. § 2(a)

DNM 564

Page: 140

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 34

Evidence has been presented that Mr. Baca was the subject of unfair inducement. Unfair inducement occurs when government agents unfairly cause the commission of a crime. "Government agents" include law enforcement officers or persons acting under their direction, influence or control.

Where Mr. Baca was not ready and willing to commit the crime of conspiracy to commit the murder of Mr. Marcantel, as charged in Count 10 of the indictment before first being contacted or approached by a government agent, but is induced or persuaded to commit the crime by a government agent, Mr. Baca is a victim of unfair inducement. However, where Mr. Baca was ready and willing to commit the crime at the time of the first contact with the government agent, the mere fact that the government agent provided what appears to be an opportunity to commit the crime is not unfair inducement.

The burden is on the government to prove to your satisfaction beyond a reasonable doubt that Mr. Baca was not unfairly induced. If you have a reasonable doubt as to whether Mr. Baca was unfairly induced, you must find Mr. Baca not guilty.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 44,** at 1, 4, 77, filed January 12, 2018 (Doc. 1641)(44) UJI 14-5160 NMRA -- Entrapment; unfair Inducement, not Predisposed)(modified)

Authority: UJI 14-5160 NMRA (modified)**(Entrapment; unfair inducement; not predisposed)**

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 45,** at 1, 4, 78-79, filed January 12, 2018 (Doc. 1641)(45) UJI 14-5161 NMRA -- Entrapment; law enforcement unconscionable methods and illegitimate purposes)(modified)

Authority: UJI 14-5161 NMRA (modified)**(Entrapment; law enforcement unconscionable methods and illegitimate purposes)**

DNM 565

Page: 141

Date Filed: 09/29/2020

Document: 01011041570

Appellate Case: 20-2058

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 46,** at 1, 4, 46, filed January 12, 2018 (Doc. 1641)(46) UJI 14-5181 NMRA -- Self-defense; Non deadly Force by Defendant)(modified)

Authority: UJI 14-5161 NMRA **(Self-defense; non-deadly force by defendant)**

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 29,** at 57-58, filed January 12, 2018 (Doc. 1641)(29) 1.36 Coercion or Duress)(modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.36, at 54-55 **(2011 Edition** Updated January 2017)(COERCION OR DURESS)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 6,** at 1, 2, 20, filed January 12, 2018 (Doc. 1641)(6) 1.05.1 Preponderance of Evidence)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.05.1, at ii, 10 **(2011 Edition** Updated January 2017)(PREPONDERANCE OF EVIDENCE)(modified)

DNM 566

Appellate Case: 20-2058    Document: 010110415670    Date Filed: 09/29/2020    Page: 142

## JURY INSTRUCTION NO. 35

You are here to decide whether the government has proved beyond a reasonable doubt that the defendants are guilty of the crimes charged.  The defendants are not on trial for any act, conduct, or crime not charged in the indictment.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crimes charged.  The fact that another person *also* may be guilty is no defense to a criminal charge.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 21** at 1, 3, 46, filed January 12, 2018 (Doc. 1641)(21) 1.19 Caution -- Consider Only Crime Charged)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 51, LIMITING INSTRUCTION 404(b): EVIDENCE TO BE ISSUED AT THE CLOSE OF TRIAL,** at 1, 5, 88, filed January 12, 2018 (Doc. 1641)(51) Limiting Instruction 404(b): Evidence to be Issued at the Close of Trial)(modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.19, at i, 31 (**2011 Edition** Updated January 2017)(CAUTION – CONSIDER ONLY CRIME CHARGED)(modified)

Authority: *United States v. Rodella*, 101 F.Supp. 3d 1075, 1086 (D.N.M. 2015)

Case 2:15-cr-04268-JB   Document 1867   Filed 03/02/18   Page 64 of 73

DNM 567

Page: 143

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 36

If you find any defendant guilty, it will be my duty to decide what the punishment will

be. You should not discuss or consider the possible punishment in any way while deciding your

verdict.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 40,** at 1, 58, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 22** at 1, 3, 47, filed January 12, 2018 (Doc. 1641)(22) 1.20 Caution -- Punishment (Non-Capital Cases))(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury instruction No. 40: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.20, at i, 32 (**2011 Edition** Updated January 2017)(CAUTION -- PUNISHMENT)(NON-CAPITAL CASES)(adapted)

DNM 568

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 144

## JURY INSTRUCTION NO. 37

The rights of Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez in this case are separate and distinct.  You must separately consider the evidence against Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez and return a separate verdict for each as to each crime charged.

Your verdicts as to Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez, whether they are guilty or not guilty, should not affect your verdicts as to any other defendant on any other charges.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 23,** at 1, 3, 48, filed January 12, 2018 (Doc. 1641)(23) 1.22 Multiple Defendants -- Multiple Counts)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.21, at i, 33 (**2011 Edition** Updated January 2017)(adapted)

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 39,** at 1, 57, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 23,** at 1, 3, 48, filed January 12, 2018 (Doc. 1641)(23) 1.22 Multiple Defendants -- Multiple Counts)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 39: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.22, at i, 34 (**2011 Edition** Updated January 2017)(MULTIPLE DEFENDANTS -- MULTIPLE COUNTS)

18 U.S.C. § 1959

United States v. Kamahele, 748 F.3d 984, 1012 (10th Cir. 2014)

DNM 569

Appellate Case: 20-2058      Document: 010110415670      Date Filed: 09/29/2020      Page: 145

## JURY INSTRUCTION NO. 38

In a moment the Courtroom Deputy Clerk will escort you to the jury room and provide each of you with a copy of the instructions that I have just read.  Any exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you should first select a foreperson, who will help to guide your deliberations and will speak for you here in the courtroom.  The second thing you should do is review the instructions. Not only will your deliberations be more productive if you understand the legal principles upon which your verdicts must be based, but for your verdicts to be valid, you must follow the instructions throughout your deliberations.  Remember, you are the judges of the facts, but you are bound by your oath to follow the law stated in the instructions.

To reach a verdict, whether it is guilty or not guilty, all of you must agree.  Your verdict must be unanimous on each count of the indictment as to each defendant charged.  Your deliberations will be secret.  You will never have to explain your verdicts to anyone.

You must consult with one another and deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.  During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong.  But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times, you are judges -- judges of the facts.  You must decide whether the government has proved Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez guilty beyond a reasonable doubt as to each of the charges individually made against them.

A verdict form has been prepared for your convenience.

[Explain the Verdict Form]

The foreperson will write the unanimous answer of the jury in the space provided for each count of the indictment, either guilty or not guilty. At the conclusion of your deliberations, the foreperson should date and sign the verdict form.

If you need to communicate with me during your deliberations, the foreperson should write the message and give it to the Court Security Officer. I will either reply in writing or bring you back into the court to respond to your message. Under no circumstances should you reveal to me the numerical division of the jury.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. <u>41,</u> at 1, 59-60, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS** [sic] **PROPOSED JURY INSTRUCTIONS**, REQUESTED INSTRUCTION NO. 24, at 1, 3, 40, filed January 12, 2018 (Doc. 1641)(24) 1.23 Duty to Deliberate -- Verdict Form)(modified)

**DEFENDANTS** [sic] **PROPOSED JURY INSTRUCTIONS**, REQUESTED INSTRUCTION NO. 34, at 1, 3, 64, filed January 12, 2018 (Doc. 1641)(34) 1.43 Partial Verdict Instruction)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 41: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.23, at i, 35-36 (**2011 Edition** Updated January 2017)(DUTY TO DELIBERATE -- VERDICT FORM)(modified)

**DEFENDANTS** [sic] **PROPOSED JURY INSTRUCTIONS**, REQUESTED INSTRUCTION NO. 33, at 1, 3, 62-63, filed January 12, 2018 (Doc. 1641)(33) 1.43 Modified *Allen* Instruction)(modified)

DNM 571

Page: 147

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

**DEFENDANTS   [sic]   PROPOSED   JURY   INSTRUCTIONS,   REQUESTED INSTRUCTION NO. 34,** at 1, 3, 64, filed January 12, 2018 (Doc. 1641)(34) 1.43 Partial Verdict Instruction)modified)

<u>Authority</u>: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS** 1.42, at 63-64 (**2011 Edition** Updated January 2017)(MODIFIED *ALLEN* INSTRUCTION)(modified)

DNM 572

Page: 148

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 39

Let me remind you again that nothing I have said in these instructions, nor anything I have said or done during the trial, was meant to suggest to you what I think your decision should be.  That is your exclusive responsibility.

**DEFENDANTS   [sic]   PROPOSED   JURY   INSTRUCTIONS,   REQUESTED INSTRUCTION NO. 35,** at 1, 3, 65, filed January 12, 2018 (Doc. 1641)(35) 1.44 Communication with the Court)(modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS** 1.44, at ii, 66  (**2011 Edition** Updated January 2017)(COMMUNCIATION WITH THE COURT)(modified)

DNM 573

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 149

## JURY INSTRUCTION NO. 40

Faithful performance by you of your duties is vital to the administration of justice.

United States v. Gaspar Leal, No. CIV 16-3069 JB, Instruction No. 20, at 25, filed December 6, 2017 (Doc. 183)

DNM 574

Page: 150

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                No. CR 15-4268 JB

DANIEL SANCHEZ, ANTHONY RAY
BACA, CARLOS HERRERA, and
RUDY PEREZ,

      Defendants.

## V E R D I C T

### DANIEL SANCHEZ

**COUNT 6**

WE, the Jury, find the defendant, **DANIEL SANCHEZ,** _____
(guilty or not guilty)
of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of

the Indictment.

**COUNT 7**

WE, the Jury, find the defendant, **DANIEL SANCHEZ,** _____
(guilty or not guilty)
of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the

Indictment.

### ANTHONY RAY BACA

**COUNT 6**

WE, the Jury, find the defendant, **ANTHONY RAY BACA,** _____
(guilty or not guilty)
of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of

the Indictment.

DNM 575

Page: 151

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

**COUNT 7**

WE, the Jury, find the defendant, **ANTHONY RAY BACA,** _____

(guilty or not guilty)

of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the

Indictment.

**COUNT 9**

WE, the Jury, find the defendant, **ANTHONY RAY BACA,** _____

(guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Dwayne Santistevan, as charged in Count

9 of the Indictment.

**COUNT 10**

WE, the Jury, find the defendant, **ANTHONY RAY BACA,** _____

(guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Gregg Marcantel, as charged in Count 10

of the Indictment.

**CARLOS HERRERA**

**COUNT 6**

WE, the Jury, find the defendant, **CARLOS HERRERA,** _____

(guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of

the Indictment.

**COUNT 7**

WE, the Jury, find the defendant, **CARLOS HERRERA,** _____

(guilty or not guilty)

of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the

Indictment.

**RUDY PEREZ**

**COUNT 6**

WE, the Jury, find the defendant, **RUDY PEREZ,** _____

(guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of

the Indictment.

**COUNT 7**

WE, the Jury, find the defendant, **RUDY PEREZ,** _____

(guilty or not guilty)

of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the

Indictment.

Dated this _____ day of _____, 2018.

_____

FOREPERSON

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, VERDICT,** at 1, 5, 89-92, filed
January 12, 2018 (Doc. 1641)(Verdict Form)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY
INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("The
[Government's] Verdict Forms are insufficient . . . . ")

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                             No. CR 15-4268 JB

ANGEL DELEON, JOE LAWRENCE
GALLEGOS, EDWARD TROUP, a.k.a.
"Huero Troup," LEONARD LUJAN,
BILLY GARCIA, a.k.a. "Wild Bill,"
EUGENE MARTINEZ, a.k.a. "Little
Guero," ALLEN PATTERSON,
CHRISTOPHER CHAVEZ, a.k.a. "Critter,"
JAVIER ALONSO, a.k.a. "Wineo,"
ARTURO ARNULFO GARCIA, a.k.a.
"Shotgun," BENJAMIN CLARK, a.k.a.
"Cyclone," RUBEN HERNANDEZ;
JERRY ARMENTA, a.k.a. "Creeper,"
JERRY MONTOYA, a.k.a. "Boxer,"
MARIO RODRIGUEZ, a.k.a. "Blue,"
TIMOTHY MARTINEZ, a.k.a. "Red,"
MAURICIO VARELA, a.k.a. "Archie,"
a.k.a. "Hog Nuts," DANIEL SANCHEZ,
a.k.a. "Dan Dan," GERALD ARCHULETA,
a.k.a. "Styx," a.k.a. "Grandma," CONRAD
VILLEGAS, a.k.a. "Chitmon," ANTHONY
RAY BACA, a.k.a. "Pup," ROBERT
MARTINEZ, a.k.a. "Baby Rob," ROY
PAUL MARTINEZ, a.k.a. "Shadow,"
CHRISTOPHER GARCIA, CARLOS
HERRERA, a.k.a. "Lazy," RUDY PEREZ,
a.k.a. "Ru Dog," ANDREW GALLEGOS,
a.k.a. "Smiley," SANTOS GONZALEZ;
PAUL RIVERA, SHAUNA GUTIERREZ,
and BRANDY RODRIGUEZ,

     Defendants.

## **MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes before the Court on Defendant Anthony Ray Baca's oral motion

for a judgment of acquittal, under rule 29 of the Federal Rules of Criminal Procedure, as to

Count 8, which charges Baca with conspiracy to commit assault resulting in serious bodily injury against Julian Romero.  Baca made that oral motion on Friday February 23, 2018 -- at the close of Plaintiff United States of America's case in chief -- and he argued that the uncontroverted evidence indicates that Romero did not actually suffer a serious bodily injury.  See Draft Trial Transcript (held February 23, 2018) at 327:24-329:16 (Lowry)("Tr.").[1]  See also Tr. at 328:13-15 (Lowry)(commenting that "we just heard Agent Acee testify that not even the prosecution could find a doctor or doctors that would agree that there was series bodily harm inflicted").  The United States orally replied that the Romero conspirators intended to inflict serious bodily injury to Romero -- or perhaps to kill him.  See Tr. at 329:17-330:15 (Castellano).  See also Tr. at 330:10-12 (Castellano)(commenting that "it's clear that the conspiracy was there and we don't need to prove the underlying injuries or the resultant injuries").

One week later, the United States filed a written response to Baca's rule 29 motion.  See United States' Response to Defendant Baca's Rule 29 Motion Regarding Count 8 at 1, filed March 2, 2018 (Doc. 1848)("Response").  In the Response, the United States argues that the Court should not grant Baca's rule 29 motion, because "[t]he evidence at trial established that Defendant Baca conspired to murder J.R.," so "the intended harm would create a high probability of death or result in serious disfigurement," such that a reasonable jury could infer that Baca "conspired to commit the crime charged in Count 8."  Response at 4.  Notably absent from that Response is any argument that the trial evidence indicates that Romero suffered a serious bodily injury.  See Response at 4.  Indeed, Agent Bryan Acee testified that the medical professionals who treated Romero did not believe that he sustained a serious bodily injury.  See 298:23-25 (Acee).  See also Tr. at 299:2-4 (Acee)("And I needed a medical professional to

---

[1]The Court's citations to the trial transcript refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

DNM 578

testify to that.  And they did not consider it serious bodily injury.").

Baca subsequently filed a written reply.  See Defendant Anthony Ray Baca's Reply in Support of His Rule 29 Motion to Dismiss Count 8 at 1, filed March 2, 2018 (Doc. 1852)("Reply").  In the Reply, Baca argues that "any purported conspiracy to assault Julian Romero did not result in serious bodily injury to him, and the United States does not make any claim that it did."  Reply at 3.  Baca also argues that "it was [Lupe] Urquizo that wanted to kill Julian Romero, not Defendant Baca."  Reply at 3.

Committing and conspiring to commit assault with intent to inflict serious bodily injury do not violate 18 U.S.C. § 1959 ("VICAR").  VICAR proscribes, instead, racketeering-motivated "assault[s] **resulting in** serious bodily injury" that also violate state or federal law.  18 U.S.C. § 1959(a) (emphasis added).  In Count 8, the United States charges Baca with "unlawfully, knowingly, and intentionally conspir[ing] to commit assault resulting in serious bodily injury to J.R., in violation of NMSA 1978, Sections 30-3-5 and 30-28-2."  Second Superseding Indictment at 14, filed March 9, 2017 (Doc. 947)("Indictment").  N.M. Stat. Ann. § 30-28-2 defines New Mexico's conspiracy offense.  See N.M. Stat. Ann. § 30-28-2.  N.M. Stat Ann. § 30-3-5 defines aggravated battery as "the unlawful touching or application of force to the person of another with intent to injure that person or another," N.M. Stat. Ann. § 30-3-5(A), and it distinguishes between misdemeanor aggravated battery, which is "commit[ing] aggravated battery [and] inflicting an injury to the person which is not likely to cause death or great bodily harm, but does cause painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the body," N.M. Stat. Ann. § 30-3-5(B), from felony aggravated battery, i.e., "commit[ing] aggravated battery [and] inflicting great bodily harm or do[ing] so with a deadly weapon or does so in any manner whereby great bodily harm or death can be inflicted," N.M.

Stat. Ann. § 30-3-5(C).  One can thus commit felony aggravated battery, under N.M. Stat. Ann. § 30-3-5, by unlawfully touching or applying force, with intent to injure, in a manner whereby great bodily harm can be inflicted even if great bodily harm does not actually result.

Even though Count 8 charges Baca with conspiring to commit assault resulting in serious bodily injury in violation of N.M. Stat. Ann. § 30-3-5, showing that Baca conspired to violate that statute does not mean that Baca violated VICAR.  See Indictment at 14.  Establishing that Baca violated VICAR by conspiring to commit assault resulting in serious bodily injury in violation of New Mexico law requires the United States to prove: (i) that Baca's conduct constitutes generic conspiracy to commit assault resulting in serious bodily injury; and (ii) that Baca's conduct also violated New Mexico law.  That structure -- identifying conduct that falls within a generic category, and also violates a state or non-racketeering federal law -- features prominently in federal racketeering statutes.  See Scheidler v. National Organization for Women, Inc., 537 U.S. 393, 409-10 (2003)(analyzing RICO's definition of racketeering activity and determining that "any act or threat involving . . . extortion, . . . which is chargeable under state law" includes conduct constituting generic extortion that also violates state law);  United States v. Nardello, 393 U.S. 286, 293-94 (1969)(analyzing the Travel Act, 18 U.S.C. § 1952, and concluding that its provisions regarding "extortion . . . in violation of the laws of the State in which committed," 18 U.S.C. § 1952(b)(i)(2), refers to generic extortion that also violates state law, even if the state law does not use the term "extortion"); United States v. Bagaric, 706 F.2d 42, 63 (2d Cir. 1983)(stating that, "[a]bsent an allegation that the racketeering act is not prohibited *at all* under state law," a court, in a RICO prosecution, is not "obliged to charge the elements of the penal codes of the various states where acts of racketeering occurred" such that "accurate generic definitions of the crimes charged were sufficient" (emphasis in original)).  See

- 4 -

also United States v. Carrillo, 229 F.3d 177, 185 (2d Cir. 2000)(asserting that, notwithstanding

United States v. Bagaric's "theoretical approval," of charging a RICO predicate "by a generic

description rather than giving the jury the elements in full," that "both the text of RICO and

VICAR demand that predicate acts constitute state law crimes").  Thus, no matter whether Baca

conspired to violate N.M. Stat. Ann. § 30-3-5,[2] he only violated VICAR if also he conspired to

commit assault resulting in serious bodily injury, in a generic sense.

Baca cannot have committed generic conspiracy to commit assault resulting in serious

bodily injury against Romero if Romero did not suffer serious bodily injury.  Generic assault

resulting in serious bodily injury is structurally analogous to assault on a federal officer.  See 18

U.S.C. § 1959(a)(1) ("Whoever . . . forcibly assaults . . . any person designated in section 1114

of this title [defining federal officers] while engaged in . . . official duties . . . shall [be fined or

imprisoned].").  Both assault resulting in serious bodily injury and assault on a federal officer

have a single mens rea requirement: intent to commit assault; the perpetrator's mental state

regarding the victim's status as a federal officer or the perpetrator's mental state regarding the

assault's results is irrelevant.  See United States v. Feola, 420 U.S. 671, 693 (1975)(analyzing

assault on a federal officer and concluding that, "for the purpose of individual guilt or innocence,

awareness of the official identity of the assault victim is irrelevant"); United States v. Zunie, 444

F.3d 1230, 1233 (10th Cir. 2006)(analyzing federal assault resulting in serious bodily injury, 18

---

[2]VICAR, by its terms, does not require that conduct constituting generic assault resulting in serious bodily injury violate any particular state statute, see 18 U.S.C. § 1959(a), so whether Baca's conduct violated N.M. Stat. Ann. § 30-3-5 -- as opposed to violating some other New Mexico statute -- does not determine whether Baca violated VICAR.  That the Indictment specifies N.M. Stat. Ann. § 30-3-5 could, however, create issues if the United States introduced evidence indicating that Baca's conduct violated a different statute.  See Hunter v. New Mexico, 916 F.2d 595, 598-99 (10th Cir. 1990)(stating that a variance between an indictment's allegations and the proof introduced at trial that effectively alters the substance of an indictment "is reversible per se").

U.S.C. § 111(a)(6), and stating that -- in addition to the elements necessary for federal jurisdiction -- an assault resulting in serious bodily injury conviction only required the United States "to prove: (1) that Zunie assaulted Nicky; [and] (2) that Nicky suffered serious bodily injury").[3]

According to the Supreme Court of the United States, a conspiracy to assault a federal officer requires only an agreement to commit assault on someone who happens to be a federal officer, because the substantive offense only requires an intent to commit assault.  See United States v. Feola, 420 U.S. at 696 ("[W]here knowledge of the facts giving rise to federal jurisdiction[, i.e., that the victim is a federal officer,] is not necessary for conviction of a substantive offense embodying a *mens rea* requirement, such knowledge is equally irrelevant to questions of responsibility for conspiracy to commit that offense.").  Whether the agreed victim is a federal officer can be determined if an assault actually occurs or "[i]f the agreement calls for an attack on an individual specifically identified, either by name or by some unique characteristic."  United States v. Feola, 420 U.S. at 695.

By analogy, a conspiracy to commit assault resulting in serious bodily injury requires only a conspiracy to commit assault and a resulting serious bodily injury.  While one can commit a conspiracy offense without accomplishing the conspiracy's objective, as a practical matter, it is impossible to determine whether an agreed assault has a result -- as opposed to an intended result -- constituting serious bodily injury if the assault does not actually occur.  That practical

---

[3]United States v. Zunie did not consider the elements of generic assault resulting in serious bodily injury, because the defendant in that case was accused of violating 18 U.S.C. § 113(a)(6), a federal statute that applies only "within the special maritime and territorial jurisdiction of the United States."  18 U.S.C. § 113(a).  See United States v. Zunie, 444 F.3d at 1233.  Although United States v. Zunie considered a particular statutory assault resulting in serious bodily injury offense and not generic assault resulting in serious bodily injury, that case is nevertheless probative of the generic offense's elements.

- 6 -

difficulty is a necessary consequence of the way Congress chose to structure VICAR and the Court will not -- under the guise of applying VICAR's conspiracy provision -- rewrite "conspiracy to commit assault resulting in serious bodily injury" into "conspiracy to assault with intent to inflict serious bodily injury."  The United States correctly notes that the trial evidence would support a VICAR conspiracy to murder charge based on the Romero assault.  See Response at 4.  Count 8 of the grand jury's indictment does not charge that offense, however, and the Court is not free to redraft the indictment by substituting murder for assault resulting in serious bodily injury.  See Hunter v. New Mexico, 916 F.2d 595, 598 (10th Cir. 1990)("[I]t is a fundamental precept of federal constitutional law that a 'court cannot permit a defendant to be tried on charges that are not made in the indictment.'"  (quoting Stirone v. United States, 361 U.S. 212, 217 (1960))).

Thus, Baca can be convicted for conspiring to commit assault resulting in bodily injury against Romero only if he conspired to assault Romero and a serious bodily injury resulted.  The evidence introduced at trial does not permit a reasonable juror to infer that Romero suffered a serious bodily injury.  Accordingly, the Court grants Baca's rule 29 motion as to Count 8.

**IT IS ORDERED** that Defendant Anthony Ray Baca's oral motion for a judgment of acquittal, under rule 29 of the Federal Rules of Criminal Procedure, as to Count 8, is granted.

_____
UNITED STATES DISTRICT JUDGE

- 7 -

*Counsel:*

James D. Tierney
  First Assistant United States Attorney
Maria Ysabel Armijo
Randy M. Castellano
Matthew Beck
  Assistant United States Attorneys
United States Attorney's Office
Las Cruces, New Mexico

      *Attorneys for the Plaintiff*

Richard Sindel
Sindel, Sindel & Noble, P.C.
Clayton, Missouri

--and--

Brock Benjamin
Benjamin Law Firm
El Paso, Texas

      *Attorneys for Defendant Joe Lawrence Gallegos*

Patrick J. Burke
Patrick J. Burke, P.C.
Denver, Colorado

--and--

Cori Ann Harbour-Valdez
The Harbour Law Firm, P.C.
El Paso, Texas

      *Attorneys for Defendant Edward Troup*

Russel Dean Clark
Las Cruces, New Mexico

      *Attorney for Defendant Leonard Lujan*

James A. Castle
Castle & Castle, P.C.
Denver, Colorado

--and--

- 8 -

Robert R. Cooper
Albuquerque, New Mexico

    *Attorneys for Defendant Billy Garcia*

Douglas E. Couleur
Douglas E. Couleur, P.A.
Santa Fe, New Mexico

    *Attorneys for Defendant Eugene Martinez*

Phillip A. Linder
The Linder Firm
Dallas, Texas

--and--

Jeffrey C. Lahann
Las Cruces, New Mexico

    *Attorneys for Defendant Allen Patterson*

John L. Granberg
Granberg Law Office
El Paso, Texas

--and--

Orlando Mondragon
El Paso, Texas

    *Attorneys for Defendant Christopher Chavez*

Nathan D. Chambers
Nathan D. Chambers, LLC
Denver Colorado

--and--

Noel Orquiz
Deming, New Mexico

    *Attorneys for Defendant Javier Alonso*

Scott Moran Davidson
Albuquerque, New Mexico

--and--

Billy R. Blackburn
Albuquerque, New Mexico

 *Attorneys for Defendant Arturo Arnulfo Garcia*

Stephen E. Hosford
Stephen E. Hosford, P.C.
Arrey, New Mexico

--and--

Jerry Daniel Herrera
Albuquerque, New Mexico

 *Attorneys for Defendant Benjamin Clark*

Pedro Pineda
Las Cruces, New Mexico

 *Attorney for Defendant Ruben Hernandez*

Gary Mitchell
Mitchell Law Office
Ruidoso, New Mexico

 *Attorney for Defendant Jerry Armenta*

Larry A. Hammond
Osborn Maledon, P.A.
Phoenix, Arizona

--and--

Margaret Strickland
McGraw & Strickland
Las Cruces, New Mexico

 *Attorneys for Defendant Jerry Montoya*

Steven M. Potolsky
Jacksonville Beach, Florida

--and--

Santiago D. Hernandez
Law Office of Santiago D. Hernandez
El Paso, Texas

    *Attorneys for Defendant Mario Rodriguez*

Jacqueline K. Walsh
Walsh & Larranaga
Seattle, Washington

--and--

Ray Velarde
El Paso, Texas

    *Attorneys for Defendant Timothy Martinez*

Joe Spencer
El Paso, Texas

--and--

Mary Stillinger
El Paso, Texas

    *Attorneys for Defendant Mauricio Varela*

Amy E. Jacks
Law Office of Amy E. Jacks
Los Angeles, California

--and--

Richard Jewkes
El Paso, Texas

    *Attorneys for Defendant Daniel Sanchez*

DNM 587

George A. Harrison
Las Cruces, New Mexico

    *Attorney for Defendant Gerald Archuleta*

B.J. Crow
Crow Law Firm
Roswell, New Mexico

    *Attorney for Defendant Conrad Villegas*

Theresa M. Duncan
Duncan, Earnest, LLC
Albuquerque, New Mexico

--and--

Marc M. Lowry
Rothstein Donatelli, LLP
Albuquerque, New Mexico

    *Attorneys for Defendant Anthony Ray Baca*

Charles J. McElhinney
McElhinney Law Firm, LLC
Las Cruces, New Mexico

    *Attorney for Defendant Robert Martinez*

Marcia J. Milner
Las Cruces, New Mexico

    *Attorney for Defendant Roy Paul Martinez*

Christopher W. Adams
Charleston, South Carolina

--and--

Amy Sirignano
Law Office of Amy Sirignano, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendant Christopher Garcia*

- 12 -

William R. Maynard
El Paso, Texas

--and--

Carey Corlew Bhalla
Law Office of Carey C. Bhalla, LLC
Albuquerque, New Mexico

     *Attorneys for Defendant Carlos Herrera*

Justine Fox-Young
Albuquerque, New Mexico

--and--

Ryan J. Villa
Albuquerque, New Mexico

     *Attorneys for Defendant Rudy Perez*

Lisa Torraco
Lisa Torraco Law Firm
Albuquerque, New Mexico

--and--

Donavon A. Roberts
Albuquerque, New Mexico

     *Attorneys for Defendant Andrew Gallegos*

Erlinda O. Johnson
Law Office of Erlinda Ocampo Johnson, LLC
Albuquerque, New Mexico

     *Attorneys for Defendant Santos Gonzalez*

Angela Arellanes
Albuquerque, New Mexico

     *Attorneys for Defendant Shauna Gutierrez*

DNM 589

Jerry A. Walz
Walz and Associates
Albuquerque, New Mexico

*Attorneys for Defendant Brandy Rodriguez*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 15-4268 JB |
| | ) | |
| vs. | ) | |
| | ) | |
| **ANGEL DELEON, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**UNITED STATES' MOTION *IN LIMINE* TO PRECLUDE CROSS-EXAMINATION OF SPECIAL AGENT ACEE ON UNRELATED CONDUCT[1]**

Plaintiff United States of America moves *in limine* to preclude cross-examination of

Federal Bureau of Investigation Special Agent Bryan Acee on unrelated conduct, because it is

irrelevant under Rule 401 and improper impeachment under Rule 608(b). On December 19,

2017, Defendant Joe Gallegos filed "Defendants [sic] Suggestion that the Government is More

Violent than Defendants and Objection to the Request in [Doc. 1520]" [Doc. 1586] ("J.

Gallegos's 'Suggestion'"). That J. Gallegos's "Suggestion" was filed in response to the United

States' motion *in limine* to preclude cross-examination into irrelevant personal information of the

United States' trial witnesses. J. Gallegos's "Suggestion" was fraught with inflammatory

accusations against "United States Agents," *id.* at 1, which Defendant J. Gallegos levied against

Special Agent Acee, even though Defendant J. Gallegos never asserts that there's any relevance

to those charges in this case.

---

[1]On March 5, 2018, Counsel for the United States sent an email to counsel for
Defendants stating that, unless it heard back from them before the close of business, it would
assume that they opposed the relief requested in this brief. At the time of filing, counsel either
didn't respond or responded that they're opposed. This motion is therefore filed opposed.

None of the information concerning excessive force in the civil lawsuits against government agents, one of whom happened to be Special Agent Acee as the author of a search warrant and affidavit, in unrelated cases is probative of any fact of consequence in this case. Its only possible effect would be to embarrass and harass Special Agent Acee, and to inflame the passions and prejudice of the jury. There is no rule of evidence that supports the admission of this information. And several rules of evidence, including rules 402, 403, 404, 608, and 609, prohibit its admission in this case. The United States therefore moves this Court *in limine* to exclude these lawsuits as evidence in this trial.

## **BACKGROUND**

This trial concerns Violent Crimes in Aid of Racketeering committed by the Defendants for the benefit of the Syndicato Nuevo Mexico prison gang in the District of New Mexico from 1980 to the present. Specifically, this trial relates to the United States proving that the SNM is a racketeering enterprise which engaged in racketeering activity, that the Defendants are SNM members or associates, and that they engaged in specific VICAR crimes -- murders and an assault -- for the SNM.

On December 1, 2017, the United States filed its Motion *in Limine* to Preclude Questioning Government Witnesses Regarding Personal Information [Doc. 1520] ("MIL re PI"). In that MIL re PI, the United States moved the Court to "enter an order precluding defense counsel from asking government witnesses any questions eliciting personal information about them and their families, including questions about their marital status, their children, their parents, their siblings, their locations and types of employment, and their places of residence." *Id.* at 3.

DNM 592

On December 19, 2017, Defendant J. Gallegos filed J. Gallegos's "Suggestion." In J. Gallegos's "Suggestion," Defendant J. Gallegos spends the first page-and-a-half of his "Suggestion" discussing unrelated excessive force civil rights lawsuits, in which the allegations of excessive force weren't even against Special Agent Acee's use of force. Rather, although J. Gallegos's "Suggestion" obfuscates this fact, the most that can be said about those civil rights lawsuits is that Special Agent Acee authored the "affidavit" in one case and "authored and . . . executed a search warrant" in the second case. J. Gallegos's "Suggestion" at 1-2 & n.2. Defendant J. Gallegos asserted that he "and the other defendants raise these issues because the United States is playing a game in this case of attempting to control the litigation through fear." *Id.* at 2-3. Defendant J. Gallegos asserted: "Defendants do not believe or know how 'personal information' of the families or others would be relevant or useful at trial, however they also would not imagine that the Case Agent would be alleged to have been responsible for as many deaths as one of the defendants in the time period of 2010 to the present." *Id.* at 3.

The Court discussed J. Gallegos's "Suggestion" in connection with the United States' MIL re PI -- in response to which it purportedly was filed -- and pointed out that the Court "was surprised by it. I kept thinking maybe there was something that I was missing, because I couldn't figure out how it responded." Motion Hearing Transcript, December 20, 2017, at 46:1-4. And when the Court "reread the response, I still had a hard time figuring out how it responded to the motion," noting that "when we discussed the [MIL re PI] motion in limine in here, we came to a resolution so quickly." *Id.* at 46:4-8.

As the Court pointed out, on December 19, 2017, when the Court held a hearing on the United States' MIL re PI, the Court noted that it would "take [its] cues from the Government," observing how much personal information the United States brings out in direct and providing

3

leeway to the Defendants on cross-examination based on that direct. Motions Hearing Transcript, Dec. 20, 2017 ("Dec. 19 Tr."), at 72:3-10. The Court noted, "otherwise, I can't think of any reason that the defendants would need to get into personal information of the Government's witnesses." *Id.* at 72:11-12. Defendant Baca noted that "we're comfortable with the line that the Court has drawn," as were the other Defendants, with the exception that "there may be instances where, for example, the type of employment of a particular witness is relevant for impeachment or credibility." *Id.* at 76:22-77:2. The other Defendants agreed with Defendant Baca.

In this trial, the focus will be on four murders and an assault resulting in great bodily harm of a witness in one of those murders. There will be no allegations related to Special Agent Acee's role in authoring or executing search warrants.

## **ARGUMENT**

"Relevant evidence is evidence that has a tendency to 'make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. Gutierrez–Castro,* No. CR 10–2072 JB, 2011 WL 3503321, at *3 (D.N.M. Aug. 6, 2011) (Browning, J.) (citing Fed. R. Evid. 401).  Even with a liberal approach to this rule, the evidence of an unrelated excessive force case is not "of consequence" in this case.

The civil lawsuits against law enforcement officers working alongside Special Agent Acee, and Special Agent Acee's alleged "unreasonabl[e] execut[ion]" of a search warrant, J. Gallegos's "Suggestion" at 2 n.3, do not impeach Special Agent Acee's honesty or credibility. Accordingly, there is no basis for its use during cross-examination under Rule 608(b).

Under rule 608(b), prior conduct must be probative of truthfulness to be used on cross-examination:

4

> Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness of another witness as to which character the witness being cross-examined has testified.

Rule 608(b) "provides certain mechanisms for attacking witnesses' character for truthfulness or untruthfulness." *Montoya v. Shelden*, 898 F. Supp. 2d 1279, 1292 (D.N.M. 2012) (Browning, J.) (quotations omitted). Rule 608(b) allows for "specific unrelated instances of a witness's prior misconduct may be used to impeach the witness at the discretion of the court, however, only to the extent the misconduct reflects on the witness's character for truthfulness." *United States v. Beltran–Garcia*, 338 F. App'x 765, 770 (10th Cir. 2009).

In this case, Special Agent Acee's authoring or executing search warrants is not a fact of consequence. *See* Fed. R. Evid. 401. So the former civil lawsuits which Defendants used in J. Gallegos's "Suggestion" to embarrass and harass Special Agent Acee -- or to "SUGGEST[] THAT THE GOVERNMENT IS MORE VIOLENT THAN DEFENDANTS," J. Gallegos's "Suggestion," at 1 -- are irrelevant and inadmissible in this case. *See* Fed. R. Evid. 402. The rules of evidence don't, and this Court shouldn't, allow Defendants to harass and embarrass Special Agent Acee with these lawsuits, the danger of unfair prejudice of which substantially outweigh any probative value that they may have. *See* Fed. R. Evid. 403. Finally, Defendants cannot admit these previous civil cases for the reasons they referenced them in J. Gallegos's "Suggestion": To suggest to the jury that, because Special Agent Acee was involved in a lawsuit alleging excessive use of force against other law enforcements officers and him, he has the propensity for excessive

use of force and acted in conformance with that propensity in this case. *Contra* <u>Fed. R. Evid.</u>

<u>404(a)</u>.

Defendants also cannot stretch the provisions of Rule 608(b) to fit as proper in cross-

examination the mere fact that a lawsuit was filed that involved Special Agent Acee, nor any

information from those lawsuits.  The material from the lawsuit is neither relevant under Rule

401 nor proper impeachment under Rule 608.  The Court should therefore exclude any mention -

- or "suggestion" -- of these irrelevant civil lawsuits in this trial.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the United States respectfully requests that the Court grant the

government's Motion *In Limine* precluding the cross-examination of FBI Special Agent Bryan

Acee concerning prior conduct not probative of or relevant to truthfulness.

Respectfully Submitted,

JAMES D. TIERNEY
First Assistant United States Attorney

***<u>Electronically filed on 3/5/2018</u>***
MARIA Y. ARMIJO
RANDY M. CASTELLANO
MATTHEW M. BECK
Assistant United States Attorneys
200 N. Church Street
Las Cruces, NM  88001
(575) 522-2304 – Tel.

I HEREBY CERTIFY that I electronically
filed the foregoing with the Clerk of the
Court using the CM/ECF system which
will send electronic notification to defense
counsel of record on this date.

<u>/s/                                                    </u>
MATTHEW M. BECK
Assistant United States Attorney

FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MAR − 5 2018



MATTHEW J. DYKMAN
CLERK

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

No. CR 15-4268 JB

ANGEL DELEON, JOE LAWRENCE
GALLEGOS, EDWARD TROUP, a.k.a.
"Huero Troup," LEONARD LUJAN,
BILLY GARCIA, a.k.a. "Wild Bill,"
EUGENE MARTINEZ, a.k.a. "Little
Guero," ALLEN PATTERSON,
CHRISTOPHER CHAVEZ, a.k.a. "Critter,"
JAVIER ALONSO, a.k.a. "Wineo,"
ARTURO ARNULFO GARCIA, a.k.a.
"Shotgun," BENJAMIN CLARK, a.k.a.
"Cyclone," RUBEN HERNANDEZ;
JERRY ARMENTA, a.k.a. "Creeper,"
JERRY MONTOYA, a.k.a. "Boxer,"
MARIO RODRIGUEZ, a.k.a. "Blue,"
TIMOTHY MARTINEZ, a.k.a. "Red,"
MAURICIO VARELA, a.k.a. "Archie,"
a.k.a. "Hog Nuts," DANIEL SANCHEZ,
a.k.a. "Dan Dan," GERALD ARCHULETA,
a.k.a. "Styx," a.k.a. "Grandma," CONRAD
VILLEGAS, a.k.a. "Chitmon," ANTHONY
RAY BACA, a.k.a. "Pup," ROBERT
MARTINEZ, a.k.a. "Baby Rob," ROY
PAUL MARTINEZ, a.k.a. "Shadow,"
CHRISTOPHER GARCIA, CARLOS
HERRERA, a.k.a. "Lazy," RUDY PEREZ,
a.k.a. "Ru Dog," ANDREW GALLEGOS,
a.k.a. "Smiley," SANTOS GONZALEZ;
PAUL RIVERA, SHAUNA GUTIERREZ,
and BRANDY RODRIGUEZ,

        Defendants.

**COURT'S ELEVENTH PROPOSED JURY INSTRUCTIONS**
(with citations)

Appellate Case: 20-2058    Document: 010110415670    Date Filed: 09/29/2020    Page: 173

DNM 597

## JURY INSTRUCTION NO. 1

Members of the Jury:

In any jury trial there are, in effect, two judges.  I am one of the judges, you are the other.
I am the judge of the law.  You, as jurors, are the judges of the facts.  I presided over the trial and
decided what evidence was proper for your consideration.  It is also my duty at the end of the
trial to explain to you the rules of law that you must follow and apply in arriving at your verdicts.

In explaining the rules of law that you must follow, first, I will give you some general
instructions which apply in every criminal case -- for example, instructions about burden of proof
and insights that may help you to judge the believability of witnesses.  Then I will give you some
specific rules of law that apply to this particular case and, finally, I will explain the procedures
you should follow in your deliberations, and the possible verdicts you may return.   These
instructions will be given to you for use in the jury room, so you need not take notes.


**PROPOSED   JURY   INSTRUCTIONS**, **UNITED   STATES'   PROPOSED   JURY
INSTRUCTION NO. 1**, at 1, 2, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS   [sic]   PROPOSED   JURY   INSTRUCTIONS**,   **REQUESTED
INSTRUCTION NO. 3,** at 1, 2, 17, filed January 12, 2018 (Doc. 1641)(3) 1.03 Introduction to
Final Instructions)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY
INSTRUCTIONS (DOC. 1635),** at 1, filed January 19, 2018 (Doc. 1663)("United States'
Proposed Jury Instruction No. 1: No objection to unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth
Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Case**s) **GENERAL
MATTERS** 1.03, at i, 7, **(2011 Edition** Updated January, 2017)(INTRODUCTION TO FINAL
INSTRUCTIONS)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc.
1827)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 174

DNM 598

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 1, at 3, filed February 25, 2018 (Doc. 1827-1)

Fifth Circuit Pattern Instruction 1.05

Ninth Circuit Pattern Instruction 3.05

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 175

DNM 599

# JURY INSTRUCTION NO. 2

You, as jurors, are the judges of the facts. But in determining what actually happened -- that is, in reaching your decision as to the facts -- it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences. However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdicts should be. These should be entirely up to you.

It is also your duty to base your verdicts solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 2**, at 1, 3, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 4**, at 1, 2, 18, filed January 12, 2018 (Doc. 1641)(4) 1.04 Duty to Follow Instructions)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, filed January 19, 2018 (Doc. 1662)("United States Proposed Jury Instruction No. 2: No objection to unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.04, at i, 8 (**2011 Edition** Updated January 2017)(DUTY TO FOLLOW INSTRUCTIONS)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 2, at 4, filed February 25, 2018 (Doc. 1827-1)

- 4 -

Appellate Case: 20-2058   Document: 0101104156 70   Date Filed: 09/29/2020   Page: 176

DNM 600

## JURY INSTRUCTION NO. 3

The government has the burden of proving defendants Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, and Rudy Perez guilty beyond a reasonable doubt. The law does not require any individual defendant to prove his innocence or produce any evidence at all. The government has the burden of proving each defendant, individually, guilty beyond a reasonable doubt, and if it fails to do so for any individual defendant, you must find that defendant not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of a defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the government's proof exclude any "reasonable doubt" concerning any individual defendant's guilt. A reasonable doubt is a doubt based on reason and common sense. It may arise after careful and impartial consideration of all the evidence, or from lack of evidence. If, based on your consideration of the evidence, you are firmly convinced that a defendant is guilty of the crimes charged, you must find him guilty of that charge. If on the other hand, you think there is a reasonable doubt about the truth of any charge, then you must give the defendant the benefit of the doubt and find him not guilty of that charge.

It is your duty to consider the evidence applicable to each defendant, separately. You must consider whether a reasonable doubt exists as to each count charged against each individual defendant.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 5,** at 1, 17, filed January 12, 2018 (Doc. 1635)(modified)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 177

DNM 601

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 5,** at 1, 2, 19, filed January 12, 2018 (Doc. 1641)(modified 1.05)(5) 1.05 Presumption of Innocence -- Burden of Proof -- Reasonable Doubt)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 6,** at 1, 2, 20 filed January 12, 2018 (Doc. 1641)(6) 1.05.1 Preponderance of Evidence)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 4-5, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 5: The Defendants' objected to the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.05, at 1, 9 (**2011 Edition** Updated January 2017) (PRESUMPTION OF INNOCENCE -- BURDEN OF PROOF -- REASONABLE DOUBT)(adapted)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.05.1, at i, 10 (**2011 Edition** Updated January 2017) (PREPONDERANCE OF EVIDENCE )(modified)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 3, at 5, filed February 25, 2018 (Doc. 1827-1)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 178

DNM 602

## JURY INSTRUCTION NO. 4

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations that the lawyers agreed to.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.   My legal rulings are not evidence.   And my comments and questions are not evidence.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked.  I also ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record.  You must completely ignore all of these things.  Do not even think about them.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 24**, at 1, 41, filed January 12, 2018 (Doc. 8)(Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 7,** at 1, 2, 21, filed January 12, 2018 (Doc. 1641)(7) 1.06 Evidence -- Defined)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 179

DNM 603

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 24: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.06, at i, 11 (**2011 Edition** Updated January 2017)(EVIDENCE -- DEFINED)(modified)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 4, at 7, filed February 25, 2018 (Doc. 1827-1)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 180

## JURY INSTRUCTION NO. 5

During the course of this trial, and on multiple occasions throughout the trial, you have heard evidence that was admitted for a limited purpose and as to a particular defendant, only.

Each time this type of evidence was admitted, I instructed you of the specific limitations placed on your use of that evidence.  By providing these instructions, I was not suggesting that you must or should find the particular evidence credible or probative of any issue in this case.  However, in the event you decide to consider the limited evidence, then you may only use it only for the limited purpose, and only as to the particular defendant, for which it was admitted.

You are not to consider any limited evidence for any other purpose than the particular purpose for which it was admitted.  And, you may not use it in any way during your deliberations concerning any defendant against whom the evidence was not admitted.

**DEFENDANT DANIEL SANCHEZ'S PROPOSED LIMITING INSTRUCTION,** at 1, 2-3, filed February 23, 2018 (Doc. 1821)

Authority Federal Rule of Evidence 105; 9th Cir. Pattern Instruction 2.11 Evidence for Limited Purpose (no comparable 10th Circuit or 5th Circuit Limiting Instruction could be located); *See United States v. Armijo*, 5 F3d 1229, 1232 (9th Cir. 1993).  For example, in *United States v Sauza-Martinez*, 217 F.3d 754, 760 (9th Cir. 2000), the Ninth Circuit held the trial court "had no alternative" but to give the jury a limiting instruction *sua sponte* when a testifying co-defendant's post-arrest statements were admitted as substantive evidence against her under Fed. R. Evid. 801(d)(2)(A), but were not admissible against another co-defendant "under *any* theory" (emphasis in original).  Under the circumstances of the case, it was plain error to fail to give the limiting instruction *sua sponte*. *Id.* at 761.

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 181

DNM 605

# JURY INSTRUCTION NO. 6

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case.  One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience.  An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusion that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 27**, at 1, 44, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 8,** at 1, 2, 22, filed January 12, 2018 (Doc. 1641)(8) 1.07 Evidence -- Direct and Circumstantial -- Influences)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 27: No objection to the unmodified Tenth Circuit instruction.")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 9-10, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 27: Defendants object to this instruction because the United States

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 182

DNM 606

have omitted the first two paragraphs of the pattern instruction . . . . Defendants propose using the entire instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.07, at i, 13 (**2011 Edition** Updated January 2017)(EVIDENCE -- DIRECT AND CIRCUMSTANTIAL -- INFERENCES)(adapted)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 5, at 8, filed February 25, 2018 (Doc. 1827-1)

Appellate Case: 20-2058    Document: 010110415670    Date Filed: 09/29/2020    Page: 183

DNM 607

Appellate Case: 20-2058    Document: 010110415670    Date Filed: 09/29/2020    Page: 184

## JURY INSTRUCTION NO. 7

I remind you that it is your job to decide whether the government has proved the guilt of Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez beyond a reasonable doubt. In doing so, you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence that I have admitted as to any one defendant as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses who testified in this case. You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was. In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness admit prior instances of untruthfulness? Did the witness testify falsely on prior occasions? Did the witness make prior statements that were inconsistent with his or her testimony? Did the witness collude with others to create false evidence on prior occasions? Did the witness have the opportunity to collude with others prior to his testimony? Did the witness have a personal interest in the outcome in this case? Did the witness have any relationship with the government or a defendant? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he/she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you

DNM 608

should keep in mind that innocent misrecollection -- like failure of recollection -- is not uncommon.

You may not consider any defendant's decision not to testify as evidence of guilt.  I want you to clearly understand, please, that the Constitution of the United States grants to Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez the right to remain silent.  That means the right not to testify or call any witnesses.  That is a constitutional right in this country, it is very carefully guarded, and you should understand that no presumption of guilt may be raised and no inference of any kind may be drawn from the fact that ~~Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez do~~a defendant did not take the witness stand and testify or call any witnesses.

In reaching a conclusion on a particular point, or ultimately in reaching verdicts in this case, do not make any decisions simply because there were more witnesses on one side than on the other.  <u>What is important is how believable a witness was and how much weight you think that their testimony deserves.</u>

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 28**, at 1, 45-46, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 6**, at 1, 18, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 9,** at 1, 2, 23-24, filed January 12, 2018 (Doc. 1641)(9) 1.08 Credibility of Witnesses)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 10,** at 1, 2, 25, filed January 12, 2018 (Doc. 1641)(10) 1.08.1 Non-Testifying Defendant)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("<u>United States Proposed Jury Instruction No. 6:</u> No objection to the unmodified Tenth Circuit instruction.")

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 185

DNM 609

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 8: Defendants object to the use of this instruction.")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 10, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 28: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.08, at i, 14-15 (**2011 Edition** Updated January 2017)(CREDIBILITY OF WITNESSES)(adapted)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.08.1, at i, 16 (**2011 Edition** Updated January 2017)(NON-TESTIFYING DEFENDANT)(modified)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 6, at 9-10, filed February 25, 2018 (Doc. 1827-1)

Fifth Circuit Pattern Instruction 1.08

## JURY INSTRUCTION NO. 8

You have heard evidence that, before this trial, witnesses have made statements that may be different from the witnesses' testimony here in court.

These earlier statements were brought to your attention only to help you decide how believable the witnesses' testimony in this trial was. You cannot use the witnesses' prior statements as proof of anything else. You can only use them as one way of evaluating the witnesses' testimony here in court.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 29**, at 1, 47, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 11** at 1, 2, 26, filed January 12, 2018 (Doc. 1641)(11) 1.10 Impeachment by Prior Inconsistencies)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 10, filed January 19, 2018 (Doc. 1663)(object until completed with the Use Note)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.10, at i, 21 (**2011 Edition** Updated January 2017)(IMPEACHMENT BY PRIOR INCONSISTENCIES)(adapted)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 7, at 11, filed February 25, 2018 (Doc. 1827-1)

## JURY INSTRUCTION NO. 9

You have heard evidence that a defendant has been convicted of a felony, that is, a crime punishable by imprisonment for a term of years.  The fact that a defendant has been convicted of another crime does not mean that a defendant committed the crime charged in this case, and you must not use a defendant's prior conviction as proof of the crime charged in this case.  You may find them guilty of the crimes charged here only if the government has proved beyond a reasonable doubt that they committed them.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 30**, at 1, 48, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 12,** at 1, 2, 27 filed January 12, 2018 (Doc. 1641)(12) 1.11 Impeachment by Prior Conviction (Defendant's Testimony))(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 10, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 30: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.11, at i, 22 (**2011 Edition** Updated January 2017)(IMPEACHMENT BY PRIOR CONVICTION Defendant's Testimony)(adapted)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 188

DNM 612

## JURY INSTRUCTION NO. 10

The testimony of a witness may be discredited or impeached by showing that the witness previously has been convicted of a felony, that is, of a crime punishable by imprisonment for a term of years or of a crime of dishonesty or false statement.  A prior conviction does not mean that a witness is not qualified to testify, but is merely one circumstance that you may consider in determining the credibility of the witness.  You may decide how much weight to give any prior felony conviction or crime of dishonesty that was used to impeach a witness.

**DEFENDANTS  [sic]  PROPOSED  JURY  INSTRUCTIONS,  REQUESTED INSTRUCTION NO. 13,** at 1, 2, 28, filed January 12, 2018 (Doc. 1641)(13) 1.12 Impeachment by Prior Conviction (Witness Other Than Defendant)(modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.12, at i, 23 (**2011 Edition** Updated January 2017)(IMPEACHMENT BY PRIOR CONVICTION (Witness Other Than Defendant)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 8, at 12, filed February 25, 2018 (Doc. 1827-1)

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 189

DNM 613

## JURY INSTRUCTION NO. 11

You have heard the testimony of Eric Duran, who was a witness in the government's case. You also heard testimony from Officer Clint Snodgrass concerning his opinion about Mr. Duran's character for truth-telling. It is up to you to decide from what you heard here whether Mr. Duran was telling the truth in this trial.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 14,** at 1, 2, 29, filed January 12, 2018 (Doc. 1641)(14) Impeachment by Evidence of Untruthful Character) (modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.13, at i, 24 (**2011 Edition** Updated January 2017)((IMPEACHMENT BY EVIDENCE OF UNTRUTHFUL CHARACTER)(modified)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 190

DNM 614

## JURY INSTRUCTION NO. 12

### Accomplice

An accomplice is someone who joined with another person in committing a crime, voluntarily and with common intent. The testimony of an accomplice may be received in evidence and considered by you, even though it is not supported by other evidence. You may decide how much weight it should have.

You are to keep in mind, however, that accomplice testimony should be received with caution and considered with great care. You should not convict any defendant based on the unsupported testimony of an alleged accomplice, unless you believe the unsupported testimony beyond a reasonable doubt.

### Informant

An informant is someone who provides evidence against someone else for a personal reason or advantage. The testimony of an informant alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt, even though not corroborated or supported by other evidence. You must examine and weigh an informant's testimony with greater care than the testimony of an ordinary witness. You must determine whether the informant's testimony has been affected by self-interest, by an agreement the witness has with the government, by the witness's own interest in the outcome of the case, or by prejudice against any defendant.

You should not convict any defendant based on the unsupported testimony of an informant, unless you believe the unsupported testimony beyond a reasonable doubt.

Immunity

A person may testify under a grant of immunity (an agreement with the government). His testimony alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt even though it is not corroborated or supported by other evidence. You should consider testimony given under a grant of immunity with greater care and caution than the testimony of an ordinary witness. You should consider whether testimony under a grant of immunity has been affected by the witness's self-interest, the government's agreement, the witness's interest in the outcome of the case, or by prejudice against any defendant.

On the other hand, you should also consider that an immunized witness can be prosecuted for perjury for making a false statement. After considering these things, you may give testimony given under a grant of immunity such weight as you find it deserves.

You should not convict any defendant based on the unsupported testimony of an immunized witness, unless you believe the unsupported testimony beyond a reasonable doubt.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **32**, at 1, 50, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **35**, at 1, 53, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **36**, at 1, 54, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 15**, at 1, 2, 30-32, filed January 12, 2018 (Doc. 1641)(15) 1.14 Accomplice -- Informant -- Immunity)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 32, filed January 19, 2018 (Doc. 1663)("United States'

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 192

DNM 616

Proposed Jury Instruction No. 32: Defendants object to the use of this unmodified Tenth Circuit instruction as it fails to include the "Accomplice" portion ....)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 11, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 35: Defendants object to this instruction. It is duplicative of the United States Proposed Instruction No. 32 . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 11-12, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 36: Defendants object to this instruction. It is duplicative of the United States Proposed Instruction No. 32 . . . .")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.14, at i, 25-26 (**2011 Edition** Updated January 2017)(ACCOMPLICE -- INFORMANT -- IMMUNITY)[as appropriate])(adapted)

## JURY INSTRUCTION NO. 13

The government has called as witnesses, alleged accomplices, who were named as accomplices in this or related criminal cases. The government has entered into plea agreements with these alleged accomplices: Mario Rodriquez, Jerry Armenta, Jerry Montoya, Timothy Martinez, Lupe Urquizo, David Calbert, Roy Paul Martinez, Robert Martinez, Manuel Jacob Armijo, Frederico Munoz, Gerald Archuleta, Mario Montoya, and Ben Clark, providing for the possibility of a lesser sentence than he would otherwise likely receive. Plea bargaining is lawful and proper, and the rules of this court expressly provide for it.

An alleged accomplice, including one who has entered into a plea agreement with the government, is not prohibited from testifying. On the contrary, the testimony of an alleged accomplice may, by itself, support a guilty verdict. You should receive this type of testimony with caution and weigh it with great care. You should never convict any defendant upon the unsupported testimony of such an accomplice, unless you believe that testimony beyond a reasonable doubt. The fact that an accomplice has entered into a guilty plea to the offense charged is not evidence of the guilt of any other person.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 33**, at 1, 51, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 16,** at 1, 2, 33, filed January 12, 2018 (Doc. 1641)(16) 1.15 Accomplice – Co-Defendant -- Plea Agreement)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 33, filed January 19, 2018 (Doc. 1663)("The Defendants request that the Court use the unmodified pattern instruction.")

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 194

DNM 618

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.15, at i, 27 (**2011 Edition** Updated January 2017)(ACCOMPLICE -- AN ALLEGED ACCOMPLICE -- CO-DEFENDANT -- PLEA AGREEMENT)(modified)

Appellate Case: 20-2058    Document: 010110415670    Date Filed: 09/29/2020    Page: 195

DNM 619

## JURY INSTRUCTION NO. 14

The testimony of a drug abuser must be examined and weighed by the jury with greater caution than the testimony of a witness who does not abuse drugs.

Billy Cordova, Mario Montoya, Eric Duran, Roy Paul Martinez, Robert Martinez, Frederico Muñoz, Javier Rubio, Manuel Jacob Armijo, Jerry Armenta, Mario Rodriguez, Lupe Urquizo, Jerry Montoya, Gerald Archuleta, David Calbert, Timothy Martinez, Bobby Delgado, and Julian Romero may be considered abusers of drugs.

You must determine whether the testimony of any witness has been affected by the use of drugs or the need for drugs.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 34**, at 1, 52, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 17**, at 1, 2, 24, filed January 12, 2018 (Doc. 1641)(17) 1.16 Witnesses' Use of Addictive Drugs)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 11, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 34: No objection as this is the unmodified Tenth Circuit instruction".)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.16, at i, 28 (**2011 Edition** Updated January 2017)(WITNESS'S USE OF ADDICTIVE DRUGS)(modified)

## JURY INSTRUCTION NO. 15

During the trial you heard the testimony of Tim Bryan, who expressed opinions regarding the forensic analysis of computer tablets, and Dr. Heather Brislen, who expressed opinions regarding Rudy Perez's medical conditions. In some cases, such as this one, scientific, technical, or other specialized knowledge may assist the jury in understanding the evidence or in determining a fact in issue. A witness who has knowledge, skill, experience, training or education, may testify and state an opinion concerning such matters.

You are not required to accept such an opinion. You should consider opinion testimony just as you consider other testimony in this trial. Give opinion testimony as much weight as you think it deserves, considering the education and experience of the witness, the soundness of the reasons given for the opinion, and other evidence in the trial.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 31**, at 1, 49, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 18**, at 1, 2, 35, filed January 12, 2018 (Doc. 1641)(18) 1.17 Expert Witness)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 19**, at 1, 3, 36-44, filed January 12, 2018 (Doc. 1641)(19) Expert Witness -- DNA Evidence)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 10, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 31: No objection to the use of the unmodified Tenth Circuit instruction.")

Authority: *United States v. Starzecpyzel,* 880 F.Supp. 1027, 1050-51 (S.D.N.Y. 1995); President's Council of Advisors on Science and Technology, *Forensic Science in Criminal Courts: Ensuring Scientific Validity of Feature Comparison Methods* (Sept. 20, 2016); President's Council of Advisors on Science and Technology, *An Addendum to the PCAST Report on Forensic Science in Criminal Court.*

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 197

DNM 621

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.17, at i, 29 (**2011 Edition** Updated January 2017)(EXPERT WITNESS)(adapted)

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 198

DNM 622

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 199

## JURY INSTRUCTION NO. 16

Evidence relating to any statement attributed to Mr. Baca, Mr. Herrera, or Mr. Perez alleged to have been made after the commission of the crime (or crimes) charged in this case but not made in court, should always be considered by you with caution and weighed with care. You should give any such statement the weight you think it deserves, after considering all the circumstances under which the statement was made.

In determining whether any such statement is reliable and credible, consider factors bearing on the voluntariness of the statement. For example, consider the age, gender, training, education, occupation, and physical and mental condition of Mr. Baca, Mr. Herrera, or Mr. Perez, and any evidence concerning his treatment while under interrogation if the statement was made in response to questioning by government officials, agents, or informants working on behalf of the government, and all the other circumstances in evidence surrounding the making of the statement.

After considering all this evidence, you may give such weight to the statement as you feel it deserves under all the circumstances. If you determine that the statement is unreliable or not credible, you may disregard the statement entirely.

As I have previously instructed, any such statement may be considered against the declarant-defendant only, and cannot be considered in any way, whatsoever, as evidence with respect to any other defendant on trial.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 25,** at 1, 3, 5, filed January 12, 2018 (Doc. 1641)(25) 1.26 Confession -- Statement -- Voluntariness by Defendant)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth

Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.26, at i, 40 (**2011 Edition** Updated January 2017)(CONFESSION-STATEMENT -- VOLUNTARINESS BY DEFENDANT)(Multiple Defendants))(adapted)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 26,** at 1, 3, 52-53, filed January 12, 2018 (Doc. 1641)(26) Identification Testimony)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.29, at i, 44 (**2011 Edition** Updated January 2017)(IDENTIFICATION TESTIMONY)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 27,** at 1, 3, 54, filed January 12, 2018 (Doc. 1641)(27) 1.30 Similar Acts) (modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 27,** at 1, 5, 87, filed January 12, 2018 (Doc. 1641)(27) 1.30 Similar Acts)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 50, LIMITING INSTRUCTION 404(b): EVIDENCE INTRODUCED AT TRIAL,** at 1, 5, 88, filed January 12, 2018 (Doc. 1641)(50) Limiting instruction 404(b): Evidence Introduced at Trial)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 51,** at 1, 5, 89, filed January 12, 2018 (Doc. 1641)(51) Limiting Instruction 404(b): Evidence to be Issued at the Close of Trial)(modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.30, at i, 46 (**2011 Edition** Updated January 2017)(SIMILAR ACTS)

Authority: *United States v. Rodella*, 101 F.Supp. 3d 1075, 1085-86 (D.N.M. 2015)

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 37,** at 1, 55, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 37: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL**

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 200

DNM 624

**MATTERS** 1.25, at i, 38 (**2011 Edition** Updated January 2017)(VOLUNTARINESS OF STATEMENT BY DEFENDANT)(Single Defendants)(modified)

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 201

## JURY INSTRUCTION NO. 17

During this trial, you have heard sound recordings of certain conversations. These conversations may be considered by you as you would any other evidence. You were also shown transcripts of those recorded conversations.

Keep in mind that the transcripts are not evidence. They were shown to you only as a guide to help you follow what was being said. The recordings themselves are the evidence. If you noticed any differences between what you heard on the recordings and what you read in the transcripts, you must rely on what you heard, not what you read. If you could not hear or understand certain parts of the recordings, you must ignore the transcript as far as those parts are concerned.

As I have previously instructed, any such recordings may be considered as evidence against the defendant who is the subject of the recording, only, and cannot be considered in any way, whatsoever, as evidence with respect to any other defendant on trial.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 38**, at 1, 56, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 31,** at 1, 3, 60, filed January 12, 2018 (Doc. 1641)(31) 1.40 Cautionary Instruction During Trial -- Transcript)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 10, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 38: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.40, at ii, 61 (**2011 Edition** Updated January 2017)(CAUTIONARY INSTRUCTION DURING TRIAL Transcript of Recorded Conversation)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 202

DNM 626

## JURY INSTRUCTION NO. 18

Certain charts and summaries have been shown to you to help explain the evidence in this

case. Their only purpose is to help explain the evidence. These charts and summaries are not

evidence or proof of any facts.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 26**, at 1, 43, filed January 12, 2018 (Doc. 1635)(32) 1.41 Summaries and Charts)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 32,** at 1, 3, 61, filed January 12, 2018 (Doc. 1641)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 9, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 26: . . . . If the charts and summaries are not otherwise objectionable, Defendants would not object to the use of this instruction as it is an unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.41, at ii, 62 (**2011 Edition** Updated January 2017)(SUMMARIES AND CHARTS Not Received In Evidence)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 203

DNM 627

## JURY INSTRUCTION NO. 19

The parties have agreed to certain facts that have been stated to you.  These facts are now conclusively established.

Appellate Case: 20-2058      Document: 010110415670      Date Filed: 09/29/2020      Page: 204

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("The defendants . . . request the Court to follow the Ninth Circuit Pattern Instructions, Sections . . . 2.4 . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("The defendants . . . request the Court to follow the Ninth Circuit Pattern Instructions, Sections 2.3 . . . .")

DNM 628

## JURY INSTRUCTION NO. 20

The word "racketeering" has certain implications in our society. Use of that term in the statute and in this courtroom should not be regarded as having anything to do with your determination of whether the guilt of any defendant has been proven.  The term is only a term used by Congress to describe the statute.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 7**, at 1, 19, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 48,** at 1, 4, 82, filed January 12, 2018 (Doc. 1641)(48) 2.74.1 Racketeer Influenced and Corrupt Organizations Act: Prejudice from the Word "Racketeering")(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 2, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 7: No objection to the unmodified Tenth Circuit instruction.")

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74.1, at v, 229 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT Prejudice From The Word "Racketeering")

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 205

DNM 629

## JURY INSTRUCTION NO. 21

Counts 6, 7, 9, and 10 charge specific defendants with committing violent crimes in aid of racketeering in violation of 18 U.S.C. § 1959.

That law makes it a crime for any person who, as consideration for a promise or agreement to pay anything of pecuniary value from an enterprise engaged in racketeering activity,  or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the law of any State or the United States, or attempts or conspires so to do.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 8**, at 1, 20-21, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 8: Defendants object to the uses of this instruction . . . . ")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74, at v, 228 **(2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT 18 U.S.C. § 1962(a)(Introductory Paragraph))(modified)

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 206

DNM 630

## JURY INSTRUCTION NO. 22

Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez are on trial before you upon an Indictment brought by the Grand Jury. Before reading the indictment to you, I remind you that the Indictment or formal charge against Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez is not evidence of guilt. Indeed, Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez are presumed by the law to be innocent.

In this case, the Indictment charges as follows:

### Count 6

### Conspiracy to Murder Javier Molina

In March 2014, in Doña Ana County, in the District of New Mexico and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, JERRY ARMENTA, a.k.a. "Creeper," JERRY MONTOYA, a.k.a. "JR," a.k.a. "Plaz," MARIO RODRIGUEZ, a.k.a. "Blue," TIMOTHY MARTINEZ, a.k.a. "Red," **ANTHONY RAY BACA, a.k.a. "Pup,"** MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts," **DANIEL SANCHEZ, a.k.a. "Dan Dan," CARLOS HERRERA, a.k.a. "Lazy,"** and **RUDY PEREZ, a.k.a. "Ru Dog,"** and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder Javier Molina, in violation of NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

## Count 7

### Murder of Javier Molina

On or about March 7, 2014, in Doña Ana County, in the District of New Mexico, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, JERRY ARMENTA, a.k.a. "Creeper," JERRY MONTOYA, a.k.a. "JR," a.k.a. "Plaz," MARIO RODRIGUEZ, a.k.a. "Blue," TIMOTHY MARTINEZ, a.k.a. "Red," **ANTHONY RAY BACA, a.k.a. "Pup,"** MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts," **DANIEL SANCHEZ, a.k.a. "Dan Dan," CARLOS HERRERA, a.k.a. "Lazy,"** and **RUDY PEREZ, a.k.a. "Ru Dog,"** did unlawfully, knowingly and intentionally murder Javier Molina, in violation of NMSA 1978, Sections 30-2-1 and 30-1-13.

All in violation of 18 U.S.C. §§ 1959(a)(1) and 2.

## Count 9

### Conspiracy to Murder Dwayne Santistevan

Starting on a date uncertain, but no later than 2013, and continuing to on or about the date of this Indictment, in Santa Fe County, in the District of New Mexico, and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **ANTHONY RAY BACA, a.k.a. "Pup,"** ROY MARTINEZ, a.k.a. "Shadow," and ROBERT

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 208

DNM 632

MARTINEZ, a.k.a. "Baby Rob," and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder  Dwayne Santistevan, in violation of NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

Count 10

Conspiracy to Murder Gregg Marcantel

Starting on a date uncertain, but no later than 2013, and continuing to on or about the date of this Indictment, in Santa Fe County, in the District of New Mexico, and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the  Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **ANTHONY RAY BACA, a.k.a. "Pup,"** ROY MARTINEZ, a.k.a. "Shadow," ROBERT MARTINEZ, a.k.a. "Baby Rob," and CHRISTOPHER GARCIA, and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder Gregg Marcantel, in violation of  NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

Indictment at ¶¶ 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12a, 12b, 12c, 12d, 12e, 12f, 13a, 13b, 13c, 13d, 13e, 14, Count 6, Count 7, Count 8, Count 9 and Count 10, at 1-9, 12-13, filed March 9, 2017 (Doc. 947)(modified)

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 3,** at 1, 4-15, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 4,** at 16, filed January 12, 2018 (Doc. 1635)(modified)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 209

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 2-4, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 3: object to surplusage)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 4, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 4: objection)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 210

DNM 634

## JURY INSTRUCTION NO. 23

I have just reviewed the charges brought by the Grand Jury through an indictment.  In this case, the only Defendants on trial before you are Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez.

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 4, filed January 19, 2018 (Doc. 1663)(Defendants' alternative)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 211

DNM 635

## JURY INSTRUCTION NO. 24

Title 18, United States Code, Section 1959(a), makes it a crime for anyone to commit, threaten to commit, attempt to commit, or conspire to commit a violent crime in aid of an enterprise engaged in racketeering activity.

For you to find any defendant guilty of this crime, as charged in Counts 6, 7, 9, and 10, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First:*   That the enterprise existed;

*Second:*   That the enterprise was engaged in interstate commerce or that its activities affected interstate commerce;

*Third:*   That the enterprise was engaged in racketeering activity;

*Fourth:*   That the defendant committed a crime of violence as alleged in the indictment:

Count 6:   Conspiracy to murder Javier Molina;

Count 7:   Murder of Mr. Molina;

Count 9:   Conspiracy to murder Dwayne Santistevan; and

Count 10:   Conspiracy to murder Gregg Marcantel.

I will instruct you on what the government must prove to establish that a particular defendant committed any one of these acts; and

*Fifth:*   That the defendant's purpose in committing, threatening to commit, attempting to commit, or conspiring to commit the crimes of violence was to gain entrance to, or to maintain, or to increase his position in the enterprise.

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 212

DNM 636

If the purpose is to "gain entrance to, or to maintain, or to increase his position in the enterprise," it is not necessary for the government to prove that this was the sole purpose of a defendant in committing the charged crime. You need only find that it was a substantial purpose, or that a defendant committed the charged crime as an integral aspect of membership in the enterprise. In determining a defendant's purpose in committing the alleged crime, you must determine what he had in mind. Because you cannot look into a person's mind, you have to determine purpose by considering only the facts and circumstances that have been admitted against an individual defendant during the course of the trial.

An "enterprise" includes any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate commerce.

Although the enterprise must be separate and apart from the pattern of racketeering activity in which the enterprise allegedly engaged, it is not necessary to find that the enterprise had some function wholly unrelated to the racketeering activity. The enterprise must be proved to have been an ongoing organization, formal or informal, that functioned as a continuing unit.

An enterprise is a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time. The personnel of the enterprise, however, may change and need not be associated with the enterprise for the entire period alleged in the indictment. Therefore, the government must prove the existence of an association-in-fact enterprise by evidence of an ongoing organization, formal or informal, and by evidence that the various associates functioned as a continuing unit. The enterprise must have the three following structural features: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. The

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 213

DNM 637

name of the organization itself is not an element of the offense and does not have to be proved. The government need not prove that the enterprise had any particular organizational structure.

The group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods -- by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, you may nonetheless find that the enterprise element is satisfied by finding a group whose associates engage in spurts of activity punctuated by periods of quiescence [inactivity].

The enterprise is "engaged in interstate commerce" if it directly engaged in the distribution or acquisition of goods or services in such commerce. The enterprise's conduct "affected" interstate commerce if the conduct had a demonstrated connected or link with such commerce.

It is not necessary for the government to prove that a defendant knew or intended that the enterprise was engaged in commerce or that its conduct would affect commerce. It is only necessary that the natural consequences of the enterprise's conduct affected commerce in some way. Only a minimal effect on commerce is necessary.

There must be some nexus between the enterprise and the racketeering activity being conducted by members and/or associates of the enterprise.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 8**, at 1, 20-21, filed January 12, 2018 (Doc. 1635)(modified)

DNM 638

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 49,** at 1, 4, 83-86, filed January 12, 2018 (Doc. 1641)(49) Fifth Circuit Pattern Jury Instruction § 2.78 Violent Crimes in Aid of Racketeering, 18 U.S.C. § 1959(a))(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 20: Defendants object to the inclusion of [or from a foreign country] . . . . ")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74.2, at 230 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT-- "SECTION A" Elements Of The Offense)(modified)

Authority: Fifth Circuit Pattern Jury Instruction Criminal §2.78 (2015 ed.)(modified)(**Violent Crimes in Aid of Racketeering** 18 U.S.C. § 1959(a))

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 18,** at 1, 33, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 18: Defendants object to this instruction . . . . ")

## JURY INSTRUCTION NO. 25

The first element that the government must prove beyond a reasonable doubt is that an "enterprise" existed as alleged in the indictment.

The government has charged the following in the Indictment as constituting the enterprise: the Syndicato de Nuevo Mexico Gang (SNM) in Counts 6, 7, 9, and 10.

An enterprise includes a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time. This group of people does not have to be a legally recognized entity, such as a partnership or corporation.  This group may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose. This group of people must have: (1) a common purpose; and (2) an ongoing organization, either formal or informal; and (3) personnel who function as a continuing unit.

If you find these three elements, then you may find that an enterprise existed.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 9**, at 1, 22-23, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 9: Defendants object to this instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74.3, at 231 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT-- "SECTION A" First Element -- The Enterprise)

Fifth Circuit Pattern Jury Instructions Criminal 2.78 (2015)(modified)(**Violent Crimes In Aid of Racketeering)**

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 216

DNM 640

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 10**, at 1, 24, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 10: Defendants object to this instruction.")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 20: Defendants object to the inclusion of [or from a foreign country] . . . . ")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74.4, at 234 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT -- "SECTION A" Second Element -- Effect On Interstate Commerce)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 42**, at 1, 4, 74, filed January 12, 2018 (Doc. 1641)(42) 1.39 Interstate and Foreign Commerce -- Defined in 18 U.S.C. Section 10)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 20: Defendants object to the inclusion of [or from a foreign country] . . . . ")

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.39, at ii, 59 (**2011 Edition** Updated January 2017)(INTERSTATE AND FOREIGN COMMERCE -- DEFINED, 18 U.S.C. SECTION 10)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 20: Defendants object to the inclusion of [or from a foreign country] . . . . ")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.39.1, at ii, 60 (**2011 Edition** Updated January 2017)(INTERSTATE AND FOREIGN COMMERCE -- EFFECT ON 18 U.S.C. § 10)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 217

DNM 641

## JURY INSTRUCTION NO. 26

The third element which the government must prove beyond a reasonable doubt as to Counts 6, 7, 9, and 10 is that the enterprise was engaged in racketeering activity.

That racketeering activity may consist of state offenses as well federal offenses. The government has charged that the SNM engaged in multiple acts of racketeering activity consisting of the following: (1) murder and robbery, in violation of New Mexico law; (2) acts involving tampering with a witness, in violation of federal law; and, (3) offenses involving trafficking in narcotics, in violation of federal law.

In order for the state offense of murder to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that a member or an associate of the racketeering enterprise committed the offense as defined by law. The elements of that offense are as follows:

First:        someone killed a human being, and

Second:        the killing was with the deliberate intention to take away the life of that person.

In order for the federal offense of witness tampering to be considered as a racketeering act, the government must prove to you beyond a reasonable doubts that:

First: a member, prospect or associate of the racketeering enterprise used or attempted to use intimidation or threats against another person;

Second:        that member, prospect, or associate acted knowingly and with the intent to influence or prevent the testimony of that other person with respect to an official proceeding.

Appellate Case: 20-2058    Document: 010110415670    Date Filed: 09/29/2020    Page: 218

DNM 642

In order for the offense of possession with intent to distribute a controlled substance to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that:

First:          a member, prospect, or associate of the SNM knowingly and intentionally possessed a controlled substance as charged, and

Second:          that person possessed the substance with the intent to distribute it.

To "possess with intent to distribute" means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.

Crack cocaine, powder cocaine, heroin, suboxone, marijuana, and methamphetamine are controlled substances within the meaning of the law.

In order for the offense of distribution of a controlled substance to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that a member, prospect, or associate of the SNM knowingly or intentionally distributed a controlled substance.

The term "distribute" means to deliver or to transfer possession or control of something from one person to another. The term "distribute" includes the sale of something by one person to another. It is not necessary, however, for the government to prove that any transfer of money or other thing of value occurred at the same time as, or because of, the distribution.

There must be some nexus between the enterprise and the racketeering activity being conducted by members and/or associates of the enterprise.

I instruct you that "racketeering activity" includes numerous offenses, including those listed above. It is for you to determine whether the enterprise engaged in these activities as charged. You should give the words "engaged in" their ordinary, everyday meaning. For an

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 219

DNM 643

enterprise to be engaged in racketeering activity it is enough to show that the enterprise committed or was planning to commit some racketeering activity within a period of time short enough under all of the circumstances so that it is appropriate to say that the enterprise was engaged in racketeering activity.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 11**, at 1, 25, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 12**, at 1, 26, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 13**, at 1, 27, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 14**, at 1, 28, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 6, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 11: Defendants object to this instruction . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 6, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 12: Defendants object to this instruction . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 6, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 13: Defendants object to this instruction . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 6, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 14: Defendants object to this instruction . . . .")

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 28,** at 1, 3, 55-56, filed January 12, 2018 (Doc. 1641)(28) 1.31 Actual or Constructive Possession)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL**

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 220

DNM 644

MATTERS 1.31, at i, 47 (**2011 Edition** Updated February 22, 2018)(ACTUAL OR CONSTRUCTIVE POSSESSION)(modified)

United States v. Little, 829 F.3d 1177 (10th Cir. 2016)

Henderson v. United States, 135 S. Ct. 1780 (2105)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 221

DNM 645

## JURY INSTRUCTION NO. 27

For you to find any defendant guilty of first degree murder by a deliberate killing of Mr. Molina as charged in Count 7;

The government must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1.  The defendant killed Mr. Molina;

2.  The killing was with the deliberate intention to take away the life of Mr. Molina;

3.  This happened in New Mexico on or about March 7, 2014.

A deliberate intention refers to the state of mind of the defendant. A deliberate intention may be inferred from all of the facts and circumstances of the killing. The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at in a short period of time. A mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill. To constitute a deliberate killing, the slayer must weigh and consider the question of killing and his reasons for and against such a choice.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 47,** at 1, 4, 47, filed January 12, 2018 (Doc. 1641)(47) UJI 14-201 NMRA -- Willful and Deliberate Murder; Essential Elements)(modified)

<u>Authority</u>: UJI 14-201 NMRA (modified)(**Willful and deliberate murder; essential elements**)(adapted)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 222

DNM 646

## JURY INSTRUCTION NO. 28

For you to find any defendant guilty of second degree murder as charged in Count 7, the government must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1.  The defendant killed Mr. Molina;

2.  The defendant knew that his acts created a strong probability of death or great bodily harm to Mr. Molina;

3.  This happened in New Mexico on or about the 7th day of March 2014.

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 223

DNM 647

## JURY INSTRUCTION NO. 29

The fourth element which the government must prove beyond a reasonable doubt as to Count 6 is that Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez conspired to murder Javier Molina.

The fourth element which the government must prove beyond a reasonable doubt as to Count 9 is that Mr. Baca conspired to murder Dwayne Santistevan.

The fourth element which the government must prove beyond a reasonable doubt as to Count 10 is that Mr. Baca conspired to murder Gregg Marcantel.

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose.    To find Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

1. Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez and another person by words or acts agreed together to commit murder;

2. Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez and the other person intended to commit murder;

3. This happened in New Mexico on or about March, 2014, as to Count 6, a date uncertain, but no later than 2013, and continuing to on or about March 9, 2017, as to Counts 9 and 10.

In proving a conspiracy to murder, it is not necessary to show a meeting of the alleged conspirators or the making of an express or formal agreement. The formation and existence of a conspiracy to murder may be inferred from all circumstances tending to show the common intent

and may be proved in the same way as any other fact may be proved, either by direct testimony of the fact or by circumstantial evidence, or by both direct and circumstantial evidence.

Evidence that a person was in the company of or associated with one or more other persons alleged or proved to have been members of a conspiracy is not, in itself, sufficient to prove that such person was a member of the alleged conspiracy.

Evidence of a defendant's membership in a gang, by itself, is insufficient to establish that person's guilt of a crime as a coconspirator.

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 225

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 15**, at 1, 29-30, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 15: Defendants object to this instruction. ")

NM UJI 14-2810 NMRA

NM UJI 14-201 NMRA

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 37,** at 68-69, filed January 12, 2018 (Doc. 1641)(37) UJI 14-2810 NMRA -- Conspiracy: Essential Elements)(modified)

Authority:  UJI 14-2810 NMRA (modified)(**Conspiracy: Essential Elements**)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 38,** at 1, 3, 70, filed January 12, 2018 (Doc. 1641)(38) UJI 14-2810

DNM 649

NMRA -- Conspiracy: Evidence of Association Alone Does Not Prove Membership in Conspiracy)(modified)

<u>Authority</u>: UJI 14-2810 NMRA **(Conspiracy: Evidence of Association Alone Does Not Prove Membership in Conspiracy)**

Appellate Case: 20-2058    Document: 010110415670    Date Filed: 09/29/2020    Page: 226

DNM 650

## JURY INSTRUCTION NO. 30

In this case, you must consider separately whether Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez are guilty or not guilty of each of the charged crimes. Even if you cannot agree upon a verdict as to any single defendant on any particular charge, you must return the verdict or verdicts upon which you agree.

**DEFENDANTS** [sic] **PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 39,** at 1, 3-4, filed January 12, 2018 (Doc. 1641)(39) UJI 14-2812 NMRA -- Conspiracy: Multiple Defendants; Each Defendant Entitled to Individual Consideration)(modified)

Authority: UJI 14-2812 NMRA (**Conspiracy; multiple defendants; each defendant entitled to individual consideration**)

**DEFENDANTS** [sic] **PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 40,** at 1, 4, 72, filed January 12, 2018 (Doc. 1641)(40) UJI 14-2814 NMRA -- Conspiracy: Evidence of Association Alone Does Not Prove Membership in Conspiracy)(modified)

Authority: UJI 14-2814 NMRA (**Conspiracy; evidence of association alone does not prove membership in conspiracy**)

**PROPOSED JURY INSTRUCTIONS,** UNITED STATES' PROPOSED JURY **INSTRUCTION NO. 16,** at 1, 31, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 16: No objection . . . .")

NM UJI 14-201 NMRA.

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 227

DNM 651

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("Defendants insist the New Mexico jury instructions be given, in particular NM UJI 14-323 . . . . ")

UJI 14-323.  AGGRAVATED  BATTERY;  GREAT  BODILY  HARM;  ESSENTIAL ELEMENTS (modified)

**PROPOSED  JURY  INSTRUCTIONS,  UNITED  STATES'  PROPOSED  JURY INSTRUCTION NO. 17,** at 1, 32, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 17: Defendants object to this instruction.")

2 Fed. Jury Prac. & Instr. § 25:09 (6th ed.)(modified)(**The essential elements of the offense charged**)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("Defendants insist the New Mexico jury instructions be given, in particular . . . NM UJI 14-131. ")

UJI 14-131. "GREAT BODILY HARM" DEFINED

**PROPOSED  JURY  INSTRUCTIONS,  UNITED  STATES'  PROPOSED  JURY INSTRUCTION NO. 18,** at 1, 33, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 18: Defendants object to this instruction . . . .")

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 229

## JURY INSTRUCTION NO. 31

When the word "knowingly" is used in these instructions, it means that the act was done

voluntarily and intentionally, and not because of mistake or accident.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 23**, at 1, 40, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS** **[sic]** **PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 30**, at 59, filed January 12, 2018 (Doc. 1641)(30) 1.37 Knowingly -- Deliberate Ignorance)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 23: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.36, at ii, 56 (**2011 Edition** Updated January 2017)(KNOWINGLY -- DELIBERATE IGNORANCE)(adapted)

DNM 653

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 230

## JURY INSTRUCTION NO. 32

You will note that the indictment charges that the crimes charged in Count 6 and Count 7 were committed "on or about" March 2014; the crimes charged in Count 9 and Count 10 were committed "on or about" no later than 2013 and continuing to on or about March 9, 2017.  The government must prove beyond a reasonable doubt that the defendant committed the crimes reasonably near March 2014 (for Count 6 and Count 7); and no later than 2013 and continuing to on or about March 9, 2017 (for Count 9 and Count 10).

**PROPOSED   JURY   INSTRUCTIONS**, **UNITED   STATES'   PROPOSED   JURY INSTRUCTION NO. 22**, at 1, 39, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS   [sic]   PROPOSED   JURY   INSTRUCTIONS**,   **REQUESTED INSTRUCTION NO. 20,** at 1, 3, 45, filed January 12, 2018 (Doc. 1641)(20) 1.18 On or About)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction  No. 22: . . . Defendants object to the modification of the Tenth Circuit pattern instruction in the fashion proposed by the United States.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.18, at i, 38 (**2011 Edition** Updated January 2017)(ON OR ABOUT)(adapted)

## JURY INSTRUCTION NO. 33

Count 7 of the indictment also charges a violation of 18 U.S.C. section 2, which provides that: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

This law makes it a crime to intentionally help someone else commit a crime. To find Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*:   someone else committed the charged crime, and

*Second*: Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the government must prove that Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez consciously shared the other person's knowledge of the underlying criminal act and intended to help him.

Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

Evidence of a defendant's membership in a gang, by itself, is insufficient to establish that person's guilt of a crime as an aider and abettor.

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 231

DNM 655

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. <u>19</u>, at 1, 34, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 36,** at 1, 3, 66, filed January 12, 2018 (Doc. 1641)(36) 2.06 Aid and Abet 18 U.S.C. § 2(a))(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("<u>United States' Proposed Jury Instruction No. 19</u>: Defendants object to this instruction . . . .")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.06, at ii, 79 (**2011 Edition** Updated January 2017)(AID AND ABET 18 U.S.C. § 2(a))(adapted)

Fifth Circuit Pattern Jury Instructions Criminal 2.04 (2011)(**Aiding and Abetting)**

Abet 18 U.S.C. § 2(a)

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 232

DNM 656

## JURY INSTRUCTION NO. 34

Evidence has been presented that Mr. Baca was the subject of unfair inducement. Unfair inducement occurs when government agents unfairly cause the commission of a crime. "Government agents" include law enforcement officers or persons acting under their direction, influence or control.

Where Mr. Baca was not ready and willing to commit the crime of conspiracy to commit the murder of Mr. Marcantel, as charged in Count 10 of the indictment before first being contacted or approached by a government agent, but is induced or persuaded to commit the crime by a government agent, Mr. Baca is a victim of unfair inducement. However, where Mr. Baca was ready and willing to commit the crime at the time of the first contact with the government agent, the mere fact that the government agent provided what appears to be an opportunity to commit the crime is not unfair inducement.

The burden is on the government to prove to your satisfaction beyond a reasonable doubt that Mr. Baca was not unfairly induced. If you have a reasonable doubt as to whether Mr. Baca was unfairly induced, you must find Mr. Baca not guilty.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 44,** at 1, 4, 77, filed January 12, 2018 (Doc. 1641)(44) UJI 14-5160 NMRA -- Entrapment; unfair Inducement, not Predisposed)(modified)

Authority: UJI 14-5160 NMRA (modified)(**Entrapment; unfair inducement; not predisposed)**

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 45,** at 1, 4, 78-79, filed January 12, 2018 (Doc. 1641)(45) UJI 14-5161 NMRA -- Entrapment; law enforcement unconscionable methods and illegitimate purposes)(modified)

Authority: UJI 14-5161 NMRA (modified)(**Entrapment; law enforcement unconscionable methods and illegitimate purposes)**

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 233

DNM 657

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 46,** at 1, 4, 46, filed January 12, 2018 (Doc. 1641)(46) UJI 14-5181 NMRA -- Self-defense; Non deadly Force by Defendant)(modified)

<u>Authority</u>: UJI 14-5161 NMRA (**Self-defense; non-deadly force by defendant)**

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 29,** at 57-58, filed January 12, 2018 (Doc. 1641)(29) 1.36 Coercion or Duress)(modified)

<u>Authority</u>: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.36, at 54-55 (**2011 Edition** Updated January 2017)(COERCION OR DURESS)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 6,** at 1, 2, 20, filed January 12, 2018 (Doc. 1641)(6) 1.05.1 Preponderance of Evidence)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.05.1, at ii, 10 (**2011 Edition** Updated January 2017)(PREPONDERANCE OF EVIDENCE)(modified)

## JURY INSTRUCTION NO. 35

You are here to decide whether the government has proved beyond a reasonable doubt that the defendants are guilty of the crimes charged. The defendants are not on trial for any act, conduct, or crime not charged in the indictment.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crimes charged. The fact that another person *also* may be guilty is no defense to a criminal charge.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 21** at 1, 3, 46, filed January 12, 2018 (Doc. 1641)(21) 1.19 Caution -- Consider Only Crime Charged)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 51, LIMITING INSTRUCTION 404(b): EVIDENCE TO BE ISSUED AT THE CLOSE OF TRIAL,** at 1, 5, 88, filed January 12, 2018 (Doc. 1641)(51) Limiting Instruction 404(b): Evidence to be Issued at the Close of Trial)(modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.19, at i, 31 (**2011 Edition** Updated January 2017)(CAUTION – CONSIDER ONLY CRIME CHARGED)(modified)

Authority: *United States v. Rodella*, 101 F.Supp. 3d 1075, 1086 (D.N.M. 2015)

## JURY INSTRUCTION NO. 36

If you find any defendant guilty, it will be my duty to decide what the punishment will be. You should not discuss or consider the possible punishment in any way while deciding your verdict.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 40**, at 1, 58, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 22** at 1, 3, 47, filed January 12, 2018 (Doc. 1641)(22) 1.20 Caution -- Punishment (Non-Capital Cases))(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 12, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury instruction  No. 40: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.20, at i, 32 (**2011 Edition** Updated January 2017)(CAUTION -- PUNISHMENT)(NON-CAPITAL CASES)(adapted)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 236

DNM 660

## JURY INSTRUCTION NO. 37

The rights of Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez in this case are separate

and distinct.   You must separately consider the evidence against Mr. Sanchez, Mr. Baca, Mr.

Herrera, and Mr. Perez and return a separate verdict for each as to each crime charged.

Your verdicts as to Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez, whether they are

guilty or not guilty, should not affect your verdicts as to any other defendant on any other

charges.

**DEFENDANTS   [sic]   PROPOSED   JURY   INSTRUCTIONS,   REQUESTED
INSTRUCTION NO. 23,** at 1, 3, 48, filed January 12, 2018 (Doc. 1641)(23) 1.22 Multiple
Defendants -- Multiple Counts)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth
Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL
MATTERS** 1.21, at i, 33 (**2011 Edition** Updated January 2017)(adapted)

**PROPOSED   JURY   INSTRUCTIONS,   UNITED   STATES'   PROPOSED   JURY
INSTRUCTION NO. 39,** at 1, 57, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS   [sic]   PROPOSED   JURY   INSTRUCTIONS,   REQUESTED
INSTRUCTION NO. 23,** at 1, 3, 48, filed January 12, 2018 (Doc. 1641)(23) 1.22 Multiple
Defendants -- Multiple Counts)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY
INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("United States'
Proposed Jury Instruction No. 39: No objection as this is the unmodified Tenth Circuit
instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth
Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL
MATTERS** 1.22, at i, 34 (**2011 Edition** Updated January 2017)(MULTIPLE DEFENDANTS --
MULTIPLE COUNTS)

18 U.S.C. § 1959

United States v. Kamahele, 748 F.3d 984, 1012 (10th Cir. 2014)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 237

DNM 661

## JURY INSTRUCTION NO. 38

In a moment the Courtroom Deputy Clerk will escort you to the jury room and provide each of you with a copy of the instructions that I have just read. Any exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you should first select a foreperson, who will help to guide your deliberations and will speak for you here in the courtroom. The second thing you should do is review the instructions. Not only will your deliberations be more productive if you understand the legal principles upon which your verdicts must be based, but for your verdicts to be valid, you must follow the instructions throughout your deliberations. Remember, you are the judges of the facts, but you are bound by your oath to follow the law stated in the instructions.

To reach a verdict, whether it is guilty or not guilty, all of you must agree. Your verdict must be unanimous on each count of the indictment as to each defendant charged. Your deliberations will be secret. You will never have to explain your verdicts to anyone.

You must consult with one another and deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong. But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times, you are judges -- judges of the facts. You must decide whether the government has proved Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez guilty beyond a reasonable doubt as to each of the charges individually made against them.

A verdict form has been prepared for your convenience.

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 238

DNM 662

[Explain the Verdict Form]

The foreperson will write the unanimous answer of the jury in the space provided for each count of the indictment, either guilty or not guilty.  At the conclusion of your deliberations, the foreperson should date and sign the verdict form.

If you need to communicate with me during your deliberations, the foreperson should write the message and give it to the Court Security Officer.  I will either reply in writing or bring you back into the court to respond to your message.  Under no circumstances should you reveal to me the numerical division of the jury.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 41,** at 1, 59-60, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 24,** at 1, 3, 40, filed January 12, 2018 (Doc. 1641)(24) 1.23 Duty to Deliberate -- Verdict Form)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 34,** at 1, 3, 64, filed January 12, 2018 (Doc. 1641)(34) 1.43 Partial Verdict Instruction)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction   No. 41: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.23, at i, 35-36 (**2011 Edition** Updated January 2017)(DUTY TO DELIBERATE - - VERDICT FORM)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 33,** at 1, 3, 62-63, filed January 12, 2018 (Doc. 1641)(33) 1.43 Modified *Allen* Instruction)(modified)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 239

DNM 663

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 34,** at 1, 3, 64, filed January 12, 2018 (Doc. 1641)(34) 1.43 Partial Verdict Instruction)modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS** 1.42, at 63-64 (**2011 Edition** Updated January 2017)(MODIFIED *ALLEN* INSTRUCTION)(modified)

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 240

DNM 664

## JURY INSTRUCTION NO. 39

Let me remind you again that nothing I have said in these instructions, nor anything I have said or done during the trial, was meant to suggest to you what I think your decision should be.  That is your exclusive responsibility.

**DEFENDANTS   [sic]   PROPOSED   JURY   INSTRUCTIONS**,   **REQUESTED INSTRUCTION NO. 35,** at 1, 3, 65, filed January 12, 2018 (Doc. 1641)(35) 1.44 Communication with the Court)(modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS** 1.44, at ii, 66 **(2011 Edition** Updated January 2017)(COMMUNCIATION WITH THE COURT)(modified)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 241

DNM 665

## JURY INSTRUCTION NO. 40

Faithful performance by you of your duties is vital to the administration of justice.

United States v. Gaspar Leal, No. CIV 16-3069 JB, Instruction No. 20, at 25, filed December 6, 2017 (Doc. 183)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 242

DNM 666

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                      No. CR 15-4268 JB

DANIEL SANCHEZ, ANTHONY RAY
BACA, CARLOS HERRERA, and
RUDY PEREZ,

       Defendants.

## V E R D I C T

### **DANIEL SANCHEZ**

#### COUNT 6

WE, the Jury, find the defendant, **DANIEL SANCHEZ,** _____
                                              (guilty or not guilty)
of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of
the Indictment.

#### COUNT 7

WE, the Jury, find the defendant, **DANIEL SANCHEZ,** _____
                                              (guilty or not guilty)
of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the
Indictment.

### **ANTHONY RAY BACA**

#### COUNT 6

WE, the Jury, find the defendant, **ANTHONY RAY BACA,** _____
                                              (guilty or not guilty)
of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of
the Indictment.

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 243

DNM 667

### COUNT 7

WE, the Jury, find the defendant, **ANTHONY RAY BACA**, _____
(guilty or not guilty)

of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the

Indictment.

### COUNT 9

WE, the Jury, find the defendant, **ANTHONY RAY BACA**, _____
(guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Dwayne Santistevan, as charged in Count

9 of the Indictment.

### COUNT 10

WE, the Jury, find the defendant, **ANTHONY RAY BACA**, _____
(guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Gregg Marcantel, as charged in Count 10

of the Indictment.

### CARLOS HERRERA

### COUNT 6

WE, the Jury, find the defendant, **CARLOS HERRERA**, _____
(guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of

the Indictment.

### COUNT 7

WE, the Jury, find the defendant, **CARLOS HERRERA**, _____
(guilty or not guilty)

of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the

Indictment.

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 244

DNM 668

**RUDY PEREZ**

### COUNT 6

WE, the Jury, find the defendant, **RUDY PEREZ,** _____
(guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of

the Indictment.

### COUNT 7

WE, the Jury, find the defendant, **RUDY PEREZ,** _____
(guilty or not guilty)

of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the

Indictment.

Dated this _____ day of _____, 2018.


_____

FOREPERSON




**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, VERDICT,** at 1, 5, 89-92, filed
January 12, 2018 (Doc. 1641)(Verdict Form)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY
INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("The
[Government's] Verdict Forms are insufficient . . . . ")

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 245

DNM 669

Case 2:15-cr-04268-JB   Document 1875   Filed 03/05/18   Page 1 of 73

DNM 670

Page: 246

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

**FILED**

UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

IN THE UNITED STATES DISTRICT COURT

MAR – 5 2018 

FOR THE DISTRICT OF NEW MEXICO

**MATTHEW J. DYKMAN**
CLERK

UNITED STATES OF AMERICA,

   Plaintiff,

vs.            No. CR 15-4268 JB

ANGEL DELEON, JOE LAWRENCE
GALLEGOS, EDWARD TROUP, a.k.a.
"Huero Troup," LEONARD LUJAN,
BILLY GARCIA, a.k.a. "Wild Bill,"
EUGENE MARTINEZ, a.k.a. "Little
Guero," ALLEN PATTERSON,
CHRISTOPHER CHAVEZ, a.k.a. "Critter,"
JAVIER ALONSO, a.k.a. "Wineo,"
ARTURO ARNULFO GARCIA, a.k.a.
"Shotgun," BENJAMIN CLARK, a.k.a.
"Cyclone," RUBEN HERNANDEZ;
JERRY ARMENTA, a.k.a. "Creeper,"
JERRY MONTOYA, a.k.a. "Boxer,"
MARIO RODRIGUEZ, a.k.a. "Blue,"
TIMOTHY MARTINEZ, a.k.a. "Red,"
MAURICIO VARELA, a.k.a. "Archie,"
a.k.a. "Hog Nuts," DANIEL SANCHEZ,
a.k.a. "Dan Dan," GERALD ARCHULETA,
a.k.a. "Styx," a.k.a. "Grandma," CONRAD
VILLEGAS, a.k.a. "Chitmon," ANTHONY
RAY BACA, a.k.a. "Pup," ROBERT
MARTINEZ, a.k.a. "Baby Rob," ROY
PAUL MARTINEZ, a.k.a. "Shadow,"
CHRISTOPHER GARCIA, CARLOS
HERRERA, a.k.a. "Lazy," RUDY PEREZ,
a.k.a. "Ru Dog," ANDREW GALLEGOS,
a.k.a. "Smiley," SANTOS GONZALEZ;
PAUL RIVERA, SHAUNA GUTIERREZ,
and BRANDY RODRIGUEZ,

   Defendants.

**COURT'S TWELFTH PROPOSED JURY INSTRUCTIONS**
(with citations)

DNM 671

Page: 247    Date Filed: 09/29/2020    Document: 010110415670    Appellate Case: 20-2058

## JURY INSTRUCTION NO. 1

Members of the Jury:

In any jury trial there are, in effect, two judges.  I am one of the judges, you are the other.

I am the judge of the law.  You, as jurors, are the judges of the facts.  I presided over the trial and

decided what evidence was proper for your consideration.  It is also my duty at the end of the

trial to explain to you the rules of law that you must follow and apply in arriving at your verdicts.

In explaining the rules of law that you must follow, first, I will give you some general

instructions which apply in every criminal case -- for example, instructions about burden of proof

and insights that may help you to judge the believability of witnesses.  Then I will give you some

specific rules of law that apply to this particular case and, finally, I will explain the procedures

you should follow in your deliberations, and the possible verdicts you may return.  These

instructions will be given to you for use in the jury room, so you need not take notes.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 1,** at 1, 2, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 3,** at 1, 2, 17, filed January 12, 2018 (Doc. 1641)(3) 1.03 Introduction to Final Instructions)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 1: No objection to unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS** (**Criminal Cases**) **GENERAL MATTERS** 1.03, at i, 7, (**2011 Edition** Updated January, 2017)(INTRODUCTION TO FINAL INSTRUCTIONS)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 1, at 3, filed February 25, 2018 (Doc. 1827-1)

Fifth Circuit Pattern Instruction 1.05

Ninth Circuit Pattern Instruction 3.05

## JURY INSTRUCTION NO. 2

You, as jurors, are the judges of the facts. But in determining what actually happened -- that is, in reaching your decision as to the facts -- it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences. However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdicts should be. These should be entirely up to you.

It is also your duty to base your verdicts solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 2**, at 1, 3, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 4**, at 1, 2, 18, filed January 12, 2018 (Doc. 1641)(4) 1.04 Duty to Follow Instructions)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, filed January 19, 2018 (Doc. 1662)("United States Proposed Jury Instruction No. 2: No objection to unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.04, at i, 8 (**2011 Edition** Updated January 2017)(DUTY TO FOLLOW INSTRUCTIONS)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 2, at 4, filed February 25, 2018 (Doc. 1827-1)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 249

## JURY INSTRUCTION NO. 3

The government has the burden of proving defendants Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, and Rudy Perez guilty beyond a reasonable doubt. The law does not require any individual defendant to prove his innocence or produce any evidence at all.  The government has the burden of proving each defendant, individually, guilty beyond a reasonable doubt, and if it fails to do so for any individual defendant, you must find that defendant not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of a defendant's guilt.  There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt.  It is only required that the government's proof exclude any "reasonable doubt" concerning any individual defendant's guilt.  A reasonable doubt is a doubt based on reason and common sense.  It may arise after careful and impartial consideration of all the evidence, or from lack of evidence.  If, based on your consideration of the evidence, you are firmly convinced that a defendant is guilty of the crimes charged, you must find him guilty of that charge.  If on the other hand, you think there is a reasonable doubt about the truth of any charge, then you must give the defendant the benefit of the doubt and find him not guilty of that charge.

It is your duty to consider the evidence applicable to each defendant, separately.  You must consider whether a reasonable doubt exists as to each count charged against each individual defendant.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 5**, at 1, 17, filed January 12, 2018 (Doc. 1635)(modified)

DNM 675

Appellate Case: 20-2058     Document: 01110415670     Date Filed: 09/29/2020     Page: 251

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 5,** at 1, 2, 19, filed January 12, 2018 (Doc. 1641)(modified 1.05)(5) 1.05 Presumption of Innocence -- Burden of Proof -- Reasonable Doubt)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 6,** at 1, 2, 20 filed January 12, 2018 (Doc. 1641)(6) 1.05.1 Preponderance of Evidence)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 4-5, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 5: The Defendants' objected to the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.05, at 1, 9 (**2011 Edition** Updated January 2017) (PRESUMPTION OF INNOCENCE -- BURDEN OF PROOF -- REASONABLE DOUBT)(adapted)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.05.1, at i, 10 (**2011 Edition** Updated January 2017) (PREPONDERANCE OF EVIDENCE )(modified)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 3, at 5, filed February 25, 2018 (Doc. 1827-1)

DNM 676

Appellate Case: 20-2058   Document: 01110415670   Date Filed: 09/29/2020   Page: 252

### JURY INSTRUCTION NO. 4

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations that the lawyers agreed to.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked. I also ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 24**, at 1, 41, filed January 12, 2018 (Doc. 8)(Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 7,** at 1, 2, 21, filed January 12, 2018 (Doc. 1641)(7) 1.06 Evidence -- Defined)

DNM 677

Appellate Case: 20-2058    Document: 01011041567 0    Date Filed: 09/29/2020    Page: 253

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 24: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.06, at i, 11 (**2011 Edition** Updated January 2017)(EVIDENCE -- DEFINED)(modified)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 4, at 7, filed February 25, 2018 (Doc. 1827-1)

## JURY INSTRUCTION NO. 5

During the course of this trial, and on multiple occasions throughout the trial, you have heard evidence that was admitted for a limited purpose and as to a particular defendant, only.

Each time this type of evidence was admitted, I instructed you of the specific limitations placed on your use of that evidence. By providing these instructions, I was not suggesting that you must or should find the particular evidence credible or probative of any issue in this case. However, in the event you decide to consider the limited evidence, then you may only use it only for the limited purpose, and only as to the particular defendant, for which it was admitted.

You are not to consider any limited evidence for any other purpose than the particular purpose for which it was admitted. And, you may not use it in any way during your deliberations concerning any defendant against whom the evidence was not admitted.

**DEFENDANT DANIEL SANCHEZ'S PROPOSED LIMITING INSTRUCTION,** at 1, 2-3, filed February 23, 2018 (Doc. 1821)

Authority Federal Rule of Evidence 105; 9th Cir. Pattern Instruction 2.11 Evidence for Limited Purpose (no comparable 10th Circuit or 5th Circuit Limiting Instruction could be located); *See United States v. Armijo*, 5 F3d 1229, 1232 (9th Cir. 1993). For example, in *United States v Sauza-Martinez*, 217 F.3d 754, 760 (9th Cir. 2000), the Ninth Circuit held the trial court "had no alternative" but to give the jury a limiting instruction *sua sponte* when a testifying co-defendant's post-arrest statements were admitted as substantive evidence against her under Fed. R. Evid. 801(d)(2)(A), but were not admissible against another co-defendant "under *any* theory" (emphasis in original). Under the circumstances of the case, it was plain error to fail to give the limiting instruction *sua sponte*. *Id.* at 761.

DNM 679

Page: 255   Date Filed: 09/29/2020   Document: 010110415670   Appellate Case: 20-2058

## JURY INSTRUCTION NO. 6

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusion that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 27,** at 1, 44, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 8,** at 1, 2, 22, filed January 12, 2018 (Doc. 1641)(8) 1.07 Evidence -- Direct and Circumstantial -- Influences)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 27: No objection to the unmodified Tenth Circuit instruction.")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 9-10, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 27: Defendants object to this instruction because the United States

DNM 680

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 256

have omitted the first two paragraphs of the pattern instruction . . . . Defendants propose using the entire instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.07, at i, 13 (**2011 Edition** Updated January 2017)(EVIDENCE -- DIRECT AND CIRCUMSTANTIAL -- INFERENCES)(adapted)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 5, at 8, filed February 25, 2018 (Doc. 1827-1)

DNM 681

Page: 257

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 7

I remind you that it is your job to decide whether the government has proved the guilt of Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez beyond a reasonable doubt. In doing so, you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence that I have admitted as to any one defendant as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses who testified in this case. You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was. In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness admit prior instances of untruthfulness? Did the witness testify falsely on prior occasions? Did the witness make prior statements that were inconsistent with his or her testimony? Did the witness collude with others to create false evidence on prior occasions? Did the witness have the opportunity to collude with others prior to his testimony? Did the witness have a personal interest in the outcome in this case? Did the witness have any relationship with the government or a defendant? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he/she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you

should keep in mind that innocent misrecollection -- like failure of recollection -- is not uncommon.

You may not consider any defendant's decision not to testify as evidence of guilt. I want you to clearly understand, please, that the Constitution of the United States grants to Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez the right to remain silent. That means the right not to testify or call any witnesses. That is a constitutional right in this country, it is very carefully guarded, and you should understand that no presumption of guilt may be raised and no inference of any kind may be drawn from the fact that a defendant did not take the witness stand and testify or call any witnesses.

In reaching a conclusion on a particular point, or ultimately in reaching verdicts in this case, do not make any decisions simply because there were more witnesses on one side than on the other. What is important is how believable a witness was and how much weight you think that their testimony deserves.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 28,** at 1, 45-46, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 6,** at 1, 18, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 9,** at 1, 2, 23-24, filed January 12, 2018 (Doc. 1641)(9) 1.08 Credibility of Witnesses)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 10,** at 1, 2, 25, filed January 12, 2018 (Doc. 1641)(10) 1.08.1 Non-Testifying Defendant)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 6: No objection to the unmodified Tenth Circuit instruction.")

DNM 682

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 258

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 8: Defendants object to the use of this instruction.")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 10, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 28: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.08, at i, 14-15 (**2011 Edition** Updated January 2017)(CREDIBILITY OF WITNESSES)(adapted)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.08.1, at i, 16 (**2011 Edition** Updated January 2017)(NON-TESTIFYING DEFENDANT)(modified)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 6, at 9-10, filed February 25, 2018 (Doc. 1827-1)

Fifth Circuit Pattern Instruction 1.08

Appellate Case: 20-2058    Document: 010110415670    Date Filed: 09/29/2020    Page: 260

DNM 684

## JURY INSTRUCTION NO. 8

You have heard evidence that, before this trial, witnesses have made statements that may be different from the witnesses' testimony here in court.

These earlier statements were brought to your attention only to help you decide how believable the witnesses' testimony in this trial was.  You cannot use the witnesses' prior statements as proof of anything else.  You can only use them as one way of evaluating the witnesses' testimony here in court.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY **INSTRUCTION NO. 29**, at 1, 47, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 11** at 1, 2, 26, filed January 12, 2018 (Doc. 1641)(11) 1.10 Impeachment by Prior Inconsistencies)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 10, filed January 19, 2018 (Doc. 1663)(object until completed with the Use Note)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.10, at i, 21 (**2011 Edition** Updated January 2017)(IMPEACHMENT BY PRIOR INCONSISTENCIES)(adapted)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 7, at 11, filed February 25, 2018 (Doc. 1827-1)

DNM 685

Page: 261    Date Filed: 09/29/2020    Document: 01110415670    Appellate Case: 20-2058

## JURY INSTRUCTION NO. 9

You have heard evidence that a defendant has been convicted of a felony, that is, a crime punishable by imprisonment for a term of years. The fact that a defendant has been convicted of another crime does not mean that a defendant committed the crime charged in this case, and you must not use a defendant's prior conviction as proof of the crime charged in this case. You may find them guilty of the crimes charged here only if the government has proved beyond a reasonable doubt that they committed them.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 30**, at 1, 48, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 12,** at 1, 2, 27 filed January 12, 2018 (Doc. 1641)(12) 1.11 Impeachment by Prior Conviction (Defendant's Testimony))(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 10, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 30: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.11, at i, 22 (**2011 Edition** Updated January 2017)(IMPEACHMENT BY PRIOR CONVICTION Defendant's Testimony)(adapted)

## JURY INSTRUCTION NO. 10

The testimony of a witness may be discredited or impeached by showing that the witness previously has been convicted of a felony, that is, of a crime punishable by imprisonment for a term of years or of a crime of dishonesty or false statement. A prior conviction does not mean that a witness is not qualified to testify, but is merely one circumstance that you may consider in determining the credibility of the witness. You may decide how much weight to give any prior felony conviction or crime of dishonesty that was used to impeach a witness.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 13,** at 1, 2, 28, filed January 12, 2018 (Doc. 1641)(13) 1.12 Impeachment by Prior Conviction (Witness Other Than Defendant)(modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.12, at i, 23 (**2011 Edition** Updated January 2017)(IMPEACHMENT BY PRIOR CONVICTION (Witness Other Than Defendant)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 8, at 12, filed February 25, 2018 (Doc. 1827-1)

## JURY INSTRUCTION NO. 11

You have heard the testimony of Eric Duran, who was a witness in the government's case.  You also heard testimony from Officer Clint Snodgrass concerning his opinion about Mr. Duran's character for truth-telling.  It is up to you to decide from what you heard here whether Mr. Duran was telling the truth in this trial.

**DEFENDANTS     [sic]     PROPOSED     JURY     INSTRUCTIONS**,     **REQUESTED INSTRUCTION NO. 14,** at 1, 2, 29, filed January 12, 2018 (Doc. 1641)(14) Impeachment by Evidence of Untruthful Character) (modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.13, at i, 24 (**2011 Edition** Updated January 2017)((IMPEACHMENT BY EVIDENCE OF UNTRUTHFUL CHARACTER)(modified)

DNM 688

Page: 264

Date Filed: 09/29/2020

Document: 01011041 5670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 12

### Accomplice

An accomplice is someone who joined with another person in committing a crime, voluntarily and with common intent. The testimony of an accomplice may be received in evidence and considered by you, even though it is not supported by other evidence. You may decide how much weight it should have.

You are to keep in mind, however, that accomplice testimony should be received with caution and considered with great care. You should not convict any defendant based on the unsupported testimony of an alleged accomplice, unless you believe the unsupported testimony beyond a reasonable doubt.

### Informant

An informant is someone who provides evidence against someone else for a personal reason or advantage. The testimony of an informant alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt, even though not corroborated or supported by other evidence. You must examine and weigh an informant's testimony with greater care than the testimony of an ordinary witness. You must determine whether the informant's testimony has been affected by self-interest, by an agreement the witness has with the government, by the witness's own interest in the outcome of the case, or by prejudice against any defendant.

You should not convict any defendant based on the unsupported testimony of an informant, unless you believe the unsupported testimony beyond a reasonable doubt.

DNM 689

Page: 265     Date Filed: 09/29/2020     Document: 01011041 5670     Appellate Case: 20-2058

Immunity

A person may testify under a grant of immunity (an agreement with the government). His testimony alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt even though it is not corroborated or supported by other evidence.  You should consider testimony given under a grant of immunity with greater care and caution than the testimony of an ordinary witness.  You should consider whether testimony under a grant of immunity has been affected by the witness's self-interest, the government's agreement, the witness's interest in the outcome of the case, or by prejudice against any defendant.

On the other hand, you should also consider that an immunized witness can be prosecuted for perjury for making a false statement.  After considering these things, you may give testimony given under a grant of immunity such weight as you find it deserves.

You should not convict any defendant based on the unsupported testimony of an immunized witness, unless you believe the unsupported testimony beyond a reasonable doubt.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 32**, at 1, 50, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 35**, at 1, 53, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 36**, at 1, 54, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 15**, at 1, 2, 30-32, filed January 12, 2018 (Doc. 1641)(15) 1.14 Accomplice -- Informant -- Immunity)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 32, filed January 19, 2018 (Doc. 1663)("United States'

DNM 690

Page: 266     Date Filed: 09/29/2020

Appellate Case: 20-2058     Document: 010110415670

Proposed Jury Instruction  No. 32: Defendants object to the use of this unmodified Tenth Circuit instruction as it fails to include the "Accomplice" portion ….)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 11, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction  No. 35: Defendants object to this instruction.  It is duplicative of the United States Proposed Instruction No. 32 . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 11-12, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction  No. 36: Defendants object to this instruction.  It is duplicative of the United States Proposed Instruction No. 32 . . . .")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.14, at i, 25-26 (**2011 Edition** Updated January 2017)(ACCOMPLICE -- INFORMANT -- IMMUNITY)[as appropriate])(adapted)

DNM 691

Page: 267

Date Filed: 09/29/2020

Document: 01011045670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 13

The government has called as witnesses, alleged accomplices, who were named as accomplices in this or related criminal cases.  The government has entered into plea agreements with these alleged accomplices: Mario Rodriquez, Jerry Armenta, Jerry Montoya, Timothy Martinez, Lupe Urquizo, David Calbert, Roy Paul Martinez, Robert Martinez, Manuel Jacob Armijo, Frederico Munoz, Gerald Archuleta, Mario Montoya, and Ben Clark, providing for the possibility of a lesser sentence than he would otherwise likely receive.  Plea bargaining is lawful and proper, and the rules of this court expressly provide for it.

An alleged accomplice, including one who has entered into a plea agreement with the government, is not prohibited from testifying.  On the contrary, the testimony of an alleged accomplice may, by itself, support a guilty verdict.  You should receive this type of testimony with caution and weigh it with great care. You should never convict any defendant upon the unsupported testimony of such an accomplice, unless you believe that testimony beyond a reasonable doubt.  The fact that an accomplice has entered into a guilty plea to the offense charged is not evidence of the guilt of any other person.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 33**, at 1, 51, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 16,** at 1, 2, 33, filed January 12, 2018 (Doc. 1641)(16) 1.15 Accomplice – Co-Defendant -- Plea Agreement)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 33, filed January 19, 2018 (Doc. 1663)("The Defendants request that the Court use the unmodified pattern instruction.")

DNM 692

Page: 268

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.15, at i, 27 (**2011 Edition** Updated January 2017)(ACCOMPLICE **--** AN ALLEGED ACCOMPLICE -- CO-DEFENDANT -- PLEA AGREEMENT)(modified)

**JURY INSTRUCTION NO. 14**

The testimony of a drug abuser must be examined and weighed by the jury with greater caution than the testimony of a witness who does not abuse drugs.

Billy Cordova, Mario Montoya, Eric Duran, Roy Paul Martinez, Robert Martinez, Frederico Muñoz, Javier Rubio, Manuel Jacob Armijo, Jerry Armenta, Mario Rodriguez, Lupe Urquizo, Jerry Montoya, Gerald Archuleta, David Calbert, Timothy Martinez, Bobby Delgado, and Julian Romero may be considered abusers of drugs.

You must determine whether the testimony of any witness has been affected by the use of drugs or the need for drugs.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 34**, at 1, 52, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 17**, at 1, 2, 24, filed January 12, 2018 (Doc. 1641)(17) 1.16 Witnesses' Use of Addictive Drugs)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 11, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 34: No objection as this is the unmodified Tenth Circuit instruction".)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.16, at i, 28 (**2011 Edition** Updated January 2017)(WITNESS'S USE OF ADDICTIVE DRUGS)(modified)

**JURY INSTRUCTION NO. 15**

During the trial you heard the testimony of Tim Bryan, who expressed opinions regarding the forensic analysis of computer tablets, and Dr. Heather Brislen, who expressed opinions regarding Rudy Perez's medical conditions. In some cases, such as this one, scientific, technical, or other specialized knowledge may assist the jury in understanding the evidence or in determining a fact in issue. A witness who has knowledge, skill, experience, training or education, may testify and state an opinion concerning such matters.

You are not required to accept such an opinion. You should consider opinion testimony just as you consider other testimony in this trial. Give opinion testimony as much weight as you think it deserves, considering the education and experience of the witness, the soundness of the reasons given for the opinion, and other evidence in the trial.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 31**, at 1, 49, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 18,** at 1, 2, 35, filed January 12, 2018 (Doc. 1641)(18) 1.17 Expert Witness)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 19,** at 1, 3, 36-44, filed January 12, 2018 (Doc. 1641)(19) Expert Witness -- DNA Evidence)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 10, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction  No. 31: No objection to the use of the unmodified Tenth Circuit instruction.")

Authority: *United States v. Starzecpyzel,* 880 F.Supp. 1027, 1050-51 (S.D.N.Y. 1995); President's Council of Advisors on Science and Technology, *Forensic Science in Criminal Courts: Ensuring Scientific Validity of Feature Comparison Methods* (Sept. 20, 2016); President's Council of Advisors on Science and Technology, *An Addendum to the PCAST Report on Forensic Science in Criminal Court.*

DNM 695

Page: 271

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.17, at i, 29 (**2011 Edition** Updated January 2017)(EXPERT WITNESS)(adapted)

DNM 696

Page: 272   Date Filed: 09/29/2020   Document: 010110415670   Appellate Case: 20-2058

## JURY INSTRUCTION NO. 16

Evidence relating to any statement attributed to Mr. Baca, Mr. Herrera, or Mr. Perez alleged to have been made after the commission of the crime (or crimes) charged in this case but not made in court, should always be considered by you with caution and weighed with care. You should give any such statement the weight you think it deserves, after considering all the circumstances under which the statement was made.

In determining whether any such statement is reliable and credible, consider factors bearing on the voluntariness of the statement. For example, consider the age, gender, training, education, occupation, and physical and mental condition of Mr. Baca, Mr. Herrera, or Mr. Perez, and any evidence concerning his treatment while under interrogation if the statement was made in response to questioning by government officials, agents, or informants working on behalf of the government, and all the other circumstances in evidence surrounding the making of the statement.

After considering all this evidence, you may give such weight to the statement as you feel it deserves under all the circumstances. If you determine that the statement is unreliable or not credible, you may disregard the statement entirely.

As I have previously instructed, any such statement may be considered against the declarant-defendant only, and cannot be considered in any way, whatsoever, as evidence with respect to any other defendant on trial.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 25,** at 1, 3, 5, filed January 12, 2018 (Doc. 1641)(25) 1.26 Confession -- Statement -- Voluntariness by Defendant)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth

Appellate Case: 20-2058     Document: 01011041567     Date Filed: 09/29/2020     Page: 273

Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.26, at i, 40 (**2011 Edition** Updated January 2017)(CONFESSION-STATEMENT -- VOLUNTARINESS BY DEFENDANT)(Multiple Defendants))(adapted)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 26,** at 1, 3, 52-53, filed January 12, 2018 (Doc. 1641)(26) Identification Testimony)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.29, at i, 44 (**2011 Edition** Updated January 2017)(IDENTIFICATION TESTIMONY)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 27,** at 1, 3, 54, filed January 12, 2018 (Doc. 1641)(27) 1.30 Similar Acts) (modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 27,** at 1, 5, 87, filed January 12, 2018 (Doc. 1641)(27) 1.30 Similar Acts)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 50, LIMITING INSTRUCTION 404(b): EVIDENCE INTRODUCED AT TRIAL,** at 1, 5, 88, filed January 12, 2018 (Doc. 1641)(50) Limiting instruction 404(b): Evidence Introduced at Trial)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 51,** at 1, 5, 89, filed January 12, 2018 (Doc. 1641)(51) Limiting Instruction 404(b): Evidence to be Issued at the Close of Trial)(modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.30, at i, 46 (**2011 Edition** Updated January 2017)(SIMILAR ACTS)

Authority: *United States v. Rodella*, 101 F.Supp. 3d 1075, 1085-86 (D.N.M. 2015)

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 37,** at 1, 55, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 37: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL**

DNM 698

Page: 274

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

**MATTERS** 1.25, at i, 38 (**2011 Edition** Updated January 2017)(VOLUNTARINESS OF STATEMENT BY DEFENDANT)(Single Defendants)(modified)

DNM 699

Page: 275

Date Filed: 09/29/2020

Document: 01110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 17

During this trial, you have heard sound recordings of certain conversations. These conversations may be considered by you as you would any other evidence. You were also shown transcripts of those recorded conversations.

Keep in mind that the transcripts are not evidence. They were shown to you only as a guide to help you follow what was being said. The recordings themselves are the evidence. If you noticed any differences between what you heard on the recordings and what you read in the transcripts, you must rely on what you heard, not what you read. If you could not hear or understand certain parts of the recordings, you must ignore the transcript as far as those parts are concerned.

As I have previously instructed, any such recordings may be considered as evidence against the defendant who is the subject of the recording, only, and cannot be considered in any way, whatsoever, as evidence with respect to any other defendant on trial.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY **INSTRUCTION NO. 38,** at 1, 56, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 31,** at 1, 3, 60, filed January 12, 2018 (Doc. 1641)(31) 1.40 Cautionary Instruction During Trial -- Transcript)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 10, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 38: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.40, at ii, 61 (**2011 Edition** Updated January 2017)(CAUTIONARY INSTRUCTION DURING TRIAL Transcript of Recorded Conversation)

DNM 700

Page: 276

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 18

Certain charts and summaries have been shown to you to help explain the evidence in this case. Their only purpose is to help explain the evidence. These charts and summaries are not evidence or proof of any facts.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 26**, at 1, 43, filed January 12, 2018 (Doc. 1635)(32) 1.41 Summaries and Charts)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 32,** at 1, 3, 61, filed January 12, 2018 (Doc. 1641)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 9, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 26: . . . . If the charts and summaries are not otherwise objectionable, Defendants would not object to the use of this instruction as it is an unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.41, at ii, 62 (**2011 Edition** Updated January 2017)(SUMMARIES AND CHARTS Not Received In Evidence)

DNM 701

Page: 277

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 19

The parties have agreed to certain facts that have been stated to you. These facts are now conclusively established.

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("The defendants . . . request the Court to follow the Ninth Circuit Pattern Instructions, Sections . . . 2.4 . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("The defendants . . . request the Court to follow the Ninth Circuit Pattern Instructions, Sections 2.3 . . . .")

DNM 702

Page: 278    Date Filed: 09/29/2020    Document: 010110415670    Appellate Case: 20-2058

## JURY INSTRUCTION NO. 20

The word "racketeering" has certain implications in our society. Use of that term in the statute and in this courtroom should not be regarded as having anything to do with your determination of whether the guilt of any defendant has been proven. The term is only a term used by Congress to describe the statute.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 7, at 1, 19, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 48,** at 1, 4, 82, filed January 12, 2018 (Doc. 1641)(48) 2.74.1 Racketeer Influenced and Corrupt Organizations Act: Prejudice from the Word "Racketeering")(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 2, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 7: No objection to the unmodified Tenth Circuit instruction.")

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74.1, at v, 229 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT Prejudice From The Word "Racketeering")

DNM 703

Page: 279   Date Filed: 09/29/2020   Document: 01110415670   Appellate Case: 20-2058

## JURY INSTRUCTION NO. 21

Counts 6, 7, 9, and 10 charge specific defendants with committing violent crimes in aid of racketeering in violation of 18 U.S.C. § 1959.

That law makes it a crime for any person who, as consideration for a promise or agreement to pay anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the law of any State or the United States, or attempts or conspires so to do.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 8**, at 1, 20-21, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 8: Defendants object to the uses of this instruction . . . . ")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74, at v, 228 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT 18 U.S.C. § 1962(a)(Introductory Paragraph))(modified)

DNM 704

Appellate Case: 20-2058   Document: 01110415670   Date Filed: 09/29/2020   Page: 280

## JURY INSTRUCTION NO. 22

Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez are on trial before you upon an Indictment brought by the Grand Jury. Before reading the indictment to you, I remind you that the Indictment or formal charge against Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez is not evidence of guilt. Indeed, Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez are presumed by the law to be innocent.

In this case, the Indictment charges as follows:

### Count 6

### Conspiracy to Murder Javier Molina

In March 2014, in Doña Ana County, in the District of New Mexico and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, JERRY ARMENTA, a.k.a. "Creeper," JERRY MONTOYA, a.k.a. "JR," a.k.a. "Plaz," MARIO RODRIGUEZ, a.k.a. "Blue," TIMOTHY MARTINEZ, a.k.a. "Red," **ANTHONY RAY BACA, a.k.a. "Pup,"** MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts," **DANIEL SANCHEZ, a.k.a. "Dan Dan," CARLOS HERRERA, a.k.a. "Lazy,"** and **RUDY PEREZ, a.k.a. "Ru Dog,"** and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder Javier Molina, in violation of NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

DNM 705

Appellate Case: 20-2058      Document: 010110415670      Date Filed: 09/29/2020      Page: 281

Count 7

Murder of Javier Molina

On or about March 7, 2014, in Doña Ana County, in the District of New Mexico, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, JERRY ARMENTA, a.k.a. "Creeper," JERRY MONTOYA, a.k.a. "JR," a.k.a. "Plaz," MARIO RODRIGUEZ, a.k.a. "Blue," TIMOTHY MARTINEZ, a.k.a. "Red," **ANTHONY RAY BACA, a.k.a. "Pup,"** MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts," **DANIEL SANCHEZ, a.k.a. "Dan Dan," CARLOS HERRERA, a.k.a. "Lazy,"** and **RUDY PEREZ, a.k.a. "Ru Dog,"** did unlawfully, knowingly and intentionally murder Javier Molina, in violation of NMSA 1978, Sections 30-2-1 and 30-1-13.

All in violation of 18 U.S.C. §§ 1959(a)(1) and 2.

Count 9

Conspiracy to Murder Dwayne Santistevan

Starting on a date uncertain, but no later than 2013, and continuing to on or about the date of this Indictment, in Santa Fe County, in the District of New Mexico, and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **ANTHONY RAY BACA, a.k.a. "Pup,"** ROY MARTINEZ, a.k.a. "Shadow," and ROBERT

MARTINEZ, a.k.a. "Baby Rob," and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder  Dwayne Santistevan, in violation of  NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

Count 10

Conspiracy to Murder Gregg Marcantel

Starting on a date uncertain, but no later than 2013, and continuing to on or about the date of this Indictment, in Santa Fe County, in the District of New Mexico, and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the  Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **ANTHONY RAY BACA, a.k.a. "Pup,"** ROY MARTINEZ, a.k.a. "Shadow," ROBERT MARTINEZ, a.k.a. "Baby Rob," and CHRISTOPHER GARCIA, and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder Gregg Marcantel, in violation of  NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

Indictment at ¶¶ 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12a, 12b, 12c, 12d, 12e, 12f, 13a, 13b, 13c, 13d, 13e, 14, Count 6, Count 7, Count 8, Count 9 and Count 10, at 1-9, 12-13, filed March 9, 2017 (Doc. 947)(modified)

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 3,** at 1, 4-15, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 4,** at 16, filed January 12, 2018 (Doc. 1635)(modified)

DNM 706

Page: 282   Date Filed: 09/29/2020   Document: 010110415670   Appellate Case: 20-2058

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 2-4, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 3: object to surplusage)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 4, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 4: objection)

DNM 708

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 284

**JURY INSTRUCTION NO. 23**

I have just reviewed the charges brought by the Grand Jury through an indictment.  In

this case, the only Defendants on trial before you are Mr. Sanchez, Mr. Baca, Mr. Herrera, and

Mr. Perez.

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 4, filed January 19, 2018 (Doc. 1663)(Defendants' alternative)

DNM 709

Page: 285

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 24

Title 18, United States Code, Section 1959(a), makes it a crime for anyone to commit, threaten to commit, attempt to commit, or conspire to commit a violent crime in aid of an enterprise engaged in racketeering activity.

For you to find any defendant guilty of this crime, as charged in Counts 6, 7, 9, and 10, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First:*          That the enterprise existed;

*Second:*          That the enterprise was engaged in interstate commerce or that its activities affected interstate commerce;

*Third:*          That the enterprise was engaged in racketeering activity;

*Fourth:*          That the defendant committed a crime of violence as alleged in the indictment:

Count 6:          Conspiracy to murder Javier Molina;

Count 7:          Murder of Mr. Molina;

Count 9:          Conspiracy to murder Dwayne Santistevan; and

Count 10:          Conspiracy to murder Gregg Marcantel.

I will instruct you on what the government must prove to establish that a particular defendant committed any one of these acts; and

*Fifth:*          That the defendant's purpose in committing, threatening to commit, attempting to commit, or conspiring to commit the crimes of violence was to gain entrance to, or to maintain, or to increase his position in the enterprise.

DNM 710

Page: 286

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

If the purpose is to "gain entrance to, or to maintain, or to increase his position in the enterprise," it is not necessary for the government to prove that this was the sole purpose of a defendant in committing the charged crime. You need only find that it was a substantial purpose, or that a defendant committed the charged crime as an integral aspect of membership in the enterprise. In determining a defendant's purpose in committing the alleged crime, you must determine what he had in mind. Because you cannot look into a person's mind, you have to determine purpose by considering only the facts and circumstances that have been admitted against an individual defendant during the course of the trial.

An "enterprise" includes any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate commerce.

Although the enterprise must be separate and apart from the pattern of racketeering activity in which the enterprise allegedly engaged, it is not necessary to find that the enterprise had some function wholly unrelated to the racketeering activity. The enterprise must be proved to have been an ongoing organization, formal or informal, that functioned as a continuing unit.

An enterprise is a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time. The personnel of the enterprise, however, may change and need not be associated with the enterprise for the entire period alleged in the indictment. Therefore, the government must prove the existence of an association-in-fact enterprise by evidence of an ongoing organization, formal or informal, and by evidence that the various associates functioned as a continuing unit. The enterprise must have the three following structural features: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. The

DNM 711

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 287

name of the organization itself is not an element of the offense and does not have to be proved. The government need not prove that the enterprise had any particular organizational structure.

The group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods -- by majority vote, consensus, a show of strength, etc.  Members of the group need not have fixed roles; different members may perform different roles at different times.  The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies.  While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, you may nonetheless find that the enterprise element is satisfied by finding a group whose associates engage in spurts of activity punctuated by periods of quiescence [inactivity].

The enterprise is "engaged in interstate commerce" if it directly engaged in the distribution or acquisition of goods or services in such commerce.  The enterprise's conduct "affected" interstate commerce if the conduct had a demonstrated connected or link with such commerce.

It is not necessary for the government to prove that a defendant knew or intended that the enterprise was engaged in commerce or that its conduct would affect commerce.  It is only necessary that the natural consequences of the enterprise's conduct affected commerce in some way.  Only a minimal effect on commerce is necessary.

There must be some nexus between the enterprise and the racketeering activity being conducted by members and/or associates of the enterprise.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 8**, at 1, 20-21, filed January 12, 2018 (Doc. 1635)(modified)

DNM 712

Appellate Case: 20-2058     Document: 01110415670     Date Filed: 09/29/2020     Page: 288

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 49,** at 1, 4, 83-86, filed January 12, 2018 (Doc. 1641)(49) Fifth Circuit Pattern Jury Instruction § 2.78 Violent Crimes in Aid of Racketeering, 18 U.S.C. § 1959(a))(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 20: Defendants object to the inclusion of [or from a foreign country] . . . . ")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74.2, at 230 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT-- "SECTION A" Elements Of The Offense)(modified)

Authority: Fifth Circuit Pattern Jury Instruction Criminal §2.78 (2015 ed.)(modified)(**Violent Crimes in Aid of Racketeering** 18 U.S.C. § 1959(a))

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 18,** at 1, 33, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 18: Defendants object to this instruction . . . . ")

DNM 713

Page: 289

Date Filed: 09/29/2020

Document: 01110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 25

The first element that the government must prove beyond a reasonable doubt is that an "enterprise" existed as alleged in the indictment.

The government has charged the following in the Indictment as constituting the enterprise: the Syndicato de Nuevo Mexico Gang (SNM) in Counts 6, 7, 9, and 10.

An enterprise includes a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time. This group of people does not have to be a legally recognized entity, such as a partnership or corporation.  This group may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose. This group of people must have: (1) a common purpose; and (2) an ongoing organization, either formal or informal; and (3) personnel who function as a continuing unit.

If you find these three elements, then you may find that an enterprise existed.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY **INSTRUCTION NO. 9**, at 1, 22-23, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 9: Defendants object to this instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74.3, at 231 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT-- "SECTION A" First Element -- The Enterprise)

Fifth Circuit Pattern Jury Instructions Criminal 2.78 (2015)(modified)(**Violent Crimes In Aid of Racketeering)**

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 10**, at 1, 24, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 10: Defendants object to this instruction.")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 20: Defendants object to the inclusion of [or from a foreign country] . . . . ")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74.4, at 234 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT -- "SECTION A" Second Element -- Effect On Interstate Commerce)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 42,** at 1, 4, 74, filed January 12, 2018 (Doc. 1641)(42) 1.39 Interstate and Foreign Commerce -- Defined in 18 U.S.C. Section 10)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 20: Defendants object to the inclusion of [or from a foreign country] . . . . ")

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.39, at ii, 59 (**2011 Edition** Updated January 2017)(INTERSTATE AND FOREIGN COMMERCE -- DEFINED, 18 U.S.C. SECTION 10)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 20: Defendants object to the inclusion of [or from a foreign country] . . . . ")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.39.1, at ii, 60 (**2011 Edition** Updated January 2017)(INTERSTATE AND FOREIGN COMMERCE -- EFFECT ON 18 U.S.C. § 10)

DNM 715

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 291

## JURY INSTRUCTION NO. 26

The third element which the government must prove beyond a reasonable doubt as to Counts 6, 7, 9, and 10 is that the enterprise was engaged in racketeering activity.

That racketeering activity may consist of state offenses as well federal offenses. The government has charged that the SNM engaged in multiple acts of racketeering activity consisting of the following: (1) murder and robbery, in violation of New Mexico law; (2) acts involving tampering with a witness, in violation of federal law; and, (3) offenses involving trafficking in narcotics, in violation of federal law.

In order for the state offense of murder to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that a member or an associate of the racketeering enterprise committed the offense as defined by law. The elements of that offense are as follows:

First:          someone killed a human being, and

Second:       the killing was with the deliberate intention to take away the life of that person.

In order for the federal offense of witness tampering to be considered as a racketeering act, the government must prove to you beyond a reasonable doubts that:

First:   a member, prospect or associate of the racketeering enterprise used or attempted to use intimidation or threats against another person;

Second:       that member, prospect, or associate acted knowingly and with the intent to influence or prevent the testimony of that other person with respect to an official proceeding.

DNM 716

Page: 292

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

In order for the offense of possession with intent to distribute a controlled substance to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that:

First:        a member, prospect, or associate of the SNM knowingly and intentionally possessed a controlled substance as charged, and

Second:        that person possessed the substance with the intent to distribute it.

To "possess with intent to distribute" means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.

Crack cocaine, powder cocaine, heroin, suboxone, marijuana, and methamphetamine are controlled substances within the meaning of the law.

In order for the offense of distribution of a controlled substance to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that a member, prospect, or associate of the SNM knowingly or intentionally distributed a controlled substance.

The term "distribute" means to deliver or to transfer possession or control of something from one person to another. The term "distribute" includes the sale of something by one person to another. It is not necessary, however, for the government to prove that any transfer of money or other thing of value occurred at the same time as, or because of, the distribution.

There must be some nexus between the enterprise and the racketeering activity being conducted by members and/or associates of the enterprise.

I instruct you that "racketeering activity" includes numerous offenses, including those listed above. It is for you to determine whether the enterprise engaged in these activities as charged. You should give the words "engaged in" their ordinary, everyday meaning. For an

DNM 717

Page: 293

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

**MATTERS** 1.31, at i, **47** (**2011 Edition** Updated February 22, 2018)(ACTUAL OR CONSTRUCTIVE POSSESSION)(modified)

United States v. Little, 829 F.3d 1177 (10th Cir. 2016)

Henderson v. United States, 135 S. Ct. 1780 (2105)

enterprise to be engaged in racketeering activity it is enough to show that the enterprise committed or was planning to commit some racketeering activity within a period of time short enough under all of the circumstances so that it is appropriate to say that the enterprise was engaged in racketeering activity.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 11,** at 1, 25, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 12,** at 1, 26, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 13,** at 1, 27, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 14,** at 1, 28, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 6, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 11: Defendants object to this instruction . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 6, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 12: Defendants object to this instruction . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 6, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 13: Defendants object to this instruction . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 6, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 14: Defendants object to this instruction . . . .")

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 28,** at 1, 3, 55-56, filed January 12, 2018 (Doc. 1641)(28) 1.31 Actual or Constructive Possession)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL**

DNM 719

Page: 295

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 27

For you to find any defendant guilty of first degree murder by a deliberate killing of Mr. Molina as charged in Count 7;

The government must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant killed Mr. Molina;

2. The killing was with the deliberate intention to take away the life of Mr. Molina;

3. This happened in New Mexico on or about March 7, 2014.

A deliberate intention refers to the state of mind of the defendant. A deliberate intention may be inferred from all of the facts and circumstances of the killing. The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at in a short period of time. A mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill. To constitute a deliberate killing, the slayer must weigh and consider the question of killing and his reasons for and against such a choice.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 47,** at 1, 4, 47, filed January 12, 2018 (Doc. 1641)(47) UJI 14-201 NMRA -- Willful and Deliberate Murder; Essential Elements)(modified)

<u>Authority</u>: UJI 14-201 NMRA (modified)(**Willful and deliberate murder; essential elements)(**adapted)

DNM 720

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 296

## JURY INSTRUCTION NO. 28

For you to find any defendant guilty of second degree murder as charged in Count 7, the government must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1.  The defendant killed Mr. Molina;

2.  The defendant knew that his acts created a strong probability of death or great bodily harm to Mr. Molina;

3.  This happened in New Mexico on or about the 7th day of March 2014.

DNM 721

Page: 297

Date Filed: 09/29/2020

Document: 01011041567O

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 29

The fourth element which the government must prove beyond a reasonable doubt as to Count 6 is that Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez conspired to murder Javier Molina.

The fourth element which the government must prove beyond a reasonable doubt as to Count 9 is that Mr. Baca conspired to murder Dwayne Santistevan.

The fourth element which the government must prove beyond a reasonable doubt as to Count 10 is that Mr. Baca conspired to murder Gregg Marcantel.

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose.    To find Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

1.  Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez and another person by words or acts agreed together to commit murder;

2.  Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez and the other person intended to commit murder;

3.  This happened in New Mexico on or about March, 2014, as to Count 6, a date uncertain, but no later than 2013, and continuing to on or about March 9, 2017, as to Counts 9 and 10.

In proving a conspiracy to murder, it is not necessary to show a meeting of the alleged conspirators or the making of an express or formal agreement. The formation and existence of a conspiracy to murder may be inferred from all circumstances tending to show the common intent

DNM 722

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 298

and may be proved in the same way as any other fact may be proved, either by direct testimony of the fact or by circumstantial evidence, or by both direct and circumstantial evidence.

Evidence that a person was in the company of or associated with one or more other persons alleged or proved to have been members of a conspiracy is not, in itself, sufficient to prove that such person was a member of the alleged conspiracy.

Evidence of a defendant's membership in a gang, by itself, is insufficient to establish that person's guilt of a crime as a coconspirator.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 15**, at 1, 29-30, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 15: Defendants object to this instruction. ")

NM UJI 14-2810 NMRA

NM UJI 14-201 NMRA

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 37,** at 68-69, filed January 12, 2018 (Doc. 1641)(37) UJI 14-2810 NMRA -- Conspiracy: Essential Elements)(modified)

Authority:  UJI 14-2810 NMRA (modified)(**Conspiracy: Essential Elements**)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 38,** at 1, 3, 70, filed January 12, 2018 (Doc. 1641)(38) UJI 14-2810

DNM 723

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 299

NMRA -- Conspiracy: Evidence of Association Alone Does Not Prove Membership in Conspiracy)(modified)

<u>Authority</u>: UJI 14-2810 NMRA (**Conspiracy: Evidence of Association Alone Does Not Prove Membership in Conspiracy)**

DNM 724

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 300

## JURY INSTRUCTION NO. 30

In this case, you must consider separately whether Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez are guilty or not guilty of each of the charged crimes.  Even if you cannot agree upon a verdict as to any single defendant on any particular charge, you must return the verdict or verdicts upon which you agree.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 39,** at 1, 3-4, filed January 12, 2018 (Doc. 1641)(39) UJI 14-2812 NMRA -- Conspiracy: Multiple Defendants; Each Defendant Entitled to Individual Consideration)(modified)

<u>Authority</u>: UJI 14-2812 NMRA **(Conspiracy; multiple defendants; each defendant entitled to individual consideration)**

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 40,** at 1, 4, 72, filed January 12, 2018 (Doc. 1641)(40) UJI 14-2814 NMRA -- Conspiracy: Evidence of Association Alone Does Not Prove Membership in Conspiracy)(modified)

<u>Authority</u>: UJI 14-2814 NMRA **(Conspiracy; evidence of association alone does not prove membership in conspiracy)**

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 16,** at 1, 31, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("<u>United States' Proposed Jury Instruction No. 16</u>: No objection . . . . ")

NM UJI 14-201 NMRA.

DNM 725

Page: 301

Date Filed: 09/29/2020

Document: 01011041567 0

Appellate Case: 20-2058

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("Defendants insist the New Mexico jury instructions be given, in particular NM UJI 14-323 . . . . ")

UJI 14-323.  AGGRAVATED  BATTERY;  GREAT  BODILY  HARM;  ESSENTIAL ELEMENTS (modified)

**PROPOSED  JURY  INSTRUCTIONS,  UNITED  STATES'  PROPOSED  JURY INSTRUCTION NO. 17,** at 1, 32, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 17: Defendants object to this instruction.")

2 Fed. Jury Prac. & Instr. § 25:09 (6th ed.)(modified)(**The essential elements of the offense charged**)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("Defendants insist the New Mexico jury instructions be given, in particular . . . NM UJI 14-131. ")

UJI 14-131. "GREAT BODILY HARM" DEFINED

**PROPOSED  JURY  INSTRUCTIONS,  UNITED  STATES'  PROPOSED  JURY INSTRUCTION NO. 18,** at 1, 33, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 18: Defendants object to this instruction . . . .")

DNM 726

Page: 302

Date Filed: 09/29/2020

Document: 01011041567Ө

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 31

When the word "knowingly" is used in these instructions, it means that the act was done

voluntarily and intentionally, and not because of mistake or accident.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 23**, at 1, 40, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 30,** at 59, filed January 12, 2018 (Doc. 1641)(30) 1.37 Knowingly -- Deliberate Ignorance)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 23: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.36, at ii, 56 (**2011 Edition** Updated January 2017)(KNOWINGLY -- DELIBERATE IGNORANCE)(adapted)

DNM 727

Page: 303

Date Filed: 09/29/2020

Document: 01110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 32

You will note that the indictment charges that the crimes charged in Count 6 and Count 7 were committed "on or about" March 2014; the crimes charged in Count 9 and Count 10 were committed "on or about" no later than 2013 and continuing to on or about March 9, 2017.  The government must prove beyond a reasonable doubt that the defendant committed the crimes reasonably near March 2014 (for Count 6 and Count 7); and no later than 2013 and continuing to on or about March 9, 2017 (for Count 9 and Count 10).

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 22**, at 1, 39, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS** **[sic]** **PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 20,** at 1, 3, 45, filed January 12, 2018 (Doc. 1641)(20) 1.18 On or About)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 22: . . . Defendants object to the modification of the Tenth Circuit pattern instruction in the fashion proposed by the United States.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.18, at i, 38 (**2011 Edition** Updated January 2017)(ON OR ABOUT)(adapted)

DNM 728

Page: 304   Date Filed: 09/29/2020   Document: 010110415670   Appellate Case: 20-2058

## JURY INSTRUCTION NO. 33

Count 7 of the indictment also charges a violation of 18 U.S.C. section 2, which provides that: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

This law makes it a crime to intentionally help someone else commit a crime. To find Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*:   someone else committed the charged crime, and

*Second*: Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the government must prove that Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez consciously shared the other person's knowledge of the underlying criminal act and intended to help him.

Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

Evidence of a defendant's membership in a gang, by itself, is insufficient to establish that person's guilt of a crime as an aider and abettor.

DNM 729

Appellate Case: 20-2058   Document: 01110415670   Date Filed: 09/29/2020   Page: 305

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 19**, at 1, 34, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 36**, at 1, 3, 66, filed January 12, 2018 (Doc. 1641)(36) 2.06 Aid and Abet 18 U.S.C. § 2(a))(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 19: Defendants object to this instruction . . . .")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.06, at ii, 79 (**2011 Edition** Updated January 2017)(AID AND ABET  18 U.S.C. § 2(a))(adapted)

Fifth Circuit Pattern Jury Instructions Criminal 2.04 (2011)(**Aiding and Abetting**)

Abet 18 U.S.C. § 2(a)

DNM 730

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 306

## JURY INSTRUCTION NO. 34

Evidence has been presented that Mr. Baca was the subject of unfair inducement. Unfair inducement occurs when government agents unfairly cause the commission of a crime. "Government agents" include law enforcement officers or persons acting under their direction, influence or control.

Where Mr. Baca was not ready and willing to commit the crime of conspiracy to commit the murder of Mr. Marcantel, as charged in Count 10 of the indictment before first being contacted or approached by a government agent, but is induced or persuaded to commit the crime by a government agent, Mr. Baca is a victim of unfair inducement. However, where Mr. Baca was ready and willing to commit the crime at the time of the first contact with the government agent, the mere fact that the government agent provided what appears to be an opportunity to commit the crime is not unfair inducement.

The burden is on the government to prove to your satisfaction beyond a reasonable doubt that Mr. Baca was not unfairly induced. If you have a reasonable doubt as to whether Mr. Baca was unfairly induced, you must find Mr. Baca not guilty.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 44,** at 1, 4, 77, filed January 12, 2018 (Doc. 1641)(44) UJI 14-5160 NMRA -- Entrapment; unfair Inducement, not Predisposed)(modified)

Authority: UJI 14-5160 NMRA (modified)(**Entrapment; unfair inducement; not predisposed**)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 45,** at 1, 4, 78-79, filed January 12, 2018 (Doc. 1641)(45) UJI 14-5161 NMRA -- Entrapment; law enforcement unconscionable methods and illegitimate purposes)(modified)

Authority: UJI 14-5161 NMRA (modified)(**Entrapment; law enforcement unconscionable methods and illegitimate purposes**)

DNM 731

Page: 307

Date Filed: 09/29/2020

Document: 01110415670

Appellate Case: 20-2058

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 46,** at 1, 4, 46, filed January 12, 2018 (Doc. 1641)(46) UJI 14-5181 NMRA -- Self-defense; Non deadly Force by Defendant)(modified)

<u>Authority</u>: UJI 14-5161 NMRA **(Self-defense; non-deadly force by defendant)**

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 29,** at 57-58, filed January 12, 2018 (Doc. 1641)(29) 1.36 Coercion or Duress)(modified)

<u>Authority</u>: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.36, at 54-55 **(2011 Edition** Updated January 2017)(COERCION OR DURESS)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 6,** at 1, 2, 20, filed January 12, 2018 (Doc. 1641)(6) 1.05.1 Preponderance of Evidence)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.05.1, at ii, 10 **(2011 Edition** Updated January 2017)(PREPONDERANCE OF EVIDENCE)(modified)

DNM 732

Page: 308

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 35

You are here to decide whether the government has proved beyond a reasonable doubt that the defendants are guilty of the crimes charged. The defendants are not on trial for any act, conduct, or crime not charged in the indictment.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crimes charged. The fact that another person *also* may be guilty is no defense to a criminal charge.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 21** at 1, 3, 46, filed January 12, 2018 (Doc. 1641)(21) 1.19 Caution -- Consider Only Crime Charged)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 51, LIMITING INSTRUCTION 404(b): EVIDENCE TO BE ISSUED AT THE CLOSE OF TRIAL,** at 1, 5, 88, filed January 12, 2018 (Doc. 1641)(51) Limiting Instruction 404(b): Evidence to be Issued at the Close of Trial)(modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.19, at i, 31 (**2011 Edition** Updated January 2017)(CAUTION – CONSIDER ONLY CRIME CHARGED)(modified)

Authority: *United States v. Rodella*, 101 F.Supp. 3d 1075, 1086 (D.N.M. 2015)

DNM 733

Page: 309

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 36

If you find any defendant guilty, it will be my duty to decide what the punishment will be. You should not discuss or consider the possible punishment in any way while deciding your verdict.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 40**, at 1, 58, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 22** at 1, 3, 47, filed January 12, 2018 (Doc. 1641)(22) 1.20 Caution -- Punishment (Non-Capital Cases))(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury instruction  No. 40: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.20, at i, 32 (**2011 Edition** Updated January 2017)(CAUTION -- PUNISHMENT)(NON-CAPITAL CASES)(adapted)

DNM 734

Appellate Case: 20-2058   Document: 01011041567   Date Filed: 09/29/2020   Page: 310

## JURY INSTRUCTION NO. 37

The rights of Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez in this case are separate and distinct.  You must separately consider the evidence against Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez and return a separate verdict for each as to each crime charged.

Your verdicts as to Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez, whether they are guilty or not guilty, should not affect your verdicts as to any other defendant on any other charges.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 23,** at 1, 3, 48, filed January 12, 2018 (Doc. 1641)(23) 1.22 Multiple Defendants -- Multiple Counts)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.21, at i, 33 (**2011 Edition** Updated January 2017)(adapted)

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 39,** at 1, 57, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 23,** at 1, 3, 48, filed January 12, 2018 (Doc. 1641)(23) 1.22 Multiple Defendants -- Multiple Counts)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 39: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.22, at i, 34 (**2011 Edition** Updated January 2017)(MULTIPLE DEFENDANTS -- MULTIPLE COUNTS)

18 U.S.C. § 1959

United States v. Kamahele, 748 F.3d 984, 1012 (10th Cir. 2014)

DNM 735

Page: 311     Date Filed: 09/29/2020     Document: 010110415670     Appellate Case: 20-2058

## JURY INSTRUCTION NO. 38

In a moment the Courtroom Deputy Clerk will escort you to the jury room and provide each of you with a copy of the instructions that I have just read. Any exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you should first select a foreperson, who will help to guide your deliberations and will speak for you here in the courtroom. The second thing you should do is review the instructions. Not only will your deliberations be more productive if you understand the legal principles upon which your verdicts must be based, but for your verdicts to be valid, you must follow the instructions throughout your deliberations. Remember, you are the judges of the facts, but you are bound by your oath to follow the law stated in the instructions.

To reach a verdict, whether it is guilty or not guilty, all of you must agree. Your verdict must be unanimous on each count of the indictment as to each defendant charged. Your deliberations will be secret. You will never have to explain your verdicts to anyone.

You must consult with one another and deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong. But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times, you are judges -- judges of the facts. You must decide whether the government has proved Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez guilty beyond a reasonable doubt as to each of the charges individually made against them.

A verdict form has been prepared for your convenience.

DNM 736

Page: 312   Date Filed: 09/29/2020   Appellate Case: 20-2058   Document: 010110415670

[Explain the Verdict Form]

The foreperson will write the unanimous answer of the jury in the space provided for each count of the indictment, either guilty or not guilty. At the conclusion of your deliberations, the foreperson should date and sign the verdict form.

If you need to communicate with me during your deliberations, the foreperson should write the message and give it to the Court Security Officer. I will either reply in writing or bring you back into the court to respond to your message. Under no circumstances should you reveal to me the numerical division of the jury.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY **INSTRUCTION NO. 41,** at 1, 59-60, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 24,** at 1, 3, 40, filed January 12, 2018 (Doc. 1641)(24) 1.23 Duty to Deliberate -- Verdict Form)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 34,** at 1, 3, 64, filed January 12, 2018 (Doc. 1641)(34) 1.43 Partial Verdict Instruction)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 41: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.23, at i, 35-36 (**2011 Edition** Updated January 2017)(DUTY TO DELIBERATE -- VERDICT FORM)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 33,** at 1, 3, 62-63, filed January 12, 2018 (Doc. 1641)(33) 1.43 Modified *Allen* Instruction)(modified)

DNM 737

Page: 313   Date Filed: 09/29/2020   Document: 01011041570   Appellate Case: 20-2058

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 34,** at 1, 3, 64, filed January 12, 2018 (Doc. 1641)(34) 1.43 Partial Verdict Instruction)modified)

<u>Authority</u>: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS** 1.42, at 63-64 (**2011 Edition** Updated January 2017)(MODIFIED *ALLEN* INSTRUCTION)(modified)

**JURY INSTRUCTION NO. 39**

Let me remind you again that nothing I have said in these instructions, nor anything I have said or done during the trial, was meant to suggest to you what I think your decision should be. That is your exclusive responsibility.

**DEFENDANTS    [sic]    PROPOSED    JURY    INSTRUCTIONS,    REQUESTED INSTRUCTION NO. 35,** at 1, 3, 65, filed January 12, 2018 (Doc. 1641)(35) 1.44 Communication with the Court)(modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS** 1.44, at ii, 66 **(2011 Edition** Updated January 2017)(COMMUNCIATION WITH THE COURT)(modified)

DNM 739

Page: 315

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 40

Faithful performance by you of your duties is vital to the administration of justice.

United States v. Gaspar Leal, No. CIV 16-3069 JB, Instruction No. 20, at 25, filed December 6, 2017 (Doc. 183)

DNM 740

Page: 316

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                              No. CR 15-4268 JB

DANIEL SANCHEZ, ANTHONY RAY
BACA, CARLOS HERRERA, and
RUDY PEREZ,

      Defendants.

## V E R D I C T

### DANIEL SANCHEZ

#### COUNT 6

WE, the Jury, find the defendant, **DANIEL SANCHEZ,** _____

                                                                      (guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of

the Indictment.

#### COUNT 7

WE, the Jury, find the defendant, **DANIEL SANCHEZ,** _____

                                                                      (guilty or not guilty)

of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the

Indictment.

### ANTHONY RAY BACA

#### COUNT 6

WE, the Jury, find the defendant, **ANTHONY RAY BACA,** _____

                                                                     (guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of

the Indictment.

DNM 741

Appellate Case: 20-2058    Document: 01011041567 0    Date Filed: 09/29/2020    Page: 317

**COUNT 7**

WE, the Jury, find the defendant, **ANTHONY RAY BACA,** _____
(guilty or not guilty)
of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the

Indictment.

**COUNT 9**

WE, the Jury, find the defendant, **ANTHONY RAY BACA,** _____
(guilty or not guilty)
of violent crimes in aid of racketeering in conspiring to murder Dwayne Santistevan, as charged in Count

9 of the Indictment.

**COUNT 10**

WE, the Jury, find the defendant, **ANTHONY RAY BACA,** _____
(guilty or not guilty)
of violent crimes in aid of racketeering in conspiring to murder Gregg Marcantel, as charged in Count 10

of the Indictment.

**CARLOS HERRERA**

**COUNT 6**

WE, the Jury, find the defendant, **CARLOS HERRERA,** _____
(guilty or not guilty)
of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of

the Indictment.

**COUNT 7**

WE, the Jury, find the defendant, **CARLOS HERRERA,** _____
(guilty or not guilty)
of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the

Indictment.

DNM 742

Page: 318     Date Filed: 09/29/2020     Document: 010110415670     Appellate Case: 20-2058

**RUDY PEREZ**

    **COUNT 6**

    WE, the Jury, find the defendant, **RUDY PEREZ,**    _____

                                       (guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of

the Indictment.

    **COUNT 7**

    WE, the Jury, find the defendant, **RUDY PEREZ,**    _____

                                       (guilty or not guilty)

of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the

Indictment.

    Dated this \_\_\_\_\_ day of _____, 2018.


                                    _____

                                    FOREPERSON


**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **VERDICT,** at 1, 5, 89-92, filed
January 12, 2018 (Doc. 1641)(Verdict Form)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY
INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("The
[Government's] Verdict Forms are insufficient . . . . ")

FILED

UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

MAR – 5 2018

MATTHEW J. DYKMAN
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

        No. CR 15-4268 JB

ANGEL DELEON, JOE LAWRENCE
GALLEGOS, EDWARD TROUP, a.k.a.
"Huero Troup," LEONARD LUJAN,
BILLY GARCIA, a.k.a. "Wild Bill,"
EUGENE MARTINEZ, a.k.a. "Little
Guero," ALLEN PATTERSON,
CHRISTOPHER CHAVEZ, a.k.a. "Critter,"
JAVIER ALONSO, a.k.a. "Wineo,"
ARTURO ARNULFO GARCIA, a.k.a.
"Shotgun," BENJAMIN CLARK, a.k.a.
"Cyclone," RUBEN HERNANDEZ;
JERRY ARMENTA, a.k.a. "Creeper,"
JERRY MONTOYA, a.k.a. "Boxer,"
MARIO RODRIGUEZ, a.k.a. "Blue,"
TIMOTHY MARTINEZ, a.k.a. "Red,"
MAURICIO VARELA, a.k.a. "Archie,"
a.k.a. "Hog Nuts," DANIEL SANCHEZ,
a.k.a. "Dan Dan," GERALD ARCHULETA,
a.k.a. "Styx," a.k.a. "Grandma," CONRAD
VILLEGAS, a.k.a. "Chitmon," ANTHONY
RAY BACA, a.k.a. "Pup," ROBERT
MARTINEZ, a.k.a. "Baby Rob," ROY
PAUL MARTINEZ, a.k.a. "Shadow,"
CHRISTOPHER GARCIA, CARLOS
HERRERA, a.k.a. "Lazy," RUDY PEREZ,
a.k.a. "Ru Dog," ANDREW GALLEGOS,
a.k.a. "Smiley," SANTOS GONZALEZ;
PAUL RIVERA, SHAUNA GUTIERREZ,
and BRANDY RODRIGUEZ,

        Defendants.

## COURT'S THIRTEENTH PROPOSED JURY INSTRUCTIONS
(with citations)

DNM 744

Page: 320   Date Filed: 09/29/2020   Document: 010110415670   Appellate Case: 20-2058

## JURY INSTRUCTION NO. 1

Members of the Jury:

In any jury trial there are, in effect, two judges.  I am one of the judges, you are the other.  I am the judge of the law.  You, as jurors, are the judges of the facts.  I presided over the trial and decided what evidence was proper for your consideration.  It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdicts.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every criminal case -- for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses.  Then I will give you some specific rules of law that apply to this particular case and, finally, I will explain the procedures you should follow in your deliberations, and the possible verdicts you may return.  These instructions will be given to you for use in the jury room, so you need not take notes.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 1**, at 1, 2, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 3,** at 1, 2, 17, filed January 12, 2018 (Doc. 1641)(3) 1.03 Introduction to Final Instructions)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 1: No objection to unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.03, at i, 7, (**2011 Edition** Updated January, 2017)(INTRODUCTION TO FINAL INSTRUCTIONS)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

DNM 745

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 321

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 1, at 3, filed February 25, 2018 (Doc. 1827-1)

Fifth Circuit Pattern Instruction 1.05

Ninth Circuit Pattern Instruction 3.05

## JURY INSTRUCTION NO. 2

You, as jurors, are the judges of the facts. But in determining what actually happened -- that is, in reaching your decision as to the facts -- it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences. However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdicts should be. These should be entirely up to you.

It is also your duty to base your verdicts solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 2**, at 1, 3, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 4**, at 1, 2, 18, filed January 12, 2018 (Doc. 1641)(4) 1.04 Duty to Follow Instructions)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, filed January 19, 2018 (Doc. 1662)("United States Proposed Jury Instruction No. 2: No objection to unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.04, at i, 8 (**2011 Edition** Updated January 2017)(DUTY TO FOLLOW INSTRUCTIONS)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 2, at 4, filed February 25, 2018 (Doc. 1827-1)

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 322

DNM 746

DNM 747

Appellate Case: 20-2058    Document: 010110415670    Date Filed: 09/29/2020    Page: 323

### JURY INSTRUCTION NO. 3

The government has the burden of proving defendants Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, and Rudy Perez guilty beyond a reasonable doubt. The law does not require any individual defendant to prove his innocence or produce any evidence at all. The government has the burden of proving each defendant, individually, guilty beyond a reasonable doubt, and if it fails to do so for any individual defendant, you must find that defendant not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of a defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the government's proof exclude any "reasonable doubt" concerning any individual defendant's guilt. A reasonable doubt is a doubt based on reason and common sense. It may arise after careful and impartial consideration of all the evidence, or from lack of evidence. If, based on your consideration of the evidence, you are firmly convinced that a defendant is guilty of the crimes charged, you must find him guilty of that charge. If on the other hand, you think there is a reasonable doubt about the truth of any charge, then you must give the defendant the benefit of the doubt and find him not guilty of that charge.

It is your duty to consider the evidence applicable to each defendant, separately. You must consider whether a reasonable doubt exists as to each count charged against each individual defendant.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 5,** at 1, 17, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 5,** at 1, 2, 19, filed January 12, 2018 (Doc. 1641)(modified 1.05)(5) 1.05 Presumption of Innocence -- Burden of Proof -- Reasonable Doubt)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 6,** at 1, 2, 20 filed January 12, 2018 (Doc. 1641)(6) 1.05.1 Preponderance of Evidence)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 4-5, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 5: The Defendants' objected to the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.05, at 1, 9 (**2011 Edition** Updated January 2017) (PRESUMPTION OF INNOCENCE **--** BURDEN OF PROOF -- REASONABLE DOUBT)(adapted)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.05.1, at i, 10 (**2011 Edition** Updated January 2017) (PREPONDERANCE OF EVIDENCE )(modified)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 3, at 5, filed February 25, 2018 (Doc. 1827-1)

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 325     DNM 749

## JURY INSTRUCTION NO. 4

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations that the lawyers agreed to.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked. I also ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 24**, at 1, 41, filed January 12, 2018 (Doc. 8)(Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 7,** at 1, 2, 21, filed January 12, 2018 (Doc. 1641)(7) 1.06 Evidence -- Defined)

Appellate Case: 20-2058   Document: 01011041570   Date Filed: 09/29/2020   Page: 326

DNM 750

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 24: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.06, at i, 11 (**2011 Edition** Updated January 2017)(EVIDENCE -- DEFINED)(modified)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 4, at 7, filed February 25, 2018 (Doc. 1827-1)

DNM 751

Page: 327   Date Filed: 09/29/2020   Document: 010110415670   Appellate Case: 20-2058

## JURY INSTRUCTION NO. 5

During the course of this trial, and on multiple occasions throughout the trial, you have heard evidence that was admitted for a limited purpose and as to a particular defendant, only.

Each time this type of evidence was admitted, I instructed you of the specific limitations placed on your use of that evidence. By providing these instructions, I was not suggesting that you must or should find the particular evidence credible or probative of any issue in this case. However, in the event you decide to consider the limited evidence, then you may only use it only for the limited purpose, and only as to the particular defendant, for which it was admitted.

You are not to consider any limited evidence for any other purpose than the particular purpose for which it was admitted. And, you may not use it in any way during your deliberations concerning any defendant against whom the evidence was not admitted.

**DEFENDANT DANIEL SANCHEZ'S PROPOSED LIMITING INSTRUCTION,** at 1, 2-3, filed February 23, 2018 (Doc. 1821)

Authority Federal Rule of Evidence 105; 9th Cir. Pattern Instruction 2.11 Evidence for Limited Purpose (no comparable 10th Circuit or 5th Circuit Limiting Instruction could be located); *See United States v. Armijo*, 5 F3d 1229, 1232 (9th Cir. 1993). For example, in *United States v Sauza-Martinez*, 217 F.3d 754, 760 (9th Cir. 2000), the Ninth Circuit held the trial court "had no alternative" but to give the jury a limiting instruction *sua sponte* when a testifying co-defendant's post-arrest statements were admitted as substantive evidence against her under Fed. R. Evid. 801(d)(2)(A), but were not admissible against another co-defendant "under *any* theory" (emphasis in original). Under the circumstances of the case, it was plain error to fail to give the limiting instruction *sua sponte*. *Id.* at 761.

DNM 752

Page: 328   Date Filed: 09/29/2020   Document: 01110415670   Appellate Case: 20-2058

## JURY INSTRUCTION NO. 6

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 27**, at 1, 44, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 8**, at 1, 2, 22, filed January 12, 2018 (Doc. 1641)(8) 1.07 Evidence -- Direct and Circumstantial -- Influences)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 27: No objection to the unmodified Tenth Circuit instruction.")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635)**, at 1, 9-10, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 27: Defendants object to this instruction because the United States

DNM 753

Page: 329   Date Filed: 09/29/2020   Document: 010110415670   Appellate Case: 20-2058

have omitted the first two paragraphs of the pattern instruction . . . . Defendants propose using the entire instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.07, at i, 13 (**2011 Edition** Updated January 2017)(EVIDENCE -- DIRECT AND CIRCUMSTANTIAL -- INFERENCES)(adapted)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 5, at 8, filed February 25, 2018 (Doc. 1827-1)

DNM 754

Page: 330   Date Filed: 09/29/2020   Document: 010110415670   Appellate Case: 20-2058

## JURY INSTRUCTION NO. 7

I remind you that it is your job to decide whether the government has proved the guilt of Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez beyond a reasonable doubt.  In doing so, you must consider all of the evidence.  This does not mean, however, that you must accept all of the evidence that I have admitted as to any one defendant as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses who testified in this case.  You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was.  In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness admit prior instances of untruthfulness? Did the witness testify falsely on prior occasions? Did the witness make prior statements that were inconsistent with his or her testimony? Did the witness collude with others to create false evidence on prior occasions? Did the witness have the opportunity to collude with others prior to his testimony? Did the witness have a personal interest in the outcome in this case? Did the witness have any relationship with the government or a defendant? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he/she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail.  And you

should keep in mind that innocent misrecollection -- like failure of recollection -- is not uncommon.

You may not consider any defendant's decision not to testify as evidence of guilt. I want you to clearly understand, please, that the Constitution of the United States grants to Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez the right to remain silent. That means the right not to testify or call any witnesses. That is a constitutional right in this country, it is very carefully guarded, and you should understand that no presumption of guilt may be raised and no inference of any kind may be drawn from the fact that a defendant did not take the witness stand and testify or call any witnesses.

In reaching a conclusion on a particular point, or ultimately in reaching verdicts in this case, do not make any decisions simply because there were more witnesses on one side than on the other. What is important is how believable a witness was and how much weight you think that their testimony deserves.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **28**, at 1, 45-46, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **6**, at 1, 18, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, REQUESTED INSTRUCTION NO. 9, at 1, 2, 23-24, filed January 12, 2018 (Doc. 1641)(9) 1.08 Credibility of Witnesses)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, REQUESTED INSTRUCTION NO. 10, at 1, 2, 25, filed January 12, 2018 (Doc. 1641)(10) 1.08.1 Non-Testifying Defendant)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 6: No objection to the unmodified Tenth Circuit instruction.")

DNM 756

Appellate Case: 20-2058        Document: 010110415670        Date Filed: 09/29/2020        Page: 332

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 8: Defendants object to the use of this instruction.")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 10, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 28: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.08, at i, 14-15 (**2011 Edition** Updated January 2017)(CREDIBILITY OF WITNESSES)(adapted)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.08.1, at i, 16 (**2011 Edition** Updated January 2017)(NON-TESTIFYING DEFENDANT)(modified)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 6, at 9-10, filed February 25, 2018 (Doc. 1827-1)

Fifth Circuit Pattern Instruction 1.08

DNM 757

Page: 333   Date Filed: 09/29/2020

Appellate Case: 20-2058   Document: 010110415670

## JURY INSTRUCTION NO. 8

You have heard evidence that, before this trial, witnesses have made statements that may be different from the witnesses' testimony here in court.

These earlier statements were brought to your attention only to help you decide how believable the witnesses' testimony in this trial was. You cannot use the witnesses' prior statements as proof of anything else. You can only use them as one way of evaluating the witnesses' testimony here in court.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 29,** at 1, 47, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 11** at 1, 2, 26, filed January 12, 2018 (Doc. 1641)(11) 1.10 Impeachment by Prior Inconsistencies)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 10, filed January 19, 2018 (Doc. 1663)(object until completed with the Use Note)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.10, at i, 21 **(2011 Edition** Updated January 2017)(IMPEACHMENT BY PRIOR INCONSISTENCIES)(adapted)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 7, at 11, filed February 25, 2018 (Doc. 1827-1)

DNM 758

Appellate Case: 20-2058    Document: 010110415670    Date Filed: 09/29/2020    Page: 334

## JURY INSTRUCTION NO. 9

You have heard evidence that a defendant has been convicted of a felony, that is, a crime punishable by imprisonment for a term of years. The fact that a defendant has been convicted of another crime does not mean that a defendant committed the crime charged in this case, and you must not use a defendant's prior conviction as proof of the crime charged in this case. You may find them guilty of the crimes charged here only if the government has proved beyond a reasonable doubt that they committed them.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 30**, at 1, 48, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS** [sic] **PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 12,** at 1, 2, 27 filed January 12, 2018 (Doc. 1641)(12) 1.11 Impeachment by Prior Conviction (Defendant's Testimony))(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 10, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 30: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.11, at i, 22 (**2011 Edition** Updated January 2017)(IMPEACHMENT BY PRIOR CONVICTION Defendant's Testimony)(adapted)

## JURY INSTRUCTION NO. 10

The testimony of a witness may be discredited or impeached by showing that the witness previously has been convicted of a felony, that is, of a crime punishable by imprisonment for a term of years or of a crime of dishonesty or false statement.  A prior conviction does not mean that a witness is not qualified to testify, but is merely one circumstance that you may consider in determining the credibility of the witness.  You may decide how much weight to give any prior felony conviction or crime of dishonesty that was used to impeach a witness.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 13,** at 1, 2, 28, filed January 12, 2018 (Doc. 1641)(13) 1.12 Impeachment by Prior Conviction (Witness Other Than Defendant)(modified)

<u>Authority:</u> Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.12, at i, 23 (**2011 Edition** Updated January 2017)(IMPEACHMENT BY PRIOR CONVICTION (Witness Other Than Defendant)

Letter from Counsel to Court at 1, 3-4 (dated February 25, 2018), filed February 25, 2018 (Doc. 1827)

The Defendants' Redlined Version of the Sixth Proposed Jury Instructions, Jury Instruction No. 8, at 12, filed February 25, 2018 (Doc. 1827-1)

DNM 760

Page: 336      Date Filed: 09/29/2020      Document: 010110415670      Appellate Case: 20-2058

## JURY INSTRUCTION NO. 11

You have heard the testimony of Eric Duran, who was a witness in the government's case. You also heard testimony from Officer Clint Snodgrass concerning his opinion about Mr. Duran's character for truth-telling. It is up to you to decide from what you heard here whether Mr. Duran was telling the truth in this trial.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 14,** at 1, 2, 29, filed January 12, 2018 (Doc. 1641)(14) Impeachment by Evidence of Untruthful Character) (modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.13, at i, 24 (**2011 Edition** Updated January 2017)((IMPEACHMENT BY EVIDENCE OF UNTRUTHFUL CHARACTER)(modified)

## JURY INSTRUCTION NO. 12

Accomplice

An accomplice is someone who joined with another person in committing a crime, voluntarily and with common intent.  The testimony of an accomplice may be received in evidence and considered by you, even though it is not supported by other evidence.  You may decide how much weight it should have.

You are to keep in mind, however, that accomplice testimony should be received with caution and considered with great care.  You should not convict any defendant based on the unsupported testimony of an alleged accomplice, unless you believe the unsupported testimony beyond a reasonable doubt.

Informant

An informant is someone who provides evidence against someone else for a personal reason or advantage.  The testimony of an informant alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt, even though not corroborated or supported by other evidence.  You must examine and weigh an informant's testimony with greater care than the testimony of an ordinary witness.  You must determine whether the informant's testimony has been affected by self-interest, by an agreement the witness has with the government, by the witness's own interest in the outcome of the case, or by prejudice against any defendant.

You should not convict any defendant based on the unsupported testimony of an informant, unless you believe the unsupported testimony beyond a reasonable doubt.

DNM 762

Page: 338   Date Filed: 09/29/2020   Document: 01110415670   Appellate Case: 20-2058

Immunity

A person may testify under a grant of immunity (an agreement with the government). His testimony alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt even though it is not corroborated or supported by other evidence. You should consider testimony given under a grant of immunity with greater care and caution than the testimony of an ordinary witness. You should consider whether testimony under a grant of immunity has been affected by the witness's self-interest, the government's agreement, the witness's interest in the outcome of the case, or by prejudice against any defendant.

On the other hand, you should also consider that an immunized witness can be prosecuted for perjury for making a false statement. After considering these things, you may give testimony given under a grant of immunity such weight as you find it deserves.

You should not convict any defendant based on the unsupported testimony of an immunized witness, unless you believe the unsupported testimony beyond a reasonable doubt.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 32,** at 1, 50, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 35,** at 1, 53, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 36,** at 1, 54, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 15,** at 1, 2, 30-32, filed January 12, 2018 (Doc. 1641)(15) 1.14 Accomplice -- Informant -- Immunity)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 32, filed January 19, 2018 (Doc. 1663)("United States'

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 339

DNM 763

Proposed Jury Instruction  No. 32: Defendants object to the use of this unmodified Tenth Circuit instruction as it fails to include the "Accomplice" portion ….)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 11, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction  No. 35: Defendants object to this instruction.  It is duplicative of the United States Proposed Instruction No. 32 . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 11-12, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction  No. 36: Defendants object to this instruction.  It is duplicative of the United States Proposed Instruction No. 32 . . . .")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.14, at i, 25-26 (**2011 Edition** Updated January 2017)(ACCOMPLICE -- INFORMANT -- IMMUNITY)[as appropriate])(adapted)

DNM 764

Appellate Case: 20-2058    Document: 01110415670    Date Filed: 09/29/2020    Page: 340

## JURY INSTRUCTION NO. 13

The government has called as witnesses, alleged accomplices, who were named as accomplices in this or related criminal cases.  The government has entered into plea agreements with these alleged accomplices: Mario Rodriquez, Jerry Armenta, Jerry Montoya, Timothy Martinez, Lupe Urquizo, David Calbert, Roy Paul Martinez, Robert Martinez, Manuel Jacob Armijo, Frederico Munoz, Gerald Archuleta, Mario Montoya, and Ben Clark, providing for the possibility of a lesser sentence than he would otherwise likely receive.  Plea bargaining is lawful and proper, and the rules of this court expressly provide for it.

An alleged accomplice, including one who has entered into a plea agreement with the government, is not prohibited from testifying.  On the contrary, the testimony of an alleged accomplice may, by itself, support a guilty verdict.  You should receive this type of testimony with caution and weigh it with great care. You should never convict any defendant upon the unsupported testimony of such an accomplice, unless you believe that testimony beyond a reasonable doubt.  The fact that an accomplice has entered into a guilty plea to the offense charged is not evidence of the guilt of any other person.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 33**, at 1, 51, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 16,** at 1, 2, 33, filed January 12, 2018 (Doc. 1641)(16) 1.15 Accomplice – Co-Defendant -- Plea Agreement)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 33, filed January 19, 2018 (Doc. 1663)("The Defendants request that the Court use the unmodified pattern instruction.")

DNM 765

Page: 341

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.15, at i, 27 (**2011 Edition** Updated January 2017)(ACCOMPLICE -- AN ALLEGED ACCOMPLICE -- CO-DEFENDANT -- PLEA AGREEMENT)(modified)

## JURY INSTRUCTION NO. 14

The testimony of a drug abuser must be examined and weighed by the jury with greater caution than the testimony of a witness who does not abuse drugs.

Billy Cordova, Mario Montoya, Eric Duran, Roy Paul Martinez, Robert Martinez, Frederico Muñoz, Javier Rubio, Manuel Jacob Armijo, Jerry Armenta, Mario Rodriguez, Lupe Urquizo, Jerry Montoya, Gerald Archuleta, David Calbert, Timothy Martinez, Bobby Delgado, and Julian Romero may be considered abusers of drugs.

You must determine whether the testimony of any witness has been affected by the use of drugs or the need for drugs.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY **INSTRUCTION NO. 34**, at 1, 52, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 17**, at 1, 2, 24, filed January 12, 2018 (Doc. 1641)(17) 1.16 Witnesses' Use of Addictive Drugs)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 11, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 34: No objection as this is the unmodified Tenth Circuit instruction".)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.16, at i, 28 (**2011 Edition** Updated January 2017)(WITNESS'S USE OF ADDICTIVE DRUGS)(modified)

## JURY INSTRUCTION NO. 15

During the trial you heard the testimony of Tim Bryan, who expressed opinions regarding the forensic analysis of computer tablets, and Dr. Heather Brislen, who expressed opinions regarding Rudy Perez's medical conditions. In some cases, such as this one, scientific, technical, or other specialized knowledge may assist the jury in understanding the evidence or in determining a fact in issue. A witness who has knowledge, skill, experience, training or education, may testify and state an opinion concerning such matters.

You are not required to accept such an opinion. You should consider opinion testimony just as you consider other testimony in this trial. Give opinion testimony as much weight as you think it deserves, considering the education and experience of the witness, the soundness of the reasons given for the opinion, and other evidence in the trial.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 31,** at 1, 49, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 18,** at 1, 2, 35, filed January 12, 2018 (Doc. 1641)(18) 1.17 Expert Witness)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 19,** at 1, 3, 36-44, filed January 12, 2018 (Doc. 1641)(19) Expert Witness -- DNA Evidence)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 10, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 31: No objection to the use of the unmodified Tenth Circuit instruction.")

Authority: *United States v. Starzecpyzel,* 880 F.Supp. 1027, 1050-51 (S.D.N.Y. 1995); President's Council of Advisors on Science and Technology, *Forensic Science in Criminal Courts: Ensuring Scientific Validity of Feature Comparison Methods* (Sept. 20, 2016); President's Council of Advisors on Science and Technology, *An Addendum to the PCAST Report on Forensic Science in Criminal Court.*

DNM 768

Page: 344

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.17, at i, 29 (**2011 Edition** Updated January 2017)(EXPERT WITNESS)(adapted)

DNM 769

Page: 345   Date Filed: 09/29/2020   Document: 010110415670   Appellate Case: 20-2058

## JURY INSTRUCTION NO. 16

Evidence relating to any statement attributed to Mr. Baca, Mr. Herrera, or Mr. Perez alleged to have been made after the commission of the crime (or crimes) charged in this case but not made in court, should always be considered by you with caution and weighed with care. You should give any such statement the weight you think it deserves, after considering all the circumstances under which the statement was made.

In determining whether any such statement is reliable and credible, consider factors bearing on the voluntariness of the statement. For example, consider the age, gender, training, education, occupation, and physical and mental condition of Mr. Baca, Mr. Herrera, or Mr. Perez, and any evidence concerning his treatment while under interrogation if the statement was made in response to questioning by government officials, agents, or informants working on behalf of the government, and all the other circumstances in evidence surrounding the making of the statement.

After considering all this evidence, you may give such weight to the statement as you feel it deserves under all the circumstances. If you determine that the statement is unreliable or not credible, you may disregard the statement entirely.

As I have previously instructed, any such statement may be considered against the declarant-defendant only, and cannot be considered in any way, whatsoever, as evidence with respect to any other defendant on trial.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 25,** at 1, 3, 5, filed January 12, 2018 (Doc. 1641)(25) 1.26 Confession -- Statement -- Voluntariness by Defendant)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth

DNM 770

Appellate Case: 20-2058     Document: 01110415670     Date Filed: 09/29/2020     Page: 346

Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.26, at i, 40 (**2011 Edition** Updated January 2017)(CONFESSION-STATEMENT -- VOLUNTARINESS BY DEFENDANT)(Multiple Defendants))(adapted)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 26,** at 1, 3, 52-53, filed January 12, 2018 (Doc. 1641)(26) Identification Testimony)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.29, at i, 44 (**2011 Edition** Updated January 2017)(IDENTIFICATION TESTIMONY)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 27,** at 1, 3, 54, filed January 12, 2018 (Doc. 1641)(27) 1.30 Similar Acts) (modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 27,** at 1, 5, 87, filed January 12, 2018 (Doc. 1641)(27) 1.30 Similar Acts)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 50, LIMITING INSTRUCTION 404(b): EVIDENCE INTRODUCED AT TRIAL,** at 1, 5, 88, filed January 12, 2018 (Doc. 1641)(50) Limiting instruction 404(b): Evidence Introduced at Trial)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 51,** at 1, 5, 89, filed January 12, 2018 (Doc. 1641)(51) Limiting Instruction 404(b): Evidence to be Issued at the Close of Trial)(modified)

<u>Authority</u>: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.30, at i, 46 (**2011 Edition** Updated January 2017)(SIMILAR ACTS)

<u>Authority</u>: *United States v. Rodella*, 101 F.Supp. 3d 1075, 1085-86 (D.N.M. 2015)

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 37,** at 1, 55, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("<u>United States' Proposed Jury Instruction No. 37</u>: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL**

DNM 771

Page: 347

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

**MATTERS** 1.25, at i, 38 (**2011 Edition** Updated January 2017)(VOLUNTARINESS OF STATEMENT BY DEFENDANT)(Single Defendants)(modified)

## JURY INSTRUCTION NO. 17

During this trial, you have heard sound recordings of certain conversations. These conversations may be considered by you as you would any other evidence. You were also shown transcripts of those recorded conversations.

Keep in mind that the transcripts are not evidence. They were shown to you only as a guide to help you follow what was being said. The recordings themselves are the evidence. If you noticed any differences between what you heard on the recordings and what you read in the transcripts, you must rely on what you heard, not what you read. If you could not hear or understand certain parts of the recordings, you must ignore the transcript as far as those parts are concerned.

As I have previously instructed, any such recordings may be considered as evidence against the defendant who is the subject of the recording, only, and cannot be considered in any way, whatsoever, as evidence with respect to any other defendant on trial.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 38**, at 1, 56, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS** **[sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 31,** at 1, 3, 60, filed January 12, 2018 (Doc. 1641)(31) 1.40 Cautionary Instruction During Trial -- Transcript)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 10, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 38: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.40, at ii, 61 (**2011 Edition** Updated January 2017)(CAUTIONARY INSTRUCTION DURING TRIAL Transcript of Recorded Conversation)

DNM 773

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 349

## JURY INSTRUCTION NO. 18

Certain charts and summaries have been shown to you to help explain the evidence in this case. Their only purpose is to help explain the evidence. These charts and summaries are not evidence or proof of any facts.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 26**, at 1, 43, filed January 12, 2018 (Doc. 1635)(32) 1.41 Summaries and Charts)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 32,** at 1, 3, 61, filed January 12, 2018 (Doc. 1641)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 9, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 26: . . . . If the charts and summaries are not otherwise objectionable, Defendants would not object to the use of this instruction as it is an unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.41, at ii, 62 (**2011 Edition** Updated January 2017)(SUMMARIES AND CHARTS Not Received In Evidence)

DNM 774

Page: 350

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 19

The parties have agreed to certain facts that have been stated to you.  These facts are now conclusively established.

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("The defendants . . . request the Court to follow the Ninth Circuit Pattern Instructions, Sections . . . 2.4 . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("The defendants . . . request the Court to follow the Ninth Circuit Pattern Instructions, Sections 2.3 . . . .")

DNM 775

Page: 351     Date Filed: 09/29/2020     Document: 01110415670     Appellate Case: 20-2058

## JURY INSTRUCTION NO. 20

The word "racketeering" has certain implications in our society. Use of that term in the statute and in this courtroom should not be regarded as having anything to do with your determination of whether the guilt of any defendant has been proven. The term is only a term used by Congress to describe the statute.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 7**, at 1, 19, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS** **[sic]** **PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 48,** at 1, 4, 82, filed January 12, 2018 (Doc. 1641)(48) 2.74.1 Racketeer Influenced and Corrupt Organizations Act: Prejudice from the Word "Racketeering")(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 2, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 7: No objection to the unmodified Tenth Circuit instruction.")

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74.1, at v, 229 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT Prejudice From The Word "Racketeering")

DNM 776

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 352

## JURY INSTRUCTION NO. 21

Counts 6, 7, 9, and 10 charge specific defendants with committing violent crimes in aid of racketeering in violation of 18 U.S.C. § 1959.

That law makes it a crime for any person who, as consideration for a promise or agreement to pay anything of pecuniary value from an enterprise engaged in racketeering activity,  or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the law of any State or the United States, or attempts or conspires so to do.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 8**, at 1, 20-21, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 8: Defendants object to the uses of this instruction . . . . ")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74, at v, 228 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT 18 U.S.C. § 1962(a)(Introductory Paragraph))(modified)

## JURY INSTRUCTION NO. 22

Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez are on trial before you upon an Indictment brought by the Grand Jury.  Before reading the indictment to you, I remind you that the Indictment or formal charge against Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez is not evidence of guilt.  Indeed, Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez are presumed by the law to be innocent.

In this case, the Indictment charges as follows:

### Count 6

### Conspiracy to Murder Javier Molina

In March 2014, in Doña Ana County, in the District of New Mexico and elsewhere,  as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the  Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants,  JERRY ARMENTA, a.k.a. "Creeper," JERRY MONTOYA, a.k.a. "JR," a.k.a. "Plaz," MARIO RODRIGUEZ, a.k.a. "Blue," TIMOTHY MARTINEZ, a.k.a. "Red," **ANTHONY RAY BACA, a.k.a.  "Pup,"** MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts," **DANIEL SANCHEZ, a.k.a. "Dan Dan," CARLOS HERRERA, a.k.a. "Lazy,"** and **RUDY PEREZ, a.k.a. "Ru Dog,"** and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder Javier Molina, in violation of  NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

DNM 778

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 354

## Count 7

### Murder of Javier Molina

On or about March 7, 2014, in Doña Ana County, in the District of New Mexico, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, JERRY ARMENTA, a.k.a. "Creeper," JERRY MONTOYA, a.k.a. "JR," a.k.a. "Plaz," MARIO RODRIGUEZ, a.k.a. "Blue," TIMOTHY MARTINEZ, a.k.a. "Red," **ANTHONY RAY BACA, a.k.a. "Pup,"** MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts," **DANIEL SANCHEZ, a.k.a. "Dan Dan," CARLOS HERRERA, a.k.a. "Lazy,"** and **RUDY PEREZ, a.k.a. "Ru Dog,"** did unlawfully, knowingly and intentionally murder Javier Molina, in violation of NMSA 1978, Sections 30-2-1 and 30-1-13.

All in violation of 18 U.S.C. §§ 1959(a)(1) and 2.

## Count 9

### Conspiracy to Murder Dwayne Santistevan

Starting on a date uncertain, but no later than 2013, and continuing to on or about the date of this Indictment, in Santa Fe County, in the District of New Mexico, and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **ANTHONY RAY BACA, a.k.a. "Pup,"** ROY MARTINEZ, a.k.a. "Shadow," and ROBERT

DNM 779

Page: 355        Date Filed: 09/29/2020        Document: 010110415670        Appellate Case: 20-2058

MARTINEZ, a.k.a. "Baby Rob," and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder Dwayne Santistevan, in violation of NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

Count 10

Conspiracy to Murder Gregg Marcantel

Starting on a date uncertain, but no later than 2013, and continuing to on or about the date of this Indictment, in Santa Fe County, in the District of New Mexico, and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **ANTHONY RAY BACA, a.k.a. "Pup,"** ROY MARTINEZ, a.k.a. "Shadow," ROBERT MARTINEZ, a.k.a. "Baby Rob," and CHRISTOPHER GARCIA, and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder Gregg Marcantel, in violation of NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

Indictment at ¶¶ 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12a, 12b, 12c, 12d, 12e, 12f, 13a, 13b, 13c, 13d, 13e, 14, Count 6, Count 7, Count 8, Count 9 and Count 10, at 1-9, 12-13, filed March 9, 2017 (Doc. 947)(modified)

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 3,** at 1, 4-15, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 4,** at 16, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 2-4, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 3: object to surplusage)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 4, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 4: objection)

DNM 781

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 357

## JURY INSTRUCTION NO. 23

I have just reviewed the charges brought by the Grand Jury through an indictment.  In this case, the only Defendants on trial before you are Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez.

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 4, filed January 19, 2018 (Doc. 1663)(Defendants' alternative)

Case 2:15-cr-04268-JB    Document 1876    Filed 03/05/18    Page 40 of 73

DNM 782

Page: 358

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 24

Title 18, United States Code, Section 1959(a), makes it a crime for anyone to commit, threaten to commit, attempt to commit, or conspire to commit a violent crime in aid of an enterprise engaged in racketeering activity.

For you to find any defendant guilty of this crime, as charged in Counts 6, 7, 9, and 10, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First:*        That the enterprise existed;

*Second:*        That the enterprise was engaged in interstate commerce or that its activities affected interstate commerce;

*Third:*        That the enterprise was engaged in racketeering activity;

*Fourth*:        That the defendant committed a crime of violence as alleged in the indictment:

Count 6:        Conspiracy to murder Javier Molina;

Count 7:        Murder of Mr. Molina;

Count 9:        Conspiracy to murder Dwayne Santistevan; and

Count 10:        Conspiracy to murder Gregg Marcantel.

I will instruct you on what the government must prove to establish that a particular defendant committed any one of these acts; and

*Fifth:*        That the defendant's purpose in committing, threatening to commit, attempting to commit, or conspiring to commit the crimes of violence was to gain entrance to, or to maintain, or to increase his position in the enterprise.

DNM 783

Page: 359

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

If the purpose is to "gain entrance to, or to maintain, or to increase his position in the enterprise," it is not necessary for the government to prove that this was the sole purpose of a defendant in committing the charged crime. You need only find that it was a substantial purpose, or that a defendant committed the charged crime as an integral aspect of membership in the enterprise. In determining a defendant's purpose in committing the alleged crime, you must determine what he had in mind. Because you cannot look into a person's mind, you have to determine purpose by considering only the facts and circumstances that have been admitted against an individual defendant during the course of the trial.

An "enterprise" includes any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate commerce.

Although the enterprise must be separate and apart from the pattern of racketeering activity in which the enterprise allegedly engaged, it is not necessary to find that the enterprise had some function wholly unrelated to the racketeering activity. The enterprise must be proved to have been an ongoing organization, formal or informal, that functioned as a continuing unit.

An enterprise is a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time. The personnel of the enterprise, however, may change and need not be associated with the enterprise for the entire period alleged in the indictment. Therefore, the government must prove the existence of an association-in-fact enterprise by evidence of an ongoing organization, formal or informal, and by evidence that the various associates functioned as a continuing unit. The enterprise must have the three following structural features: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. The

name of the organization itself is not an element of the offense and does not have to be proved. The government need not prove that the enterprise had any particular organizational structure.

The group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods -- by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, you may nonetheless find that the enterprise element is satisfied by finding a group whose associates engage in spurts of activity punctuated by periods of quiescence [inactivity].

The enterprise is "engaged in interstate commerce" if it directly engaged in the distribution or acquisition of goods or services in such commerce. The enterprise's conduct "affected" interstate commerce if the conduct had a demonstrated connection or link with such commerce.

It is not necessary for the government to prove that a defendant knew or intended that the enterprise was engaged in commerce or that its conduct would affect commerce. It is only necessary that the natural consequences of the enterprise's conduct affected commerce in some way. Only a minimal effect on commerce is necessary.

There must be some nexus between the enterprise and the racketeering activity being conducted by members and/or associates of the enterprise.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **8**, at 1, 20-21, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 49,** at 1, 4, 83-86, filed January 12, 2018 (Doc. 1641)(49) Fifth Circuit Pattern Jury Instruction § 2.78 Violent Crimes in Aid of Racketeering, 18 U.S.C. § 1959(a))(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 20: Defendants object to the inclusion of [or from a foreign country] . . . . ")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74.2, at 230 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT-- "SECTION A" Elements Of The Offense)(modified)

Authority: Fifth Circuit Pattern Jury Instruction Criminal §2.78 (2015 ed.)(modified)(**Violent Crimes in Aid of Racketeering** 18 U.S.C. § 1959(a))

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 18,** at 1, 33, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 18: Defendants object to this instruction . . . . ")

## JURY INSTRUCTION NO. 25

The first element that the government must prove beyond a reasonable doubt is that an "enterprise" existed as alleged in the indictment.

The government has charged the following in the Indictment as constituting the enterprise: the Syndicato de Nuevo Mexico Gang (SNM) in Counts 6, 7, 9, and 10.

An enterprise includes a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time. This group of people does not have to be a legally recognized entity, such as a partnership or corporation. This group may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose. This group of people must have: (1) a common purpose; and (2) an ongoing organization, either formal or informal; and (3) personnel who function as a continuing unit.

If you find these three elements, then you may find that an enterprise existed.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 9**, at 1, 22-23, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 9: Defendants object to this instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74.3, at 231 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT-- "SECTION A" First Element -- The Enterprise)

Fifth Circuit Pattern Jury Instructions Criminal 2.78 (2015)(modified)(**Violent Crimes In Aid of Racketeering)**

DNM 787

Appellate Case: 20-2058   Document: 01110415670   Date Filed: 09/29/2020   Page: 363

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 10, at 1, 24, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 5, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 10: Defendants object to this instruction.")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 20: Defendants object to the inclusion of [or from a foreign country] . . . . ")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.74.4, at 234 (**2011 Edition** Updated January 2017)(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT -- "SECTION A" Second Element -- Effect On Interstate Commerce)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 42,** at 1, 4, 74, filed January 12, 2018 (Doc. 1641)(42) 1.39 Interstate and Foreign Commerce -- Defined in 18 U.S.C. Section 10)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 20: Defendants object to the inclusion of [or from a foreign country] . . . . ")

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.39, at ii, 59 (**2011 Edition** Updated January 2017)(INTERSTATE AND FOREIGN COMMERCE -- DEFINED, 18 U.S.C. SECTION 10)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 20: Defendants object to the inclusion of [or from a foreign country] . . . . ")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.39.1, at ii, 60 (**2011 Edition** Updated January 2017)(INTERSTATE AND FOREIGN COMMERCE -- EFFECT ON 18 U.S.C. § 10)

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 364

DNM 788

## JURY INSTRUCTION NO. 26

The third element which the government must prove beyond a reasonable doubt as to Counts 6, 7, 9, and 10 is that the enterprise was engaged in racketeering activity.

That racketeering activity may consist of state offenses as well federal offenses. The government has charged that the SNM engaged in multiple acts of racketeering activity consisting of the following:  (1) murder and robbery, in violation of New Mexico law; (2) acts involving tampering with a witness, in violation of federal law; and, (3) offenses involving trafficking in narcotics, in violation of federal law.

In order for the state offense of murder to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that a member or an associate of the racketeering enterprise committed the offense as defined by law.  The elements of that offense are as follows:

First:  someone killed a human being, and

Second:  the killing was with the deliberate intention to take away the life of that person.

In order for the federal offense of witness tampering to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that:

First:  a member, prospect or associate of the racketeering enterprise used or attempted to use intimidation or threats against another person;

Second:  that member, prospect, or associate acted knowingly and with the intent to influence or prevent the testimony of that other person with respect to an official proceeding.

DNM 789

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 365

In order for the offense of possession with intent to distribute a controlled substance to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that:

First:          a member, prospect, or associate of the SNM knowingly and intentionally possessed a controlled substance as charged, and

Second:      that person possessed the substance with the intent to distribute it.

To "possess with intent to distribute" means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.

Crack cocaine, powder cocaine, heroin, suboxone, marijuana, and methamphetamine are controlled substances within the meaning of the law.

In order for the offense of distribution of a controlled substance to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that a member, prospect, or associate of the SNM knowingly or intentionally distributed a controlled substance.

The term "distribute" means to deliver or to transfer possession or control of something from one person to another. The term "distribute" includes the sale of something by one person to another. It is not necessary, however, for the government to prove that any transfer of money or other thing of value occurred at the same time as, or because of, the distribution.

There must be some nexus between the enterprise and the racketeering activity being conducted by members and/or associates of the enterprise.

I instruct you that "racketeering activity" includes numerous offenses, including those listed above. It is for you to determine whether the enterprise engaged in these activities as charged. You should give the words "engaged in" their ordinary, everyday meaning. For an

enterprise to be engaged in racketeering activity it is enough to show that the enterprise committed or was planning to commit some racketeering activity within a period of time short enough under all of the circumstances so that it is appropriate to say that the enterprise was engaged in racketeering activity.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **11**, at 1, 25, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **12**, at 1, 26, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **13**, at 1, 27, filed January 12, 2018 (Doc. 1635)(modified)

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY INSTRUCTION NO. **14**, at 1, 28, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 6, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 11: Defendants object to this instruction . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 6, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 12: Defendants object to this instruction . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 6, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 13: Defendants object to this instruction . . . .")

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 6, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 14: Defendants object to this instruction . . . .")

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 28,** at 1, 3, 55-56, filed January 12, 2018 (Doc. 1641)(28) 1.31 Actual or Constructive Possession)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL**

DNM 791

Page: 367

Date Filed: 09/29/2020

Document: 01011041567 0

Appellate Case: 20-2058

**MATTERS** 1.31, at i, **47 (2011 Edition** Updated February 22, 2018)(ACTUAL OR CONSTRUCTIVE POSSESSION)(modified)

United States v. Little, 829 F.3d 1177 (10th Cir. 2016)

Henderson v. United States, 135 S. Ct. 1780 (2105)

## JURY INSTRUCTION NO. 27

For you to find any defendant guilty of first degree murder by a deliberate killing of Mr. Molina as charged in Count 7;

The government must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant killed Mr. Molina;

2. The killing was with the deliberate intention to take away the life of Mr. Molina;

3. This happened in New Mexico on or about March 7, 2014.

A deliberate intention refers to the state of mind of the defendant. A deliberate intention may be inferred from all of the facts and circumstances of the killing. The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at in a short period of time. A mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill. To constitute a deliberate killing, the slayer must weigh and consider the question of killing and his reasons for and against such a choice.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 47,** at 1, 4, 47, filed January 12, 2018 (Doc. 1641)(47) UJI 14-201 NMRA -- Willful and Deliberate Murder; Essential Elements)(modified)

Authority: UJI 14-201 NMRA (modified)(**Willful and deliberate murder; essential elements)**(adapted)

DNM 793

Page: 369

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

**JURY INSTRUCTION NO. 28**

For you to find any defendant guilty of second degree murder as charged in Count 7, the government must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1.  The defendant killed Mr. Molina;

2.  The defendant knew that his acts created a strong probability of death or great bodily harm to Mr. Molina;

3.  This happened in New Mexico on or about the 7th day of March 2014.

DNM 794

Appellate Case: 20-2058    Document: 01110415670    Date Filed: 09/29/2020    Page: 370

## JURY INSTRUCTION NO. 29

The fourth element which the government must prove beyond a reasonable doubt as to Count 6 is that Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez conspired to murder Javier Molina.

The fourth element which the government must prove beyond a reasonable doubt as to Count 9 is that Mr. Baca conspired to murder Dwayne Santistevan.

The fourth element which the government must prove beyond a reasonable doubt as to Count 10 is that Mr. Baca conspired to murder Gregg Marcantel.

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose.   To find Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

1.  Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez and another person by words or acts agreed together to commit murder;

2.  Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez and the other person intended to commit murder;

3.  This happened in New Mexico on or about March, 2014, as to Count 6, a date uncertain, but no later than 2013, and continuing to on or about March 9, 2017, as to Counts 9 and 10.

In proving a conspiracy to murder, it is not necessary to show a meeting of the alleged conspirators or the making of an express or formal agreement. The formation and existence of a conspiracy to murder may be inferred from all circumstances tending to show the common intent

and may be proved in the same way as any other fact may be proved, either by direct testimony of the fact or by circumstantial evidence, or by both direct and circumstantial evidence.

Evidence that a person was in the company of or associated with one or more other persons alleged or proved to have been members of a conspiracy is not, in itself, sufficient to prove that such person was a member of the alleged conspiracy.

Evidence of a defendant's membership in a gang, by itself, is insufficient to establish that person's guilt of a crime as a coconspirator.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 15**, at 1, 29-30, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 15: Defendants object to this instruction. ")

NM UJI 14-2810 NMRA

NM UJI 14-201 NMRA

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 37,** at 68-69, filed January 12, 2018 (Doc. 1641)(37) UJI 14-2810 NMRA -- Conspiracy: Essential Elements)(modified)

Authority:  UJI 14-2810 NMRA (modified)(**Conspiracy: Essential Elements**)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 38,** at 1, 3, 70, filed January 12, 2018 (Doc. 1641)(38) UJI 14-2810

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 372

DNM 796

NMRA -- Conspiracy: Evidence of Association Alone Does Not Prove Membership in Conspiracy)(modified)

<u>Authority</u>: UJI 14-2810 NMRA (**Conspiracy: Evidence of Association Alone Does Not Prove Membership in Conspiracy)**

DNM 797

Page: 373

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 30

In this case, you must consider separately whether Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez are guilty or not guilty of each of the charged crimes.  Even if you cannot agree upon a verdict as to any single defendant on any particular charge, you must return the verdict or verdicts upon which you agree.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 39,** at 1, 3-4, filed January 12, 2018 (Doc. 1641)(39) UJI 14-2812 NMRA -- Conspiracy: Multiple Defendants; Each Defendant Entitled to Individual Consideration)(modified)

Authority: UJI 14-2812 NMRA (**Conspiracy; multiple defendants; each defendant entitled to individual consideration)**

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 40,** at 1, 4, 72, filed January 12, 2018 (Doc. 1641)(40) UJI 14-2814 NMRA -- Conspiracy: Evidence of Association Alone Does Not Prove Membership in Conspiracy)(modified)

Authority: UJI 14-2814 NMRA (**Conspiracy; evidence of association alone does not prove membership in conspiracy)**

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 16,** at 1, 31, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 16: No objection . . . . ")

NM UJI 14-201 NMRA.

DNM 798

Page: 374

Date Filed: 09/29/2020

Document: 01011041570

Appellate Case: 20-2058

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("Defendants insist the New Mexico jury instructions be given, in particular NM UJI 14-323 . . . . ")

UJI 14-323.  AGGRAVATED  BATTERY;  GREAT  BODILY  HARM;  ESSENTIAL ELEMENTS (modified)

**PROPOSED  JURY  INSTRUCTIONS,  UNITED  STATES'  PROPOSED  JURY INSTRUCTION NO. 17,** at 1, 32, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 17: Defendants object to this instruction.")

2 Fed. Jury Prac. & Instr. § 25:09 (6th ed.)(modified)(**The essential elements of the offense charged**)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("Defendants insist the New Mexico jury instructions be given, in particular . . .  NM UJI 14-131. ")

UJI 14-131. "GREAT BODILY HARM" DEFINED

**PROPOSED  JURY  INSTRUCTIONS,  UNITED  STATES'  PROPOSED  JURY INSTRUCTION NO. 18,** at 1, 33, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 18: Defendants object to this instruction . . . .")

## JURY INSTRUCTION NO. 31

When the word "knowingly" is used in these instructions, it means that the act was done voluntarily and intentionally, and not because of mistake or accident.

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 23**, at 1, 40, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 30,** at 59, filed January 12, 2018 (Doc. 1641)(30) 1.37 Knowingly -- Deliberate Ignorance)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 8, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 23: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.36, at ii, 56 (**2011 Edition** Updated January 2017)(KNOWINGLY -- DELIBERATE IGNORANCE)(adapted)

DNM 800

Page: 376

Date Filed: 09/29/2020

Document: 01110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 32

You will note that the indictment charges that the crimes charged in Count 6 and Count 7 were committed "on or about" March 2014; the crimes charged in Count 9 and Count 10 were committed "on or about" no later than 2013 and continuing to on or about March 9, 2017.  The government must prove beyond a reasonable doubt that the defendant committed the crimes reasonably near March 2014 (for Count 6 and Count 7); and no later than 2013 and continuing to on or about March 9, 2017 (for Count 9 and Count 10).

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 22**, at 1, 39, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 20,** at 1, 3, 45, filed January 12, 2018 (Doc. 1641)(20) 1.18 On or About)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 8, filed January 19, 2018 (Doc. 1663)("United States Proposed Jury Instruction No. 22: . . . Defendants object to the modification of the Tenth Circuit pattern instruction in the fashion proposed by the United States.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.18, at i, 38 (**2011 Edition** Updated January 2017)(ON OR ABOUT)(adapted)

## JURY INSTRUCTION NO. 33

Count 7 of the indictment also charges a violation of 18 U.S.C. section 2, which provides that: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

This law makes it a crime to intentionally help someone else commit a crime. To find Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*:   someone else committed the charged crime, and

*Second*: Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the government must prove that Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez consciously shared the other person's knowledge of the underlying criminal act and intended to help him.

Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

Evidence of a defendant's membership in a gang, by itself, is insufficient to establish that person's guilt of a crime as an aider and abettor.

DNM 802

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 378

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 19**, at 1, 34, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **REQUESTED INSTRUCTION NO. 36**, at 1, 3, 66, filed January 12, 2018 (Doc. 1641)(36) 2.06 Aid and Abet 18 U.S.C. § 2(a))(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 7, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 19: Defendants object to this instruction . . . .")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 2.06, at ii, 79 (**2011 Edition** Updated January 2017)(AID AND ABET  18 U.S.C. § 2(a))(adapted)

Fifth Circuit Pattern Jury Instructions Criminal 2.04 (2011)(**Aiding and Abetting**)

Abet 18 U.S.C. § 2(a)

DNM 803

Page: 379

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 34

Evidence has been presented that Mr. Baca was the subject of unfair inducement. Unfair inducement occurs when government agents unfairly cause the commission of a crime. "Government agents" include law enforcement officers or persons acting under their direction, influence or control.

Where Mr. Baca was not ready and willing to commit the crime of conspiracy to commit the murder of Mr. Marcantel, as charged in Count 10 of the indictment before first being contacted or approached by a government agent, but is induced or persuaded to commit the crime by a government agent, Mr. Baca is a victim of unfair inducement. However, where Mr. Baca was ready and willing to commit the crime at the time of the first contact with the government agent, the mere fact that the government agent provided what appears to be an opportunity to commit the crime is not unfair inducement.

The burden is on the government to prove to your satisfaction beyond a reasonable doubt that Mr. Baca was not unfairly induced. If you have a reasonable doubt as to whether Mr. Baca was unfairly induced, you must find Mr. Baca not guilty.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 44,** at 1, 4, 77, filed January 12, 2018 (Doc. 1641)(44) UJI 14-5160 NMRA -- Entrapment; unfair Inducement, not Predisposed)(modified)

Authority: UJI 14-5160 NMRA (modified)(**Entrapment; unfair inducement; not predisposed**)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 45,** at 1, 4, 78-79, filed January 12, 2018 (Doc. 1641)(45) UJI 14-5161 NMRA -- Entrapment; law enforcement unconscionable methods and illegitimate purposes)(modified)

Authority: UJI 14-5161 NMRA (modified)(**Entrapment; law enforcement unconscionable methods and illegitimate purposes**)

DNM 804

Page: 380        Date Filed: 09/29/2020        Document: 010110415670        Appellate Case: 20-2058

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 46,** at 1, 4, 46, filed January 12, 2018 (Doc. 1641)(46) UJI 14-5181 NMRA -- Self-defense; Non deadly Force by Defendant)(modified)

Authority: UJI 14-5161 NMRA **(Self-defense; non-deadly force by defendant)**

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 29,** at 57-58, filed January 12, 2018 (Doc. 1641)(29) 1.36 Coercion or Duress)(modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.36, at 54-55 **(2011 Edition** Updated January 2017)(COERCION OR DURESS)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 6,** at 1, 2, 20, filed January 12, 2018 (Doc. 1641)(6) 1.05.1 Preponderance of Evidence)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.05.1, at ii, 10 **(2011 Edition** Updated January 2017)(PREPONDERANCE OF EVIDENCE)(modified)

DNM 805

Page: 381   Date Filed: 09/29/2020   Document: 010110415670   Appellate Case: 20-2058

## JURY INSTRUCTION NO. 35

You are here to decide whether the government has proved beyond a reasonable doubt that the defendants are guilty of the crimes charged.  The defendants are not on trial for any act, conduct, or crime not charged in the indictment.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crimes charged.  The fact that another person *also* may be guilty is no defense to a criminal charge.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 21** at 1, 3, 46, filed January 12, 2018 (Doc. 1641)(21) 1.19 Caution -- Consider Only Crime Charged)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 51, LIMITING INSTRUCTION 404(b): EVIDENCE TO BE ISSUED AT THE CLOSE OF TRIAL,** at 1, 5, 88, filed January 12, 2018 (Doc. 1641)(51) Limiting Instruction 404(b): Evidence to be Issued at the Close of Trial)(modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.19, at i, 31 (**2011 Edition** Updated January 2017)(CAUTION – CONSIDER ONLY CRIME CHARGED)(modified)

Authority: *United States v. Rodella*, 101 F.Supp. 3d 1075, 1086 (D.N.M. 2015)

DNM 806

Page: 382

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 36

If you find any defendant guilty, it will be my duty to decide what the punishment will be. You should not discuss or consider the possible punishment in any way while deciding your verdict.

**PROPOSED JURY INSTRUCTIONS**, **UNITED STATES' PROPOSED JURY INSTRUCTION NO. 40**, at 1, 58, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 22** at 1, 3, 47, filed January 12, 2018 (Doc. 1641)(22) 1.20 Caution -- Punishment (Non-Capital Cases))(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury instruction No. 40: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.20, at i, 32 (**2011 Edition** Updated January 2017)(CAUTION -- PUNISHMENT)(NON-CAPITAL CASES)(adapted)

DNM 807

Appellate Case: 20-2058   Document: 01110415670   Date Filed: 09/29/2020   Page: 383

## JURY INSTRUCTION NO. 37

The rights of Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez in this case are separate and distinct.  You must separately consider the evidence against Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez and return a separate verdict for each as to each crime charged.

Your verdicts as to Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez, whether they are guilty or not guilty, should not affect your verdicts as to any other defendant on any other charges.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 23,** at 1, 3, 48, filed January 12, 2018 (Doc. 1641)(23) 1.22 Multiple Defendants -- Multiple Counts)(modified)

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.21, at i, 33 (**2011 Edition** Updated January 2017)(adapted)

**PROPOSED JURY INSTRUCTIONS, UNITED STATES' PROPOSED JURY INSTRUCTION NO. 39,** at 1, 57, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 23,** at 1, 3, 48, filed January 12, 2018 (Doc. 1641)(23) 1.22 Multiple Defendants -- Multiple Counts)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 39: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.22, at i, 34 (**2011 Edition** Updated January 2017)(MULTIPLE DEFENDANTS -- MULTIPLE COUNTS)

18 U.S.C. § 1959

United States v. Kamahele, 748 F.3d 984, 1012 (10th Cir. 2014)

## JURY INSTRUCTION NO. 38

In a moment the Courtroom Deputy Clerk will escort you to the jury room and provide each of you with a copy of the instructions that I have just read. Any exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you should first select a foreperson, who will help to guide your deliberations and will speak for you here in the courtroom. The second thing you should do is review the instructions. Not only will your deliberations be more productive if you understand the legal principles upon which your verdicts must be based, but for your verdicts to be valid, you must follow the instructions throughout your deliberations. Remember, you are the judges of the facts, but you are bound by your oath to follow the law stated in the instructions.

To reach a verdict, whether it is guilty or not guilty, all of you must agree. Your verdict must be unanimous on each count of the indictment as to each defendant charged. Your deliberations will be secret. You will never have to explain your verdicts to anyone.

You must consult with one another and deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong. But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times, you are judges -- judges of the facts. You must decide whether the government has proved Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez guilty beyond a reasonable doubt as to each of the charges individually made against them.

A verdict form has been prepared for your convenience.

[Explain the Verdict Form]

The foreperson will write the unanimous answer of the jury in the space provided for each count of the indictment, either guilty or not guilty.  At the conclusion of your deliberations, the foreperson should date and sign the verdict form.

If you need to communicate with me during your deliberations, the foreperson should write the message and give it to the Court Security Officer.  I will either reply in writing or bring you back into the court to respond to your message.  Under no circumstances should you reveal to me the numerical division of the jury.

**PROPOSED JURY INSTRUCTIONS**, UNITED STATES' PROPOSED JURY **INSTRUCTION NO. 41,** at 1, 59-60, filed January 12, 2018 (Doc. 1635)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, REQUESTED **INSTRUCTION NO. 24,** at 1, 3, 40, filed January 12, 2018 (Doc. 1641)(24) 1.23 Duty to Deliberate -- Verdict Form)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, REQUESTED **INSTRUCTION NO. 34,** at 1, 3, 64, filed January 12, 2018 (Doc. 1641)(34) 1.43 Partial Verdict Instruction)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("United States' Proposed Jury Instruction No. 41: No objection as this is the unmodified Tenth Circuit instruction.")

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS (Criminal Cases) GENERAL MATTERS** 1.23, at i, 35-36 (**2011 Edition** Updated January 2017)(DUTY TO DELIBERATE -- VERDICT FORM)(modified)

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, REQUESTED **INSTRUCTION NO. 33,** at 1, 3, 62-63, filed January 12, 2018 (Doc. 1641)(33) 1.43 Modified *Allen* Instruction)(modified)

DNM 810

Page: 386

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 34,** at 1, 3, 64, filed January 12, 2018 (Doc. 1641)(34) 1.43 Partial Verdict Instruction)modified)

<u>Authority</u>: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS** 1.42, at 63-64 (**2011 Edition** Updated January 2017)(MODIFIED *ALLEN* INSTRUCTION)(modified)

DNM 811

Page: 387

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 39

Let me remind you again that nothing I have said in these instructions, nor anything I have said or done during the trial, was meant to suggest to you what I think your decision should be. That is your exclusive responsibility.

**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS, REQUESTED INSTRUCTION NO. 35,** at 1, 3, 65, filed January 12, 2018 (Doc. 1641)(35) 1.44 Communication with the Court)(modified)

Authority: Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS** 1.44, at ii, 66 **(2011 Edition** Updated January 2017)(COMMUNCIATION WITH THE COURT)(modified)

DNM 812

Page: 388

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 40

Faithful performance by you of your duties is vital to the administration of justice.

United States v. Gaspar Leal, No. CIV 16-3069 JB, Instruction No. 20, at 25, filed December 6, 2017 (Doc. 183)

DNM 813

Page: 389

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                   No. CR 15-4268 JB

DANIEL SANCHEZ, ANTHONY RAY
BACA, CARLOS HERRERA, and
RUDY PEREZ,

       Defendants.

## **V E R D I C T**

### **DANIEL SANCHEZ**

#### **COUNT 6**

WE, the Jury, find the defendant, **DANIEL SANCHEZ,** _____

                                          (guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of

the Indictment.

#### **COUNT 7**

WE, the Jury, find the defendant, **DANIEL SANCHEZ,** _____

                                          (guilty or not guilty)

of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the

Indictment.

### **ANTHONY RAY BACA**

#### **COUNT 6**

WE, the Jury, find the defendant, **ANTHONY RAY BACA,** _____

                                            (guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of

the Indictment.

DNM 814

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 390

**COUNT 7**

WE, the Jury, find the defendant, **ANTHONY RAY BACA,** _____
                                              (guilty or not guilty)
of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the

Indictment.

**COUNT 9**

WE, the Jury, find the defendant, **ANTHONY RAY BACA,** _____
                                              (guilty or not guilty)
of violent crimes in aid of racketeering in conspiring to murder Dwayne Santistevan, as charged in Count

9 of the Indictment.

**COUNT 10**

WE, the Jury, find the defendant, **ANTHONY RAY BACA,** _____
                                              (guilty or not guilty)
of violent crimes in aid of racketeering in conspiring to murder Gregg Marcantel, as charged in Count 10

of the Indictment.

**<u>CARLOS HERRERA</u>**

**COUNT 6**

WE, the Jury, find the defendant, **CARLOS HERRERA,** _____
                                              (guilty or not guilty)
of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of

the Indictment.

**COUNT 7**

WE, the Jury, find the defendant, **CARLOS HERRERA,** _____
                                              (guilty or not guilty)
of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the

Indictment.

DNM 815

Page: 391        Date Filed: 09/29/2020        Document: 010110415670        Appellate Case: 20-2058

**RUDY PEREZ**

### COUNT 6

WE, the Jury, find the defendant, **RUDY PEREZ,** _____

(guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of

the Indictment.

### COUNT 7

WE, the Jury, find the defendant, **RUDY PEREZ,** _____

(guilty or not guilty)

of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the

Indictment.

Dated this _____ day of _____, 2018.


_____

FOREPERSON



**DEFENDANTS [sic] PROPOSED JURY INSTRUCTIONS**, **VERDICT,** at 1, 5, 89-92, filed
January 12, 2018 (Doc. 1641)(Verdict Form)(modified)

**DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' PROPOSED JURY
INSTRUCTIONS (DOC. 1635),** at 1, 12, filed January 19, 2018 (Doc. 1663)("The
[Government's] Verdict Forms are insufficient . . . . ")

DNM 816

Page: 392

Date Filed: 09/29/2020

Document: 01011041567O

Appellate Case: 20-2058

**FILED**

UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

MAR - 5 2018

**MATTHEW J. DYKMAN**
**CLERK**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

No. CR 15-4268 JB

ANGEL DELEON, JOE LAWRENCE
GALLEGOS, EDWARD TROUP, a.k.a.
"Huero Troup," LEONARD LUJAN,
BILLY GARCIA, a.k.a. "Wild Bill,"
EUGENE MARTINEZ, a.k.a. "Little
Guero," ALLEN PATTERSON,
CHRISTOPHER CHAVEZ, a.k.a. "Critter,"
JAVIER ALONSO, a.k.a. "Wineo,"
ARTURO ARNULFO GARCIA, a.k.a.
"Shotgun," BENJAMIN CLARK, a.k.a.
"Cyclone," RUBEN HERNANDEZ;
JERRY ARMENTA, a.k.a. "Creeper,"
JERRY MONTOYA, a.k.a. "Boxer,"
MARIO RODRIGUEZ, a.k.a. "Blue,"
TIMOTHY MARTINEZ, a.k.a. "Red,"
MAURICIO VARELA, a.k.a. "Archie,"
a.k.a. "Hog Nuts," DANIEL SANCHEZ,
a.k.a. "Dan Dan," GERALD ARCHULETA,
a.k.a. "Styx," a.k.a. "Grandma," CONRAD
VILLEGAS, a.k.a. "Chitmon," ANTHONY
RAY BACA, a.k.a. "Pup," ROBERT
MARTINEZ, a.k.a. "Baby Rob," ROY
PAUL MARTINEZ, a.k.a. "Shadow,"
CHRISTOPHER GARCIA, CARLOS
HERRERA, a.k.a. "Lazy," RUDY PEREZ,
a.k.a. "Ru Dog," ANDREW GALLEGOS,
a.k.a. "Smiley," SANTOS GONZALEZ;
PAUL RIVERA, SHAUNA GUTIERREZ,
and BRANDY RODRIGUEZ,

     Defendants.

**COURT'S FINAL JURY INSTRUCTIONS**
(without citations)

DNM 817

Appellate Case: 20-2058     Date Filed: 09/29/2020     Page: 393     Document: 010110415670

## JURY INSTRUCTION NO. 1

Members of the Jury:

In any jury trial there are, in effect, two judges. I am one of the judges, you are the other. I am the judge of the law. You, as jurors, are the judges of the facts. I presided over the trial and decided what evidence was proper for your consideration. It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdicts.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every criminal case -- for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses. Then I will give you some specific rules of law that apply to this particular case and, finally, I will explain the procedures you should follow in your deliberations, and the possible verdicts you may return. These instructions will be given to you for use in the jury room, so you need not take notes.

DNM 818

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 394

## JURY INSTRUCTION NO. 2

You, as jurors, are the judges of the facts.  But in determining what actually happened -- that is, in reaching your decision as to the facts -- it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you.  You must not substitute or follow your own notion or opinion as to what the law is or ought to be.  It is your duty to apply the law as I explain it to you, regardless of the consequences.  However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdicts should be. These should be entirely up to you.

It is also your duty to base your verdicts solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took.

DNM 819

Page: 395    Date Filed: 09/29/2020

Appellate Case: 20-2058    Document: 010110415670

## JURY INSTRUCTION NO. 3

The government has the burden of proving defendants Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, and Rudy Perez guilty beyond a reasonable doubt. The law does not require any individual defendant to prove his innocence or produce any evidence at all. The government has the burden of proving each defendant, individually, guilty beyond a reasonable doubt, and if it fails to do so for any individual defendant, you must find that defendant not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of a defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the government's proof exclude any "reasonable doubt" concerning any individual defendant's guilt. A reasonable doubt is a doubt based on reason and common sense. It may arise after careful and impartial consideration of all the evidence, or from lack of evidence. If, based on your consideration of the evidence, you are firmly convinced that a defendant is guilty of the crimes charged, you must find him guilty of that charge. If on the other hand, you think there is a reasonable doubt about the truth of any charge, then you must give the defendant the benefit of the doubt and find him not guilty of that charge.

It is your duty to consider the evidence applicable to each defendant, separately. You must consider whether a reasonable doubt exists as to each count charged against each individual defendant.

DNM 820

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 396

## JURY INSTRUCTION NO. 4

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations that the lawyers agreed to.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked. I also ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

DNM 821

Page: 397

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 5

During the course of this trial, and on multiple occasions throughout the trial, you have heard evidence that was admitted for a limited purpose and as to a particular defendant, only.

Each time this type of evidence was admitted, I instructed you of the specific limitations placed on your use of that evidence. By providing these instructions, I was not suggesting that you must or should find the particular evidence credible or probative of any issue in this case. However, in the event you decide to consider the limited evidence, then you may only use it only for the limited purpose, and only as to the particular defendant, for which it was admitted.

You are not to consider any limited evidence for any other purpose than the particular purpose for which it was admitted. And, you may not use it in any way during your deliberations concerning any defendant against whom the evidence was not admitted.

DNM 822

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 398

## JURY INSTRUCTION NO. 6

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.

## JURY INSTRUCTION NO. 7

I remind you that it is your job to decide whether the government has proved the guilt of Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez beyond a reasonable doubt. In doing so, you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence that I have admitted as to any one defendant as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses who testified in this case. You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was. In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness admit prior instances of untruthfulness? Did the witness testify falsely on prior occasions? Did the witness make prior statements that were inconsistent with his or her testimony? Did the witness collude with others to create false evidence on prior occasions? Did the witness have the opportunity to collude with others prior to his testimony? Did the witness have a personal interest in the outcome in this case? Did the witness have any relationship with the government or a defendant? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he/she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you

Appellate Case: 20-2058     Document: 01110415670     Date Filed: 09/29/2020     Page: 400

DNM 824

should keep in mind that innocent misrecollection -- like failure of recollection -- is not uncommon.

You may not consider any defendant's decision not to testify as evidence of guilt. I want you to clearly understand, please, that the Constitution of the United States grants to Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez the right to remain silent. That means the right not to testify or call any witnesses. That is a constitutional right in this country, it is very carefully guarded, and you should understand that no presumption of guilt may be raised and no inference of any kind may be drawn from the fact that a defendant did not take the witness stand and testify or call any witnesses.

In reaching a conclusion on a particular point, or ultimately in reaching verdicts in this case, do not make any decisions simply because there were more witnesses on one side than on the other. What is important is how believable a witness was and how much weight you think that their testimony deserves.

Appellate Case: 20-2058        Document: 010110415670        Date Filed: 09/29/2020        Page: 401

DNM 825

**JURY INSTRUCTION NO. 8**

You have heard evidence that, before this trial, witnesses have made statements that may be different from the witnesses' testimony here in court.

These earlier statements were brought to your attention only to help you decide how believable the witnesses' testimony in this trial was.  You cannot use the witnesses' prior statements as proof of anything else.  You can only use them as one way of evaluating the witnesses' testimony here in court.

DNM 826

Page: 402

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

**JURY INSTRUCTION NO. 9**

You have heard evidence that a defendant has been convicted of a felony, that is, a crime punishable by imprisonment for a term of years.  The fact that a defendant has been convicted of another crime does not mean that a defendant committed the crime charged in this case, and you must not use a defendant's prior conviction as proof of the crime charged in this case.  You may find them guilty of the crimes charged here only if the government has proved beyond a reasonable doubt that they committed them.

DNM 827

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 403

## JURY INSTRUCTION NO. 10

The testimony of a witness may be discredited or impeached by showing that the witness previously has been convicted of a felony, that is, of a crime punishable by imprisonment for a term of years or of a crime of dishonesty or false statement.   A prior conviction does not mean that a witness is not qualified to testify, but is merely one circumstance that you may consider in determining the credibility of the witness.   You may decide how much weight to give any prior felony conviction or crime of dishonesty that was used to impeach a witness.

**JURY INSTRUCTION NO. 11**

You have heard the testimony of Eric Duran, who was a witness in the government's case.  You also heard testimony from Officer Clint Snodgrass concerning his opinion about Mr. Duran's character for truth-telling.  It is up to you to decide from what you heard here whether Mr. Duran was telling the truth in this trial.

DNM 829

Page: 405

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 12

### Accomplice

An accomplice is someone who joined with another person in committing a crime, voluntarily and with common intent.  The testimony of an accomplice may be received in evidence and considered by you, even though it is not supported by other evidence.  You may decide how much weight it should have.

You are to keep in mind, however, that accomplice testimony should be received with caution and considered with great care.  You should not convict any defendant based on the unsupported testimony of an alleged accomplice, unless you believe the unsupported testimony beyond a reasonable doubt.

### Informant

An informant is someone who provides evidence against someone else for a personal reason or advantage.  The testimony of an informant alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt, even though not corroborated or supported by other evidence.  You must examine and weigh an informant's testimony with greater care than the testimony of an ordinary witness.  You must determine whether the informant's testimony has been affected by self-interest, by an agreement the witness has with the government, by the witness's own interest in the outcome of the case, or by prejudice against any defendant.

You should not convict any defendant based on the unsupported testimony of an informant, unless you believe the unsupported testimony beyond a reasonable doubt.

DNM 830

Page: 406     Date Filed: 09/29/2020     Document: 010110415670     Appellate Case: 20-2058

Immunity

A person may testify under a grant of immunity (an agreement with the government). His testimony alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt even though it is not corroborated or supported by other evidence. You should consider testimony given under a grant of immunity with greater care and caution than the testimony of an ordinary witness. You should consider whether testimony under a grant of immunity has been affected by the witness's self-interest, the government's agreement, the witness's interest in the outcome of the case, or by prejudice against any defendant.

On the other hand, you should also consider that an immunized witness can be prosecuted for perjury for making a false statement. After considering these things, you may give testimony given under a grant of immunity such weight as you find it deserves.

You should not convict any defendant based on the unsupported testimony of an immunized witness, unless you believe the unsupported testimony beyond a reasonable doubt.

DNM 831

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 407

## JURY INSTRUCTION NO. 13

The government has called as witnesses, alleged accomplices, who were named as accomplices in this or related criminal cases.  The government has entered into plea agreements with these alleged accomplices: Mario Rodriquez, Jerry Armenta, Jerry Montoya, Timothy Martinez, Lupe Urquizo, David Calbert, Roy Paul Martinez, Robert Martinez, Manuel Jacob Armijo, Frederico Munoz, Gerald Archuleta, Mario Montoya, and Ben Clark, providing for the possibility of a lesser sentence than he would otherwise likely receive.  Plea bargaining is lawful and proper, and the rules of this court expressly provide for it.

An alleged accomplice, including one who has entered into a plea agreement with the government, is not prohibited from testifying.  On the contrary, the testimony of an alleged accomplice may, by itself, support a guilty verdict.  You should receive this type of testimony with caution and weigh it with great care. You should never convict any defendant upon the unsupported testimony of such an accomplice, unless you believe that testimony beyond a reasonable doubt.  The fact that an accomplice has entered into a guilty plea to the offense charged is not evidence of the guilt of any other person.

DNM 832

Appellate Case: 20-2058    Document: 010110415670    Date Filed: 09/29/2020    Page: 408

## JURY INSTRUCTION NO. 14

The testimony of a drug abuser must be examined and weighed by the jury with greater caution than the testimony of a witness who does not abuse drugs.

Billy Cordova, Mario Montoya, Eric Duran, Roy Paul Martinez, Robert Martinez, Frederico Muñoz, Javier Rubio, Manuel Jacob Armijo, Jerry Armenta, Mario Rodriguez, Lupe Urquizo, Jerry Montoya, Gerald Archuleta, David Calbert, Timothy Martinez, Bobby Delgado, and Julian Romero may be considered abusers of drugs.

You must determine whether the testimony of any witness has been affected by the use of drugs or the need for drugs.

DNM 833

Appellate Case: 20-2058     Document: 01011045670     Date Filed: 09/29/2020     Page: 409

## JURY INSTRUCTION NO. 15

During the trial you heard the testimony of Tim Bryan, who expressed opinions regarding the forensic analysis of computer tablets, and Dr. Heather Brislen, who expressed opinions regarding Rudy Perez's medical conditions.  In some cases, such as this one, scientific, technical, or other specialized knowledge may assist the jury in understanding the evidence or in determining a fact in issue. A witness who has knowledge, skill, experience, training or education, may testify and state an opinion concerning such matters.

You are not required to accept such an opinion.  You should consider opinion testimony just as you consider other testimony in this trial. Give opinion testimony as much weight as you think it deserves, considering the education and experience of the witness, the soundness of the reasons given for the opinion, and other evidence in the trial.

DNM 834

Page: 410

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 16

Evidence relating to any statement attributed to Mr. Baca, Mr. Herrera, or Mr. Perez alleged to have been made after the commission of the crime (or crimes) charged in this case but not made in court, should always be considered by you with caution and weighed with care. You should give any such statement the weight you think it deserves, after considering all the circumstances under which the statement was made.

In determining whether any such statement is reliable and credible, consider factors bearing on the voluntariness of the statement. For example, consider the age, gender, training, education, occupation, and physical and mental condition of Mr. Baca, Mr. Herrera, or Mr. Perez, and any evidence concerning his treatment while under interrogation if the statement was made in response to questioning by government officials, agents, or informants working on behalf of the government, and all the other circumstances in evidence surrounding the making of the statement.

After considering all this evidence, you may give such weight to the statement as you feel it deserves under all the circumstances. If you determine that the statement is unreliable or not credible, you may disregard the statement entirely.

As I have previously instructed, any such statement may be considered against the declarant-defendant only, and cannot be considered in any way, whatsoever, as evidence with respect to any other defendant on trial.

DNM 835

Page: 411     Date Filed: 09/29/2020     Document: 010110415670     Appellate Case: 20-2058

## JURY INSTRUCTION NO. 17

During this trial, you have heard sound recordings of certain conversations. These conversations may be considered by you as you would any other evidence. You were also shown transcripts of those recorded conversations.

Keep in mind that the transcripts are not evidence. They were shown to you only as a guide to help you follow what was being said. The recordings themselves are the evidence. If you noticed any differences between what you heard on the recordings and what you read in the transcripts, you must rely on what you heard, not what you read. If you could not hear or understand certain parts of the recordings, you must ignore the transcript as far as those parts are concerned.

As I have previously instructed, any such recordings may be considered as evidence against the defendant who is the subject of the recording, only, and cannot be considered in any way, whatsoever, as evidence with respect to any other defendant on trial.

DNM 836

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 412

**JURY INSTRUCTION NO. 18**

Certain charts and summaries have been shown to you to help explain the evidence in this case. Their only purpose is to help explain the evidence. These charts and summaries are not evidence or proof of any facts.

**JURY INSTRUCTION NO. 19**

The parties have agreed to certain facts that have been stated to you.  These facts are now conclusively established.

DNM 838

Appellate Case: 20-2058    Document: 010110415670    Date Filed: 09/29/2020    Page: 414

## JURY INSTRUCTION NO. 20

The word "racketeering" has certain implications in our society. Use of that term in the statute and in this courtroom should not be regarded as having anything to do with your determination of whether the guilt of any defendant has been proven. The term is only a term used by Congress to describe the statute.

DNM 839

Appellate Case: 20-2058   Document: 01011041567   Date Filed: 09/29/2020   Page: 415

## JURY INSTRUCTION NO. 21

Counts 6, 7, 9, and 10 charge specific defendants with committing violent crimes in aid of racketeering in violation of 18 U.S.C. § 1959.

That law makes it a crime for any person who, as consideration for a promise or agreement to pay anything of pecuniary value from an enterprise engaged in racketeering activity,  or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the law of any State or the United States, or attempts or conspires so to do.

DNM 840

Page: 416   Date Filed: 09/29/2020   Document: 01011045670   Appellate Case: 20-2058

## JURY INSTRUCTION NO. 22

Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez are on trial before you upon an Indictment brought by the Grand Jury.  Before reading the indictment to you, I remind you that the Indictment or formal charge against Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez is not evidence of guilt.  Indeed, Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez are presumed by the law to be innocent.

In this case, the Indictment charges as follows:

### Count 6

### Conspiracy to Murder Javier Molina

In March 2014, in Doña Ana County, in the District of New Mexico and elsewhere,  as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the  Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants,  JERRY ARMENTA, a.k.a. "Creeper," JERRY MONTOYA, a.k.a. "JR," a.k.a. "Plaz," MARIO RODRIGUEZ, a.k.a. "Blue," TIMOTHY MARTINEZ, a.k.a. "Red," **ANTHONY RAY BACA, a.k.a.   "Pup,"** MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts," **DANIEL SANCHEZ, a.k.a. "Dan Dan," CARLOS HERRERA, a.k.a. "Lazy,"** and **RUDY PEREZ, a.k.a. "Ru Dog,"** and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder Javier Molina, in violation of  NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

DNM 841

Page: 417

Date Filed: 09/29/2020

Document: 01110415670

Appellate Case: 20-2058

<u>Count 7</u>

<u>Murder of Javier Molina</u>

On or about March 7, 2014, in Doña Ana County, in the District of New Mexico, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, JERRY ARMENTA, a.k.a. "Creeper," JERRY MONTOYA, a.k.a. "JR," a.k.a. "Plaz," MARIO RODRIGUEZ, a.k.a. "Blue," TIMOTHY MARTINEZ, a.k.a. "Red," **ANTHONY RAY BACA, a.k.a. "Pup,"** MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts," **DANIEL SANCHEZ, a.k.a. "Dan Dan," CARLOS HERRERA, a.k.a. "Lazy,"** and **RUDY PEREZ, a.k.a. "Ru Dog,"** did unlawfully, knowingly and intentionally murder Javier Molina, in violation of NMSA 1978, Sections 30-2-1 and 30-1-13.

All in violation of 18 U.S.C. §§ 1959(a)(1) and 2.

<u>Count 9</u>

<u>Conspiracy to Murder Dwayne Santistevan</u>

Starting on a date uncertain, but no later than 2013, and continuing to on or about the date of this Indictment, in Santa Fe County, in the District of New Mexico, and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **ANTHONY RAY BACA, a.k.a. "Pup,"** ROY MARTINEZ, a.k.a. "Shadow," and ROBERT

DNM 842

Page: 418

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

MARTINEZ, a.k.a. "Baby Rob," and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder  Dwayne Santistevan, in violation of  NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

Count 10

Conspiracy to Murder Gregg Marcantel

Starting on a date uncertain, but no later than 2013, and continuing to on or about the date of this Indictment, in Santa Fe County, in the District of New Mexico, and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), or for the purpose of gaining entrance to or maintaining or increasing position in the  Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **ANTHONY RAY BACA, a.k.a. "Pup,"** ROY MARTINEZ, a.k.a. "Shadow," ROBERT MARTINEZ, a.k.a. "Baby Rob," and CHRISTOPHER GARCIA, and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder Gregg Marcantel, in violation of  NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

**JURY INSTRUCTION NO. 23**

I have just reviewed the charges brought by the Grand Jury through an indictment.   In this case, the only Defendants on trial before you are Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez.

DNM 843

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 419

DNM 844

Page: 420   Date Filed: 09/29/2020   Document: 011110415670   Appellate Case: 20-2058

## JURY INSTRUCTION NO. 24

Title 18, United States Code, Section 1959(a), makes it a crime for anyone to commit, threaten to commit, attempt to commit, or conspire to commit a violent crime in aid of an enterprise engaged in racketeering activity.

For you to find any defendant guilty of this crime, as charged in Counts 6, 7, 9, and 10, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First:*         That the enterprise existed;

*Second:*         That the enterprise was engaged in interstate commerce or that its activities affected interstate commerce;

*Third:*         That the enterprise was engaged in racketeering activity;

*Fourth*:         That the defendant committed a crime of violence as alleged in the indictment:

Count 6:         Conspiracy to murder Javier Molina;

Count 7:         Murder of Mr. Molina;

Count 9:         Conspiracy to murder Dwayne Santistevan; and

Count 10:         Conspiracy to murder Gregg Marcantel.

I will instruct you on what the government must prove to establish that a particular defendant committed any one of these acts; and

*Fifth:*         That the defendant's purpose in committing, threatening to commit, attempting to commit, or conspiring to commit the crimes of violence was to gain entrance to, or to maintain, or to increase his position in the enterprise.

DNM 845

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 421

If the purpose is to "gain entrance to, or to maintain, or to increase his position in the enterprise," it is not necessary for the government to prove that this was the sole purpose of a defendant in committing the charged crime. You need only find that it was a substantial purpose, or that a defendant committed the charged crime as an integral aspect of membership in the enterprise. In determining a defendant's purpose in committing the alleged crime, you must determine what he had in mind. Because you cannot look into a person's mind, you have to determine purpose by considering only the facts and circumstances that have been admitted against an individual defendant during the course of the trial.

An "enterprise" includes any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate commerce.

Although the enterprise must be separate and apart from the pattern of racketeering activity in which the enterprise allegedly engaged, it is not necessary to find that the enterprise had some function wholly unrelated to the racketeering activity. The enterprise must be proved to have been an ongoing organization, formal or informal, that functioned as a continuing unit.

An enterprise is a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time. The personnel of the enterprise, however, may change and need not be associated with the enterprise for the entire period alleged in the indictment. Therefore, the government must prove the existence of an association-in-fact enterprise by evidence of an ongoing organization, formal or informal, and by evidence that the various associates functioned as a continuing unit. The enterprise must have the three following structural features: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. The

DNM 846

Appellate Case: 20-2058   Document: 01011 0415670   Date Filed: 09/29/2020   Page: 422

name of the organization itself is not an element of the offense and does not have to be proved. The government need not prove that the enterprise had any particular organizational structure.

The group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods -- by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, you may nonetheless find that the enterprise element is satisfied by finding a group whose associates engage in spurts of activity punctuated by periods of quiescence [inactivity].

The enterprise is "engaged in interstate commerce" if it directly engaged in the distribution or acquisition of goods or services in such commerce. The enterprise's conduct "affected" interstate commerce if the conduct had a demonstrated connection or link with such commerce.

It is not necessary for the government to prove that a defendant knew or intended that the enterprise was engaged in commerce or that its conduct would affect commerce. It is only necessary that the natural consequences of the enterprise's conduct affected commerce in some way. Only a minimal effect on commerce is necessary.

There must be some nexus between the enterprise and the racketeering activity being conducted by members and/or associates of the enterprise.

DNM 847

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 423

## JURY INSTRUCTION NO. 25

The first element that the government must prove beyond a reasonable doubt is that an "enterprise" existed as alleged in the indictment.

The government has charged the following in the Indictment as constituting the enterprise: the Syndicato de Nuevo Mexico Gang (SNM) in Counts 6, 7, 9, and 10.

An enterprise includes a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time. This group of people does not have to be a legally recognized entity, such as a partnership or corporation. This group may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose. This group of people must have: (1) a common purpose; and (2) an ongoing organization, either formal or informal; and (3) personnel who function as a continuing unit.

If you find these three elements, then you may find that an enterprise existed.

DNM 848

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 424

## JURY INSTRUCTION NO. 26

The third element which the government must prove beyond a reasonable doubt as to Counts 6, 7, 9, and 10 is that the enterprise was engaged in racketeering activity.

That racketeering activity may consist of state offenses as well federal offenses. The government has charged that the SNM engaged in multiple acts of racketeering activity consisting of the following: (1) murder and robbery, in violation of New Mexico law; (2) acts involving tampering with a witness, in violation of federal law; and, (3) offenses involving trafficking in narcotics, in violation of federal law.

In order for the state offense of murder to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that a member or an associate of the racketeering enterprise committed the offense as defined by law. The elements of that offense are as follows:

First:          someone killed a human being, and

Second:          the killing was with the deliberate intention to take away the life of that person.

In order for the federal offense of witness tampering to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that:

First:   a member, prospect or associate of the racketeering enterprise used or attempted to use intimidation or threats against another person;

Second:          that member, prospect, or associate acted knowingly and with the intent to influence or prevent the testimony of that other person with respect to an official proceeding.

DNM 849

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 425

In order for the offense of possession with intent to distribute a controlled substance to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that:

First:          a member, prospect, or associate of the SNM knowingly and intentionally possessed a controlled substance as charged, and

Second:          that person possessed the substance with the intent to distribute it.

To "possess with intent to distribute" means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.

Crack cocaine, powder cocaine, heroin, suboxone, marijuana, and methamphetamine are controlled substances within the meaning of the law.

In order for the offense of distribution of a controlled substance to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that a member, prospect, or associate of the SNM knowingly or intentionally distributed a controlled substance.

The term "distribute" means to deliver or to transfer possession or control of something from one person to another. The term "distribute" includes the sale of something by one person to another. It is not necessary, however, for the government to prove that any transfer of money or other thing of value occurred at the same time as, or because of, the distribution.

There must be some nexus between the enterprise and the racketeering activity being conducted by members and/or associates of the enterprise.

I instruct you that "racketeering activity" includes numerous offenses, including those listed above. It is for you to determine whether the enterprise engaged in these activities as charged. You should give the words "engaged in" their ordinary, everyday meaning. For an

Appellate Case: 20-2058        Document: 010110415670        Date Filed: 09/29/2020        Page: 426

DNM 850

enterprise to be engaged in racketeering activity it is enough to show that the enterprise committed or was planning to commit some racketeering activity within a period of time short enough under all of the circumstances so that it is appropriate to say that the enterprise was engaged in racketeering activity.

## JURY INSTRUCTION NO. 27

For you to find any defendant guilty of first degree murder by a deliberate killing of Mr. Molina as charged in Count 7;

The government must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant killed Mr. Molina;

2. The killing was with the deliberate intention to take away the life of Mr. Molina;

3. This happened in New Mexico on or about March 7, 2014.

A deliberate intention refers to the state of mind of the defendant. A deliberate intention may be inferred from all of the facts and circumstances of the killing. The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at in a short period of time. A mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill. To constitute a deliberate killing, the slayer must weigh and consider the question of killing and his reasons for and against such a choice.

DNM 852

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 428

## JURY INSTRUCTION NO. 28

For you to find any defendant guilty of second degree murder as charged in Count 7, the government must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant killed Mr. Molina;

2. The defendant knew that his acts created a strong probability of death or great bodily harm to Mr. Molina;

3. This happened in New Mexico on or about the 7th day of March 2014.

DNM 853

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 429

## JURY INSTRUCTION NO. 29

The fourth element which the government must prove beyond a reasonable doubt as to Count 6 is that Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez conspired to murder Javier Molina.

The fourth element which the government must prove beyond a reasonable doubt as to Count 9 is that Mr. Baca conspired to murder Dwayne Santistevan.

The fourth element which the government must prove beyond a reasonable doubt as to Count 10 is that Mr. Baca conspired to murder Gregg Marcantel.

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose.    To find Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

1.  Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez and another person by words or acts agreed together to commit murder;

2.  Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez and the other person intended to commit murder;

3.  This happened in New Mexico on or about March, 2014, as to Count 6, a date uncertain, but no later than 2013, and continuing to on or about March 9, 2017, as to Counts 9 and 10.

In proving a conspiracy to murder, it is not necessary to show a meeting of the alleged conspirators or the making of an express or formal agreement. The formation and existence of a conspiracy to murder may be inferred from all circumstances tending to show the common intent

DNM 854

Appellate Case: 20-2058   Date Filed: 09/29/2020   Document: 010110415670   Page: 430

and may be proved in the same way as any other fact may be proved, either by direct testimony of the fact or by circumstantial evidence, or by both direct and circumstantial evidence.

Evidence that a person was in the company of or associated with one or more other persons alleged or proved to have been members of a conspiracy is not, in itself, sufficient to prove that such person was a member of the alleged conspiracy.

Evidence of a defendant's membership in a gang, by itself, is insufficient to establish that person's guilt of a crime as a coconspirator.

DNM 855

Appellate Case: 20-2058    Document: 010110415670    Date Filed: 09/29/2020    Page: 431

**JURY INSTRUCTION NO. 30**

In this case, you must consider separately whether Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez are guilty or not guilty of each of the charged crimes. Even if you cannot agree upon a verdict as to any single defendant on any particular charge, you must return the verdict or verdicts upon which you agree.

DNM 856

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 432

### JURY INSTRUCTION NO. 31

When the word "knowingly" is used in these instructions, it means that the act was done voluntarily and intentionally, and not because of mistake or accident.

DNM 857

Page: 433     Date Filed: 09/29/2020     Document: 010110415670     Appellate Case: 20-2058

## JURY INSTRUCTION NO. 32

You will note that the indictment charges that the crimes charged in Count 6 and Count 7 were committed "on or about" March 2014; the crimes charged in Count 9 and Count 10 were committed "on or about" no later than 2013 and continuing to on or about March 9, 2017. The government must prove beyond a reasonable doubt that the defendant committed the crimes reasonably near March 2014 (for Count 6 and Count 7); and no later than 2013 and continuing to on or about March 9, 2017 (for Count 9 and Count 10).

DNM 858

Page: 434

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 33

Count 7 of the indictment also charges a violation of 18 U.S.C. section 2, which provides that: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

This law makes it a crime to intentionally help someone else commit a crime. To find Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*:  someone else committed the charged crime, and

*Second*: Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the government must prove that Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez consciously shared the other person's knowledge of the underlying criminal act and intended to help him.

Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

Evidence of a defendant's membership in a gang, by itself, is insufficient to establish that person's guilt of a crime as an aider and abettor.

DNM 859

Page: 435

Date Filed: 09/29/2020

Document: 010110415670

Appellate Case: 20-2058

## JURY INSTRUCTION NO. 34

Evidence has been presented that Mr. Baca was the subject of unfair inducement. Unfair inducement occurs when government agents unfairly cause the commission of a crime. "Government agents" include law enforcement officers or persons acting under their direction, influence or control.

Where Mr. Baca was not ready and willing to commit the crime of conspiracy to commit the murder of Mr. Marcantel, as charged in Count 10 of the indictment before first being contacted or approached by a government agent, but is induced or persuaded to commit the crime by a government agent, Mr. Baca is a victim of unfair inducement. However, where Mr. Baca was ready and willing to commit the crime at the time of the first contact with the government agent, the mere fact that the government agent provided what appears to be an opportunity to commit the crime is not unfair inducement.

The burden is on the government to prove to your satisfaction beyond a reasonable doubt that Mr. Baca was not unfairly induced. If you have a reasonable doubt as to whether Mr. Baca was unfairly induced, you must find Mr. Baca not guilty.

DNM 860

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 436

## JURY INSTRUCTION NO. 35

You are here to decide whether the government has proved beyond a reasonable doubt that the defendants are guilty of the crimes charged. The defendants are not on trial for any act, conduct, or crime not charged in the indictment.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crimes charged. The fact that another person *also* may be guilty is no defense to a criminal charge.

DNM 861

Appellate Case: 20-2058      Document: 010110415670      Date Filed: 09/29/2020      Page: 437

**JURY INSTRUCTION NO. 36**

If you find any defendant guilty, it will be my duty to decide what the punishment will be. You should not discuss or consider the possible punishment in any way while deciding your verdict.

DNM 862

Appellate Case: 20-2058     Document: 010110415670     Date Filed: 09/29/2020     Page: 438

**JURY INSTRUCTION NO. 37**

The rights of Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez in this case are separate and distinct.   You must separately consider the evidence against Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez and return a separate verdict for each as to each crime charged.

Your verdicts as to Mr. Sanchez, Mr. Baca, Mr. Herrera, and Mr. Perez, whether they are guilty or not guilty, should not affect your verdicts as to any other defendant on any other charges.

Appellate Case: 20-2058   Document: 010110415670   Date Filed: 09/29/2020   Page: 439

DNM 863

## JURY INSTRUCTION NO. 38

In a moment the Courtroom Deputy Clerk will escort you to the jury room and provide each of you with a copy of the instructions that I have just read.  Any exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you should first select a foreperson, who will help to guide your deliberations and will speak for you here in the courtroom.  The second thing you should do is review the instructions. Not only will your deliberations be more productive if you understand the legal principles upon which your verdicts must be based, but for your verdicts to be valid, you must follow the instructions throughout your deliberations.  Remember, you are the judges of the facts, but you are bound by your oath to follow the law stated in the instructions.

To reach a verdict, whether it is guilty or not guilty, all of you must agree.  Your verdict must be unanimous on each count of the indictment as to each defendant charged.  Your deliberations will be secret.  You will never have to explain your verdicts to anyone.

You must consult with one another and deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.  During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong.  But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times, you are judges -- judges of the facts.  You must decide whether the government has proved Mr. Sanchez, Mr. Baca, Mr. Herrera, or Mr. Perez guilty beyond a reasonable doubt as to each of the charges individually made against them.

A verdict form has been prepared for your convenience.

[Explain the Verdict Form]

The foreperson will write the unanimous answer of the jury in the space provided for each count of the indictment, either guilty or not guilty.  At the conclusion of your deliberations, the foreperson should date and sign the verdict form.

If you need to communicate with me during your deliberations, the foreperson should write the message and give it to the Court Security Officer.  I will either reply in writing or bring you back into the court to respond to your message.  Under no circumstances should you reveal to me the numerical division of the jury.

DNM 865

Appellate Case: 20-2058      Document: 010110415670      Date Filed: 09/29/2020      Page: 441

## JURY INSTRUCTION NO. 39

Let me remind you again that nothing I have said in these instructions, nor anything I have said or done during the trial, was meant to suggest to you what I think your decision should be.  That is your exclusive responsibility.

## JURY INSTRUCTION NO. 40

Faithful performance by you of your duties is vital to the administration of justice.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 15-4268 JB |
| | ) | |
| vs. | ) | |
| | ) | |
| **ANGEL DELEON, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

### UNITED STATES' RESPONSE TO DEFENDANTS' MOTION FOR IMMEDIATE DISCOVERY [DOC. 1744]

The United States of America responds to Defendants' Motion for Immediate Discovery [Doc. 1744] ("Discovery Motion"), that it does not oppose the relevant requests for materials that the Defendants may reasonably be entitled to under Rule 16, *Brady v. Maryland*, 373 U.S. 83 (1967), and *Giglio v. United States*, 405 U.S. 150 (1972).

With regard to Defendants' request in ¶ 1 for preservation and destruction policies in effect in 2008 and 2001, the United States doesn't oppose those requests. But to the extent that NMCD operated under the NMRA, those documents may be in the States of New Mexico's possession, custody, or control, and aren't in the United States' possession, custody, or control. To the extent that the Defendants wish to obtain the answer to these questions for "the motion to dismiss and for trial," Discovery Motion ¶ 1, the United States doesn't have the obligation to produce information which isn't in its possession, custody, or control. *See United States v. DeLeon*, No. CR 15-4268 JB, 2017 WL 2271430, at *24 (D.N.M. Feb. 8, 2017) (Browning, J.).

With regard to Defendants' request in ¶ 2 for "identif[ication of] the dates when the United States Attorney's Office first reviewed the murders of Frank Castillo and Rolando Garza for investigation or possible filing, including any reviews prior to the review that resulted in the

indictments," the United States opposes this request to the extent that it doesn't fall under Rule

16's production requirements. The Federal Rules of Criminal Procedure, unlike the Federal Rules

of Civil Procedure, don't require that the United States respond to written questions or

interrogatories. *Compare* Fed. R. Crim. P. 16 *with* Fed. R. Civ. P. 31, 33. The United States

believes that it has complied with its Rule 16 obligations related to the United States' review(s) of

the Castillo and Garza murders.

With regard to the request in ¶ 3, the Federal Rules of Criminal Procedure don't require

the United States to confirm the existence or non-existence of certain materials. The United States

complied with its Rule 16 obligations in connection with this request.

With regard to the request in ¶ 4, this request, like the request in ¶¶ 2 & 3 doesn't fall

within Rule 16's requirements.

Neither ¶ 5 nor ¶ 8 appear to request any Rule 16 materials; they are statements only.

The United States does not oppose the Defendants request in ¶ 6 and provided that name

to Defendant Billy Garcia under the CI Protective Order.

The United States previously identified these sources whom will testify against Defendant

Billy Garcia in the letter to Defendants identifying the United States' confidential human sources.

Additionally, the United States provided to Defendants its Sealed Witness List for Trial II [Doc.

1676], which identifies the witnesses whom may testify at this trial. The United States opposes

any further relief requested in ¶ 7.

The United States doesn't oppose the request in ¶ 9 to provide placement histories on

certain inmates. To the extent that it hasn't already done so, the United States will produce

placement histories for Ray Molina, Mario Montoya, Frederico Munoz, Robert Martinez, and

Sammy Griego. If the Defendants request any more, they may do so.

DNM 868

With regard to the request in ¶ 11, the United States believes that it provided Defendants with the requested DNA materials. The United States doesn't oppose providing to Defendants the DNA bench notes.

The request in ¶ 12 does not appear to request any materials in the United States' possession, custody, or control. The United States therefore opposes this request.

With regard to the request in ¶ 13, the United States opposes this request.

With regard to the request in ¶ 14, the United States has agreed to provide jail calls in its possession, custody, or control for cooperating witnesses whom it expects will testify at trial. So the United States doesn't oppose this request to the extent that the jail calls are in its possession, custody, or control. The United States disclosed Lujan's jail calls through 11-26-2015, and will inquire whether the calls from that date until January 2017 are in the United States' possession, custody, or control.

The United States does not oppose the request at ¶ 15. The United States has not identified the sources referenced in the FBI 302 that appears at Bates 27,899.

Respectfully Submitted,


JAMES D. TIERNEY
First Assistant United States Attorney

**<u>Electronically filed on 3/7/2018</u>**
MARIA Y. ARMIJO
RANDY M. CASTELLANO
MATTHEW M. BECK
Assistant United States Attorneys
200 N. Church Street
Las Cruces, NM  88001
(575) 522-2304 – Tel.

DNM 869

I HEREBY CERTIFY that I electronically
filed the foregoing with the Clerk of the
Court using the CM/ECF system which
will send electronic notification to defense
counsel of record on this date.

/s/
MATTHEW M. BECK
Assistant United States Attorney

4

DNM 870

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 15-4268 JB |
| | ) | |
| vs. | ) | |
| | ) | |
| **ANGEL DELEON, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO SEVER COUNTS BASED ON PRACTICAL GROUNDS [DOC. 1743]

The Trial 2 Defendants move the Court to sever the trial of the remaining counts, because "Counsel does not believe . . . that there is a courtroom in New Mexico that can accommodate nine (9) defendants, fifteen (15) defense counsel, defense staff, and counsel and staff for the government." Motion to Sever Counts Based on Practical Grounds [Doc. 1743] ("Motion to Sever") ¶ 4. But the Court already concluded that a trial with less than ten Defendants is practical and possible when it severed, for trial purposes, Counts 6-12 from Counts 1-5 and 13-15. *See United States v. DeLeon*, No. CR 15-4268 JB, 2017 WL 3054511, at *102 (D.N.M. June 30, 2017) (Browning, J.).

The only thing that changed since the time at which the Court granted that severance motion is that an additional Defendant in trial 2 pleaded guilty and will not be at trial. Currently, there's eight Defendants set to go to trial on April 9, 2018. In granting a motion to sever previously, the Court noted that it would be comfortable trying a group of Defendants "of what it anticipates will be less than ten Defendants each." *Id.* The Court should adhere to that conclusion and deny and dismiss Defendants' Motion to Sever.

The Defendants assert without support that the limiting instructions in the first trial "will be a fraction of the limiting instructions in the second trial with nine defendants and five separate crime bases." Motion to Sever ¶ 5. In reality, the first trial included several limiting instructions, because the United States agreed for purposes of the that trial that statements made during several recordings played for the jury would be admitted against the Defendant-declarant only. That problem isn't present in this trial. There aren't any recordings that the United States seeks to admit against one Defendant only.

It's true that there are "five separate crime bases," in this trial. *Id.* But Defendants fail to acknowledge that those five crimes are all admissible against each Defendant as racketeering activity. And the Court already properly so concluded. While there may be some limiting instructions under Rule 801(d)(2)(A) for certain Defendants' admissions to certain witnesses, those limiting instructions will be far less in number than the number of limiting instructions given in trial 1. Whereas Defendants also assert without support that they may object on "confrontation . . . grounds," *id.* ¶ 6, the Court already properly concluded that there aren't any confrontation-clause grounds on which Defendants may properly challenge the evidence that the United States seeks to admit in this trial.

## <u>CONCLUSION</u>

After thorough reasoning and analysis, the Court already concluded in June 2017 that a trial of ten Defendants or less is practical. Trial 2 currently has eight Defendants only. The Court should adhere to its earlier ruling and, therefore, deny and dismiss Defendants' Motion to Sever.

Respectfully Submitted,


JAMES D. TIERNEY
First Assistant United States Attorney

**<u>Electronically filed on 3/7/2018</u>**
MARIA Y. ARMIJO
RANDY M. CASTELLANO
MATTHEW M. BECK
Assistant United States Attorneys
200 N. Church Street
Las Cruces, NM  88001
(575) 522-2304 – Tel.

I HEREBY CERTIFY that I electronically
filed the foregoing with the Clerk of the
Court using the CM/ECF system which
will send electronic notification to defense
counsel of record on this date.

<u>/s/</u>
MATTHEW M. BECK
Assistant United States Attorney

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                       No. CR 15-4268 JB

ANGEL DELEON, JOE LAWRENCE
GALLEGOS, EDWARD TROUP, a.k.a.
"Huero Troup," LEONARD LUJAN,
BILLY GARCIA, a.k.a. "Wild Bill,"
EUGENE MARTINEZ, a.k.a. "Little
Guero," ALLEN PATTERSON,
CHRISTOPHER CHAVEZ, a.k.a. "Critter,"
JAVIER ALONSO, a.k.a. "Wineo,"
ARTURO ARNULFO GARCIA, a.k.a.
"Shotgun," BENJAMIN CLARK, a.k.a.
"Cyclone," RUBEN HERNANDEZ;
JERRY ARMENTA, a.k.a. "Creeper,"
JERRY MONTOYA, a.k.a. "Boxer,"
MARIO RODRIGUEZ, a.k.a. "Blue,"
TIMOTHY MARTINEZ, a.k.a. "Red,"
MAURICIO VARELA, a.k.a. "Archie,"
a.k.a. "Hog Nuts," DANIEL SANCHEZ,
a.k.a. "Dan Dan," GERALD ARCHULETA,
a.k.a. "Styx," a.k.a. "Grandma," CONRAD
VILLEGAS, a.k.a. "Chitmon," ANTHONY
RAY BACA, a.k.a. "Pup," ROBERT
MARTINEZ, a.k.a. "Baby Rob," ROY
PAUL MARTINEZ, a.k.a. "Shadow,"
CHRISTOPHER GARCIA, CARLOS
HERRERA, a.k.a. "Lazy," RUDY PEREZ,
a.k.a. "Ru Dog," ANDREW GALLEGOS,
a.k.a. "Smiley," SANTOS GONZALEZ;
PAUL RIVERA, SHAUNA GUTIERREZ,
and BRANDY RODRIGUEZ,

     Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

     **THIS MATTER** comes before the Court on: (i) Defendant Santos Gonzales' Motion for

Production of Alleged Co-Conspirator Statements, Pre-Trial Hearing on Their Admissibility

Pursuant to Fed.R.Evid. 801(d)(2)(E), filed May 9, 2017 (Doc. 1141)("Gonzales Motion"); (ii) Defendant Rudy Perez's Motion for Production of Alleged Co-Conspirator Statements and for Pre-Trial Hearing on Their Admissibility, filed August 21, 2017 (Doc. 1228)("Perez Motion"); (iii) the Opposed Motion for Specification of Co-Conspirator Statements and a Pre-Trial Hearing on the Statements' Admissibility, filed October 6, 2017 (Doc. 1303)("C. Garcia Motion"); (iv) Motion to Prevent the Admission of Statements of Non-Testifying Codefendants Implicating Defendant Billy Garcia and for an Order for the Government to Specify Such Statements Prior to Trial, filed October 10, 2017 (Doc. 1307)("B. Garcia Motion"); (v) Motion for James Hearing and Determination of Co-Conspirator Statements Admissibility at a Pre-Trial Hearing, filed October 13, 2017)(Doc. 1317)("J. Gallegos Motion"); (vi) Defendant Shauna Gutierrez' Opposed Motion for a James Hearing, filed October 13, 2017 (Doc. 1321)("Gutierrez Motion"); (vii) Motion in Limine to Exclude Statement of Cooperating Government Witnesses, filed November 30, 2017 (Doc. 1514)("Perez MIL"); (viii) Opposed Motion in Limine to Exclude Co-Defendant's [sic] Statements, filed December 1, 2017 (Doc. 1517)("C. Garcia MIL"); (ix) Defendant Anthony Ray Baca's Motion in Limine to Prohibit the Government From Questioning Jerry Armenta About Defendant Anthony Ray Baca's Involvement in Counts 6 & 7, filed December 4, 2017 (Doc. 1540)("Baca MIL"); (x) Defendant Daniel Sanchez's Motion in Limine to Preclude the Admission of Un-Confronted, Out of Court Statements Proffered by the Government at the *James* Hearing, filed January 8, 2018 (Doc. 1616)("Sanchez MIL"); and (xi) the Joint Motion to Renew Motion to Sever Defendants Charged with Offenses in Counts 6 and 7, filed January 21, 2018 (Doc. 1664)("Severance Motion").  The Court held hearings on November 27-29, 2017, December 8, 2017, December 19-20, 2017, and January 9, 2018.  See Transcript of Hearing (held November 27, 2017), filed December 6, 2017 (Doc. 1545)("Nov. 27

Tr."); Transcript of Hearing (held November 28, 2017), filed December 6, 2017 (Doc. 1546)("Nov. 28 Tr."); Transcript of Hearing (held November 29, 2017), filed December 6, 2017 (Doc. 1547)("Nov. 29 Tr."); Transcript of Hearing (held December 8, 2017), filed December 15, 2017 (Doc. 1577)("Dec. 8 Tr."); Transcript of Hearing (held December 19, 2017), filed January 4, 2018 (Doc. 1608)("Dec. 19 Tr."); Transcript of Hearing (held December 20, 2017), filed January 5, 2018 (Doc. 1610)("Dec. 20 Tr."); Transcript of Hearing (held January 9, 2018), filed January 24, 2018 (Doc. 1683)("Jan. 9 Tr.").  The primary issues are whether the out-of-court statements -- largely statements of Defendants Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, and Rudy Perez, and of cooperating Defendants and other inmates -- that Plaintiff United States of America intends to offer in evidence at trial to prove the matter asserted: (i) can be admitted notwithstanding the Sixth Amendment to the Constitution of the United States of America's Confrontation Clause; (ii) can be admitted for their truth, because -- as coconspirator statements made during and in furtherance of the conspiracy, see Fed. R. Evid. 801(d)(2)(E) -- they are not hearsay;  (iii) can be admitted, even though they are hearsay, as statements against penal interest made by an unavailable declarant, see Fed. R. Evid. 804(b)(3); (iv) can be admitted for their truth, because, as admissions offered against Baca, Herrera, or Perez, see Fed. R. Evid 801(d)(2)(A), they are not hearsay; (v) can be admitted, with a limiting instruction, in a joint trial if the statement is nontestimonial, incriminates multiple Defendants, and is admissible against some -- but not all -- of those Defendants; and (vi) necessitate sufficiently many limiting instructions that the Court should alter how the case should be tried. The Court analyzes individually the out-of-court statements at issue and concludes that it can admit nontestimonial statements that are admissible against only some of the Defendants if it gives a limiting instruction.  While there will be multiple limiting instructions, the United States'

willingness to Bruton-ize[1] Baca's, Herrera's, and Perez' statements removes statements that one

Defendant made and that directly incriminate other Defendants from the trial, so the jury will

never hear those statements.[2]   Thus, while the Defendants are entitled to limiting instructions

---

[1]Under Bruton v. United States, 391 U.S. 123 (1968)(Brennan, J.) and its progeny, "where two defendants are tried jointly, the pretrial confession of one cannot be admitted against the other unless the confessing defendant takes the stand," and a limiting instruction does not prevent one defendant's confession from being used against a codefendant if the confession is "facially incriminating" vis-à-vis the codefendant.  Richardson v. Marsh, 481 U.S. 200, 206-07 (1987)(Scalia, J.).   A limiting instruction is effective, however, when a "confession [i]s not incriminating on its face, and bec[o]me[s] so only when linked with evidence introduced later at trial."  Richardson v. Marsh, 481 U.S. at 207.   Bruton-izing a statement thus requires redacting it such that the statement does not directly incriminate anyone other than the declarant.

[2]In a pretrial hearing on January 26, 2018, three days before Baca's, Sanchez', Herrera's, and Perez' trial began, the Court announced that it was concerned about the number of limiting instructions that a four-Defendant trial would require and whether a jury could "really grapple with the number of very proper and required limiting instructions."   Transcript of Hearing at 52:10-13 (Court)(held January 26, 2018), filed February 7, 2018 (Doc. 1759)("Jan. 26 Tr.").   The Court indicated that it was "thinking about impaneling two juries," so one could consider the charges against Baca and Sanchez while the other would hear the charges against Herrera and Perez.  Jan. 26 Tr. at 52:14-19 (Court).   The Court could excuse the Baca-Sanchez jury when evidence was admissible only against Herrera or Perez, and vice versa.  See Jan. 26 Tr. at 52:16-25 (Court).  The Court explained its reasoning:

> I'm not inclined to sever out [Counts] 6 and 7; that doesn't seem to me -- it never has seemed to me to be quite the solution.  But I do think that the defendants have pointed to enough problems that maybe the way to do it is to pick two juries, and have, at critical points, the juries excused so that the number of limiting instructions is greatly reduced.  Or when they are given, they're given because they're allowed.  But the evidence that we're asking the jury to ignore is not probative of the other defendant in that case.

Jan. 26 Tr. at 53:15-25 (Court).

The next day, the United States indicated that -- in lieu of impaneling two juries -- it was willing to "redact the recordings [of Baca, Herrera, and Perez] to take out references to the other co-Defendants on trial made by the declarant-Defendant."   United States' Sealed Motion to Reconsider the Court's Two Jury Proposal at 6, filed January 27, 2018 (Doc. 1712)("Two Jury Motion").   In the Two Jury Motion, the United States argues that the redacted recordings will incriminate Defendants other than the declarant, if at all, only indirectly, so the jury will be able to obey the Court's limiting instructions more easily.   See Two Jury Motion at 6.   The United States also observes that, even if the jury misuses the recordings, redacting the recordings minimizes any resulting prejudice.   See Two Jury Motion at 6.

under the Federal Rules of Evidence, there is not much, if anything, that the jury could meaningfully use against the non-declarant Defendants. Using the statements in this way does not violate the Fifth or Sixth Amendments, and the Defendants will receive a just and fair trial.

## **FACTUAL BACKGROUND**

The Court takes its background facts from the Second Superseding Indictment, filed March 9, 2017 (Doc. 947)("Indictment"). The background facts are largely unchanged from those that the Court provided in its Memorandum Opinion and Order, 2017 WL 6496441, filed December 18, 2017 (Doc. 1585). The Court does not set forth these facts as findings or the truth. The Court recognizes that the factual background largely reflects the United States' version of events and that the Defendants are all presumed innocent.

This case deals with crimes that the Syndicato de Nuevo Mexico ("SNM") allegedly committed through its members. Indictment at 2. SNM, through its members, operated in the District of New Mexico at all relevant times, and its members engaged in acts of violence and other criminal activities, "including murder, kidnapping, attempted murder, conspiracy to manufacture/distribute narcotics, and firearms trafficking." Indictment at 2. SNM constitutes an enterprise "as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce." Indictment at 2-3.

SNM is a violent prison gang formed in the early 1980s at the Penitentiary of New Mexico ("PNM") after a violent prison riot at PNM during which inmates seriously assaulted and raped twelve correctional officers after taking them hostage. Superseding Indictment at 3.

_____

On the first day of jury selection, the Court indicated that it would accept the United States' proposal and present redacted transcripts to a single jury. Over the course of trial, the Court worked diligently to work with the parties to ensure that the recordings and transcripts admitted into evidence and presented to the jury were properly redacted.

During the riot, thirty-three inmates were killed, and over 200 were injured.  See Superseding Indictment at 3.  After the PNM riot, SNM expanded throughout the state's prison system and has had as many as 500 members.  See Indictment at 3.  SNM now has approximately 250 members, and "a 'panel' or 'mesa' (Spanish for table) of leaders who issue orders to subordinate gang members."  Indictment at 3.  SNM controls drug distribution and other illegal activities within the New Mexico penal system, but it also conveys orders outside the prison system.  See Indictment at 3.  Members who rejoin their communities after completing their sentences are expected to further the gang's goals, the main one being the control of and profit from narcotics trafficking.  See Indictment at 3-4.  Members who fail "to show continued loyalty to the gang [are] disciplined in various ways, [] includ[ing] murder and assaults."  Indictment at 4.  SNM also intimidates and influences smaller New Mexico Hispanic gangs to expand its illegal activities.  See Indictment at 4.  If another gang does not abide by SNM's demands, SNM will assault or kill one of the other gang's members to show its power.  See Indictment at 4.  SNM's rivalry with other gangs also manifests itself in beatings and stabbings within the prison system.  See Indictment at 4.  SNM further engages in violence "to assert its gang identity, to claim or protect its territory, to challenge or respond to challenges, to retaliate against a rival gang or member, [and] to gain notoriety and show its superiority over others."  Indictment at 4.  To show its strength and influence, SNM expects its members to confront and attack any suspected law enforcement informants, cooperating witnesses, homosexuals, or sex offenders.  See Indictment at 5.  To achieve its purpose of preserving its power, SNM uses intimidation, violence, threats of violence, assaults, and murder.  See Indictment at 7.  SNM as an enterprise generates income by having its members and associates traffic controlled substances and extort narcotic traffickers.  See Indictment at 8.  SNM's recent activities in a conspiracy to murder high-ranking New

- 6 -

Mexico Corrections Department Officials inspired the Federal Bureau of Investigation's present investigation.  See United States v. Garcia, No. CR 15-4275, Memorandum Opinion and Order at 2, 221 F. Supp. 3d 1275, 1277, filed November 16, 2016 (Doc. 133).  The other relevant facts giving rise to this case are as follows.

In March 2014, a Doña Ana County, New Mexico grand jury indicted Defendants Jerry Montoya and Jerry Armenta on charges of first-degree murder and four other felonies related to the death of Javier Enrique Molina, Montoya and Armenta's fellow inmate during their incarceration at the Southern New Mexico Correctional Facility ("Southern New Mexico"). Memorandum Opinion and Order at 6, 2016 WL 7242579, at *3, filed October 28, 2016 (Doc. 753).  The New Mexico Third Judicial District Attorney's Office accused Montoya and Armenta of fatally stabbing Molina with a shank in a gang-related attack.  See Memorandum Opinion and Order, 2016 WL 7242579, at *3.  That New Mexico indictment charged Montoya and Armenta with: (i) Molina's murder; (ii) possessing a deadly weapon; (iii) tampering with evidence; and (iv) two counts of conspiracy.  See Memorandum Opinion and Order at 6-7, 2016 WL 7242579, at *3.  In November, 2015, the District Attorney dismissed the charges against Montoya and Armenta -- as well as separate charges against their alleged accomplice, Defendant Mario Rodriguez, who had been charged with possession of a deadly weapon by a prisoner, tampering, and conspiracy.  See Memorandum Opinion and Order at 7, 2016 WL 7242579, at *3. "A spokesperson for the District Attorney's Office indicated the charges were dismissed because the cases were going to be prosecuted at the federal court level."  Memorandum Opinion and Order at 7, 2016 WL 7242579, at *3.

The United States now brings this case, which it initiated in Las Cruces, New Mexico, against thirty-one Defendants, charging them with a total of sixteen counts.  See Indictment at 1,

9-18.   All Defendants are accused of participating in the SNM enterprise's operation and

management, and of committing unlawful activities "as a consideration for the receipt of, and as

consideration for a promise and an agreement to pay, anything of pecuniary value from SNM and

for the purpose of gaining entrance to and maintaining and increasing position in SNM, an

enterprise engaged in racketeering activity."   Indictment at 9-18.   Defendant Arturo Arnulfo

Garcia, Defendant Gerald Archuleta,[3] Defendant Benjamin Clark, M. Rodriguez, Defendant

---

[3]Archuleta pled guilty on June 16, 2016, stipulating:

In 1990, while incarcerated at the Penitentiary of New Mexico, I became a member of the Syndicato Nuevo Mexico (SNM) prison gang.  The SNM is an ongoing criminal organization whose members, prospects and associates engage in acts of violence and other criminal activities, including murder, kidnapping, attempted murder, and conspiracy to manufacture and distribute narcotics.  The SNM operates in the District of New Mexico and elsewhere.  The SNM constitutes an enterprise (individuals associated in fact that engaged in, or the activities of which, affected interstate commerce) that is engaged in racketeering activity.  In 2003, I was an active member of the SNM.  The person listed as J.R. in Count 8 of the Superseding Indictment was also a member of the SNM, and we were both engaged in racketeering activities for the SNM.  J.R. and I had a falling out in 2003 and as a result, I put a "green-light" on J. R. Based upon my status in the SNM, this "green-light" was well known to members of the SNM.  The "green-light" resulted in other members of the SNM shooting J.R. in 2003; however, J.R. survived the shooting.  The "green-light" remained in effect in 2015; consequently, another member or associate of the SNM acted on the "hit," and J.R. was assaulted while incarcerated at the Southern New Mexico Correctional Facility in Dona Ana County, New Mexico.  This attack and "hit" had been approved of by leaders of the SNM gang, including Anthony Ray Baca.  As leader of the SNM gang in 2015, Baca was aware of the outstanding "green-light" and sanctioned it.  Thus, from 2003 to July, 2015, I conspired with members and associates of the SNM gang to commit assault resulting in serious bodily injury to J.R.  This conspiracy was for the purpose of maintaining and increasing my position in the SNM, as well as the other people who were involved with the assault.

Plea Agreement, filed June 16, 2016 (Doc. 586).

- 8 -

Anthony Ray Baca, Defendant Robert Martinez, Defendant Roy Paul Martinez,[4] and Sanchez are the enterprise's alleged leaders.  See Indictment at 6.  The other Defendants are allegedly members or associates who acted under the direction of the enterprise's leaders.  See Indictment at 6.  The SNM gang enterprise, through its members and associates, allegedly engaged in: (i) racketeering activity as 18 U.S.C. §§ 1959(b)(1) and 1961(1) defines that term; (ii) murder and robbery in violation of New Mexico law; (iii) acts, indictable under 18 U.S.C. §§ 1503, 1512, and 1513, "involving obstruction of justice, tampering with or retaliating against a witness, victim, or an informant"; and (iv) offenses involving trafficking in narcotics in violation of 21 U.S.C. §§ 841 and 846.  Indictment at 9.

Specifically, the Indictment alleges that, on March 26, 2001, Defendants Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, and Billy Garcia murdered "F.C."  Indictment at 9 (Count 1).  On the same day, Lujan, B. Garcia, and Defendants Eugene Martinez, Allen

---

[4]R.P. Martinez plead guilty on September 15, 2016, stipulating:

> In 1995, while incarcerated at the Penitentiary of New Mexico, I became a member of the Syndicato Nuevo Mexico (SNM) prison gang.  The SNM is an ongoing criminal organization whose members, prospects and associates engage in acts of violence and other criminal activities, including  murder, kidnapping, attempted murder, and conspiracy to manufacture and distribute narcotics.  The SNM operates in the District of New Mexico and elsewhere.  The SNM constitutes an enterprise (individuals associated in fact that engaged in, or the activities of which, affected interstate commerce) that is engaged in racketeering activity.  In 2013, I was an active member of the SNM.  On or before 2013, I conspired with Robert Martinez, a.k.a. "Baby Rob," Anthony Baca, a.k.a. "Pup," and others to murder G.M. and D.S.  Specifically, Anthony Baca was angry at the New Mexico Corrections Department (NMCD) for moving him out of State.  Baca, as the purported leader of the SNM at the time, ordered the murders of G.M. and D.S.  As a result, in 2015, I agreed to write letters to SNM gang members ordering the murders and in fact, did write letters ordering the members to kill G.M. and D.S.  I did this by virtue of my membership in the SNM and to maintain and increase my position in the SNM.  Thus, from 2013 to continuing into 2015, I conspired with members of the SNM gang to murder G.M and D.S.

Plea Agreement, filed September 15, 2016 (Doc. 686).

Patterson, and Christopher Chavez allegedly murdered "R.G."  Indictment at 10 (Count 2).  On

June 17, 2007, Defendant Javier Alonso, Troup, A.A. Garcia, Clark, and Defendant Ruben

Hernandez allegedly murdered "F.S."  Indictment at 10-11 (Count 3).  On November 12, 2012, J.

Gallegos and Defendant Andrew Gallegos allegedly conspired to murder "A.B."  Superseding

Indictment at 11 (Count 4).  On the same day, J. Gallegos and A. Gallegos allegedly murdered

A.B.  See Indictment at 11-12 (Count 5).  In March, 2014, Armenta, Montoya, M. Rodriguez,

Defendant Timothy Martinez, Baca, Defendant Mauricio Varela, Sanchez, Defendant Carlos

Herrera and Defendant Rudy Perez allegedly conspired to murder "J.M."  Indictment at 12

(Count 6).  On March 7, 2014, Armenta, Montoya, M. Rodriguez, T. Martinez, Baca, Varela,

Sanchez, Herrera and Perez allegedly murdered J.M.  See Indictment at 13 (Count 7).

Further, starting in or around 2003 -- and until about July 13, 2015 -- Baca, Archuleta,

and Defendant Conrad Villegas allegedly conspired to commit assault resulting in serious bodily

injury to "J.R."  Indictment at 13-14 (Count 8).  Starting "on a date uncertain, but no later than

2013," and until the date of the Superseding Indictment -- April 21, 2014 -- Baca, R.P. Martinez,

and R. Martinez allegedly conspired to murder "D.S."  Indictment at 14 (Count 9).  During the

same time period, Baca, R.P. Martinez, R. Martinez, and Defendant Christopher Garcia allegedly

conspired to murder "G.M."  Indictment at 15 (Count 10).  On November 29, 2015, C. Garcia, a

convicted felon, allegedly unlawfully possessed a firearm.  See Indictment at 15-16 (Count 11).

On the same day, C. Garcia, a convicted felon, allegedly knowingly used and carried a firearm in

relation to a charge of conspiracy to murder.  See Indictment at 16 (Count 12).

On March 17, 2015, J. Gallegos allegedly committed assault with a dangerous weapon

against "J.G."  Indictment at 16 (Count 13).  From February 1, 2016, until February 27, 2016, J.

Gallegos and Defendants Santos Gonzales, Paul Rivera, Shauna Gutierrez, and Brandy

Rodriguez allegedly conspired to murder "J.G." Indictment at 17 (Count 14). Also, on February 27, 2016, J. Gallegos, B. Rodriguez, Gonzales, Rivera, and Gutierrez allegedly attempted to murder J.G., and committed assault with a dangerous weapon and assault resulting in serious bodily injury to J.G. See Indictment at 17-18 (Count 15). The same Defendants also allegedly tampered with a witness, J.G. See Indictment at 18 (Count 16).

For fuller factual context, there are now four cases before the Court related to SNM's alleged criminal activity. In a related case -- United States v. Baca, No. CR 16-1613 (D.N.M.)(Browning, J.)[5] -- the United States names twelve defendants, all alleged SNM members or associates, who have allegedly engaged in a racketeering conspiracy, under 18 U.S.C. § 1962(d).[6] There is also a separate prosecution of C. Garcia for drug crimes, see United States of America v. Garcia, No. CR 15-4275 (D.N.M.)(Browning, J.), and a four-defendant

---

[5]The Court has granted a conditional severance of one Defendant in that case. See United States v. Baca, 2016 WL 6404772 (D.N.M. 2016)(Browning, J.). The Court severed Defendant Richard Gallegos, because R. Gallegos -- unlike his co-Defendants -- asserted his Speedy Trial Act, 18 U.S.C. §§ 3161-74, rights. The Court concluded that, given R. Gallegos' assertion of those rights, there was sufficient prejudice to warrant a conditional severance of R. Gallegos from the joint-trial grouping. Further, the Court was convinced that R. Gallegos was in a wholly unique position, distinct from his co-Defendants, because:

> Gallegos is ready for trial, because his counsel prepared his state court defense and he "[is] basically being tried for the same thing here. . . ." in federal court. . . . If the Court does not sever, Gallegos will have to wait for discovery to be complete as to all Defendants, pre-trial motions as to all Defendants, and then, ultimately, the trial against him and all eleven of his co-Defendants.

United States v. Baca, 2016 WL 6404772, at *30-32. Ultimately, the Court notes, it was clearly the speedy trial concerns which tipped the scale of prejudice in R. Gallegos' favor. See 2016 WL 6404772, at *32 (setting a new trial date to ensure his speedy trial rights were upheld). On March 22, 2017, R. Gallegos pled guilty in his severed case. See Plea Agreement at 1, United States v. Gallegos, No. CR 16-4299, filed March 22, 2017 (Doc. 24).

[6]The Court has also declared that case complex under the Speedy Trial Act. See United States v. Baca, No. CR 16-1613, Memorandum Opinion and Order, filed October 20, 2016 (Doc. 238).

prosecution for alleged violent crimes in aid of racketeering, under 18 U.S.C. § 1959.  See

United States v. Varela, No. CR 15-4269 (D.N.M.)(Browning, J.).

## **FINDINGS OF FACT**

Pursuant to rule 12(d) of the Federal Rules of Criminal Procedure, the Court states its

essential factual findings on the record.  See Fed. R. Crim. P. 12(d).  The Court bases its

conclusions on the testimony it heard at its James hearing as well as the evidence it admitted at

that hearing.  The Court details that evidence and testimony below, in its procedural background

section.  The Court makes these findings by a preponderance of the evidence and only to

determine preliminary questions regarding whether evidence is admissible.  See Fed. R. Evid.

104(a).  Notwithstanding the Court's findings, all of the Defendants are presumed innocent.  The

Court makes the following findings of fact:

1.      A conspiracy to kill Javier Molina existed.  See, e.g., Plea Agreement of Timothy

Martinez, ¶ 8, at 4-5, filed January 26, 2017 (Doc. 852)("T. Martinez Plea Agreement"); Plea

Agreement of Jerry Armenta ¶ 8, at 4-5, filed December 13, 2016 (Doc. 802)("Armenta Plea

Agreement").

2.      Armenta, Montoya, M. Rodriguez, T. Martinez, Baca, Varela, Sanchez, Herrera,

and Perez were members of the Molina conspiracy.  See, e.g., T. Martinez Plea Agreement ¶ 8, at

4-5; Armenta Plea Agreement ¶ 8, at 4-5.

3.      The Molina conspiracy continued until at least Molina's death on March 7, 2014.

See, e.g., T. Martinez Plea Agreement ¶ 8, at 4-5; Armenta Plea Agreement ¶ 8, at 4-5.

4.      A conspiracy to assault Julian Romero existed.  See, e.g., Plea Agreement of

Conrad Villegas ¶ 9, at 4, filed November 1, 2017 (Doc. 1392)("Villegas Plea Agreement"); Plea

Agreement of Gerald Archuleta ¶ 7, at 4-5, filed June 16, 2016 (Doc. 586)("Archuleta Plea

Agreement").

5.      Baca, Archuleta, and Villegas were members of the Romero conspiracy.  <u>See</u>,

<u>e.g.</u>, Villegas Plea Agreement ¶ 9, at 4; Archuleta Plea Agreement ¶ 7, at 4-5.

6.      The Romero conspiracy began in or about 2003 and continued until Romero's

assault on July 13, 2015.  <u>See</u>, <u>e.g.</u>,  Villegas Plea Agreement ¶ 9, at 4; Archuleta Plea

Agreement ¶ 7, at 4-5.

7.      A conspiracy to kill Dwayne Santistevan existed.  <u>See</u>, <u>e.g.</u>, Plea Agreement of

Robert Martinez ¶ 8, at 5-6 (Doc. 716)("R. Martinez Plea Agreement"); Plea Agreement of Roy

Paul Martinez ¶ 7, at 4-5, filed September 15, 2016 (Doc. 686)("R.P.  Martinez Plea

Agreement").

8.      Baca, R.P. Martinez, and R. Martinez were members of the Santistevan

conspiracy.  <u>See</u>, <u>e.g.</u>, R. Martinez Plea Agreement ¶ 8, at 5-6; R.P. Martinez Plea Agreement

¶ 7, at 4-5.

9.      A conspiracy to kill Gregg Marcantel existed.  <u>See</u>, <u>e.g.</u>, R. Martinez Plea

Agreement ¶ 8, at 5-6; R.P. Martinez Plea Agreement ¶ 7, at 4-5.

10.     Baca, R.P. Martinez, R. Martinez, and C. Garcia were members of the Marcantel

conspiracy.  <u>See</u>, <u>e.g.</u>, Plea Agreement of Christopher Garcia ¶ 13, at 5-6, filed January 25, 2017;

(Doc. 1705); R. Martinez Plea Agreement ¶ 8, at 5-6; R.P. Martinez Plea Agreement ¶ 7, at 4-5.

## **PROCEDURAL BACKGROUND**

The Court severed this case into two distinct trial groupings.  <u>See</u> Memorandum Opinion

and Order, 2017 WL 3054511, at *1, filed June 30, 2017 (Doc. 1204)("Severance MOO").  The

Court will first try Counts 6-12 of the Indictment and then, in a separate proceeding, it will try

Counts 1-5 alongside Counts 13-16.  <u>See</u> Severance MOO, 2017 WL 3054511, at *1.  The first

trial is set to begin on January 29, 2018.  <u>See</u> Fourth Scheduling Order ¶ 15, at 2, filed July 7,

2017 (Doc. 1205)("Scheduling Order").  The second trial is set to begin on April 9, 2018.  <u>See</u>

Scheduling Order ¶ 16, at 3.

  **1.**  **<u>The Motions.</u>**

  In several different motions, the Defendants ask the Court to order the United States to

identify "alleged co-conspirator statements which the government seeks to introduce under Fed.

R. Evid. 801(d)(2)(E)" and to hold a hearing, pursuant to <u>United States v. James</u>, 590 F.2d 575

(5th Cir. 1979)("<u>James</u>"), to determine, by a preponderance of the evidence, whether: "(i) a

conspiracy existed; (ii) the declarant and defendant were members of that conspiracy; and

(iii) the statements the United States seeks to admit were made during the course and in

furtherance of the conspiracy,"  Gonzales Motion at 1, 3.  <u>Accord</u> Perez Motion at 1 ("Rudy

Perez . . . hereby respectfully moves the Court for the production of any and all alleged co-

conspirator statements that the government seeks to introduce under Fed. R. Evid. 801(d)(2)(E)

in this matter and for a pre-trial hearing on the admissibility of those statements."); C. Garcia

Motion at 1 ("[C. Garcia and Baca] respectfully move this Honorable Court to order the

government to specify any purported statements by alleged co-conspirators it intends to

introduce under Federal Rule of Evidence 801(d)(2)(E) and show at a pretrial hearing that those

statements are admissible."); B. Garcia Motion at 1-2 ("Defendant Billy Garcia moves . . . for an

order for the government to specify which such statements it intends to offer so that the parties

can litigate admissibility issues outside the presence of the jury."); J. Gallegos Motion at 1

("Defendants request that this Court hold a pre-trial hearing, pursuant to <u>United States v. James</u>,

590 F.2d 575, 581-582 (5th Cir. 1979).");  Gutierrez Motion at 1 ("Defendant Shauna Gutierrez

. . . moves this Court for a pretrial evidentiary hearing to determine the admissibility or

inadmissibility of each and every statement the Government intends to attribute to any Defendant in this case as statements of co-conspirators.").

      **2.**    **The Perez Motion Response.**

The United States filed a response to the Perez Motion.  See United States' Response to Defendant Perez's Motion for Production of Alleged Co-Conspirator Statements and for a *James* Hearing on Their Admissibility [1228], filed September 5, 2017 (Doc. 1243)("Perez Motion Response").  The United States indicates that it does not oppose holding a "pretrial hearing to determine the existence of a conspiracy before certain co-conspirator statements are allowed before the jury."  Perez Motion Response at 1.  The Perez Motion Response identifies several statements that Perez made:

> Rudy Perez made statements while in NMCD that were recorded. Specifically, Perez stated that he supplied two pieces of metal from his walker to be fashioned into shanks for use during the murder.  Perez said that he even verified with co-defendant Daniel Sanchez that the weapons would be used for the murder.  Perez went into detail on why the murder occurred, and why it was justified.  Perez stated that he was proud to be assisting the SNM in this manner. These recordings took place in 2016.

> Perez was interviewed back in 2014 as part of the original investigation. However, at that time, Perez stated that he was taking a shower and when he got out of the shower, someone had removed a piece of metal from his walker.

Perez Motion Response at 2-3.  The United States asserts that, for a statement to be admissible under rule 801(d)(2)(E), the court needs to determine: "(1) a conspiracy existed; (2) that both the declarant and the defendant were members of the conspiracy; and (3) that the statements were made in furtherance of the conspiracy."  Perez Motion Response at 3-4.  The United States then provides several examples of statements made in furtherance of a conspiracy: "[s]tatements made to induce enlistment or further participation in the group's activities, to prompt further action on the part of the conspirators, to reassure members of a conspiracy's continued existence, to allay a co-conspirator's fears, or keep co-conspirators abreast of an ongoing conspiracy's activities."

Perez Motion Response at 5.   The United States observes that "[s]ome of the conspiracy evidence in this case arises from tape-recorded intercepts of direct conversations of the defendants/co-conspirators," and predicts that "[m]uch of this evidence will meet all aspects of the three-part test for admitting co-conspirator statements on its own accord, with little need for independent evidence."   Perez Motion Response at 7.   The United States also predicts that "a significant amount of evidence will not be introduced under Rule 801(d)(2)(E), but rather through Rule 801(d)(2)(A) as admissions by the defendant himself," and that other statements will be offered for purposes other than the truth of the matter asserted.   Perez Motion Response at 7.

### 3.   The November 27-29, 2017 and December 8, 2017 Hearings.

The Court took up the Defendants' motions for a <u>James</u> hearing in its November 27, 2017 hearing.   <u>See</u> Nov. 27 Tr. at 10:12-14 (Court).   The Court orally granted those motions to the extent that they seek a <u>James</u> hearing.   <u>See</u> Nov. 27 Tr. at 10:23-24 (Court)("So I think we will have a James hearing . . . ."); <u>id.</u> at 12:14-15 (Villa)("I think that was really the goal of the motions, to get us to the James hearing . . . .").   <u>But</u> <u>see</u> C. Garcia Motion at 7 (seeking "timely pre-hearing disclosure of statements the government intends to introduce at the *James* hearing"); B. Garcia Motion at 17-20 (arguing that specific statements are inadmissible); J. Gallegos Motion at 5 (seeking to exclude statements "from Defendant Santo Gonzales"); Gutierrez Motion at 3-5 (arguing that Gutierrez is not a member of any conspiracy); <u>id.</u> at 5-6 (arguing that Gutierrez' statements were not in furtherance of a conspiracy).   The Court also provided initial guidance regarding the <u>James</u> hearing's structure:

> I don't think we should be trying to have a trial like this, and just relying upon the Government's linking it up down the road is the way to go.   So I think that we will have a James hearing, and the Government will have to produce a live witness or witnesses. I don't think that a written proffer is enough.   The

Government -- I mean, the Tenth Circuit has also indicated that those are not favored.  And so I would prefer to have live witnesses, live witness or witnesses.

The Government has asked that they be able to put on a case agent that summarizes the co-conspirator statements. It seems the Tenth Circuit has approved that.  I'm not telling the Government how to try their case, and I'm not going to tell them how to do the James hearing. But you've got to make your proof by a preponderance of the evidence. If you think you can establish it with one agent, subject to cross-examination, bringing in the statements, then the Tenth Circuit seems to have approved that, and I will, too, but -- so it's not the method that I'm approving. You just have a burden of proving it by a preponderance of the evidence.  If you can do it with one witness or witnesses, that's -- the Government always has to make that assessment as to how they're going to prove their case.  And I can't tell you in advance whether one witness or more are going to be necessary. So you'll have to make that judgment.  But in certain situations the Tenth Circuit has indicated that is appropriate.

Nov. 27 Tr. at 10:21-12:1 (Court).  The United States then proffered "about 14 plea agreements in this case which will establish at least the first two requirements of James, which is the existence of the conspiracy, as well as membership in the conspiracy."  Nov. 27 Tr. at 17:9-13 (Castellano).

The United States stated that those plea agreements are "basically the plea agreement of each defendant who has pled guilty in this case, including admissions that a conspiracy existed and admissions that other people remaining in the case were members of the conspiracy."  Nov. 27 Tr. at 18:11-15 (Castellano).  The Court then asked whether any of the Defendants objected to the introduction of the plea agreements as "documentary evidence."  Nov. 27 Tr. at 19:19-23(Court).  B. Garcia objected, arguing that the United States drafts the plea-agreement statements and that those statements are "not subject to any kind of evaluation here by the Court as to whether they're to be trusted."  Nov. 27 Tr. at 19:11-18 (Castle).  B. Garcia admitted, however, that "as long as the defense has the opportunity to call those witnesses and examine them . . . that would probably be a sufficient remedy to allow us to contest the information within those plea agreements."  Nov. 27 Tr. at 20:9-21 (Castle).  No other Defendant objected to the

DNM 890

admission of the plea agreements, so the Court admitted those agreements as "Government's Exhibits 1 through 14 . . . for the purposes of the James hearing."  Nov. 27 Tr. at 23:9-13 (Court).[7]

Later that day, the United States reported to the Court that it had reached an agreement with the Defendants regarding <u>James</u> hearing procedure.  <u>See</u> Nov. 27 Tr. at 102:8-23 (Castellano).  The Defendants in the first trial group indicated a preference to proceed directly to a <u>James</u> hearing, "since we're here, and it's the week after Thanksgiving, and we're going to be in front of a jury in two months, we'd just like to get a witness up and get it going."  Nov. 27 Tr. at 105:15-18 (Adams).  The Court confirmed that "everybody else," <u>i.e.</u>, the second trial group, "is going to get bifurcated, get to see the statements first, then you get to decide whether you want a James hearing?  Everybody in agreement on that?"  Nov. 27 Tr. at 108:25-109:3 (Court.) None of the Defendants voiced an objection.  <u>See</u> Nov. 27 Tr. at 109:4-5 (Court).

The United States then began the <u>James</u> hearing for the statements it intends to offer under rule 801(d)(2)(E) at the first trial by calling Federal Bureau of Investigation Special Agent Byran Acee to the stand.  <u>See</u> Nov. 27 Tr. at 145:23-24 (Castellano).  Acee's direct examination indicated that the United States intends to call "a witness named Lupe Urquizo" at trial.  Nov. 27 Tr. at 146:21-23 (Castellano).  According to Acee's testimony, Urquizo will testify that Baca told him "to get with the shot callers down at the Southern New Mexico Correctional Facility, or Southern,[8] and to let them know that Baca wanted Javier Molina hit . . . and that if they didn't

---

[7]Mr. Castellano was mistaken regarding the number of plea agreements; there were fifteen plea agreements, <u>see</u> Nov. 28 Tr. at 48:9-11 (Castellano), and the fifteenth plea agreement was admitted as "Government's Exhibit 15,"  Nov. 28 Tr. at 48:12-14 (Court).

[8]Acee explained some terminology regarding the New Mexico prison system:

If you think of PNM [Penitentiary of New Mexico] as a campus, if you will, there are different facilities there.  So the north facility is the Level 6.  The

do it, he told Urquizo to just stab him." Nov. 27 Tr. at 147:8-16 (Acee). That conversation, according to Urquizo, took place "while he was still at the Level 6 up at PNM, the north facility." Nov. 27 Tr. at 147:24-148:2 (Acee). Acee's direct examination disclosed another out-of-court statement that Urquizo will relate at trial: David Calbert, an uncharged SNM member, brought "the paperwork indicating or substantiating the hit on Javier Molina," Nov. 27 Tr. at 148:8-11 (Castellano, Acee), and "explained to Urquizo that Baca wanted the paperwork to go down to Southern in Las Cruces," Nov. 27 Tr. at 149:17-19 (Acee).[9]

Acee testified that Urquizo was subsequently transferred to Southern, see Nov. 27 Tr. at 149: 22-25 (Castellano, Acee), and that, while Urquizo was in orientation at Southern, he "didn't have his property" and could not "freely talk" to other inmates, but he "had a conversation with both Mario Rodriguez and Timothy Martinez," by holding notes up to a window. Nov. 27 Tr. at 150:4-25 (Acee). According to Urquizo, M. Rodriguez and T. Martinez asked, via note, whether he had the Molina paperwork, and Urquizo replied that he had the paperwork, "[b]ut that it was still in his property." Nov. 27 Tr. at 150:11-20 (Acee). Two days later, again according to

---

south facility is the Level 5. And then you also will hear us talk about the Southern New Mexico Correctional Facility, which is here in Las Cruces, which is referred to as "Southern."

Nov. 27 Tr. at 149:3-9 (Acee).

[9]The Molina paperwork was, per Acee's testimony, "a two-page LCPD [Las Cruces Police Department] report, or two pages from that report," Nov. 27 Tr. at 148:11-12 (Acee), "that indicated Molina cooperated or gave a statement to the police," Nov. 27 Tr. at 151:5-8 (Acee). Acee also testified about why that paperwork was important:

[A]t the time there was some disagreement within the SNM about the significance of the paperwork. There had been some hits carried out where it was on one or two members' word. And members were now, at this time, insisting on actually seeing the paperwork. So that was the significance of the actual documents traveling down to the south -- excuse me to the Southern facility, where Molina was located.

Nov. 27 Tr. at 148:15-23 (Acee).

Urquizo, "Carlos Herrera inquired whether or not Urquizo had the paperwork," and Urquizo -- who "had just received his box of property" -- gave the paperwork to Herrera as well as "Dale Chavez, Juan Mendez, and Alex Munoz," three other SNM members, "and each made a comment to the effect of, Damn, this is it? It's just two sentences in this report." Nov. 27 Tr. at 151:1-13 (Acee).

> Acee also testified that M. Rodriguez sent a letter to Urquizo:

> > He sent it under the door. And in that Rodriguez -- he communicated that Rodriguez and Sanchez were going to move on Molina. Rodriguez explained the plan. And apologized to Urquizo for moving so quickly. And that the reason he did that is during the Molina hit there were actually supposed to be three individuals that were supposed to be hit at the same time. However, the paperwork didn't come down supporting the subject being hit that Urquizo wanted hit. So that's what that apology was about. And he wanted to -- he, Rodriguez -- wanted to make sure that Urquizo wasn't upset about that fact. He had a lot of respect for him, and just said, Hey, we've got to move, and it's going to happen quickly.

> > And that was generally what was in that letter. And Urquizo said he wrote back to Rodriguez and said he understood.

Nov. 27 Tr. at 152:8-24 (Acee). Acee stated that "Urquizo said he heard Daniel Sanchez yell, 'Fuck, yeah'" toward the end of the Molina hit. Nov. 27 Tr. at 153:6-10 (Acee).

> The United States then turned its attention to "a couple of [out-of-court] statements related to the Julian Romero assault" that the United States may attempt to present to the jury via Urquizo's trial testimony. Nov. 27 Tr. at 153:11-13 (Castellano). According to Urquizo's account,

> > Julian Romero was down here at the Southern Facility at the time Urquizo and another member named Jonathan Gomez were in charge of the pod. Word had come down via Jonathan Gomez that they were to hit Julian Romero. And they picked Conrad Villegas to do that. They discussed that. They agreed to it, and they gave that instruction to Conrad. And he followed through with it.

> > The other thing that Urquizo related was that it was important to Baca -- that is Anthony Baca -- that Julian not be killed; that he just be stabbed or beat up, but not killed.

- 20 -

Nov. 27 Tr. at 153:19-154:5 (Acee).

The United States then began questioning Acee about out-of-court statements concerning the Molina murder that -- the United States contends -- M. Rodriguez made on the day of the Molina murder and that the United States may introduce at trial via Montoya's testimony.  See Nov. 27 Tr. at 154:6-13, 155:16-18 (Castellano, Acee).  Acee testified:

> Mr. Montoya told me that sometime after 5:00 p.m., while in the pod, Mario Rodriguez called out to him and told him to follow him to Rodriguez' cell. Rodriguez gave Montoya a shank and said that it was from Rudy Perez. Rodriguez told Montoya that it was time to put in some work.
>
> Montoya asked who, inquiring who was going to be the recipient of the work, if you will.  And Rodriguez answered "Javier."
>
> Montoya asked, "Why?"
>
> And Rodriguez said, "Because he's a rat."  Montoya asked to see the paperwork, and Rodriguez said that it had already been passed to another pod, but that he didn't need to worry because he, Rodriguez, had verified it, as had "Dan Dan" or Daniel Sanchez.  Montoya had some other questions and asked where he was to actually hit Molina.  Rodriguez told him that it would be in Molina's cell.
>
> Montoya protested a little bit and said that he didn't think that would be a good location because of the cameras.  He argued about the angles of the cameras with Rodriguez.  And Rodriguez ultimately said, "Dan doesn't want the cameras covered.  He has an evidentiary hearing coming up, and needs to be seen on camera."
>
> . . . .
>
> Mr. Rodriguez explained to Mr. Montoya that Jerry Armenta would also have a shank and would help, and that Daniel Sanchez had already talked to Armenta and Armenta was ready. He also told Montoya that "Red," or Timothy Martinez would be helping; that he'd go into Molina's cell and get him high, and then knock him out, so that the two Jerrys, Jerry Montoya and Jerry Armenta, could come in and commence with stabbing Molina.
>
> . . . .
>
> Dan Sanchez came in sometime later and asked, ["]You know what's up?" Montoya said, "Yeah."  Sanchez said, "Okay, be trucha," which I understand to mean to be careful or to watch out.
>
> . . . .

Armenta explained that he was -- he, Armenta -- was perching in front of his cell, which is just kind of squatting and hanging out. Daniel Sanchez signaled for Montoya to go upstairs because he'd been downstairs.

Montoya did. After getting to the top of the stairs, he squatted next to Armenta, and in a low voice said to him, said to Armenta that, "It's him or us," and by "him," he was referring to Molina. And Armenta basically repeated the same thing back, like, "Yeah, it's either him or us."

Nov. 27 Tr. at 155:19-159:2 (Acee).

The United States then presented, via Acee's examination, out-of-court statements

regarding the Molina murder that it may present to the jury by calling T. Martinez as a witness:

So on the morning of the Molina murder, Tim Martinez had come back from his work detail at the wheelchair program. And shortly after entering the pod, Mario Rodriguez called him over, and then told him to go get high. Timothy thought that was an unusual request. I think he described himself as not a regular user of drugs. And so he asked Mario why. Mario Rodriguez again told him, "Just trust me. Go get high." And Timothy kind of objected to that and kept questioning him. So Mario said, "Sit down, I'll explain what's going on." And then they had a conversation about what was to take place.

. . . .

It was explained to him that the paperwork on Molina had arrived; that he was a snitch, and that he was to get hit. And then from there they went into more detail.

. . . .

And [M. Rodriguez explained] that Daniel Sanchez had insisted on Martinez participating. Specifically Rodriguez said, "Dan is making you go."

Martinez said, "Okay. What do I have to do?"

Rodriguez answered, "Dan wants you to go into the room and beat him up so he can't leave." By "him," that would be Molina. "So that he can't leave the room and Jerry and Jerry" -- being Montoya and Armenta -- "will go in and hit him. They have some bone crushers. And Molina has to go." By bone crushers, that's a slang term for larger shanks.

. . . .

[Later,] Sanchez was in the cell next door to Martinez and began pounding on the wall. Sanchez asked of Martinez, "Did 'Blue' talk to you" -- something to that effect, "'Blue' talk to you yet?" And Martinez told him that he, "Blue," or

Rodriguez had talked to him.

Q.     What was Daniel Sanchez' explanation to Timothy Martinez about why he should be involved?

A.     What Martinez told me -- and this is a direct quote -- "You've got to do this.  You got to earn your huesos," or your bones.

Sanchez went on about how the SNM had lost respect over the years, and they needed to take things back to the old days when the S used violence to get respect.  Sanchez said, "S is about violence.  We get respect through violence." Martinez said that he questioned Sanchez about why Molina had to be hit and why he needed to be involved in it.  Why he, Martinez, needed to be involved in it.

. . . .

[Sanchez] basically said that Martinez hadn't done anything yet.  He hadn't earned his bones, hadn't committed any violent acts, and that he needed to do something more significant than just bring drugs into the institution.

. . . .

Martinez told me that Sanchez told him he'd have to do it or else.  And Martinez took that to understand that "or else" would be you need to do this or you're going to get hit.

Q.     Now, did Mario Rodriguez at some point explain to Timothy Martinez that he didn't want him to go?  By that I mean go to commit the murder?

A.     Yes.  As Mr. Martinez explained it, they were friends, and that he had lobbied -- he, Mario Rodriguez -- had lobbied to have Timothy not go and to get a pass on it.  But that Daniel Sanchez had insisted.  And Rodriguez said -- and this is a quote -- "But if it's your time, you've got to go.  You got to do this for the family.  Then it will be someone else's time."

. . . .

Q.     And was there an explanation by Mr. Martinez about something to do with Mr. Molina's shank?

A.     Yeah, quite by coincidence, Molina -- I mean, he had a shank, but he gave it to Timothy Martinez that morning.  He was going to go shower, if I recall.  And he said, Here, hold my shank, hold my fiero, or whatever term he used.  And Timothy Martinez took the shank and put it in his cell in his commissary bag.  Timothy Martinez related that to Mario Rodriguez.  And I think they both just thought it was, based on their comments, good fortune on their part that Molina wouldn't have a shank and be able to fight back.

- 23 -

DNM 896

Q.      And what was Mr. Rodriguez' comment to Timothy Martinez about having taken the shank?

A.      He said, "Perfect, now he can't stab you."

Nov. 27 Tr. at 159:10-163: 25 (Castellano, Acee).  Acee then testified:

Martinez told me that Sanchez, Daniel Sanchez, had obtained one of them [the shanks] from who they referred to as "Fat Ass," which was sort of a in-house nickname for Rudy Perez. Sanchez had told Martinez that Perez had given him two pieces of metal from his walker, and that that's what they'd made the shanks out of. Sanchez had made the comment to Martinez, "What else is Fat Ass going to do?" And actually, the comment made after that was Martinez' opinion.  So that concluded what Sanchez said about that.

Nov. 27 Tr. at 164:4-14 (Acee).  Acee added:

I specifically asked [T. Martinez] what conversation or what statements were made by Mario Rodriguez when they were in the cell, in Molina's cell.  And Martinez said that Mario Rodriguez was standing in the doorway. And as Molina was getting up, Mario Rodriguez said, "He's getting up.  What the fuck?"

Nov. 27 Tr. at 166:12-17 (Acee).

The United States then transitioned to another set of statements, which Baca made almost

two years after the Molina murder, see Nov. 27 Tr. at 164:21-23 (Acee), that it intends to present

to the jury:

Baca and Martinez [were] incarcerated up at the Level 6 at PNM North. And Baca told Martinez, "If they would have let me out, Javier wouldn't be dead, and that man would still be alive.  But they didn't, and what's done is done. When they wouldn't let me out we had to make a statement.  They called my bluff.  And now they have a dead man on their hands."

Q.      Was there ever any indication that Mr. Baca had kept in touch with Jonathan Gomez?

A.      Yes.

Q.      And what was that discussion?

A.      Jonathan Gomez, or "Baby G," was and is often referred to as Mr. Baca's protege, and that communications would come down to other members through Jonathan Gomez, and that Jonathan Gomez had related to Timothy Martinez and others that "Pup" didn't trust Molina and to -- they should keep their eye on Molina.

- 24 -

Nov. 27 Tr. at 164:23-165:16 (Castellano, Acee).  Acee testified:

[A]fter Baca kind of went on a rant with Martinez about Javier Molina, and the fact that the Corrections Department should have listened to him, Baca.

Baca told Martinez that there was stuff in the works for Marcantel and Santistevan.  Specifically, he said that he'd like to get the wardens, too.  Baca explained that to Martinez, that "If we hit them, what's the worst that's going to happen?  They'll send us out of state, but then they'll ship us back.  And then they'll know we're for real.  It started with Javier Molina, and now it continues.  Javier was a building block for bigger jobs for Marcantel and for the respect we once had."

Nov. 27 Tr. at 167:5-18 (Acee).

Acee then described a set of statements attributed to C. Garcia that the United States may

introduce via T. Martinez' testimony:

Q.     And what about statements relating from -- to Timothy Martinez by Mr. Garcia, Christopher Garcia?

A.     That conversation took place after the first wave of indictments and take-down arrests.  When they were out at the Otero prison facility, Martinez said that Chris Garcia -- they were actually talking about the guy named Jeremiah Martinez, a/k/a "Cyclone."  And the conversation turned to Gregg Marcantel.  At the time, Chris Garcia was upset about the situation and blamed it on Baca.  He specifically said to Martinez, "Pup" -- which is an alias for Baca -- "called me saying he needed guns.  It was right after the Holly Holmes fight and people were shooting guns in the unit.  So "Pup" tells me he needs some guns for a job to hit Marcantel and Santistevan.  And I thought: Who the fuck is going to do that?  'Pup' was talking all drunk, saying Krazo" -- who is Eric Duran -- "had a phone.  I didn't trust Krazo so anyway."

Q.     And that was a statement by Christopher Garcia?

A.     It was.  He and Martinez continued to talk about it.  And that's where this Jeremiah Martinez comes up, and how they acquire the firearm that's to be used.

Q.     What was the nature of that conversation?

A.     Garcia was kind of laying out what happened with the Marcantel and the Santistevan hit, or the planned hit, and why it was so screwed up. And he said, "I called 'Cyclone'" -- in this case that's Jeremiah Martinez -- "for the guns. He gave me some piece of shit .22 or .25" -- caliber. "Those fucking things weren't going to do shit.  They would have just made Marcantel mad.  'Cyclone'

- 25 -

claimed it was good one. He had used it a few times."  And Garcia said, "It was a piece of shit, maybe one or two shots because the clip was all fucked up."

Nov. 27 Tr. at 167:19-169:6 (Castellano, Acee).

The next day, the United States called FBI Agent Nancy Stemo to the stand.  See Nov. 27

Tr. at 40:2-7 (Castellano, Court).  Stemo described statements that the United States may offer at

trial via Armenta's testimony:

> Daniel Sanchez ordered Armenta to carry out the hit on Javier Molina because he needed to put in work for the SNM. And he stated that if Armenta refused, he could also be killed.
>
> Q.     And what did he say that Mr. Sanchez said during the time that Mr. Armenta was assaulting Javier Molina?
>
> A.     After Javier Molina exited his cell and Jerry Armenta and Jerry Montoya were following Molina down to the bottom tier, Armenta overheard Daniel Sanchez saying, "Get him, get him."

Nov. 28 Tr. at 40:23-41:8 (Castellano, Stemo).  Stemo also testified regarding several other out-

of-court statements that the United States may introduce at trial by calling Armenta and M.

Rodriguez to the stand:

> Q.     What did Mr. Armenta tell you about conversations he had related to the Marcantel conspiracy to murder?
>
> A.     Jerry Armenta mentioned that Robert Martinez had told him that Robert Martinez and Roy Martinez had put a hit order on Gregg Marcantel and Dwayne Santistevan.
>
> Q.     Okay. Now, I want to turn your attention to a conversation you had with Mario Rodriguez. Did you have a chance to speak to him?
>
> A.     I did.
>
> Q.     . . .  What did Mr. Rodriguez indicate about a statement made to him by Daniel Sanchez related to the Molina paperwork?
>
> A.     While Rodriguez and Daniel Sanchez were reading the paperwork, Daniel Sanchez stated, "It's done."
>
> Q.     And in what context was that made in terms of reviewing the paperwork?

A.    That the decision had been made because they had received the paperwork.

Q.    And what did Daniel Sanchez want Timothy Martinez to do?

A.    He wanted Timothy Martinez to be involved in some fashion in the murder.

Q.    I also want to ask you about a statement from Carlos Herrera to Mr. Rodriguez about the Molina murder?

A.    When Carlos Herrera gave Mario Rodriguez the paperwork, Daniel Sanchez wanted to verify it, and Carlos Herrera told [M. Rodriguez] to, "Get that shit fucking done."

Q.    And had Mr. Rodriguez volunteered to participate in the murder?

A.    He had. But Daniel Sanchez told him not to.

Q.    And what was said from Mr. Sanchez about covering the cameras?

A.    He stated he did not want the cameras covered because the murder would be in a blind spot.

Q.    Can you tell the Court about a statement made by Rudy Perez when Mr. Sanchez was in his cell?

A.    When Mario Rodriguez went to Rudy Perez' cell, Daniel Sanchez pointed at a piece of Perez' walker, and Perez stated he was "down for whatever, as long as it was not me."

Q.    And what did Mr. Rodriguez say about a conversation he had with Timothy Martinez, once Mr. Martinez returned from the wheelchair program?

A.    Rodriguez told Timothy Martinez to go get high because the paperwork had arrived.

Q.    What was the purpose of getting high, do you remember?

A.    I don't.

Q.    And was there a clarification about who the paperwork was for?

A.    There was. Timothy Martinez initially volunteered to do the hit, because he thought the paperwork on Jerry Montoya had arrived.  But Rodriguez clarified that the paperwork on Javier Molina had arrived instead.

Q.    And what statements did Timothy Martinez make about Javier Molina's fiero or shank?

A.      Martinez stated that Molina had given him his shank prior to count, [sic] and Martinez had placed that shank inside of a bag of canteen.  Martinez later gave that shank to Rodriguez.

. . . .

Q.      Can you tell the Court whether Mr. Rodriguez confirmed to Mr. Montoya that he had seen the paperwork on Javier Molina?

A.      He did.

. . . .

Q.      Once Mr. Montoya learned that the paperwork was there, what was his response?

A.      He said he would do it.

Q.      What did Mr. Sanchez tell Mr. Rodriguez about leaving any dope behind in Javier Molina's cell?

A.      Mr. Sanchez told Rodriguez to not leave any dope behind in Molina's cell and that they could go halfers on it later.

Q.      Once they were inside Javier Molina's cell, what did Mr. Rodriguez tell Timothy Martinez about exiting the cell?

A.      Rodriguez told Martinez to exit the cell.

Q.      What happened next?

A.      Jerry Armenta and Jerry Montoya entered and began stabbing Molina. Rodriguez instructed both Armenta and Montoya to not let Molina out of the cell. Rodriguez overheard Montoya tell Molina to stay back, and Molina did not.

Q.      And when Mr. Molina made a statement that he was done, saying, Come on, I'm done now, what was Rodriguez' response to that?

A.      He told Molina that he was no carnal.

Q.      When it came to Mr. Herrera wanting to pass the paperwork to green pod, what was Mr. Rodriguez' response to him?

A.      Rodriguez told Herrera not to pass the paperwork to green pod because the individuals in green pod had been protecting Molina.

Nov. 28 Tr. at 41:14-46:15 (Castellano, Stemo).   Stemo then identified a document as a

- 28 -

DNM 901

"transcript of a recording of conversations between Rudy Perez and [Billy Cordova]," that Cordova recorded in February, 2016.  Nov. 28 Tr. at 46:24-47-5.  The Court admitted that transcript as Government's James Hearing Exhibit 16.  See Nov. 28 Tr. at 48:4-5 (Castellano); id. at 50:16-19 (Court).

On November 29, 2017, the United States called Acee to the stand again.  See Nov. 29 Tr. at 228:11-12 (Acee).  The United States asked Acee "about some  letters that were either intercepted or retrieved by STIU [Security Threat Investigation Unit] agents in this case related to the . . . conspiracies to murder Mr. Marcantel and Mr. Santistevan."  Nov. 29 Tr. at 229:3-7 (Castellano).  The first letter "was received by STIU on or about March 27, 2015," Nov. 29 Tr. at 229:9-10 (Castellano), and

> is from Roy Martinez, a/k/a "Shadow."  It's addressed to Juan Carlos Gutierrez, a/k/a, "Gotti." In this letter Martinez orders Gutierrez to kill Gregg Marcantel pursuant to orders that were given to him by Anthony Baca, while they were housed together at the Southern New Mexico Correctional Facility in 2013.
>
> The letter goes on instructing Gutierrez to contact other members on the street to make this happen.  And if the other members on the street failed to help carry out the hit, they should be killed.  And that other members would be in contact with him to help him -- him being, excuse me, Gutierrez -- to help ensure that that hit took place.

Nov. 29 Tr. at 229:16-230:4 (Acee).  The second letter

> was written by Roy Martinez, addressed to Damian Lobrado, a/k/a "Cuba." And in this letter Martinez tells him that the time has come for "Cuba" to show his loyalty to the S, which he had not yet done, and that he was to kill Gregg Marcantel.
>
> It also goes on to say that Gutierrez -- the person that we just talked about on the first letter would be in contact, and that they should work together. Other members would be in touch, and that they should not fail this mission.

Nov. 29 Tr. at 230:9-19 (Acee).  The third letter

> is also from Roy Martinez.  This one is addressed to Arthur Chavez, a/k/a "Lonely."

- 29 -

Q.      What's the content?  Well, who is it written to?

A.      Again, this is to Chavez, a/k/a "Lonely," and Martinez is telling him that at the direction of the viejo, who we believe is Anthony Baca, and that it's about a list Anthony Baca and Chavez had previously discussed.  Martinez said that Gregg Marcantel had degraded Anthony Baca and dishonored the SNM.  In the letter he ordered Chavez to handle the hit carefully and discreetly.  Martinez concluded the letter by threatening Chavez that there were other members on the street to take out any members who refused to carry out the hit.  Martinez advised that there would be no more second chances.   And then Martinez again referenced a hit list that Anthony Baca discussed with Chavez, and named Marcantel as the priority.  And I'm quoting Martinez; he said, "He must go," a reference to Marcantel.

Q.      And further down on that document, do you see where there is additional information about a green light for members who refused to carry out the hit?

A.      Yes. Martinez gave Chavez the green light to take out any SNM members who refused to assist with completing the objective of killing Marcantel.  Martinez also gave Chavez a deadline of August 31, 2015, at midnight, to complete the hit. Martinez also threatened Chavez that if he failed to do this or refused to conduct it, that he'd be hit as well, as would any other member that failed to go along with the mission.

He also claimed -- Martinez claimed that there were three SNM members watching Chavez at the time Chavez was on the street.

Q.      What was purpose of watching him?

A.      To ensure that he was making good on progressing on the mission.

Nov. 29 Tr. at 230:25-232:14 (Castellano, Acee).  The fourth letter is

from Robert Martinez, a/k/a "Baby Rob," and it's addressed to Sammy Griego, a/k/a "Sammy G."  In this letter Robert Martinez stated that the SNM leadership had decided to allow Griego one opportunity to show his loyalty to the SNM by taking out Gregg Marcantel and Dwayne Santistevan.  In the letter Martinez gave Griego the flexibility to work out the details of the hits on his own.  Martinez threatened Griego by stating if he failed to conduct the hits, he'd be taken out.

Martinez also told Griego that other SNM members would be in touch with him; that they should work together.  Martinez instructed Griego to get in touch with Gerald Archuleta, a/k/a "Styx."

In the letter Archuleta is referred to as "Grandma."

Nov. 29 Tr. at 232:17-233:7 (Acee).  The fifth and final letter:

- 30 -

is from Robert Martinez, "Baby Rob," to Ruben Hinojosa.  In this letter Martinez stated that the SNM leadership are tired of SNM members getting out of the prison and doing nothing for the SNM.  Martinez said that this type of behavior would no longer be tolerated and ordered Ruben to show his loyalty by taking out Gregg Marcantel and the Dwayne Santistevan.  Martinez threatened Ruben just like the other letters, and advised that other SNM members would be getting in contact with him.  And concluded that, if he didn't follow through with the mission, that his life would be in jeopardy.

Nov. 29 Tr. at 233:10-22 (Acee).  The United States then turned from letters to out-of-court

statements that Baca made.

> [I]n reference to the hits on Marcantel and Santistevan, the CHS [Confidential Human Source] told me and the other agents that Anthony Baca was eager to hit both Marcantel and Santistevan; that according to this source, Baca told the source that he was excited about the recognition the SNM would get all over the country if they were successful.

> This source claims that Baca told him that not even the Mexican Mafia had been able to kill a prison director or cabinet secretary.  The CHS stated that Baca first ordered Billy Cordova, a/k/a "Little Shadow," and Robert Sanchez, a/k/a, "Tiny," to hit STIU Administrator Dwayne Santistevan back in 2014, when they were both released from prison.  However, both got picked up while they were on parole, and were unable to enact that plan.

>  . . . .

> Okay, so in October, on October 22, 2015, as part of our investigative strategy, Anthony Baca was returned to New Mexico from U.S. Prison -- one of the facilities, one of the four facilities up in Florence, Colorado. He was housed at the Level 6 facility, and he was housed next to one of our confidential human sources.

> We utilized electronic surveillance, both what I'll refer to as body wires or ELSUR devices, as well as what would otherwise be considered a contraband cellular telephone that I had a wire interception order on.

> During Mr. Baca's incarceration at the Level 6, Mr. Baca and the CHS, as well as other people, other SNM members in and around the CHS, engaged in conversations. Much of those conversations were recorded via the body wire and/or the contraband phone.

> The CHS had a reputation for having phones in the past, and I don't think it surprised anyone that he had one in this circumstance. And so as I mentioned numerous phone calls were made and recorded, as were conversations.

> Q.      And what was said about the conspiracy to kill Messrs. Marcantel

- 31 -

and Santistevan?

      A.     Quite a bit.

. . . .

    "Additionally, upon his return to New Mexico, Baca added STIU Coordinator Adam Vigil to the hit list. He added Vigil because Vigil was scheduled to testify against the SNM as an expert witness for the State of New Mexico in the Molina homicide prosecution."

. . . .

    "CHS says to 'Pup' that Robert" -- in this case Robert Martinez -- "wrote 'Pup' a wila saying he was going to take care of Santistevan because he knows 'Pup' hates him. 'Pup' responds with 'Yes.'"

. . . .

    "'Pup' explains that Javier Molina and Jerry Montoya were close despite what people thought.

    Javier would go to Montoya's door and call him names so people thought there was a beef. But they were actually close. 'Pup' told Montoya that if Javier kept talking to him like that, then Montoya needed to hit Javier. But Montoya told 'Pup' it was not serious. 'Pup' then said, 'I even told 'Conejo,' Samuel Silva, 'I'm going to push this shit, eh.'?

. . . .

    "'Pup' tells CHS to have Mario, "Poo-poo," who is Mario Montoya hit Santistevan, and/or Adam Vigil, not Marcantel, and have Chris Garcia finance it. He says it needs to be done because the administration is going to tear us to shreds little by little. 'Pup' says after the hits are done, all the brothers will be separated in various states, and that communication with one another will be critical."

. . . .

    "'Pup' decided that it's better to" -- I believe that's a typo. It says his; I think it should say "hit. "'Pup' decided that it's better to hit Santistevan and Adam Vigil because they are the one telling lies to Marcantel. Once the hits are carried out and the investigation is done, the news media will realize the corruption and scandals in the prison system and fire Marcantel. 'Pup' is adamant that he wants it done. And says the worst that will happen to the SNM is that they will be sent out of state."

    "'Pup' wants research to be done on where Vigil and Santistevan live. He believes that the warden lives on prison grounds on Oasis Street, but also

observed other houses that could belong to Vigil or Santistevan.  He says it will be easier to get them if they do not reside on the prison grounds.  He also says he wants to bring down Bustos, a former Associate Warden, who 'Pup' blames for sending him to the ADX.  'Pup' does not specify that he wants Bustos hit, but it appears he wants the get him in trouble.  'Pup' believes that Bustos owns a Santa Fe real estate company."

. . . .

Q.    And what is Mr. Baca's statement about where he believes Mr. Marcantel lives in the next statement?

A.    "'Pup' believes Marcantel also lives on prison grounds."

Q.    And just to be clear, for the Court's determination on these statements, at any point did Mr. Baca talk about murdering Mr. Vigil with anyone other than a cooperator that you're aware of?

A.    I think he talks about it with Mario Rodriguez, "Blue."

Q.    I just want to make sure we're keeping track of who they are.

A.    He may also talk about it with Chris Garcia during the phone conversations.

. . . .

"'Pup' and CHS ask Garcia" -- in this case it's Chris Garcia -- "for Mario's phone number." Mario is Mario Montoya.

Q.    And to put the statement in context, what was the purpose of obtaining Mario's phone number?

A.    Mario Montoya is a good SNM soldier on the streets, and the one that's designated to lead the mission, the hit on Marcantel and Santistevan.

Q.    And at this point, for the Court's consideration, was Mario working as a cooperator for the Government?

A.    He was.

Q.    And were Mr. Baca or Mr. Garcia aware of that?

A.    No.

. . . .

"'Pup' instructs the CHS what to tell Mario regarding Santistevan and Vigil hits. 'Pup' says, 'All the shit that's going on with the rasa, it's all fucked up

- 33 -

because of those two individuals. So we need this fucking perro done. We'll give you a few days to try to hunt down this motherfucker. 'Pup' also says, 'That's only way this shit is going to stop. If they get handled, you know. Either one of them, it don't matter which one."

The CHS then asks, "Either Santistevan or Adam?

"Pup" responds, "Yes, either one. It doesn't matter. One of them will be dealt with in order to stop this foul ass shit that they are doing."

. . . .

"Pup" and the CHS talk with Mario on the cellphone. "Pup" tells Mario to reach out and touch Santistevan or Adam Villa.   "Pup" says, "Fucking Adam Vigil and fucking Santistevan are making it real fucked up. They're creating a lot of perro that -- making the brothers fight with each other.  And we need -- and we need somebody on the calle to fucking touch either of them.  It don't matter."

. . . .

"Pup" says, "And if he, Mario, needs any squina or feria to finance the perro to get it done, then we're gonna -- we're gonna to work on it till it gets done."

. . . .

A.     "Pup" instructs Mario to make a silencer out of a lawn mower muffler and a packet with steel wool.  Pup says that Chris Garcia can finance Mario if needed. "Pup" asks Mario, "Okay, now, how are the brothers acting out there?" Mario tells him that the brothers don't do anything, and like to get high, but deny it. "Pup" says, "We're going to fucking start identifying them fuckers. That way, when we come in here, knock them off."

. . . .

A.     "'Pup' tells Yvonne to mail in Suboxone strips and 2K so that he can make money."

Q.     What's your understanding of what 2K refers to?

A.     It's a synthetic marijuana.

Q.     And who is Yvonne?

A.     I believe that's Mr. Baca's girlfriend.  I don't believe they're married. They may be, though.

MR. CASTELLANO: For the record, that would be conspiracy to bring

- 34 -

contraband into the jail or to distribute narcotics. So we still consider it a co-conspirator statement, but just not related to those two counts. We'll be moving for its admission at trial.

. . . .

A.    "Pup" and the CHS are talking about planning the hits and the best weapon to be used. "Pup" says, "What's a good cuete for that? It has to be a revolver, carnal, not an automatic. Automatic might jam. Those are easier to put a silencer on, too, a homemade silencer, because it has a barrel."

. . . .

A.    "Pup" said, "You can't say cuete on the phone." And Eric says -- excuse me, Eric, the CHS, Eric Duran, says, "Well, it's my phone," like this phone is good. And then Pup tells him, "Yeah, but we don't know that Chris' phone is good because Chris is always hot."

. . . .

"Pup" and the CHS are talking via the cellphone to Mario, getting an update on how Mario's planning is going. "Pup" insists that Mario find out addresses on Google. And again, I'm going to add some notes here from my review of the transcripts. "Pup" is telling Mario to run their names, and make sure he uses someone else's computer, like going to the library. And Mario kind of jokes back and says, Well, "I can't just put their name in and it's going to tell me all this stuff about them." So they kind of banter back and forth about that.

. . . .

A.    "Pup" suggests that Mario research upcoming meetings or charities that the targets might attend.

Q.    For what purpose?

A.    To locate them; that they're -- especially Marcantel, he'd attend various meetings and functions. I added a note there that you'll see when you review this that says, "Pup" encourages Mario to take his time, that it needed to be done right.

. . . .

"Pup" and the CHS are talking about Michael Snow. "Pup" tells the CHS, "Ask him if he could try to get me a cuete. If he could, just get one, and I'll have him give it to somebody." Specifically, "Pup" asks for a revolver.

. . . .

- 35 -

Q.     And are you aware of whether or not Michael Snow is a convicted felon?

A.     He is.

Q.     Okay. Two bullet points below that it says, "'Pup' asks Snow if he's heard" -- can you tell us the rest of that statement?

A.     "'Pup' asks Snow if he's heard from Becky, and if she still gets prescriptions for Suboxone.  'Pup' tells Snow to acquire some Suboxone strips, and then give them to his hita."

. . . .

"'Pup' wants to send us a message to 'Creeper'" -- who we believe was Jerry Armenta's "family that they will be harmed if he testifies for the state. 'Pup' wants the family to know 'Creeper' is fucking up.  If he take[s] the stand against this perro, against anybody, we're coming for your ass.  'Pup' agrees that Mario is the best person to deliver the message."

Q.     And can you tell the Court whether at this point the Molina murder was still charged at the state level?

A.     It was.

Q.     So when he refers to Jerry Armenta testifying for the state, are we talking about Molina at the state level at that point?

A.     Yes.

. . . .

"'Pup' and CHS are talking with Mario Montoya.  'Pup' says he is working on getting Mario guns."

Q.     In that call are you aware of what the purpose is of obtaining guns at that point in time?

A.     Hit Marcantel, Santistevan, Vigil.  "CHS read a text message from Chris Garcia to 'Pup.'  Chris is nervous about giving guns to Mario because other brothers have been coming to him asking for Suboxone strips for 'Styx.'  But then they never send them to 'Styx.'  Chris wants "Pup" to make sure Mario is completely on board before he gives them the guns.  Chris says, 'So just see what's up.  Make sure that everything is going to be good, because these are nice toys.  And if they're in the wrong hands and the carnal needs to get right, then those are gone.'"

Q.     Who is "Styx" referring to?

- 36 -

A.      Gerald Archuleta.

Q.      Tell us about the next statement, please.

A.      "This message from Chris concerns 'Pup.'  'Pup' is getting nervous about too many people knowing about the mission, and says that they just kept only one carnal on it."

Q.      So what's the concern at that point?

A.      Too many people know about it.

. . . .

"'Pup' is trying to work out what to do with Chris not trusting Mario enough to give him a gun.  'Pup' thinks it may just be best to get Mario money so he can get his own gun."

Then I add some comments from my review of the transcripts, which is "'Pup' wants Mario to watch out for cameras."  He was real concerned that Marcantel would have cameras on his house.  He made the comment, "He needs to make sure he's not wearing a beanie or a mask when he walks up there."

. . . .

"Mario should have done the hit over the night.  'Pup' and CHS are wondering if the feds are going to charge the SNM.  'Pup' talks about the steps the feds would have to take, gather state evidence, bring in STIU and local law enforcement.  'Pup' complains about carnals doing interviews for TV shows like Gang Land and MSNBC."

. . . .

"The CHS asked 'Pup' if the SNM will get respect from the Mexican Mafia if Mario successfully kills the Secretary and all the carnales get sent into the federal system. 'Pup' responds, 'They already respect us. And with us going over there like that, with that type of fucking charge, oh, yeah, they fucking -- not only them' -- the Mexican Mafia -- 'everybody else respects the fuck out of that shit.'"

Q.      And since we have more than one Mario mentioned in this case, who is this Mario referring to?

A.      Montoya.

Continuing on?

Q.      Yes.  Next statement, please.

- 37 -

A.    "'Pup' says that the murder will fucking bring us all kinds of" -- unintelligible -- "fuck -- unintelligible -- "get notoriety like fuck.  And then all them vatos and the feds will be like, 'Fuck, yeah, you fucker.'"

Q.    Okay.  Next statement, please.

A.    "'Pup' realizes that once the Secretary is killed, law enforcement will probably identify Mario.  'Pup' says that he woke up early this morning to watch the news, and see if the secretary was killed.  And also he warned 'Dan Dan' that the feds would be coming after them.  CHS explains to 'Pup' how Javier Molina's murder went down.  And 'Pup' says, 'That wasn't to happen like that.'  CHS says that 'Blue' is upset about how the murder happened.  And 'Pup' said he would talk with 'Blue.'  CHS asked 'Pup' what 'Blue' said when 'Pup' told him they would threaten "Creeper's" -- again, Jerry Armenta's family -- "'Pup' responds, 'Oh, he said, 'Fuck, yeah.'"

Q.    So we have context here, who is "Blue"?

A.    Mario Rodriguez.

Q.    And earlier I asked you about a statement where Mr. Baca said not to kill Mr. Marcantel.  At this point has he -- in the investigation, has he agreed that Mr. Marcantel should be killed?

A.    Clearly.

. . . .

"Pup" is talking about Jerry Armenta testifying.  "And his family, his family gets hit.  And that shit will hit the news, carnal.  And they're going to say the only motive behind that has been because that fucker testified.  That shit hits the news, too.  That gives us more power.  Because of that fact, everybody is going to know, a la verde, they're going to hit my family, I'm never going to tell them."

. . . .

The CHS tells "Pup" that if Mario gets caught, and the news gets out that the SNM hit the Secretary, then the Eme will look at the SNM different.  'Pup' responds, "Hell, yeah, they are."  "'Pup" complains to the CHS that 'Dan Dan' is too quick to want to fall under the Eme.  'Pup' views the SNM as equal to the Eme."

. . . .

Q.    In order to lay the groundwork for this exhibit, which I'm putting up on the visualizer -- it's Government's Exhibit 26 -- what is the context in which this statement takes place?

- 38 -

DNM 911

A.      So this is November 29, 2015.  The previous evening, Chris Garcia called Mario Montoya and said that he had the gun that was to be used to hit Marcantel. I didn't want to go out in the evening.  It's more difficult to do surveillance.  So Mario told Chris something, and we set it up for the following day.

So this is a transcript from a body wire that Mario wore when he went to Chris Garcia's house to pick up the firearm.

MR. CASTELLANO: And for purposes of the James hearing, Your Honor, I'm actually moving in the entire conversation as part of the co-conspirator statements.

Q.      Look at some of the highlighted areas, Agent Acee.   There is discussion about a .22 long rifle.  What is that referring to?

A.      Ammunition, a bullet, a cartridge.

Q.      A .22 long rifle cartridge goes in what type of firearm?

A.      A .22 caliber firearm.

Q.      And was there a firearm turned over from one person to another on that date?

A.      Yes. Chris Garcia gave Mario Montoya a .22 caliber semi-automatic pistol.

Q.      For what purpose?

A.      To kill Gregg Marcantel.

Q.      Okay.  And can you tell the Court what this reference is regarding the clip?

A.      He's referring to the magazine. He says, "Well, the firearm didn't have a magazine. It needs a magazine to be fully loaded."  So what Garcia is explaining to Montoya is: "Put the bullet in the fucker and then you can shoot it. Or you can get a clip and, you know, do it the right way.  Order a clip."

Q.      Down here -- this is on page 1086 at the bottom of this exhibit, there is a reference to somebody named "Chuco."  Can you tell us who that person is?

A.      That's Mandel Parker.

Q.      And can you tell the Court whether Mandel Parker became part of this conspiracy?

- 39 -

A.      He did.

Q.      What was the context in which he became involved?

A.      Mario Montoya contacted SNM members on the street, explained the mission that he was on. "Chuco" volunteered, and was actually eager to help.

Q.      Did he show his interest in joining the conspiracy to murder Gregg Marcantel?

A.      Enthusiastically.

Q.      On the next page at the bottom is 1087.   Tell us about the discussion here with the word feria?

A.      So here, the CHS is expressing some concern that -- well, one he's trying to get some money out of this.   And then I think that he's kind of negotiating that he should get some money because Marcantel is a, quote, "big motherfucker." And at this point he's been given a .22 to kill him that can only hold one bullet.

Q.      And so is there a concern that one .22 caliber round won't do the job for someone as big as Mr. Marcantel?

A.      Yes.

Q.      And what's the discussion in here about River's Edge 3?

A.      This is where the CHS is reporting that -- kind of how he's going to do the hit.   They've done their reconnaissance or their scouting.   And he's saying that Marcantel, he has two big old dogs.   He lives over there on River's Edge 3.   That's a housing neighborhood off -- I think it's off 528 in either Rio Rancho/Bernalillo area.   And he's just saying that he walks the dogs two or three times a week, and that that would be a good place to hit him.

Q.      And you see further discussion about killing Santistevan, the question by Mr. Garcia?

A.      Yes.

Q.      And if you recall from this conversation, you know what they're talking about when they talk about giving him a double, and leaving him with everything?

A.      Yes. They're talking about killing Mandel Parker, and then leaving the murder weapon and any other evidence with Parker, so it looked like he did it.

Q.      On the next page at the bottom, it's 1088.   Is there -- the word

"gauge" is used there.  Do you remember what the discussion referred to at that point?

A.      Yes.    Chris Garcia said that when Montoya expressed some concern about it just being a .22, Garcia said that he also had a shotgun, but he needed more time to get it.  I think he said it was at his brother's house.  And so he said he'd get the gauge too.  It was a good one.  He actually did follow up and tell -- send Mario either a phone call or a text message saying that, Hey, he had the gauge, do you want to come get it.

Q.      And what ultimately happened there?

A.      Well, we didn't, because we ended up arresting everybody.

Q.      Now, turning to page 1090 of the exhibit.  Some discussion about somebody eating at Barelas Cafe.  How can you put that in context for us?

A.      This is where Chris Garcia is telling the CHS that he saw Marcantel eating, and that he couldn't believe it.  He was at the Barela's Cafe.  He was eating by himself.   And then later on down there, where you have the highlighted, it says, "He carries a cuete, too."  Garcia is telling the source that he carries a gun also, he being Marcantel.

. . . .

Q.      And at the bottom of the page under the next page it says, "That's the one I'm going to send 'Pup' out of the state."  Who is that referring to?

A.      That's referring to Marcantel.   After the Javier Molina murder, Marcantel is regarded by the SNM as being responsible for sending "Pup" and Mr. Sanchez and others out of state.

. . . .

So this is just Mario Montoya, the CHS, and Chris Garcia talking about -- they're talking about what "Pup" wanted, what "Pup" -- excuse me, what Mr. Baca's instructions were to Mario.  And they're talking about the neighborhood.  They're talking about the gun.  It looks like the fourth block down it says, "See if I get this clip.  If not, um, let me get that gauge, too.  What he's saying is if I can order the clip in time for the magazine for this .22, sure.  Otherwise, let me get the gauge.

And I had instructed Montoya to get whatever Garcia was providing for this.  It didn't matter what they were.

Q.      What was Mr. Garcia's response?

A.      He says, "Yeah, that gauge, that gauge is perfect.  You could even

- 41 -

tell what's his name where it's at."  Some of that is unintelligible.  "If you're around the neighborhood where he walks the dogs, there is going to be cameras."  And Garcia is just warning them, "I have cameras at my pad."

The CHS goes on to say, basically he scouted it.  "There is a back way in. It's down there by the bosque."  I think what he's referring to is below River's Edge is the Rio Grande River, so there are some walking trails and stuff like that.

Q.     What is Mr. Garcia's suggestion about going to the barber shop and getting hair?

A.     You know, I'm actually -- I have reviewed this, but that's not -- I guess he's making reference to going to the barber shop to get some hair.  Act like they had to use the restroom, and then maybe put it in your pocket and leave, to leave at the crime scene, somebody else's hair.  That's what I'm discerning from that.

Q.     So, in other words, if you left someone's hair at the scene, would that provide a DNA sample of other people?

A.     Yes.  Either that or even attaching someone else's hair to your head.  Either way, it's to throw off the crime scene.

. . . .

It says -- this is Garcia talking and there is some overlap.  He's talking about what I believe is a light affixed to the shotgun.  He says, "This fucker is bright.  You turn the bright on it, and I swear to God, the light on it is bright as fuck.  And" --unintelligible -- "during the daytime, like that, where the, where the" -- unintelligible -- "I got it" -- unintelligible -- "it's a pretty bright light."  He goes on to say, "You know what I mean brights" -- and the something -- and so the CHS and Garcia are kind of interacting how to come up with this light affixed to it, I believe, and approach somebody, and all they can see is the light and then you see it says, "Boom!" there.

So that's based on my listening live at the time, reviewing this, and then debriefing the source immediately after, that that's what they were talking about.

The next one, I would turn the page to 1089.  This was -- this stood out with me starting at the top where they're talking about Andrew.  And that's Andrew Romero.  Now, he's not a defendant in this case.  He was just convicted in the state of murdering the Rio Rancho Police Officer.  And shortly after that he was brought into the SNM, while he was incarcerated at Central.  And there has been some disagreement among members on whether or not he should be in or not, because he may have been a rat before.  And that's what they're talking about here.  But there is other conversation where that murder of that cop may have made him a good guy.

- 42 -

Nov. 29 Tr. at 234:10-269:8 (Castellano, Acee).

The United States finished examining Acee regarding Exhibit 26 on December 8, 2017.

See Dec. 28 Tr. at 206:9-13 (Castellano, Court).  The United States began with questions about

Exhibit 26 statements:

> Q.     Okay.  I'm going to go ahead -- and we've covered some other
> parts of the conversation, so I'll move to Bates stamp 1095 on that transcript.  I'll
> start here with the highlighted portion, where the CHS says, "I'm going to put this
> away and Imma come back."  Can you tell us what's going on there?
>
> A.     The CHS has received a .22 caliber pistol from Garcia, and he's
> telling him that he's going to go put it away, and that he'll come back to the house
> afterward.
>
> Q.     Okay.  Then tell us about the rest of the conversation.
>
> A.     Mr. Garcia brings up "Chuco," who is Mandel Parker.  Do you
> want me to read from this, or just tell you what I know of it?
>
> Q.     Yes, tell us what the rest of the conversation means in the context
> of this page.
>
> A.     Sure. So Mr. Garcia says, "Then with 'Chuco' too he has to be,
> like you said, right after we take him, if he looks" -- unintelligible.  Both are
> speaking at the same time, there is overlap -- "take it all."  Garcia says, "At all
> just right there.  Even if he has to take him to the fucking thing and get him and
> put the thing on him.  The weapon on him, and leave it on, leave it there.  A la
> verga.  It's fucked up, but if he -- if he right away gets out and says, What's up
> fool."
>
> Montoya says, "I'm gonna say nothing.  He's not gonna say nothing.
> You're gonna get down and do it and that's it.  I mean" -- unintelligible -- "do it.
> I'm going to do it."
>
> Garcia says, "Yeah."
>
> Montoya says, "I'll do it and then I'll do him right after, know what I
> mean. I already, I already pretty much got" -- unintelligible -- "good."
>
> Q.     Let me stop there.  What's going on in the context of that
> conversation?
>
> A.     Garcia is expressing some doubts about "Chuco," Mandel Parker,
> who had previously agreed to help Mario Montoya kill Marcantel and
> Santistevan.  And what they're discussing is "Chuco," or Mandel Parker, might be

- 43 -

a weak link.  If he gets picked up, he might tell.  So that they're discussing killing Parker, and leaving all the evidence, to include the murder weapon, with Parker.

      Q.     So was it your understanding from the operation that Mr. Baca, Mr. Garcia, and Mr. Parker had agreed to kill Secretary Marcantel?

      A.     Yes.

      Q.     Okay. I'm turning to the next page.  It's Bates stamped 1096. And I want to focus on the last statement highlighted on the page, which is Mr. Garcia's.

      A.     Garcia says, "Give him a hotshot, you know, whatever.  But hey, just tell him, yeah, fucking a, my only chance, let me put in some jale for you.  I told him."

      Q.     What was your understanding of the discussion about the hotshot?

      A.     Garcia is suggesting to the CHS, Mario Montoya, that he give Mandel Parker a hotshot, which is a fatal dose of heroin.

Dec. 8 Tr. 207:12-209:23 (Castellano, Acee).  The United States then asked Acee some questions

about statements in Exhibit 16:

      Q.     Okay. I want to turn attention to a statement here by Rudy Perez referring to "Crocodile" answering for it and BB answering for it. Do you see that portion?

      A.     Yes.

      Q.     Can you tell us basically what the statement is and who was involved in the statement?

      A.     Do you want me to read it first, or just --

      Q.     Go ahead and read it, and then put it into context, please.

      A.     Rudy Perez says, "Yeah, and you know, check this out, a, and it's like what was discussed.  'Crocodile' about has to answer for it.  BB has to answer for it, um, I think there is four or five that have to answer.  Why it was never done the first the paperwork got sent down."

      Q.     Do you know what that is a discussion about?

      A.     Yes.

      Q.     What is it?

A.    Mr. Perez is talking about the prior times the paperwork for Javier Molina was sent down to Southern.  "Crocodile" is an SNM member who was in charge of the pod; I don't remember his name.  BB was another SNM member in charge of the pod down there.  That's Javier Rubio.  And they're going to have to answer for the fact that paperwork went down and Molina wasn't hit.

Q.    And who is that statement attributed to?  I'm going to draw your attention to the next portion there.

A.    Mr. Perez is saying, "I, I heard 'Pup' say they have to answer for that no matter how close I am to them."

Q.    Okay. And so what type of conspiracy are we talking about when it comes to the paperwork and "Pup," or Mr. Baca saying people have to be responsible?

A.    There was an expectation that when the paperwork was produced, the other members of the gang would act on it.  They didn't.  And in this statement Mr. Perez is saying that he heard from "Pup," Anthony Baca, that they would have to answer for it.

Q.    And is that because from the investigation you've learned that the paperwork went down previously, but the murder was not committed?

A.    Yes.

Q.    The next statement is from DeLeon Bates stamp 20544.  I'm going to direct your attention now to more discussion about paperwork.  Who is making the statement this time?

A.    Mr. Perez.

Q.    And what is the statement as it relates to paperwork?

A.    Within that statement he's saying, quote, "He's got the paperwork a year before.  That's when he told me, hey, we got it.  Yes, but we're not gonna show it.  So you just make sure you show some love, no?"

Q.    Okay.  And then continue.

A.    The CHS says, "Orale, so hey, that's -- so that's why -- so that's why that fool Javi, Javier was fucking always sending coffee to him because he knew he was a chaffa fucker."

Perez says, "He was. He was covering his ass, dog."

Q.    Can you tell the Court whether that was a further discussion of the paperwork that was discussed just a minute ago in your testimony?

- 45 -

A.      Yes, I believe it is.

Q.      And for purposes of context, are you familiar with the word "chaffa" that's on that page?

A.      Yes.

Q.      What does that generally refer to?

A.      They're no good.

Q.      I'm drawing your attention to DeLeon Bates stamp 20555.  And I want to talk to you once again about discussions about paperwork.

A.      I'll start where you pointed, or --

Q.      Yes.

A.      So the CHS is asking, "So that's what it was, it was the paperwork on Jesse Sosa."

Mr. Perez responds, "That, that, that, that was part of it, and then Archie's boy was the other half."

Q.      And I'll show you right here.  Tell us what Mr. Perez says about his discussions with others.

A.      Toward the bottom of his statement, Mr. Perez says, "I told them vatos not like" -- unintelligible -- "think about that, and they basically told me, you know what, a this is going to happen regardless, just stay out of it."

Q.      Now, what's your understanding of the context of this statement?  Stay out of what?

A.      The Molina hit.

Q.      And was it your understanding from the investigation that there was a conspiracy to murder Javier Molina?

A.      Yes.

Q.      And once again, DeLeon 20557.  I'm going to direct your attention here to a statement by Mr. Perez.

A.      Mr. Perez is saying, "You feel me? Like I say, they told me to shut up and just stay out of it, and they did what they wanted to do.  Then later on, suicide mission was there."

Q.      And what's the discussion about the pieces?

- 46 -

A.      CHS asked Mr. Perez, "So why did you give them pieces, carnal?"

Q.      Okay. Continue on down the page with the discussion, and tell us who was making each statement here.

A.      They continue talking about the pieces, and Mr. Perez says, "I just, I just get out of it, let them do their own thing.  I was nobody, I just, fuck it."

The source says, "Yeah, but they fucking got them" -- unintelligible -- "from your fucking, from your walker, carnal.  Could have gotten you caught up, you know what I'm saying?"

Mr. Perez says, "Oh, it did, it did.  Look where I'm at."

Q.      Let me take you down the page here to Mr. Perez' explanation.

A.      Mr. Perez says, "I just got out of the hold" -- I believe that's a mistake; it should be hole -- "I was real sick.  So for me to actually participate in doing some dirt" -- unintelligible -- "physically I wasn't able to.  But we all have to do our part."

Q.      Continue with that statement, please.

A.      "But we all have to do our part, you know what I mean? One way or another, homes, everybody has to put their part.  Do you feel me?"

Q.      Now, taking you back to the pieces.  What is that a discussion of?

A.      The shanks.

Q.      From where?

A.      Mr. Perez' walker.

Q.      And can you put it in the context of him saying he has to do his part?

A.      He just got done describing that he got out of the hole.  He was sick.  He physically wasn't able to do his part.  But he was, by providing the metal that were fashioned into shanks to do the hit.

Q.      Turning your attention to DeLeon Bates stamp 20558, and I want to draw your attention to the top of the page here, where it says, "The old man was pissed."  Can you tell us who made that statement?

A.      Mr. Perez made that statement.

Q.      Okay. Please continue reading the statement and we'll put it into context.

- 47 -

A.      "The old man was pissed, bro, he was like, he, he, he, he was upset with them, the other fools over there.  They -- why didn't they handle it a year sooner when the" -- unintelligible -- "took the paperwork over there.  Well you send the paperwork up there."

Q.      Okay, continue.

A.      CHS asks "Who?"

Mr. Perez says, "Who?"

CHS says, "Spider."

Mr. Perez says, "Yeah."

Q.      Continue.

A.      Source says, "Yeah, I already know."

Mr. Perez: "And, and, and see, that was something that he was going to have to handle when he got over there, a."

CHS asks: "Who, 'Spider'?"

Mr. Perez says, "Yup, they told him you send the fucking" -- unintelligible -- "over there and find out why the fuck it wasn't taken care of."

The CHS asked: "Is that what 'Pup' told him?"

Mr. Perez says: "Huh?"

CHS asked: "Is that what 'Pup' told him?"

Mr. Perez says: "I know somebody told him.  I don't know who exactly but I knew, I knew" --

The CHS asks: "What did 'Pup' say, because what did 'Pup' say because the" -- unintelligible -- "wasn't done earlier?"

Mr. Perez responds: "He, he didn't like it."

Q.      Let me stop you there.  First of all, there is mention of "Spider" here.  Do you know who "Spider" is?

A.      That's David Calbert.

Q.      And do you know what "Spider"'s role was in the Molina murder?

A.      Mr. Calbert passed the paperwork, in this case, two pages from an

- 48 -

LCPD police report, that indicated Molina gave a statement to the police and cooperated.  Mr. Calbert took that from the Level 6 at PNM to the Level 5 at PNM and gave it to Lupe Urquizo, "Marijuano."

> Q.      What was the purpose of moving the paperwork?

> A.      Urquizo and Varela -- Mauricio Varela -- were scheduled to be transported down to the Southern New Mexico Correctional Facility.  So they were passing paperwork to eventually make it down to Southern, where Molina was.

> Q.      For what purpose?

> A.      To provide the paperwork so Molina could be hit.

> Q.      So when there is a discussion about the "old man" on top, and then "Pup," who is that referring to?

> A.      One and the same, Mr. Baca.

> Q.      So is it an indication that Mr. Baca was not happy that the hit had not been taken care of earlier?

> A.      Yes.

Dec. 8 Tr. at 210:15-219:2 (Castellano, Acee).

### 4.      The First Motions in Limine.

Perez objects to "hearsay statements offered by Mr. Perez's co-defendants, turned government witnesses, Timothy Martinez and Jerry Montoya."  Perez MIL at 1.  According to Perez, "testimony at the James hearing conducted November 27-29, 2017," leads him to believe that "Timothy Martinez will testify that co-defendant Daniel Sanchez told him that 'Sanchez had obtained [the shanks] from "fat ass" the nickname Sanchez used for Rudy Perez'" and "that Sanchez told him that Mr. Perez gave Sanchez pieces of metal from his walker to be made into shanks, because according to Martinez, Sanchez said 'What else is fat ass gonna do?'"  Perez MIL at 1 (alteration in the original).  Perez also expects Montoya "to testify that Mario Rodriguez provided him a shank to use to kill Javier Molina" and that, "when Rodriguez did so, he inexplicably volunteered that the shank came from Mr. Perez' walker."  Perez MIL at 2.

Perez asserts that rule 801(d)(2)(E) does not apply to those statements, but he defers that argument, see Perez MIL at 3 ("Mr. Perez will pursue this argument at the conclusion of the James hearing."), and instead "seeks a ruling by the Court that the out-of-court statements of Mr. Sanchez and Mr. Rodriguez that it is expected Mr. Martinez and Mr. Montoya will testify about do not meet any other exception and constitute inadmissible hearsay as to Mr. Perez," Perez MIL at 3. Perez argues that the Court cannot admit Sanchez' and Rodriguez' out-of-court statements as statements against penal interest. See Perez MIL at 4. Perez contends that the Court cannot admit Rodriguez' out-of-court statements as statements against penal interest, because "Rodriguez is expected to testify" and the statement-against-interest exception is available only when the declarant is unavailable. Perez MIL at 4 (citing Fed R. Evid. 804). Perez admits that Sanchez is unavailable, but he contends that Sanchez' out-of-court statements are not statements against his penal interest. See Sanchez MIL at 4-6. Perez also admits that Sanchez' statements "may be admissible against Mr. Sanchez as a statement of a party opponent," but he contends that, "given the minimal probative value, the Court should exclude them under Rule 403." Perez MIL at 7.

C. Garcia "request[s] the Court order the government not to attempt to elicit, mention, or refer to any evidence of co-defendants' statements that implicate a defendant in front of a jury until a hearing has been held outside the presence of the jury." C. Garcia MIL at 1. C. Garcia does not identify any particular statements, but he argues generally that "[t]he use of co-defendant's statements implicating or suggesting a defendant maybe [sic] highly prejudicial to jointly tried defendants," and violates their "right to cross-examination pursuant to the Confrontation Clause . . . when a co-defendant chooses not to testify." C. Garcia MIL at 1-2.

Baca seeks to exclude "any potential testimony offered by witness Jerry Armenta that

Defendant Anthony Ray Baca played any role or part in the Javier Molina homicide on March 7, 2014."   Baca MIL at 1.   Baca argues that as part of Armenta's now-aborted state-court prosecution, "the State prosecutor interviewed Armenta on October 6, 2015" and asked him "to describe how the Molina homicide happened."   Baca MIL ¶ 4-5, at 2.   According to Baca, Armenta "acknowledged that he did not learn anything about Defendant Anthony Ray Baca's purported involvement in the matter until after the murder had taken place," and "[n]othing about Armenta's statement reflected any first-hand knowledge on Armenta's part that Defendant Anthony Ray Baca was involved, in any way, with the Molina homicide."   Baca MIL ¶¶ 6, 11, at 2.   Baca argues that, because Armenta lacks first-hand knowledge, his testimony would be based on the out-of-court statements of others, and those statements "could [not] be considered admissible under any theory or rule of evidence."   Baca MIL ¶ 11, at 2.   Baca asserts that those out-of-court statements are not admissible via rule 801(d)(2), because "Armenta is neither recalling any admission made by Defendant Anthony Ray Baca (he could not, since they never met each other), nor were the statements Armenta overheard in furtherance of the conspiracy as Armenta heard them after the objective of the alleged conspiracy had been achieved."   Baca MIL ¶ 11, at 2-3.   Baca also asserts that no "exception to the rule against hearsay evidence applies."   Baca MIL ¶ 11, at 3.

     **5.**     **<u>The December 19-20, 2018 Hearings</u>.**

     On December 19, 2017, the Court took up the Baca MIL, which seeks "to prohibit the Government from questioning Jerry Armenta about Mr. Baca's involvement in Counts 6 and 7."   Dec. 19 Tr. at 254:24-254:3 (Lowry).   The Court asked Baca to "refresh my memory as to what Mr. Armenta would say and how he would know what he's saying?"   Dec. 19 Tr. at 4-6 (Court).   Baca described a videotaped interview, from October, 2015, in which Armenta

walks the State investigators through the Molina event.  And at no time did he mention Mr. Baca at all, until he had gone through it.  And then he was asked a pointed question by the folks that were talking to him, if Mr. Baca had anything to do with this at all.

And his answer was interesting.  But more to the point, he said, "I didn't know anything about that rumor" -- he describes it as a rumor that was going in the pod -- until after the event altogether.  And so it couldn't be in furtherance of any kind of conspiracy because he had no prior knowledge whatsoever.  He talks about what he had heard from other people in the pod later, after the fact.

Dec. 19 Tr. at 254:11-24 (Lowry).  Baca clarified that "we'd ask just that that portion of the video . . . and then Mr. Armenta's testimony to the extent the Government is going to rely on it, not go into anything he learned after the fact, from the rumor mill."  Dec. 19 Tr. at 254:25-255:5 (Lowry).  According to Baca, Armenta's after-acquired knowledge is based on statements that were not made "in furtherance of any kind of conspiracy," and Armenta lacks "any kind of firsthand knowledge whatsoever."   Dec. 19 Tr. at 255:10-13(Lowry).   The United States admitted that Baca is correct, "[i]f it's just rumors from uninvolved people."  Dec. 19 Tr. at 255:22-23 (Castellano).  On the other hand, "if it's a rumor from somebody who is involved with the conspiracy, then that would be a statement that falls under the Smalls case, because it would be a statement against interest."  Dec. 19 Tr. at 255:22-256:2 (Castellano).

On December 20, 2017, the Court briefly heard testimony from Acee, see Dec. 20 Tr. at 150:5-151:14, 152:5-153:10 (Lowry, Acee), before asking the parties for argument, see Dec. 20 Tr. at 154:1-2 (Court).   The United States argued that the plea agreements of cooperating defendants, which it introduced as Exhibits 1-15, establish the existence of a conspiracy.  See Dec. 20 Tr. at 155:14-24 (Castellano).   Specifically, the United States asserted that M. Rodriguez', Montoya's, and T. Martinez' plea agreements show that there was a conspiracy to murder Javier Molina and its membership.  See Dec. 20 Tr. at 155:14-156:9 (Castellano).  The United States also asserted that R. Martinez' and R.P. Martinez' plea agreements show that there

DNM 925

was a conspiracy to murder Gregg Marcantel and Dwayne Santistevan and that R. Martinez, R.P.

Martinez, and Baca were members of that conspiracy.  Dec. 20 Tr. at 156:10-24.

The Court then described its initial impression:

It certainly seems to me there has been sufficient evidence for the Court to find by a preponderance of the evidence, which I think is the requirement on a James hearing, that I find that the Government established by a preponderance of the evidence that a conspiracy exists; that the members, the defendants, and the declarants were members of the conspiracy, and that the statements that I have heard, that I've listened to carefully, that I've looked at were made in furtherance.

I think the Government has put on a fairly comprehensive demonstration for these statements.  And these are the statements -- remember, that they're going to introduce pursuant to the co-conspirator statements.  And if they did not bring it into the James hearing, then we're not going to try to see it through the -- we're not going to see the Government trying to get it in through a co-conspirator statement.

So it's a fairly contained list of statements that the Government has brought forward.  As I've listened to those, as I've read them, I have not seen anything that would not come in under the co-conspirator statement.

I guess what I would do -- I mean, ultimately, it's the Government's burden, but I think they've met their burden.  Unless the defendants bring statements to me and say, you know, just as you would in the course of trial, you'd make an objection, and that's the way you note that they haven't done it.  So it would seem to me that, probably, the Government ought to sit down, and that I ought to be quiet, and see if anybody disagrees with the conclusion that I've reached.  It's a tentative conclusion, subject to your arguments.

But I'm not sitting here seeing in the box that we've taken in James over several days, and now over several weeks -- so if the defendants want to challenge some and have me relook at them, and think of them in general, and have the Government argue in specific, I'm game.

But, otherwise, the box we have put the Government in in these particular statements, I'm not seeing why they shouldn't come in under co-conspirator.  They seem to meet all three prongs.

Mr. Castellano, unless you have something else you want to do, we might see if the defendants want to pick up some individual statements.

Dec. 20 Tr. at 159:17-161:16 (Court).

The United States agreed to the Court's proposed methodology, with one caveat:

- 53 -

> I just want to add one statement that came out of Billy Cordova's testimony [in a separate pretrial hearing].  He was talking to Daniel Sanchez through the door.  Daniel Sanchez told Billy Cordova, "I already hit him up," meaning he had already taken the -- taken or agreed to take the shanks from Mr. Perez' walker. I think that would clearly fall within James.

Dec. 20 Tr. at 161:18-24 (Castellano).   The Court indicated that it agreed that Sanchez'

statement, as related by Cordova, qualified as a co-conspirator statement under rule 801(d)(2)(E).

See Dec 20 Tr. at 161:25-165:5 (Court).

At Baca's prompting, the Court elaborated regarding its initial impression:

> THE COURT: Well, there [are] two conspiracies that the Government is proposing.  One on the Molina murder and then the other on the threats on Marcantel.  And so those are the two conspiracies.  So we've taken those separately.  It seems to me that being precise, I think that those two conspiracies exist.  And that, therefore, in the box that we did of each one, it seemed to me, listening carefully, I didn't see that -- it seemed to me that they had established by a preponderance of the evidence conspiracies on both those boxes.  So a little bit more precise.  That's what I meant.

> MR. LOWRY: Thank you, Your Honor.  Because I just want to make sure if I understood the Court's perspective.  I guess, for lack of a better term, there have been two separate conspiracies that may have overlapped at certain places with the players.

> THE COURT: They may have.  Although, the way the Government has presented it, I think, has been that they are separate conspiracies.  They all go to trying to advance the cause of the enterprise.  But I think the way they've tried it, they mounted the burden of them being separate conspiracies, unless Mr. Castellano tells me something different or I missed something.

Dec. 20 Tr. at 162:25-163:25 (Court, Lowry).

Baca then "dr[e]w the Court's attention to the [transcript of the] recorded conversations

with Mr. Perez that took place years after the homicide."  Dec. 20 Tr. at 164:10-12.[10]  Baca

asserted that the transcript contains statements that Perez, in the transcript, attributes to Baca.

See Dec. 20 Tr. at 165:12-15 (Lowry).  The United States then noted an example attributed

---

[10]The transcript of these recordings are in the record as Government's James Hearing Exhibit 16.  See Dec. 20 Tr. at 165:4-6 (Lowry).

statement:

> One discussion we were having outside before the hearing was, at the bottom of [Bates number] 20531 there is an example of Rudy Perez, a couple of years after the murder, recounting the conversation during the time of the conspiracy. So what he describes is people coming in to him, and they tell him, "Look, Big Dog, something has to be taken care of. But we need squina. You don't have to do nothing, you don't have to do nada." And this is the discussion where they're saying: You don't need to do anything else other than provide your walker for the shanks.

Dec. 20 Tr. at 167:8-18 (Castellano). Baca expressed indifference regarding that statement, because it does not involve Baca. See Dec. 20 Tr. at 168:19-24 (Lowry). Baca provided an alternative example:

> MR. LOWRY: Absolutely, Your Honor. And you can see it right here, where this is Mr. Perez, and he's saying, quote, The old man was pissed bro, he was like, he was upset with them the other fools over there, why didn't they handle it a year sooner when they took the paperwork over there? Well you send paperwork up there."

> [THE COURT:] Well, it would seem to me -- assuming "Old man" refers to Mr. Baca, which I think it does -- his complaints to Mr. Perez, another member of the conspiracy, as has been proved by the Government, and Molina would be in furtherance. I mean, that's what people do when they're in a conspiracy. They complain to members of the group. And the reason you complain is to try to make the group better, or advance your purposes. So it seems to me that that would be classic co-conspirator exception material.

> MR. LOWRY: Well, I'm having a hard time -- if this complaint can be attributed to Mr. Baca, it's a complaint about after the fact, after the objective of the alleged conspiracy has been completed.

Dec. 20 Tr. at 177:2-22 (Lowry, Court). The United States expressed some uncertainty regarding the timing of the statement that Perez attributed to Baca, because "we're not quite sure of the timeframe," but added that, "even if it were to fall out of a James statement, I think we would be falling into Smalls' statements as a statement against interests." Dec. 20 Tr. at 177:17-20, 178:4-6 (Castellano).

Sanchez identified a statement that Molina made while he was being stabbed, and argued

that Molina's statement was not a coconspirator statement, see Dec. 20 Tr. at 200:12-15 (Jacks),

and the United States agreed, see Dec. 20 Tr. at 200:23-24 (Castellano).  The Court accepted that

such a statement would not be admissible for its truth under rule 801(d)(2)(E), but it predicted

that such a statement would probably constitute admissible hearsay.  See Dec. 20 Tr. at 201:5-12

(Court).  Sanchez also argued that "statements or puffery about prison politics" do not qualify as

coconspirator statements, see Dec. 20 Tr. at 201:20-202:3 (Jacks), and the United States again

agreed that such statements would not be coconspirator statements, but it argued that such

statements would be admissible under rule 801(d)(2)(A), see Dec. 20 Tr. at 203:19-204:25

(Court, Castellano).  Sanchez admitted that such statements would be admissible against the

declarant, but added that the potential for unfair prejudice raises rule 403 concerns.  See Dec. 20

Tr. at 205:3-10 (Jacks).

The United States later clarified that, for rule 801(d)(2)(E) purposes, there are four

relevant conspiracies:

> One is the conspiracy to murder Javier Molina.  The next is the conspiracy to
> assault Julian Romero.  That's one we don't discuss very much, but Mr. Baca is
> the only remaining defendant in that count.  There is a conspiracy there.  And then
> a conspiracy to murder Dwayne Santistevan.  And a conspiracy to murder Gregg
> Marcantel.  I've generally spoken about Santistevan and Marcantel together, but
> they are two conspiracies.

Dec. 20 Tr. at 215:18-216:1 (Castellano).  The United States commented on the temporal

relationship between the first two conspiracies:

> [W]hen the SNM was locked down following the Molina murder, eventually they
> decided to lift the lockdown.  And within hours, another person was assaulted,
> and that was Julian Romero.  And that resulted in the SNM being locked down
> once again.  And that is covered in one of the plea agreements I referenced earlier.

Dec. 20 Tr. at 216:7-12 (Castellano).  The United States identified several statements that were

made in furtherance of the Molina murder:

> I believe one we introduced at the hearing, at least as related to Lupe Urquizo, is

that "Anthony Ray Baca told Mr. Urquizo to let the shot callers at Southern know
that Baca wanted Javier Molina hit."   The next statement was that, "Baca told
Urquizo to make sure the guys running Southern took care of Molina."   The next
statement is that, "Baca told Urquizo if you guys down there don't handle it, then
just stab him," referring to Molina -- I'm sorry, that's Molina -- I apologize, those
are related to Mr. Molina.

Dec. 20 Tr. at 218:6-18 (Castellano).

According to the United States, the conspirators in the "Julian Romero assault" include

"Gerald Archuleta, Conrad Villegas, and Mr. Baca, among others."   Dec. 20 Tr. at 216:17, 21-22

(Castellano).   The United States then provided background information about the Romero assault

and identified statements that, it contends, were made during and in furtherance of that

conspiracy:

So in terms of background, one of the things that causes some divides in
the gang were that -- maybe as far as 2003 -- Gerald Archuleta was in prison, if I
recall correctly.   He allowed Julian Romero to stay at his house.   And he ended up
sleeping with Gerald Archuleta's wife, or girlfriend.   So, from that time forward,
there was an ongoing conspiracy to murder Mr. Romero.   And in 2003, he was
actually shot as part of that conspiracy.   And the conspiracy remained outstanding
up until the time he was assaulted.   And that's referenced on pages 4 and 5 of
Gerald Archuleta's plea agreement.

. . . .

The two statements we have from Mr. Urquizo are that "Mr. Urquizo and
Jonathan Gomez told Conrad Villegas to hit Julian Romero."   And the next one
was that, "Anthony Baca sent down word to Southern that Romero should be beat
but not stabbed or killed."   And ultimately that's what happened.   Those are at
least two of the statements I can find right offhand that we introduced related to
the Julian Romero beating or assault.

Dec. 20 Tr. at 217:17-219:1 (Castellano).   The United States indicated, however, that Urquizo

will testify at trial regarding the substance of the first statement -- that Urquizo and Gomez

instructed Villegas to assault Romero -- so, according to the United States, there will be no need

at trial to introduce an out-of-court statement for its truth on that point.   See Dec. 20 Tr. 221:5-11

(Court, Castellano).   The United States clarified that the second statement "would be Mr.

- 57 -

Urquizo telling the jury that Mr. Gomez told him that Mr. Baca only wanted the victim smashed

or beat up, but not stabbed or killed." Dec. 20 Tr. at 229:14-17 (Castellano).

The Court then articulated its findings regarding statements in furtherance of the Romero

conspiracy:

> I think specifically as to Romero, I'm going to find that there is, by a preponderance of the evidence, evidence that a conspiracy existed. I don't think that there is much dispute on that. The question is whether or not Mr. Baca was a part of it, being a declarant.
>
> And I think finding by a preponderance of the evidence there is evidence that -- quite a bit that we've heard and I've read -- that he is the leader, or at least at one time was acknowledged as the leader of the SNM Gang; that his orders were sent down and carried out. There may be times when he didn't, when they weren't carried out. But I don't think that that's the element of the hearsay exception. And I do think this was in furtherance of the conspiracy, how it would be taken care of, limitations on it. I think those were part. So I do think these statements in the Romero box, the conspiracy, do satisfy the hearsay exception. And so I will admit them.

Dec. 20 Tr. at 241:15-242:9 (Court). The Court also articulated general findings:

> Let me now say for all four conspiracies -- because I do want to take what Ms. Sirignano said seriously -- for all four conspiracies I am finding that the statements that have been identified in the four conspiracies by the Government do come within the hearsay exception. I do think that they -- the Government has established the four conspiracies. I think they have satisfied the members of it and the declarants are members of that conspiracy, and that the statements were made in furtherance of the conspiracy.
>
> We have, this afternoon, identified a few statements that either lacked dates and specificity, that I will not rely on the hearsay exception for co-conspirators. And for those that we identified this afternoon, I will be relying upon either present sense for Mr. Molina's stabbing, or statements against interests, or the person is testifying, the first declarant is testifying. But I will not be for those that we identified and found alternatives for. Those will be coming in, but they'll be coming a different way.
>
> With one caveat -- and I now want to ask the Government to help me because this was some stuff we covered this summer, and I want to make sure that I have a firm basis for what I've just said as far as the statement against interests. Let me -- Mr. Castellano, take again the Mr. Perez and Mr. Cordova statements. I'm not concerned about a Bruton problem, I'm not concerned about particularly a Smalls or testimonial or Crawford issue, so I'm putting those aside. But I'll come

back and reference them.  But that's not my concern.  But take Mr. Perez, for example, his statements to Cordova.  I've said that the statements that are being made in Mr. Perez' statements are -- come within the co-conspirator exception with some statements we identified this afternoon that we'll not be relying on.  But all the others I will rely on.  But I want to go back to Mr. Perez' statements.  You and I, in our discussions earlier -- and no defendant disputed this -- we were relying upon the fact that Mr. Perez was a party opponent.  I think Smalls deals with the Crawford-Bruton problem, so there is no constitutional problems.  But I'm looking for the hearsay exception that gets the statements of Mr. Perez on the tape to be used against other people. . . .  [P]resumably, the United States will want to use the Perez recording against Mr. Perez, which I think is quite all right. . . .

But it is only nonhearsay against Mr. Perez.  It seems to me that something has to be done to make it nonhearsay against others, or is this a situation where we have to give a limiting instruction?  Again, it's not a Bruton problem or Crawford problem or testimonial problem to say that the jury cannot consider the statements of Mr. Perez against any other party.

Dec. 20 Tr. at 242:10-245:8 (Court).  The United States replied that Perez' statements could be admitted for their truth against all of the Defendants as a statement against interest under rule 804(b)(3).  See Dec. 20 Tr. at 248:3-10 (Castellano).

### 6.    **The Response.**

The United States responds to the Perez MIL, the C. Garcia MIL, and the Baca MIL in a single document.  See United States' Response to Defendant Ruby Perez's Motion to Exclude Statement of Cooperating Government Witnesses [1514], Defendant Chris Garcia's Motion to Exclude Co-Defendant's Statements [1517], and Defendant Anthony Ray Baca's Motion to Prohibit the Government from Questioning Jerry Armenta About Anthony Ray Baca's Involvement in Counts 6 & 7 [1540], filed December 26, 2017 (Doc. 1596)("Response").  The United States argues that the Confrontation Clause does not bar the introduction of out-of-court codefendant statements so long as those statements are not testimonial.  See Response at 2-3.  The United States then asserts that the statements which Perez, C. Garcia, and Baca identify "were not made to be used for investigation or prosecution of a crime," so there "simply is no

sound basis in the facts to conclude that the primary purpose of the statements was to 'establish or prove past events potentially relevant to later criminal prosecution.'"   Response at 5-6 (quoting United States v. Smalls, 506 F.3d 765, 777 (10th Cir. 2010)).

Additionally, the United States argues that "Sanchez's statement to Martinez that Sanchez received the shanks from Perez, and Rodriguez's statements to Montoya that the shanks came from Perez's walker" are admissible under rule 801(d)(2)(E).  Response at 6.  The United States argues that Perez was a coconspirator viz. Sanchez and Rodriguez, "[b]ecause Perez did, in fact, volunteer his walker to Sanchez to be put into shanks," and because Perez is "a long-time member of the SNM in good standing."  Response at 6.  The United States also argues that Sanchez' and Rodriguez' statements were made in furtherance of the conspiracy, because "the knowledge that Perez's walker, as opposed to other shanks lying around . . . helped the coconspirators avoid detection and prosecution for their crime, [which] renders these statements in furtherance of the conspiracy."  Response at 7.  According to the United States,

> law enforcement followed the red herring that the SNM planted about the hanks used in the Molina murder coming from the wheelchair program.  Instead of following investigatory leads that would lead them to Perez's walker, and Perez's involvement in the Molina murder, they followed the rumors from all involved (and some not) about shanks coming from the SNMCF wheelchair program.  Thus, Rodriguez's statement to Montoya and Sanchez's statement to Martinez about Perez providing the shanks from his walkers helped further the conspiracy by allowing all of the Defendants to know from where the shanks came, and from where they did not, which would lead to a dead-end investigation if inquired about by law enforcement."

Response at 7.

### 7.   The Sanchez Motion in Limine.

Sanchez filed a motion in limine on January 8, 2018.  See Sanchez MIL at 23.  According to Sanchez, Michigan v. Bryant, 562 U.S. 344 (2011), and Ohio v. Clark, 135 S. Ct. 2173 (2015), which post-date United States v. Smalls, 414 F.3d 765 (10th Cir. 2010), indicate that whether a

- 60 -

particular statement is testimonial -- and therefore subject to the Confrontation Clause -- depends "on the circumstances in which the encounter between the declarant and interrogator occurs, including whether an emergency exists at the time of the encounter, and the statements and actions of **both the declarant and interrogator**," whereas "the *Smalls* inquiry only focuses on the statements and actions of the declarant."   Sanchez MIL at 9 (emphasis in original).   Sanchez argues that, under Michigan v. Bryant and Ohio v. Clark, Perez' statements to Antonio Palomares, a New Mexico State Police Sergeant, and James Mulheron, the SNMCF Deputy Warden, during the Molina murder investigation are testimonial.  See Sanchez MIL at 3-4, 9-10. Sanchez also argues that Perez' in-prison statements to Cordova, a confidential human source, and Baca's, C. Garcia's, and others' in-prison statements to Duran, also a confidential human source, are testimonial, because, according to Sanchez, Cordova and Duran are government agents, and used psychological interrogation tactics to obtain out-of-court statements to be used at trial.  See Sanchez MIL at 10-12.

Sanchez asserts that the statements which Perez made to Cordova were not made during and in furtherance of the conspiracy to kill Molin -- charged in the Indictment's Count 6 -- because Perez made those statements over a year after Molina's death.  See Sanchez MIL at 13-14.  Sanchez also asserts that Perez' statements to Cordova were not against Perez' penal interest, because Perez testified that he made those statements "to allay concerns that he was informing about the crime," so "a reasonable person in Perez's position may have made the statements even if they were not true," Sanchez MIL at 14-15, and because some of Perez' statements deflect or reduce his culpability, see Sanchez MIL at 14-15.  Sanchez contends that statements in furtherance of the Counts 8-10 conspiracies would be inadmissible hearsay as against him -- even if those statements are relevant -- because he is not a Counts 8-10

- 61 -

conspirator.  See Sanchez MIL at 16-17.  Sanchez concludes by arguing:

> It is a mind-boggling exercise to envision the type and number of limiting instructions needed to even attempt to protect each defendant's Due Process right not to be convicted on inadmissible evidence; and an even more impossible task for the jury to try to properly apply any such instructions.  The only adequate protection to the defendant's individual rights to Due Process as guaranteed by the Fifth Amendment is to either wholly exclude any hearsay statements that are inadmissible against any of the five trial defendants or to grant a severance of Counts.

Sanchez MIL at 21.

## 8.    The January 9, 2018 Hearing.

On January 9, 2018, Sanchez argued that Supreme Court of the United States of America precedent that post-dates United States v. Smalls implicitly overrules the United States Court of Appeals for the Tenth Circuit's decision in that case.  See Jan. 9 Tr. at 156:13-157:18 (Jacks).  According to Sanchez, Michigan v. Bryant repudiates United States v. Smalls' narrow focus on the declarant's primary purpose when determining whether an out-of-court statement is testimonial for Confrontation Clause purposes.  See Jan. 9 Tr. at 156:13-157:18 (Jacks).  It follows, again according to Sanchez, the Confrontation Clause inquiry regarding statements that Perez made and Billy Cordova recorded should consider "that Billy Cordova went in there to the prison and made comments to Mr. Perez, as a government agent, in an effort to gather evidence for a criminal prosecution."  Jan. 9 at 158:21-24 (Jacks).  Further, in an effort to distinguish United States v. Smalls, Sanchez contended, regarding Perez' resulting statements, that "you can[not] classify those remarks as an unwitting statement to a fellow inmate," because "they were the product of that custodial interrogation, along with, I think, other circumstances, such as the fact that he was in isolation, he was unable to go to recreation, and he was on heavy doses of narcotic painkillers."  Jan. 9 Tr. at 159:19-160:3 (Jacks).

On the same day, Perez argued that Sanchez' out-of-court statement to T. Martinez

regarding the source of the Molina murder weapon -- "it came from Fat Ass' or Fatso's walker. What else is he going to do?," Jan. 9 Tr. at 177:22-23 (Villa) -- was not made in furtherance of the conspiracy to kill Molina, see Jan. 9 Tr. at 178:8-13 (Villa). The United States replied "that's a statement by a party opponent as it relates to Daniel Sanchez. But it's also a statement in furtherance of the conspiracy, because it identifies another member of the conspiracy was Mr. Perez." Jan. 9 Tr. at 182:4-8 (Castellano).

### 9.    The Severance Motion.

About a week before trial, Perez moved to sever the trial of Counts 6-7 from Counts 8-12. See Severance Motion at 1. Perez argues that a "plethora of co-conspirator statements that will be offered by the government in its attempt to prove Counts 8-12 are not admissible against Defendants Sanchez, Herrera or Perez." Severance Motion at 2. According to Perez, "the only way to prevent the reversible error that will otherwise surely occur is to sever Counts 6 and 7 from Counts 8 through 12." Severance Motion at 3.

### 10.    The Sanchez Memo.

Sanchez filed an additional memorandum in support of the Sanchez MIL. See Defendant Daniel Sanchez's Supplemental Memorandum and Argument in Support of his Motion in Limine to Preclude the Admission of Un-Confronted, Out of Court Statements (Doc. 1616) at 2, filed January 22, 2018 (Doc. 1665)("Sanchez Memo"). Sanchez argues that a "serious and fundamental denial of due process . . . will result if un-confronted out of court statements of Mr. Sanchez's Count 6-7 co-defendants are admitted at *any joint trial*, whether it be at a trial of Counts 6-12, or at an independent trial of Counts 6-7 only." Sanchez Memo at 2 (emphasis in original). Sanchez pays particular attention to "statements of codefendants Rudy Perez and Carlos Herrera to government informants Billy Cordova and Gerald Archuleta in February of

- 63 -

2016." Sanchez Memo at 3.[11]  According to Sanchez, admitting those statements at a joint trial and instructing the jury to use them only against the declarant -- either Perez or Herrera, depending on the statement -- would be futile "to cure the insult to Mr. Sanchez's constitutional right to due process of law caused by admission of these inadmissible statements at a joint trial." Sanchez Memo at 3-4.

### 11.    The January 28, 2018 Letters.

On the eve of trial, the United States filed a pair of letters.  See Letter Disclosing Co-Conspirator (James) Statements, filed January 28, 2018 (Doc. 1715)("James Letter); Letter Disclosing Non-Co-Conspirator Statements, filed January 28, 2018 (Doc. 1716)("Non-James Letter").  The James Letter discloses "co-conspirator (James) statements that we received from likely testifying witnesses in our pretrial preparations over the past weeks."  James Letter at 1. The Non-James Letter discloses "statements (admissions) that we received from likely testifying witnesses in our pretrial preparations over the last weeks."  Non-James Letter at 1.  The James Letter identifies several out-of-court statements that the United States may attempt to present to the jury via the testimony of several witnesses:

---

[11]Sanchez asserts that portions of these recordings and the associated transcripts are listed as Exhibits 175-216 on the United States' list of trial exhibits.  See Sanchez Memo at 3 n.2.  See also United States' Exhibit List at 30-37, filed January 12, 2018 (Doc. 1637)("Government Exhibit List")(listing recordings and transcripts of Perez statements obtained by Cordova as Exhibits 175-190, recordings and transcripts of Herrera statements obtained by Cordova as Exhibits 191-204, and recordings and transcripts of Herrera statements obtained by Archuletta as Exhibits 205-216).  The Sanchez Memo refers to the statements identified on the Government Exhibit List as "portions" of a "custodial interrogation of defendant Perez" or of a "custodial interrogation of defendant Herrera."  Sanchez Memo at 3 n.2.  Other than those passing references to custodial interrogation, the Court does not read the Sanchez Memo to argue that Perez' and Herrera's statements were obtained by violating Perez' or Herrera's rights under Miranda v. Arizona, 384 U.S. 436 (1966), and the Court notes that such an argument would fail, because, although Perez and Herrera made statements while in custody, i.e., while behind bars, "service of a term of imprisonment, without more, is not enough to constitute Miranda custody." Howes v. Fields, 565 U.S. 499, 512 (2012)(Alito, J.).

**Mario Rodriguez**:

Carlos Herrera gave him the paperwork.  Daniel Sanchez wanted to wait, but Herrera said, "just get it done."  Herrera was worried about someone dropping a "kite" and then it wouldn't be done.

Sanchez said he would figure out the weapons, and told Herrera it would happen after quenta.

Rodriguez overheard Sanchez tell Herrera in yellow pod after the Molina murder, "how do you like that baby?"

Someone yelled back, "fuck ya."

**Timothy Martinez:**

. . . .

Anthony Ray Baca tells Martinez in October, 2015:

I sent them letter, [sic] they didn't want to take me seriously when I said would stop killings: thought I was joking.  Now they have a body on their hands.  From now on, we will make our presence felt, the way it once was . . . .  Got some stuff lined up for Marcantel and Santistevan. . . .  About to make some big power moves, Molina was just the beginning to show our power.  Wouldn't mind getting a couple of wardens: going for the top.  Need to hit someone from the top.  All they can do is send us out of state: what will they do?  We will come back and have the respect we once day.  Take us more serious now.  Tells him about the State case: stay solid, stay good: we know he is working, he have someone working on his family.  You got this.  It's our new beginning.

**Lupe Urquizo:**

Lupe Urquizo and Baby G told Conrad Villegas to get Julian Romero because of the pending hit called by Styx approximately 10 years prior.  Romero had messed up with Styx and was "no good."  Pete Miranda and "Whacky" David LNU, were also tasked with participating in the assault.  Urquizo, Mario Rodriguez, Carlos Herrera, and David Calbert were on the tabla at the time and Baby Rob was the leader.  Anthony Ray Baca had sent word to Baby G to take care of the hit.  Baby G told Urquizo that the order came from Baca.  The two agreed to pursue it, as they both wanted to move up in the SNM ranks.  They picked Villegas because he was housed close to Romero and would have the opportunity.

. . . .

- 65 -

**Jerry Montoya:**

A few weeks before the Javier Molina murder, Daniel Sanchez and Jerry Montoya discussed that Sanchez wanted to send a "clear message" that the SNM will kill snitches.  Sanchez told Montoya that he's "fucking sick and tired of people coming into the unit and PCing[12] and going to the line." Sanchez wanted SNM to look strong.  Sanchez wanted to send that clear message through violence. Montoya understood that to mean that the SNM would "pick up arms and stab" snitches.

On the day of the Molina murder, Montoya went into the common area and Sanchez nodded his head, which Montoya understood to mean that Sanchez was instructing Montoya to go upstairs to Molina's floor of the pod.

When Mario Rodriguez told Montoya to stab Molina, Rodriguez told Montoya that Rodriguez would take Montoya's shank after the murder.

When Montoya comes out of the room following Molina after stabbing Molina, Mario Rodriguez says: "Get 'em, get 'em."

After the Molina murder, Montoya sent a letter to Anthony Ray Baca that "he was not pleased" with Sanchez's actions.

**Javier Rubio:**

On the day of the Molina murder, Javier Rubio was the leader of the third SNM pod -- not Blue or Yellow pod.  Before Molina was murdered, Juan Mendez told Javier Rubio that paperwork on Molina had come down from PNM.  Mendez told Rubio that Mendez, Alex Muñoz, and Carlos Herrera made the decision to murder Molina.   Mendez told Rubio that the paperwork had come from Anthony Ray Baca, to David Calbert, to Lupe Urquizo. Mendez said that Mendez, Muñoz, and Herrera told Daniel Sanchez "to handle it."

. . .

**Jerry Armenta:**

Jerry Armenta ove[r]heard Mario Rodriguez say, "You got it?" and "It's probably in your property" when he was at the door between blue and yellow pods.

Rodriguez previously told Armenta to give his shank to Daniel Sanchez when he was done with it.

---

[12]"PCing" is a prison-slang term for going into protective custody.

When Armenta tried giving his shank to Sanchez, Sanchez told him to throw it in the trash can.

Armenta asked Rodriguez about covering the cameras before the murder. Rodriguez told Armenta that Sanchez said not to cover the cameras.

After the Molina murder, Carolos Herrera told Armenta that Sanchez called the hit.

Herrera also told Armenta after the murder that Herrera also called the hit because Armenta and Montoya had not earned their bones yet

### Roy Martinez:

Roy Martinez filed a lawsuit against New Mexico Corrections Department because he was locked down in a strip cell without a hearing.  Martinez spoke to Eric Duran and Anthony Ray Baca about the murder of [Gregg Marcantel, Dwayne Santistevan, or both].

### Billy Cordova:

Anthony Ray Baca told Billy Cordova in 2013 that he wanted Molina hit.

Carlos Herrera admitted to Cordova that he was on the tabla.

When the Molina paperwork arrived to SNMCF in 2014, Herrera told Cordova "They want this done.  I'm gonna push the issue."

Either March 6 or 7, 2014, Daniel Sanchez asked Cordova for a "fierro," but Cordova did not give him one.  Afterwards, Sanchez told Cordova he was getting shanks from "Fat Ass."

When asked by Herrera, Cordova agreed with Herrera that Molina should be hit.

Cordova agreed that an SNM member should be hit when such circumstances are supported by cause.

### Jake Armijo:

Christopher Garcia asked Jake Armijo about Mandel Parker. Christopher Garcia told Armijo that he was on a mission for Anthony Ray Baca to hit Gregg Marcantel.  Christopher Garcia told Armijo that Mandel Parker was supposed to help take care of Marcantel.  Christopher Garcia told Armijo that he was also in contact with Mario Montoya about the Marcantel hit.

Baby G. told Armijo to hit Molina on Baca's orders.  This happened sometime before Armijo left prison in 2012.

- 67 -

<u>James</u> Letter 2-5.  The Non-<u>James</u> Letter also identified several out-of-court statements that the

United States may attempt to present to the jury via the testimony of several witnesses:

**Mario Rodriguez:**

As Javier Molina was rushing out of his cell after having been stabbed, Molina told Rodriguez: "I am already done Carnal."

**Timothy Martinez:** . . .

In 2012, Javier Molina and Timothy Martinez discussed what would happen if SNM members ever came to kill Molina.  Molina said: One of these days, they might put you in a position to kill one of your friends. You might have to kill me.

**Lupe Urquizo:**

Lupe Urquizo spoke to Rudy Perez on the transport to PNM after the Molina homicide.  Perez said he believed he was going to be charged in the homicide because he gave up a piece of his walker for the shanks.

Right after the Molina murder, Carlos Herrera went to Urquizo's door, told him that Molina had gotten hit, and said "that fucker looks dead."

**David Calbert:**

Rudy Perez and David Calbert talked about the Molina murder at the Torrence County/Estancia jail.  Perez told Calbert that he gave up a piece of his walker for the Molina Murder. Perez said that he wanted to credit; he put in work.

**Jerry Montoya:**

A few weeks before the Javier Molina murder, Daniel Sanchez and Jerry Montoya discussed that Sanchez wanted to send a "clear message" that the SNM will kill snitches.  Sanchez also told Montoya about people who needed to be hit.

In the Torrence County/Estancia jail, Rudy Perez admitted to Montoya that he provided the shanks for Molina's murder.  Perez told Montoya that Sanchez and Rodriguez needed "metal."  Perez told Montoya that he said, if you need my walker, have at it.  Montoya understood Perez to indicate that he was obliged to put in work.

Before the Molina murder, Anthony Ray Baca and Montoya discussed Montoya becoming a treasurer for SNM.  Baca told Montoya that he wanted Montoya on the streets.  Baca wanted Montoya to sell "dope" for

DNM 941

the SNM. Baca told Montoya that he wanted Montoya to get together with other "carnals" on the streets to sell "dope." Baca told Montoya that he wanted Montoya to collect money on the streets for drugs, to build up a money supply. Baca told Montoya that they would later send that money into the prisons. Later, Baca met with other SNM members, including Daniel Sanchez, in the "yard," to tell the other SNM members that he did not want "Silly," Chris Trujillo, or Montoya, to put in work, because he wanted them released.

Sometime after this meeting in the yard, Sanchez told Montoya that he was going to do everything in his power to get Montoya home.

Montoya heard Baca had a conversation with prison officials about improving living conditions for the SNM at SNMCF, including allowing TVs and other improvements.

Approximately a week or less before the Molina murder, Montoya heard Carlos Herrera "politicking" for Molina to be hit by "Drama," FNU LNU.

**Javier Rubio:**

When Anthony Ray Baca arrived at SNMCF in approximately 2008, Baca met with SNM members and discussed placing a leader in each pod. Baca allowed the pod members to vote for the leaders; Javier Rubio was present and was voted a leader. Baca wrote a list of rules for the SNM. Baca provided that list to Rubio and the other pod leaders, to copy for their own list to instruct new SNM members. Rubio took the list from Baca in the pod, copied it down in his cell, and returned it to Baca after he copied it. The list included SNM rules and consequences.

Rubio confronted Baca in 2012 or 2013 about issues Rubio had with Baca's leadership. Rubio told Baca that he needed to lead by example. Baca agreed in response to Rubio.

Rubio and Baca had a discussion in Green Pod sometime before the Molina murder. Baca asked Rubio if Rubio wanted to hit him. Baca asked Rubio if Rubio wanted to take SNM's position.

Sometime after the Molina murder, but before 2017, Alex Muñoz and Juan Mendez told Rubio that Baca put a "green light" on Rubio.

In July or August 2013, Jesse Sedillo brought the Molina paperwork to Rubio and asked Rubio what to do with it. Rubio said to stay out of it. Rubio said to not show the paperwork to anyone. Sedillo told Rubio that "Little Cruces", Frankie Telles, brought the paperwork down from P.N.M. North.

After the Molina murder, in the cages in the recreation yard, Carlos

Herrera told Rubio that he, Juan Mendez, and Alex Muñoz called the hit without Rubio.

**Gerald Archuleta:**

Gerald Archuleta received calls confirming the hit on Julian Romero afterwards, from Carlos Herrera, Lupe Urquizo, and Christopher Garcia.

**Billy Cordova:**

Carlos Herrera admitted to Billy Cordova that he was on the tabla.

**Julian Romero**

After Shane Dix shot Christopher Garcia, Christopher Garcia told Julian Romero that he wanted Shane Dix dead. Christopher Garcia attempted to hire Romero to kill Dix.

Non-James Letter at 1-4.

## LAW REGARDING HEARSAY

"Hearsay testimony is generally inadmissible." United States v. Christy, 2011 WL 5223024, at *5 (D.N.M. 2011)(Browning, J.)(citing Fed. R. Evid. 802). Under rule 801(c) of the Federal Rules of Evidence, "hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay bars a party from presenting its own statements, such as "a defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination." United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999)(Carnes, J.). A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted, including impeaching a witness. See United States v. Caraway, 534 F.3d 1290, 1299 (10th Cir. 2008)(Hartz, J.)("We have already explained why the content of the statement, if used substantively, would be inadmissible hearsay. If admitted for impeachment purposes, however, it is not hearsay."). Rule 805 of the Federal Rules of Evidence recognizes that "[h]earsay within

- 70 -

hearsay" -- commonly referred to as double hearsay -- may be admissible "if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805.

     1.     **Rule 801(d)(2).**

A statement is not hearsay, even if it is offered for its truth, if it is offered against an opposing party and it:

> **(A)** was made by the party in an individual or representative capacity;
>
> **(B)** is one the party manifested that it adopted or believed to be true;
>
> **(C)** was made by a person whom the party authorized to make a statement on the subject;
>
> **(D)** was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
>
> **(E)** was made by the party's coconspirator during and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2). The Tenth Circuit has stated:

> Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule. No guarantee of trustworthiness is required in the case of an admission. The freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstance, and from restrictive influences of the opinion rule and the rule requiring first-hand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for a generous treatment of this avenue of admissibility.

Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 667 (10th Cir. 2006)(Seymour, J.)(internal quotation marks and alterations omitted).[13]

---

    [13]The 2011 restyling of the Federal Rules removed "admissions" from the language of rule 801(d) of the Federal Rules of Evidence, and uses instead the term "statements." Fed. R. Evid. 801(d). This replacement was purposeful: "The term 'admissions' is confusing because not all statements covered by the exclusion are admissions in the colloquial sense -- a statement can be within the exclusion even if it 'admitted' nothing and was not against the party's interest when made." Fed. R. Evid. 801, advisory committee's note on 2011 Amendments.

DNM 944

2.      **Rule 803(1).**

Rule 803(1) provides an exception to the rule against hearsay for "[a] statement describing an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1).   "By its own terms, application of Rule 803(1) has three distinct requirements: i) the statement must describe or explain the event perceived; ii) the declarant must have in fact perceived the event described; and iii) the description must be 'substantially contemporaneous' with the event in question."   United States v. Mejia-Valez, 855 F. Supp. 607, 613 (E.D.N.Y. 1994).   "The present sense impression exception applies only to reports of what the declarant has actually observed through the senses, not to what the declarant merely conjectures."   Brown v. Keane, 355 F.3d 82, 89 (2d Cir. 2004).   "The underlying rationale of the present sense impression exception is that substantial contemporaneity of event and statement minimizes unreliability due to defective recollection or conscious fabrication."   United States v. Hawkins, 59 F.3d 723, 730 (8th Cir. 1995) cert. granted, judgment vacated on other grounds, 516 U.S. 1168 (1996).   "The admissibility of spontaneous utterances -- one ground relied on by the state trial court -- was recognized by the Supreme Court over a century ago in Insurance Co. v. Mosley, 75 U.S. (8 Wall.) 397, 406-07 . . . (1869)."   Martinez v. Sullivan, 881 F.2d 921, 928 (10th Cir. 1989).

3.      **Rule 803(2).**

Rule 803(2), commonly referred to as the excited utterance exception, provides an

---

Although the advisory committee made the commentary quoted in the text regarding the trustworthiness of "admissions by a party-opponent" before the 2011 amendments to the Federal Rules of Evidence, the analysis should not be different under the new 2011 restyling of the rules. Because the advisory committee's purpose for the 2011 restyling was to make the rules "more easily understood and to make style and terminology consistent through the rules," and there was no "intent to change any result in any ruling on evidence admissibility," the analysis applied before 2011 remains useful for cases after the restyling.  Fed. R. Evid. 801.

exception to the exclusion of hearsay statements for "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). The United States Court of Appeals for the District of Columbia has noted that "[t]he rationale underlying the 'excited utterance' exception is that 'excitement suspends the declarant's powers of reflection and fabrication, consequently minimizing the possibility that the utterance will be influenced by self interest and therefore rendered unreliable.'" United States v. Alexander, 331 F.3d 116, 122 (D.D.C. 2003)(quoting United States v. Brown, 254 F.3d 454, 458 (3d Cir. 2001)). "Thus, to qualify as an excited utterance, the declarant's state of mind at the time that the statement was made must preclude conscious reflection on the subject of the statement." United States v. Alexander, 331 F.3d at 122 (quoting United States v. Joy, 192 F.3d 761, 766 (7th Cir. 1999))(internal quotations and changes omitted). The Tenth Circuit, in United States v. Smith, 606 F.3d 1270 (10th Cir. 2010), set forth a district court's required analysis for whether a statement is admissible under the excited-utterance exception:

> The so-called excited-utterance exception has three requirements: (1) a startling event; (2) the statement was made while the declarant was under the stress of the event's excitement; and (3) a nexus between the content of the statement and the event. [T]here is no precise amount of time between the event and the statement beyond which the statement cannot qualify as an excited utterance. Admissibility hinges on a statement's contemporaneousness with the excitement a startling event causes, not the event itself. There is no hard time limit that must be met under Rule 803; what is relevant is whether the declarant is still under the excitement of the startling event.

606 F.3d at 1279 (internal citations and question marks omitted). The Tenth Circuit has noted:

> Courts consider a range of factors in determining whether a declarant made a statement while under the stress of a particular event. Among the more relevant factors are: the amount of time between the event and the statement; the nature of the event; the subject matter of the statement; the age and condition of the declarant; the presence or absence of self-interest; and whether the statement was volunteered or in response to questioning.

United States v. Pursley, 577 F.3d 1204, 1220 (10th Cir. 2009). "Permissible subject matter of

the statement is [not] limited . . . to description or explanation of the event or condition . . . .
[T]he statement need only relate to the startling event or condition, thus affording a broader
scope of subject matter coverage." United States v. Frost, 684 F.3d 963, 973 (10th Cir.
2012)(quoting Fed. R. Evid. 803 Advisory Comm. Notes). "If the trial court has access to a
recording of the declarant's statement, it may also consider the declarant's 'tone and tenor of
voice' in determining whether the declarant made that statement while under the stress of
excitement." United States v. Alexander, 331 F.3d 116, 123 (D.C. Cir. 2003)(Quoting United
States v. Woodfolk, 656 A.2d 1145, 1151 n.16 (D.C. 1995)(collecting cases)).

The United States Court of Appeals for the Second Circuit has provided an analysis of
the similarities and subtle differences between the present-sense-impression and excited-
utterance exceptions to the rule against hearsay:

> As defined by the Federal Rules of Evidence, a present sense impression is a
> statement "describing or explaining an event or condition made while the
> declarant was perceiving the event or condition, or immediately thereafter." Rule
> 803(1), Fed. R. Evid. Such statements are considered to be trustworthy because
> the contemporaneity of the event and its description limits the possibility for
> intentional deception or failure of memory. See United States v. Brewer, 36 F.3d
> 266, 272 (2d Cir. 1994).
>
> The hearsay exception for excited utterances is premised on a similar,
> though distinct, assumption that the reliability of a statement increases as
> opportunity for reflection by the declarant decreases. An "excited utterance" is
> "[a] statement relating to a startling event or condition made while the declarant
> was under the stress of excitement caused by the event or condition." Rule
> 803(2), Fed. R. Evid. As we have explained, "[t]he rationale for this hearsay
> exception is that the excitement of the event limits the declarant's capacity to
> fabricate a statement and thereby offers some guarantee of its reliability." [United
> States v. ]Tocco, 135 F.3d [] [116,] 127[ (2d Cir. 1998)]. Unlike present sense
> impressions, "[a]n excited utterance need not be contemporaneous with the
> startling event to be admissible." Id. Rather "[t]he length of time between the
> event and the utterance is only one factor to be taken into account in determining
> whether the declarant was, within the meaning of rule 803(2), 'under the stress of
> excitement caused by the event or condition.'" United States v. Scarpa, 913 F.2d
> 993, 1017 (2d Cir. 1990).
>
> . . . .

- 74 -

Thus while the hearsay exception for present sense impressions focuses on contemporaneity as the guarantor of reliability, and requires that the hearsay statement "describe or explain" the contemporaneous event or condition, Rule 803(1), Fed. R. Evid., the excited utterance exception is based on the psychological impact of the event itself, and permits admission of a broader range of hearsay statements - i.e. those that "relate to" the event.  Rule 803(2), Fed. R. Evid.

United States v. Jones, 299 F.3d 103, 112 & n.3 (2d Cir. 2002).

Many courts across the country have found it proper to admit a 911 caller's statements as a present-sense impression and/or an excited utterance.  See, e.g., United States v. Thomas, 453 F.3d 838, 841 (7th Cir. 2006)(holding that admission of a three minute and fifty-three second 911 call, in which the caller said that a man holding a handgun had shot someone outside her apartment and was still there, and in which the "emergency operator [] asked a series of questions about the facts of the situation and the caller narrated what she was seeing as it happened," was proper as either a present-sense impression or excited utterance); United States v. Hawkins, 59 F.3d at 730 (holding that the tape of the 911 emergency telephone call from the defendant's wife reporting that the defendant displayed gun to his wife during a domestic dispute was proper as a present-sense impression, because of its sufficient contemporaneity to underlying events and because of its reliability, as evidenced by the wife's detailed description of gun); United States v. Mejia-Valez, 855 F. Supp. 607, 613-15 (E.D.N.Y. 1994)(Korman, J.)(concluding that admission of two callers' 911 call tape recordings as excited utterances and present-sense impressions was proper, because the two callers were at the scene of the underlying shooting, they placed the calls moments after the shooting, and both men described the shooting's circumstances, including giving the location and the shooter's description).

4.     **Rule 803(3).**

One of these exceptions, rule 803(3), excepts from the general bar on hearsay "[a] statement of the declarant's then existing state of mind [or] emotion." Fed. R. Evid. 803(3). Rule

803(3) permits the introduction of "hearsay . . . , even though the declarant is available as a witness," for a statement of the declarant's "[t]hen existing mental, emotional, or physical condition":

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Fed. R. Evid. 803(3).

For the statement to qualify under the exception, it "must relate to the declarant's state of mind during" the incident in question.  United States v. Netschi, 511 F. App'x. 58, 61 (2d Cir. 2013)("To admit statements of one's state of mind with regard to conduct that occurred . . . earlier as in this case would significantly erode the intended breadth of this hearsay exception.")(quoting United States v. Cardascia, 951 F.2d 474, 488 (2d Cir. 1991))(internal quotations omitted).  This requirement is not to say that the statement must be said at the very moment of the incident, but for intent to be proved, it must be "contemporaneous" to the act. Mutual Life Ins. Co. of New York v. Hillmon, 145 U.S. 285, 295 (1892).   To be contemporaneous and therefore admissible under the present state of mind exception, a statement must be "part of a continuous mental process."  United States v. Cardascia, 951 F.2d 474, 488 (2d Cir. 1991).  In addition to the requirements that the statement be contemporaneous to the incident at hand and relevant to the issues of the case, it must also be established that there was no opportunity for the declarant to "fabricate or to misrepresent his thoughts." United States v. Jackson, 780 F.2d 1305, 1315 (7th Cir. 1986)(quoting United States v. Layton, 549 F. Supp. at 909).  The statements of intent must reveal information or details about the future, which has been contrasted with statements of memory, or looking back to the past.  See Shepard v. United

- 76 -

States, 290 U.S. 96, 104 (1933).  When statements entail issues of looking into the past

combined with other concerns, it can often be too confusing for a jury to extract, upsetting the

balance of advantage, and ultimately making the evidence inadmissible.  See Shepard v. United

States, 290 U.S. at 104.  "The most obvious risk of prejudice is that the jury will consider the

hearsay statement not as proof of state of mind and the subsequent conduct of the declarant, but

rather for the truth of the facts that are related in the statement."  Stephen A. Saltzburg et al., Fed.

Rules of Evidence Manual §803.02, at 4-803 (11th ed. 2017).

    5.    **Rule 804(b)(3).**

    Under rule 804(b)(3) of the Federal Rules of Evidence, an out-of-court statement is

admissible if the declarant is unavailable to testify, and the statement is "against the declarant's

proprietary, pecuniary, or penal interest."  United States v. Lozado, 776 F.3d at 1125 (citing

Williamson v. United States, 512 U.S., 594, 599-600 (1994)).  A statement against interest is one

that "a reasonable person in the declarant's position would have made only if the person believed

it to be true."  Fed. R. Evid. 804(b)(3)(A).  Moreover, the statement must be "supported by

corroborating circumstances that clearly indicate its trustworthiness."   Fed. R. Evid.

804(b)(3)(B).

    Rule 804(b)(3) embodies "'the commonsense notion that reasonable people, even

reasonable people who are not especially honest, tend not to make self-inculpatory statements

unless they believe them to be true.'"  United States v. Smalls, 605 F.3d at 780-81 (quoting

Williamson v. United States, 512 U.S. at 599).  The Tenth Circuit has said: "We may safely

surmise that from time immemorial, only on the rarest occasion, if ever, has one of sound mind --

even one of sound mind who is not particularly honest -- falsely confessed a murder to an

apparent acquaintance or friend."  United States v. Smalls, 605 F.3d at 783.  That sort of

statement is admissible, however, only to the extent that it inculpates the declarant, because "[t]he fact that a statement is self-inculpatory does make it more reliable; but the fact that a statement is collateral to a self-inculpatory statement says nothing at all about the collateral statement's reliability." Williamson v. United States, 512 U.S. at 600.

## LAW REGARDING COCONSPIRATOR STATEMENTS

The Federal Rules of Evidence define hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay evidence usually is not admissible. See Fed. R. Evid. 802. Some out-of-court statements, however, are not hearsay even when they are offered for proof of the matter asserted. See Fed. R. Evid. 801(d). Statements that are "offered against an opposing party" and were "made by the party's coconspirator during and in furtherance of the conspiracy" are not hearsay. Fed. R. Evid. 801(d)(2)(E).

To admit out-of-court statements by coconspirators under rule 801(d)(2)(E), "the United States must demonstrate by a preponderance of the evidence that: (i) a conspiracy existed; (ii) the declarant and the defendant were members of that conspiracy; and (iii) the statements that the United States seeks to admit were made during the course and in furtherance of the conspiracy." United States v. Vigil, No. CR 05-2051, 2006 WL 4109681, at *3 (D.N.M. Aug. 31, 2006)(Browning, J.)(citing United States v. Sinclair, 109 F.3d 1527, 1533 (10th Cir. 1997)). The Court may consider the statements themselves, as well as independent evidence, to determine whether the conspiracy existed. See United States v. Lopez-Gutierrez, 83 F.3d 1235, 1242 (10th Cir. 1996)("In making its preliminary factual determination as to whether a conspiracy exists, the court may consider the hearsay statement sought to be admitted, along with independent

evidence tending to establish the conspiracy."). While the statement itself "does not by itself establish . . . the existence of the conspiracy or participation in it," Fed. R. Evid. 801(d)(2), "there need only be some independent evidence linking the defendant to the conspiracy." United States v. Lopez-Gutierrez, 83 F.3d at 1242 (internal quotations and citations omitted). This "independent evidence may be sufficient even when it is not 'substantial.'" United States v. Lopez-Gutierrez, 83 F.3d at 1242 (internal citation omitted). The Tenth Circuit has noted: "We have defined independent evidence as evidence other than the proffered coconspirator statements themselves." United States v. Lopez-Gutierrez, 83 F.3d at 1242 (internal quotation marks and alterations omitted)(quoting United States v. Martinez, 825 F.2d 1451, 1451 (10th Cir. 1987)).

"[I]t is not necessary for the United States to show that proffered statements were made during the time in which [the defendant] was a member of a conspiracy." United States v. Vigil, 2006 WL 4109681, at *5 (citing United States v. U.S. Gypsum Co., 333 U.S. 364, 393 (1948))("With the conspiracy thus fully established, the declarations and acts of the various members, even though made or done prior to the adherence of some to the conspiracy, become admissible against all as declarations or acts of co-conspirators in aid of the conspiracy.")). Moreover, a newcomer to a conspiracy assumes the risk for what has already happened in the course of the conspiracy. See United States v. Brown, 943 F.2d 1246, 1255 (10th Cir. 1991)("The fact that appellant may have joined the conspiracy after its inception does not make his co-conspirators' previous statements inadmissible."); United States v. Adamo, 882 F.2d 1218, 1230-31 (7th Cir. 1989)(holding one who joins and participates in a conspiracy "adopt[s] the previous acts and declarations of his fellow co-conspirators").

In determining the admissibility of coconspirator statements, "[t]he strongly preferred order of proof" is for the district court to hold a hearing "outside the presence of the jury to

determine by a preponderance of the evidence the existence of a predicate conspiracy." United States v. Urena, 27 F.3d 1487, 1491 (10th Cir. 1994). A defendant does not possess a right to a pretrial hearing on admissibility of coconspirators statements; however, "a district court can only admit coconspirator statements if it holds a James hearing or conditions admission on forthcoming proof of a 'predicate conspiracy through trial testimony or other evidence.'" United States v. Townley, 472 F.3d 1267, 1273 (10th Cir. 2007)(quoting United States v. Owens, 70 F.3d 1118, 1123 (10th Cir. 1995)). The Tenth Circuit affords trial courts this flexibility, because it recognizes that it is not always practical for the United States to demonstrate that a conspiracy existed before admitting specific evidence at trial. See United States v. Peterson, 611 F.2d 1313, 1330 (10th Cir. 1979)(noting that the admissibility determination contemplates presentation of requisite conspiracy evidence before or during the United States' case in chief).

In United States v. Vigil, the Court did not hold a James hearing, because the defendant, Robert Vigil, had already been tried once, ending in a hung jury, and the Court concluded that "the evidence that" the Honorable James A. Parker, Senior United States District Judge for the District of New Mexico, "admitted at the first trial satisfies the preponderance standard on the basis of the transcripts of the first trial's testimony." 2006 WL 4109681, at *4. Vigil was charged, among other charges, with being a member of a conspiracy to commit RICO violation, and the United States moved the Court to permit it to elicit non-hearsay coconspirator statements in Vigil's retrial. See 2006 WL 4109681, at *1. The Court noted that it had previously found, in deciding Vigil's rule 29 motion for acquittal, that "'a reasonable jury could have found that Vigil agreed with at least one other person to conduct or participate in the affairs of the enterprise through a pattern of racketeering activity, or knowingly and voluntarily participated in the conspiracy.'" 2006 WL 4109681, at *4 (citing United States v. Vigil,  No. CR 05-2051 JB,

Memorandum Opinion, filed Aug. 7, 2006 (Doc. 268)).

In support of its determination that the United States had met its burden to prove that Vigil participated in the existent conspiracy, the Court pointed to testimony asserting that Garcia, an alleged coconspirator, "told Vigil that he would set up the same arrangement with Vigil as with Montoya, Vigil learned about the prior arrangement with Montoya through Garcia, Vigil indicated that he intended to continue the fee-sharing arrangement that Montoya had set up, and Vigil threatened to withhold the SLOM contract from Everage."  2006 WL 4109681, at *4 (internal quotation marks and citations omitted).  The Court reasoned that "[p]roof of the existence of a conspiracy is often based on circumstantial evidence, and this testimony is sufficient to establish Vigil's participation in a conspiracy by a preponderance of the evidence." 2006 WL 4109681, at *5.  The Court thus concluded that it would "permit the United States to elicit from its witnesses at trial co-conspirator statements made in furtherance of the conspiracy charged."  2006 WL 4109681, at *6.

## LAW REGARDING CONSPIRACY

The Tenth Circuit has outlined what the government must prove to establish the existence of a conspiracy:

> To prove a conspiracy, the government must show: (1) that two or more people agreed to violate the law[,] (2) that the defendant knew at least the essential objectives of the conspiracy, (3) that the defendant knowingly and voluntarily became a part of it, and (4) that the alleged co-conspirators were interdependent. . . .  A single conspiracy does not exist solely because many individuals deal with a common central player.  What is required is a shared single criminal objective, not just similar or parallel objectives between similarly situated people.  On the other hand, a defendant need not have knowledge of all the details or all the members of the conspiracy and may play only a minor role in the conspiracy.  The government need only prove by direct or circumstantial evidence that the defendant knew at least the essential objectives of the conspiracy and the defendant knowingly and voluntarily became part of it.

United States v. Small, 423 F.3d 1164, 1182-83 (10th Cir. 2005)(quoting United States v. Evans,

DNM 954

970 F.2d 663, 668-671 (10th Cir. 1992), and United States v. Mendoza-Solgado, 964 F.2d 993,

1005 (10th Cir. 1992))(internal citations, quotations, and emphasis omitted).  Conspiracy is not a

collection of various separate and distinct events, but rather is "the prototypical continuing

offense."   United States v. Acosta-Gallardo, 656 F.3d 1109, 1122 (10th Cir. 2011)(quoting

United States v. Jaynes, 75 F.3d 1493, 1505 (10th Cir. 1996)).  "'A conspirator is only liable for

the acts of co-conspirators until the conspiracy accomplished its goals or that conspirator

withdraws.'"   United States v. Thornburgh, 645 F.3d 1197, 1204 (10th Cir. 2011)(quoting United

States v. Cherry, 217 F.3d 811, 817 (10th Cir. 2000))

### LAW REGARDING THE CONFRONTATION CLAUSE

The Clause states: "In all criminal prosecutions, the accused shall enjoy the right . . . to

be confronted with the witnesses against him."   U.S. Const. amend. VI.   In Crawford v.

Washington, 541 U.S. 36 (2004), the Supreme Court held that, under the Confrontation Clause,

"[t]estimonial statements of witnesses absent from trial [are admissible] only where the declarant

is unavailable, and only where the defendant has had a prior opportunity to cross-examine."  541

U.S. at 59.   In Davis v. Washington, 547 U.S. 813 (2006), the Supreme Court elaborated

regarding which statements made during police interrogation are testimonial:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. at 822.  The Tenth Circuit defines a testimonial statement, without reference to police

interrogation, as "a 'formal declaration made by the declarant that, when objectively considered,

indicates' that the 'primary purpose of the [statement is] to establish or prove past events

potentially relevant to later criminal prosecution.'"   United States v. Morgan, 748 F.3d 1024,

1048 (10th Cir. 2014)(alteration in original)(quoting United States v. Smalls, 605 F.3d at 777-

78).  Accord United States v. Chaco, 801 F. Supp. 2d 1200, 1209-10 (D.N.M. 2011)(Browning,

J.)(discussing developments in Tenth Circuit precedent on the test regarding what qualifies as a

testimonial statement).

In Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009), the Supreme Court addressed

whether the admission of a sworn affidavit by a forensic chemist, who testified in the affidavit

that the substance which police seized from the defendant was cocaine of a certain amount,

violated the Confrontation Clause.  See 557 U.S. at 307.  The Supreme Court first found that

such affidavits were testimonial, because they were "made under circumstances which would

lead an objective witness reasonably to believe that the statement would be available for use at a

later trial" and because, under Massachusetts law, the sole purpose of the affidavit was to

provide prima facie evidence of the content of the substance seized.  557 U.S. at 310.  The

Supreme Court then used the affidavit introduced by the prosecution to outline its concerns

regarding the lack of cross-examination when such affidavits are introduced as evidence:

> The affidavits submitted by the analysts contained only the bare-bones statement
> that "[t]he substance was found to contain: Cocaine."  At the time of trial,
> petitioner did not know what tests the analysts performed, whether those tests
> were routine, and whether interpreting their results required the exercise of
> judgment or the use of skills that the analysts may not have possessed.  While we
> still do not know the precise tests used by the analysts, we are told that the
> laboratories use "methodology recommended by the Scientific Working Group
> for the Analysis of Seized Drugs[.]"  At least some of that methodology requires
> the exercise of judgment and presents a risk of error that might be explored on
> cross-examination.

557 U.S. at 320 (citation omitted).  Because there was no opportunity to cross-examine the

affidavit declarant on these issues, the Supreme Court concluded that introduction of the affidavit

violated the defendant's rights under the Confrontation Clause.  See 557 U.S. at 329 ("The Sixth

Amendment does not permit the prosecution to prove its case via ex parte out-of-court affidavits,

and the admission of such evidence against Melendez-Diaz was error.").  The Supreme Court extended this holding to "forensic laboratory report[s] containing a testimonial certification -- made for the purpose of proving a particular fact -- through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification." Bullcoming v. New Mexico, 564 U.S. 647, 652, 661 (2011)("Accordingly, the analysts who write reports that the prosecution introduces must be made available for confrontation even if they possess 'the scientific acumen of Mme. Curie and the veracity of Mother Teresa.'" (quoting Melendez-Diaz v. Massachusetts, 557 U.S. at 319 n.6).

"Except in rare cases, the prosecution's use of live or recorded video testimony without the defendant having the ability to confront the witness face-to-face violates a defendant's Confrontation Clause rights -- absent a showing of unavailability and prior opportunity to confront the witness."  United States v. Chapman, 2015 WL 4042177, at *19 (D.N.M. June 29 2015)(Browning, J.).  See United States v. Sandoval, No. CR 04-2362, 2006 WL 1228953, *7-9 (D.N.M. Mar. 7, 2006)(Browning, J.).   In a pre-Crawford v. Washington case, Maryland v. Craig, 497 U.S. 836 (1990), the Supreme Court rejected a Confrontation Clause challenge to a Maryland statute that allowed a child witness in a child molestation case, under certain circumstances, to testify via a one-way closed circuit television, which did not allow the witness to view the defendant.  See 497 U.S. at 860.  See also Wrotten v. New York 560 U.S. 959, 959 (2010)(Sotomayor, J., statement respecting the denial of certiorari)(tacitly assuming that Maryland v. Craig remains good law and commenting that, "[b]ecause the use of video testimony in this case arose in a strikingly different context than in Craig, it is not clear that the latter is controlling").   While upholding the constitutionality of a child's testimony outside the defendant's presence, the Supreme Court recognized that the "central concern of the

Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." 497 U.S. at 845.[14]

The Supreme Court recognized that an adversary proceeding before the trier of fact "is the norm of Anglo-American criminal proceedings," and involves "[t]he combined effect of these elements of confrontation -- physical presence, oath, cross-examination, and observation of demeanor." Maryland v. Craig, 497 U.S. at 846. It also acknowledged that "face-to-face confrontation forms 'the core of the values furthered by the Confrontation Clause.'" Maryland v. Craig, 497 U.S. at 847 (quoting California v. Green, 399 U.S. 149, 157 (1970)). Nevertheless, the Supreme Court concluded that the Confrontation Clause's "preference for face-to-face confrontation at trial . . . must occasionally give way to considerations of public policy and the necessities of the case." Maryland v. Craig, 497 U.S. at 849 (internal quotation marks omitted). The Supreme Court emphasized, however, a defendant's Confrontation Clause right "may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." 497 U.S. at 850.

A Confrontation Clause violation does not occur when a defendant calls a non-hostile witness telephonically or via videoconference. See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him . . . ." (emphasis added)). Cf. United States v. Olguin, 643 F.3d 384, 392 (5th Cir. 2011)("The Sixth Amendment guarantees the right to confrontation against a party testifying

---

[14]The Supreme Court has since distanced itself from this holding that the purpose of the Confrontation Clause is to ensure the reliability of evidence. See Crawford v. Washington, 541 U.S. at 61.

against him, not against others.").  Adversity is not present when the witness is aligned with the

defendant.  See Maryland v. Craig, 497 U.S. at 845.  The Supreme Court based Crawford v.

Washington on a defendant's need for "an adequate opportunity to cross-examine" a witness, but

such a need is not present when the witness is aligned with the defendant.  541 U.S. at 58.  The

Federal Rules of Evidence, for example, generally do not permit a party to ask a non-hostile

witness  leading  questions,  a  key  cross-examination  tool.    See  Fed.  R.  Evid.  611(c).[15]

Alternatively, it is possible that a defendant waives a Confrontation Clause objection by calling a

witness by videoconference or telephonically.  See United States v. Lopez-Medina, 596 F.3d

716, 730-734 (10th Cir. 2010)("Prior to Crawford, we held there was 'no doubt' a defendant

could waive his rights under the Confrontation Clause.  The parties do not argue Crawford

changed this rule."  (quoting Hawkins v. Hannigan, 185 F.3d 1146, 1154 (10th Cir. 1999)(Ebel,

J.))).

        Like many constitutional rights, a defendant may choose to waive Confrontation Clause

rights.  In 1969, the Supreme Court recognized that a defendant may waive Confrontation Clause

rights and that defendants commonly do so when pleading guilty.  See Boykin v. Alabama, 395

U.S. 238, 270 (1969)("Several federal constitutional rights are involved in a waiver that takes

place when a plea of guilty is entered in a state criminal trial. . . .  Third, is the right to confront

one's accusers.").  The Tenth Circuit recognized, both before and after Crawford v. Washington,

that a defendant may knowingly waive Confrontation Clause rights at trial.  See United States v.

Lopez-Medina, 596 F.3d at 730-734 (recognizing that Confrontation Clause rights may be

---

[15]Rule 611(c) of the Federal Rules of Evidence provides: "(c) **Leading Questions.** Leading questions should not be used on direct examination except as necessary to develop the witness's testimony.  Ordinarily, the court should allow leading questions: (1) on cross-examination; and (2) when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party."  Fed. R. Evid. 611(c) (bold in original).

waived at trial "at least where there is an explicit waiver"). Specifically, the Tenth Circuit stated: "Prior to <u>Crawford</u>, we held there was 'no doubt' a defendant could waive his rights under the Confrontation Clause. The parties do not argue <u>Crawford</u> changed this rule." <u>United States v. Lopez-Medina</u>, 596 F.3d at 731 (citations omitted). The Tenth Circuit has held that a defendant's counsel can stipulate to the admissibility of evidence that would otherwise violate the Confrontation Clause if doing so "was a matter of prudent trial strategy." <u>Hawkins v. Hannigan</u>, 185 F.3d 1146, 1155 (10th Cir. 1999). The United States Court of Appeals for the Sixth Circuit has recognized that such a waiver can be permissible in the context of the prosecution admitting one of its witnesses' videotaped deposition. <u>See</u> <u>Earhart v. Konteh</u>, 589 F.3d 337, 344 (6th Cir. 2009). The Sixth Circuit in that case relied on one of its prior decisions where it had permitted such a waiver:

> The State relies upon our holding in <u>Bailey v. Mitchell</u>, 271 F.3d 652 (6th Cir. 2001), to argue that Earhart waived his right to contest the admission of the videotape deposition. In <u>Bailey</u>, we held that a criminal defendant waived his right to confrontation by entering into a <u>quid</u> <u>pro</u> <u>quo</u> agreement with a state prosecutor. <u>Id</u>. at 657. The petitioner in <u>Bailey</u> had agreed to allow the State to admit the videotape deposition if the prosecutor would consent to the defendant's motion for a continuance. <u>Id</u>. Importantly, the Ohio state courts found as a factual matter that Bailey had made an explicit deal with the prosecutor for the admission of the videotape. <u>Id</u>.

<u>Earhart v. Konteh</u>, 589 F.3d at 344.

## <u>LAW REGARDING CODEFENDANT STATEMENTS</u>

In <u>Bruton v. United States</u>, 391 U.S. 123 (1968)(Brennan, J.), the Supreme Court held that, in a multiple-defendant trial, admitting a non-testifying defendant's confession that implicates a codefendant violates the Confrontation Clause even if the court instructs the jury to only use the confession against the defendant who made it. <u>See</u> 391 U.S. at 128-29. George Bruton and William Evans were jointly tried for robbery, and, upon his arrest, Evans gave a confession to a postal inspector in which he admitted that he and Bruton had committed the

robbery.  See Bruton v. United States, 391 U.S. at 124.  At trial, the prosecution was allowed to introduce Evans' confession, and the trial court -- perhaps recognizing that evidence might pose a problem -- gave a limiting instruction charging the jury that it was not to consider Evans' confession "in any respect to the defendant Bruton."  Bruton v. United States, 391 U.S. at 125. Both Bruton and Evans were convicted, but the Supreme Court held that the trial court erroneously admitted Evans' confession implicating Bruton and that the court's limiting instruction did not cure the error.  See 391 U.S. at 128-29.  The Supreme Court observed: "If it were true that the jury disregarded the reference to the codefendant, no question would arise under the Confrontation Clause, because by hypothesis the case is treated as if the confessor made no statement inculpating the nonconfessor."  319 U.S. at 126.  See 391 U.S. at 128 n.3 ("We emphasize that the hearsay statement inculpating petitioner was clearly inadmissible against him under traditional rules of evidence, . . . the problem arising only because the statement was . . . admissible against the declarant.").  The Supreme Court discounted that possibility, because

> there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored.  Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial.  Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect . . . .  The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination.

391 U.S. at 135-36.  The Supreme Court also stated:

> If it is a denial of due process to rely on a jury's presumed ability to disregard an involuntary confession, it may also be a denial of due process to rely on a jury's presumed ability to disregard a codefendant's confession implicating another defendant when it is determining that defendant's guilt or innocence.

391 U.S. at 130-31.  Ultimately, the Supreme Court determined: (i) there is a substantial risk

- 88 -

that, if a defendant's confession implicates codefendants, the jury will use that confession against the codefendants notwithstanding a limiting instruction to the contrary; and (ii) that substantial risk means a defendant's confession implicating codefendants is inadmissible unless the defendant who made the confession is subject to cross examination.  See 391 U.S. at 137.

The Supreme Court elaborated on its Bruton v. United States decision in Richardson v. Marsh, 481 U.S. 200 (1987)(Scalia, J.).  See 481 U.S. at 202.  Marsh and Williams were tried jointly, and Williams did not testify.  See 481 U.S. at 202, 204.  The prosecution introduced evidence of Williams' confession, which implicated both Williams and Marsh.  See 481 U.S. at 203-04.  The trial court redacted the confession to remove references to Marsh, and "omitted all indication that anyone other than [a third party] and Williams participated in the crime."  481 U.S. at 203.  The trial court also instructed the jury not to use Williams' confession against Marsh.  See 481 U.S. at 204.  The Supreme Court concluded that the trial court properly admitted Williams' redacted confession, because, vis-à-vis Marsh, the redacted confessions "was not incriminating on its face."  481 U.S. at 208.  The Supreme Court explained that, because it did not implicate Marsh, Williams' confession fell "outside the narrow exception we created" in Bruton v. United States, to the general rule that "a witness whose testimony is introduced at a joint trial is not considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against a codefendant."  481 U.S. at 206, 208.

In Gray v. Maryland, 523 U.S. 185 (1998)(Breyer, J.), Anthony Bell and Kevin Gray were tried jointly for murder.  See 523 U.S. at 188.  After Bell was arrested, Bell confessed, and his confession said that Gray and a third person were also responsible for the victim's death.  See Gray v. Maryland, 523 U.S. at 188.  At Bell and Gray's joint trial, the court admitted a redacted version of Bell's confession into evidence.  See 523 U.S. at 188.  The detective who testified

about Bell's confession said "deleted" or "deletion" whenever the name of Gray or the third participant appeared.  523 U.S. at 188.  Immediately thereafter, however, the detective testified that the police arrested Gray only upon Bell's confession.  See 523 U.S. at 189.  The prosecution introduced a written copy of Bell's confession Gray's and the third person's names replaced with blank spaces separated by commas.  See 523 U.S. at 189.  The trial court instructed the jury that Bell's confession could not be used as evidence against Gray.  See 523 U.S. at 189.

The Supreme Court acknowledged that, in Richardson v. Marsh, it had, indeed, held that the admission of co-defendant confessions that are redacted to remove any reference to the existence of the other defendants will not violate Bruton v. United States.  See Gray v. Maryland, 523 U.S. at 190-91.  The Supreme Court noted, however, that, unlike the redacted confession in Richardson v. Marsh, the confession in Gray v. Maryland referenced the existence of the non-confessing defendant, because the government merely replaced Gray's name with the word "deleted" or a blank space.  Gray v. Maryland, 523 U.S. at 192.  The Supreme Court concluded that a redaction which replaced a defendant's name with an obvious indication of deletion falls within Bruton v. United States' purview, because "[r]edactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indications of alteration . . . so closely resemble Bruton [v. United States'] unredacted statements that, in our view, the law must require the same result."  Gray v. Maryland, 523 U.S. at 189.

Six years after Gray v. Maryland, Crawford v. Washington upended the Supreme Court's Confrontation Clause jurisprudence.  See Crawford v. Washington, 541 U.S. at 36.  In Crawford v. Washington, the Supreme Court held that that the Confrontation Clause prohibits testimonial hearsay's introduction against a criminal defendant if the hearsay declarant does not testify at trial, unless: (i) the declarant is unavailable for trial; and (ii) the defendant had an opportunity to

DNM 963

cross-examine the declarant before trial.  See 541 U.S. at 59-61.  Crawford v. Washington held

that the Confrontation Clause is violated only when testimonial hearsay is admitted against a

defendant and the defendant is not given the opportunity to cross-examine the declarant.  See

U.S. at 59-61.   Crawford v. Washington does not, however, indicate how courts should

determine whether a particular statement is testimonial; it instead noted that "various

formulations," "articulations," or "definitions" of "testimonial" could be posited, and identified

statements that would qualify as testimonial under any definition, but it specifically declined to

define the term "testimonial."   541 U.S. at 51-53, 68.   After Crawford v. Washington, the

Supreme Court indicated "statements made unwittingly to a Government informant and

statements from one prisoner to another" are clearly nontestimonial.  Davis v. Washington, 547

U.S. at 825.

The Supreme Court's decision in Crawford v. Washington undermines Bruton v. United

States, because that decision indicates that introducing a non-testifying defendant's confession

and using that confession against a codefendant does not offend the Confrontation Clause so long

as the confession is nontestimonial.  See 541 U.S. at 59-61.  See also United States v. Clark, 717

F.3d 790, 816 (10th Cir. 2013)(Holmes, J.)(concluding that nontestimonial statements "fall

outside the protective ambit of the Confrontation Clause and, by extension, Bruton."); United

States v. Dale, 614 F.3d 942, 956 (8th Cir. 2010)(holding that defendant's statements to prisoner

were not testimonial and that their admission, therefore, did not violate a codefendant's

Confrontation Clause rights); United States v. Castro-Davis, 612 F.3d 53, 65 (1st Cir.

2010)(holding that defendant's recorded telephone statements to his mother were non-

testimonial); United States v. Smalls, 605 F.3d at 768 n.2 ("[T]he Bruton rule, like the

Confrontation Clause on which it is premised, does not apply to nontestimonial hearsay

- 91 -

statements."); <u>United States v. Johnson</u>, 581 F.3d 320, 326 (6th Cir. 2009)(holding that, because

<u>Bruton v. United States</u> is based on the Confrontation Clause, then it also only applies to

testimonial statements, and any non-testimonial statement is not subject to it); <u>United States v.</u>

<u>Pike</u>, 292 F. App'x 108, 112 (2d Cir. 2008)("[B]ecause the statement was not testimonial, its

admission does not violate either *Crawford* or *Bruton*.").

## LAW REGARDING RULE 403

Under rule 403 of the Federal Rules of Evidence, "[t]he court may exclude relevant

evidence if its probative value is substantially outweighed by a danger of one or more of the

following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time,

or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  The trial court must weigh

the proffered evidence's probative value against its potential for unfair prejudice.  <u>See</u> <u>United</u>

<u>States v. Record</u>, 873 F.2d 1363, 1375 (10th Cir. 1989).   "[I]t is only unfair prejudice,

substantially outweighing probative value, which permits exclusion of relevant matter [under

rule 403]." <u>United States v. Pettigrew</u>, 468 F.3d 626, 638 (10th Cir. 2006)(quoting <u>United States</u>

<u>v. Sides</u>, 944 F.2d 1554, 1563 (10th Cir. 1991)).  The Tenth Circuit has admonished district

courts that they should be "mindful" that "exclusion of evidence under Rule 403 that is otherwise

admissible under the other rules is an extraordinary remedy and should be used sparingly."

<u>United States v. Smalls</u>, 605 F.3d 765, 787 (10th Cir. 2010)

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's

discretion, <u>see</u> <u>United States v. Lugo</u>, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's

discretion to balance possible unfair prejudice against probative value is broad, <u>see</u> <u>United States</u>

<u>v. Bice-Bey</u>, 701 F.2d 1086, 1089 (4th Cir. 1983); <u>United States v. Masters</u>, 622 F.2d 83, 87-88

(4th Cir. 1980).  The Supreme Court has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . . This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting 1 Steven Alan Childress & Martha S. Davis, Fed. Standards of Review § 4.02, at 4-16 (3d ed. 1999)).  See United States v. Abel, 469 U.S. 45, 54 (1984)("Assessing the probative value of [proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . .").

Evidence may be unfairly prejudicial if it would likely provoke an emotional response from the jury or would otherwise tend to adversely affect the jury's attitude toward a particular matter.  See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999).  Evidence is not unfairly prejudicial merely because it damages a party's case.  See United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008); United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003); United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991).  Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee note).

"The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  Old Chief v. United States, 519 U.S. 172, 180 (1997)(Souter, J.).  "Such improper grounds certainly include . . . generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged."  Old Chief v. United States, 519 U.S. at 180-81.  In light of rule 404(b)'s

prohibition regarding the use of character evidence to show that a person acted in conformity with their character, "[t]here is, accordingly, no question that propensity would be an 'improper basis' for conviction and that evidence . . . is subject to analysis under Rule 403 for relative probative value and for prejudicial misuse as propensity evidence." Old Chief v. United States, 519 U.S. at 182.

### ANALYSIS

The Court concludes that the four conspiracies that the United States identified at the James hearing, which correspond to the conspiracies that Count 6 and Counts 8-10 charge, exist. See supra FOF ¶¶ 1, 4, 7, 9.  The Court also concludes that Sanchez, Baca, Herrera, and Perez were members of the Count 6 conspiracy, see supra FOF ¶ 2, while Baca was a member of the Counts 8-10 conspiracies, see supra FOF ¶¶ 5, 8, 10.  The United States has, thus, established that the statements it introduced at the James hearing satisfy two of rule 801(d)(2)(E)'s three elements: (i) that a conspiracy existed; (ii) that the declarant and the defendant were both members; and (iii) that the statement was made during and in furtherance of the conspiracy.  See Fed. R. Evid. 801(d)(2)(E).

It is necessary to evaluate particular statements, however, to determine: (i) whether those statements are testimonial; (ii) whether those statements were made during and in furtherance of a particular conspiracy; (iii) whether those statements are admissible for their truth against all the Defendants as declarations against penal interest by an unavailable declarant, see Fed. R. Evid. 804(b)(3), even if rule 801(d)(2)(E) does not apply; and (iv) whether those statements are admissible for their truth against a declarant-Defendant.  The Court must also determine whether statements that are admissible against some -- but not all -- of the Counts 6-10 Defendants are admissible at a joint trial if the Court gives limiting instructions regarding how the jury is

permitted to use those statements.  In making those determinations, the Court will focus on the

Baca, Herrera, and Perez statements that government cooperators -- specifically Eric Duran,

Billy Cordova, and Archuleta -- surreptitiously recorded.  See United States' Amended Exhibit

List Nos. 177-217, filed January 27, 2018 (Doc. 1713).[16]  The Court concludes by extending its

analysis to other out-of-court statements in a chart listing out-of-court statements and its

conclusions regarding those statements.

## I.      MOST -- BUT NOT ALL -- OF THE OUT-OF-COURT STATEMENTS THAT THE UNITED STATES IDENTIFIES ARE NONTESTIMONIAL.

Introducing an out-of-court statement for its truth offends the Confrontation Clause when

the declarant is not subject to cross-examination only if the statement is testimonial.  See

Whorton v. Bockting, 549 U.S. 406, 420 (2007)("Under Crawford, on the other hand, the

Confrontation Clause has no application to [nontestimonial] statements and therefore permits

their admission even if they lack indicia of reliability.").  Whether a statement is testimonial

depends on "whether, in light of all the circumstances, viewed objectively, the 'primary purpose'

of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'"  Ohio v.

Clark, 135 S. Ct. 2173, 2180 (2015)(Sotomayor, J.)(quoting Michigan v. Bryant, 562 U.S. 344,

358 (2011)).  Statements that are not the product of an interrogation can be testimonial, and,

"even when an interrogation exists, it is in the final analysis the declarant's statements, not the

interrogator's questions, that the Confrontation Clause requires us to evaluate."  Davis v.

Washington, 547 U.S. at 822 n.1.  Accordingly, "a court measures the declarant's intent" when it

determines whether a statement is testimonial, and that measurement is based on an "objective

---

[16]The United States' Amended Exhibit list refers to redacted recordings and transcripts, because the Court accepted the United States' proposal that -- to avoid needing to empanel two juries -- to redact Herrera's, Baca's, and Perez' statement such that those statements only directly incriminate the declarant-defendant.  See United States' Sealed Motion to Reconsider the Court's Two Jury Proposal at 6-7, filed January 27, 2018 (Doc. 1712).

standard." United States v. Smalls, 605 F.3d at 778.  It follows that statements made unwittingly

to a government informant and statements from one prisoner to another are nontestimonial.  See

United States v. Smalls, 605 F.3d. at 777 ("In Davis, the Court expressed the view that

'statements made unwittingly to a Government informant' or 'statements from one prisoner to

another' are 'clearly nontestimonial.'"  (quoting Davis v. Washington, 547 U.S. at 825)).

Sanchez argues, on the contrary, that Michigan v. Bryant -- which post-dates both Davis

v. Washington and United States v. Smalls -- requires a broader inquiry, because,

> [w]hile the Bryant inquiry focuses on the circumstances in which the encounter
> between the declarant and interrogator occurs, including whether an emergency
> exists at the time of the encounter, and the statements and actions of **both the
> declarant and interrogator** to ascertain the primary purpose of the interrogation,
> the Smalls inquiry only focuses on the statements and actions of the declarant.

Sanchez MIL at 9 (emphasis in original).  Sanchez' argument does not persuade the Court,

however, because Michigan v. Bryant's command that, "[i]n determining whether a declarant's

statements are testimonial, courts should look to all of the relevant circumstances," such as "the

statements and actions of all participants," did not broaden the primary purpose test.  Michigan v.

Bryant, 562 U.S. at 369-70.  See id. at 367-68 ("In many instances, the primary purpose of the

interrogation will be most accurately ascertained by looking to the contents of both the questions

and the answers.").  Instead, it clarified "how the courts are to assess the nature of the declarant's

purpose," Michigan v. Bryant, 562 U.S. at 367 n.11 (emphasis in original), and recognized that,

"[i]n many instances, the primary purpose of the interrogation will be most accurately

ascertained by looking to the contents of both the questions and the answers," id. at 367-68.

While an interrogator's intent and motivation can help a court ascertain a declarant's purpose, "it

is the statements, and not the questions," which must pass constitutional muster.  Michigan v.

Bryant, 562 U.S. at 367 n.11.

Many of the statements that the United States identified at the James hearing -- including

all of the Perez statements that Billy Cordova recorded, <u>see</u> Government's <u>James</u> Exhibit 16 --
were made unwittingly to a government informant, and many of those statements were made
from one prisoner to another.  The Court, in accordance with <u>United States v. Smalls</u>, concludes
that those statements are nontestimonial.  Likewise, statements that were made in furtherance of
a conspiracy are nontestimonial.  <u>See</u> <u>United States v. Patterson</u>, 713 F.3d 1237, 1247 (10th Cir.
2013)("[B]ecause these statements were made in furtherance of a conspiracy, they are
nontestimonial and present no Sixth Amendment problem.").  Perez' statements to Palomares
and Mulheron as part of the Molina murder investigation, however, were made to people who
Perez knew were law enforcement officials investigating a particular crime, so those statements
are testimonial and can be admitted for their truth -- against defendants other than Perez -- only if
Perez testifies.  <u>See</u> Sanchez MIL at 9 ("Rudy Perez's statements to NMSP investigator
Palomares and Deputy Warden Mulheron are testimonial and should not be admitted at a joint
trial as evidence against Mr. Sanchez, unless Mr. Sanchez is provided an opportunity to cross-
examine Perez.").[17]

## II.   RULE 801(d)(2)(E) DOES NOT APPLY TO STATEMENTS MADE AFTER A CONSPIRACY'S OBJECT IS ACCOMPLISHED OR BECOMES IMPOSSIBLE.

Under rule 801(d)(2)(E), statements "offered against an opposing party and . . . made by
the party's coconspirator during and in furtherance of the conspiracy" are not, by definition,

---

[17]Perez' testimonial statements to Palomares and Mulheron are admissible against Perez
notwithstanding the Confrontation Clause, because Perez does not have the right to confront
himself.  <u>See</u>, <u>e.g.</u>, <u>United States v. Hansen</u>, 434 F.3d 92 (1st Cir. 2006).  <u>See also</u> Stephen A.
Saltzburg, Michael J. Martin et al., <u>Federal Rules of Evidence Manual</u> § 801.02[8][3](11th ed.
2017)("Clearly, a person has no constitutional right to confront himself.  *Crawford* does not
change this rule, because even if the accused's statement is testimonial, there is no right to cross-
examine yourself.").  Perez' statements do not implicate his codefendants, so introducing those
statements against Perez does not offend their Confrontation Clause rights.  <u>See</u> <u>Richardson v.
Marsh</u>, 481 U.S. at 208 (stating that a defendant's confession was admissible in a joint trial,
because, as to the declarant's codefendant, "the confession was not incriminating on its face, and
became so only when linked with evidence introduced later at trial").

hearsay.  Fed. R. Evid. 801(d)(2)(E).  Whether a particular statement was made during and in furtherance of a conspiracy is a question of fact that a judge must determine by a preponderance of the evidence.  See Bourjaily v. United States, 483 U.S. 171, 176 (1987).  See also Fed. R. Evid. 104(a)("The court must decide any preliminary question about whether . . . evidence is admissible.").  "No talismanic formula exists for ascertaining whether a particular statement was intended by the declarant to further the conspiracy and is therefore admissible in accordance with the agency theory of conspiracy."  United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993).  See id. at 1578-79 ("To the contrary, this determination must be made by examining the context in which the challenged statement was made.").

The Tenth Circuit has, however, articulated several rules of thumb.  First, "mere narratives between coconspirators or narrative declarations of past events" are not, generally, in furtherance of a conspiracy.  United States v. Roberts, 14 F.3d 502, 514-15 (10th Cir. 1993).  Second, "statements of future intent that set transactions integral to the conspiracy in motion and maintain the information flow among coconspirators" are usually in furtherance of the conspiracy.  United States v. Roberts, 14 F.3d at 515.  Third,

> Statements made to induce enlistment or further participation in the group's activities . . . to prompt further action on the part of conspirators . . .[,] to "reassure" members of a conspiracy's continued existence . . .[,] to allay a coconspirator's fears . . .[, or] to keep coconspirators abreast of an ongoing conspiracy's activities satisfy the "in furtherance" of requirement.

United States v. Roberts, 14 F.3d at 515 (alterations in original)(quoting United States v. Yarbrough, 852 F.2d 1522, 1535-36 (9th Cir. 1988)).  Fourth, "[w]hen a conspiracy is ongoing, statements that relate to 'avoiding detection by law enforcement personnel' can be in furtherance of the conspiracy."  United States v. Alcorta, 853 F.3d at 1139 (quoting United States v. Williamson, 53 F.3d at 1520).

A coconspirator must make a statement while the conspiracy persists for rule

- 98 -

801(d)(2)(E) to apply.  See Fed. R. Evid. 802(d)(2)(E).  According to the Supreme Court, a statement is not made "pursuant to and in furtherance of objectives of the conspiracy" if it is made "after those objectives either had failed or had been achieved."  Krulewitch v. United States, 336 U.S. 440, 442 (1949)(Black, J.).  See United States v. Alcorta, 853 F.3d 1123, 1139 (10th Cir. 2017)("To be sure, to qualify for the coconspirator exception a statement must have been made during the conspiracy.  Statements made after the objectives of the conspiracy have either failed or been achieved are not made during the conspiracy and must be excluded.").  That rule makes sense, because "[t]here can be no furtherance of a conspiracy that has ended." Lutwak v. United States, 344 U.S. 604, 617-18 (1953)(Minton, J.).

Moreover, once the "central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment."  Grunewald v. United States, 353 U.S. 391, 401-02 (1957)(Harlan, J.)(emphasis in original).  The Supreme Court emphasized the "vital distinction . . . between acts of concealment done in furtherance of the main criminal objective of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose of covering up after the crime."  Grunewald v. United States, 353 U.S. at 405.  In the former case, "acts of concealment [are] in furtherance of the objectives of the conspiracy itself," -- because if a conspiracy is discovered its objectives will, presumably, be thwarted -- whereas, "[i]n the latter case, . . . the acts of covering up can by themselves indicate nothing more than that the conspirators do not wish to be apprehended -- a concomitant, certainly, of every crime since Cain attempted to conceal the murder of Abel from the Lord."  Grunewald v. United States, 353 U.S. at 405-06.  See id. at 402 ("Acts of covering up, even though done in the

DNM 972

context of a <u>mutually understood</u> need for secrecy, cannot themselves constitute proof that concealment of the crime after its commission was part of the initial agreement among the conspirators." (emphasis added)).  <u>See</u> <u>also</u> <u>United States v. Silverstein</u>, 737 F.2d 864, 867 (10th Cir. 1984)(Logan, J.)("The duration of a conspiracy does not extend to attempts to conceal the crime.").

The United States has identified four distinct conspiracies for rule 801(d)(2)(E) purposes. The first corresponds to Counts 6 of the Indictment, <u>i.e.</u>, the Molina murder.  <u>See</u> Dec. 20 Tr. at 215:18-19 (Castellano); Indictment at 13 (Count 6).   The central aim of that conspiracy was accomplished with Molina's death on March 7, 2014.  <u>See</u> Indictment at 13.   The United States alleges that Montoya, M. Rodriguez, Baca, Varela, Sanchez, Herrera, and Perez were members of that conspiracy.  <u>See</u> Indictment at 12 (Count 6).   The second is "the conspiracy to assault Julian Romero."  Dec. 20 Tr. at 215:19-20 (Castellano).  <u>See</u> Indictment at 13-14 (Count 8).   The Romero conspiracy's central aim was accomplished when Romero was assaulted on July 13, 2015.  <u>See</u> Indictment at 13 (Count 8).   The United States alleges that Baca, Archuleta, and Villegas were members of the second conspiracy.  <u>See</u> Dec. 20 Tr. at 216: 20-22 (Castellano); Indictment at 14 (Count 8).   The third conspiracy is "the conspiracy to murder Dwayne Santistevan."  Dec. 20 Tr. at 215:22-23 (Castellano).  <u>See</u> Indictment at 14 (Count 9).   The United States alleges that Baca, R.P. Martinez, and R. Martinez were members of the Santistevan conspiracy.  <u>See</u> Indictment at 14 (Count 9).   The fourth conspiracy is "a conspiracy to murder Gregg Marcantel."  Dec. 20 Tr. at 215:23-24 (Castellano).  <u>See</u> Indictment at 15 (Count 10).   The United States alleges that Baca, R.P. Martinez, R. Martinez, and C. Garcia were members of the fourth conspiracy.  <u>See</u> Indictment at 15 (Count 10).  The United States has not identified a fifth separate conspiracy to conceal any of the four charged conspiracies.  <u>See</u> Dec. 20 Tr. at 215:16-

DNM 973

18 (Castellano)("But I want to make sure we're talking about multiple conspiracies.  I think four actually.").[18]

The United States argues that "Sanchez's statement to Martinez that Sanchez received the shanks from Perez, and Rodriguez's statements to Montoya that the shanks came from Perez's walker" were made during and in furtherance of the conspiracy to kill Molina.  Response at 6.  See Perez MIL at 1 ("Martinez is expected to testify that Sanchez told him that Mr. Perez gave Sanchez pieces of metal from his walker to be made into shanks . . . ."); id. at 2 ("Jerry Montoya is expected to testify that Mario Rodriguez provided him a shank to use to kill Javier Molina.  Montoya is expected to testify that when Rodriguez did so, he inexplicably volunteered that the shank came from Mr. Perez's walker.").  According to the United States, those statements furthered the conspiracy, "by allowing all of the Defendants to know from where the shanks came, and from where they did not," which led to "law enforcement follow[ing] the red herring that the SNM planted about the shanks used in the Molina murder coming from the wheelchair program," instead of following "investigatory leads that would lead them to Perez's walker, and Perez's involvement in the Molina murder."  Response at 7.  The Court concludes that Sanchez and M. Rodriguez made statements regarding the source of the Molina murder weapon during and in furtherance of the Molina conspiracy, because they made those statements while arranging Molina's murder, and convincing T. Martinez and Montoya to participate in the Molina

---

[18]While the United States represented on December 20, 2017, that it intended to offer, under rule 801(d)(2)(E), only statements that were made during and in furtherance of the Count 6 and Counts 8-10 conspiracies, see Dec. 20 Tr. at 215:16-18 (Castellano), a month earlier, however, the United States orally asserted that it would offer, against Baca, statements made during and in furtherance of a "conspiracy to bring contraband into the jail or to distribute narcotics,"  Nov. 29 Tr. at 244:19-20 (Castellano).  The Court does not address those statements in this Memorandum Opinion and Order, because it appears -- from the United States' subsequent statements -- that it no longer intends to offer those statements into evidence at trial under rule 801(d)(2)(E).

conspiracy.  See Nov. 27 Tr. at 163:20-164:14 (Castellano, Acee)(regarding Sanchez'
statement); id. at 183:6-13 (Lowry, Acee)(regarding M. Rodriguez' statement).

On the other hand, Perez made statements to Cordova, which Cordova surreptitiously
recorded, in February, 2016.  See Dec. 20 Tr. at 4-8 (Lowry).  Those statements were not made
during the conspiracy to kill Molina, because they post-date Molina's death by over a year.
Likewise, those statements did not further the conspiracy to kill Molina, because it is impossible
to further a terminated conspiracy.  That multiple SNM members attempted to conceal SNM's
crimes does not permit the Court to infer that those SNM members formed an agreement -- tacit
or otherwise -- to conceal those crimes.  See United States v. Grunewald, 353 U.S. at 402 ("Acts
of covering up, even though done in the context of a mutually understood need for secrecy,
cannot themselves constitute proof that concealment of the crime after its commission was part
of the initial agreement among the conspirators."  Cf. United States v. Alcorta, 853 F.3d at 1136
(stating that a conspiracy requires "an agreement with another person to violate the law").  Even
if the Court could soundly conclude that such a conspiracy existed, there is no evidence that
Perez was a member of such a conspiracy.  Accordingly, Perez' recorded statements do not
qualify as coconspirator statements under rule 801(d)(2)(E).

Contrary to the United States' suggestion, that the Indictment alleges VICAR violations,
some of which are based on conspiracy offenses, does not alter the conspiracies' scope.  See
Response at 8 (arguing that Perez' statements were in furtherance of the conspiracy, even though
they occurred years after the Molina murder, "[b]ecause the conspiracy is a VICAR conspiracy
to murder, which includes as an element that it was done in furtherance of or to gain some type
of benefit from the SNM gang," so Perez' statements indicating involvement  in the Molina
murder "thus, further his standing in the SNM and the VICAR conspiracy to murder").  That

conspiring to commit murder "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity" violates VICAR is immaterial for rule 802(d)(2)(E) purposes.   18 U.S.C. § 1959.   The inquiry under rule 801(d)(2)(E) is whether a statement was made during and in furtherance of a conspiracy, but a VICAR violation is not, itself, a conspiracy even though it may have a conspiracy as its underlying offense.

### III.   THE STATEMENTS BY ONE SNM MEMBER TO ANOTHER THAT CORDOVA AND DURAN RECORDED ARE NOT ADMISSIBLE HEARSAY UNDER THE STATEMENTS AGAINST PENAL INTEREST EXCEPTION.

An out-of-court statement is admissible hearsay if the declarant is unavailable and if "a reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true because, when made, it . . . had so great a tendency . . . to expose the declarant to civil or criminal liability."   Fed. R. Evid. 804(b)(3)(A).   The statement must also be "supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability."   Fed. R. Evid. 804(b)(3)(B).   In United States v. Smalls, the Tenth Circuit declared that "[w]e may safely surmise that from time immemorial, only on the rarest occasion, if ever, has one of sound mind -- even one of sound mind who is not particularly honest -- falsely confessed a murder to an apparent acquaintance or friend."   605 F.3d at 783.

Making that surmise is not safe, however, when the declarant makes a statement while in prison to someone who is apparently a fellow prison-gang member and not just an acquaintance or friend.   While people in ordinary situations expose themselves to both social censure and criminal liability when they falsely confess to committing a crime, prison-gang members speaking to fellow members earn social benefits -- such as respect or an appearance of power -- when they make inculpatory claims.   Further, law enforcement agents are unlikely to learn of such claims from the declarant's fellow prison-gang members, because prison-gang members

DNM 976

face violent retaliation for collaborating with law enforcement.  Consequently, a reasonable prison-gang member might make self-inculpatory statements even if those statements were not true.  Accordingly, such statements are not typically admissible under rule 804(b)(3).

That generalization is true in Perez' case, because, when Perez made his statements to Cordova, prison-yard rumors indicated, falsely, that Perez cooperated with the United States regarding the Molina murder.  Perez' statements to Cordova suggest that those life-threatening rumors are false, because they demonstrate loyalty to the SNM, and because, if Perez helped carry out the Molina murder, then providing information to law enforcement would expose him to criminal liability.  Consequently, a reasonable person in Perez' position might make self-incriminating statements regarding the Molina murder to another SNM member to combat life-threatening prison-yard rumors, even if those self-incriminating statements were not true.  Accordingly, Perez' statements do not satisfy rule 804(b)(3) of the Federal Rules of Evidence and are not admissible as statements against the declarant's penal interest.

## IV.   AN OUT-OF-COURT STATEMENT IS ADMISSIBLE FOR ITS TRUTH UNDER RULE 801(D)(2)(A) TO THE EXTENT THAT IT IS OFFERED AGAINST THE PERSON WHO MADE THE STATEMENT.

A statement is not hearsay if it is offered against a party and it was "made by the party in an individual or representative capacity."  Fed. R. Evid. 801(d)(2)(A).  Rule 801(d)(2)(A) does not, however, permit such a statement to be used against anyone other than the party who made the statement, such as codefendants.  See United States v. Wolf, 839 F.2d 1387, 1393 & n.4 (10th Cir. 1988)(analyzing whether five statements, which were admissible against one defendant under rule 801(d)(2)(A), were admissible against another defendant under different evidentiary rules).  See also Stephen A. Saltzburg, Michael M. Martin et al., Federal Rules of Evidence Manual § 801.02[6][c] (11th ed. 2017)("All that is required to satisfy Rule 801(d)(2)(A) is that the statement was made by the party and that it is offered at trial by a party-

opponent."). Rule 801(d)(2)(A) applies only when a statement is offered "against an opposing party," and codefendants are not opposing parties, so one defendant cannot use rule 801(d)(2)(A) offer another defendant's statement for its truth. See United States v. Gossett, 877 F.2d 901, 906 (11th Cir. 1989)("The testimony was not admissible under Rule 801(d)(2) because the admission sought to be introduced was made by a co-defendant who is not a party opponent. The Government is the party opponent of both defendants."); United States v. Harwood, 998 F.2d 91, 97 (2d Cir. 1993)(quoting United States v. Gossett, 877 F.2d at 906). But see Federal Rules of Evidence Manual § 801.02[6][b] ("We think that the *Harwood* court's construction of the Rule 801(d)(2)(A) exemption is questionable. It smacks of technicality."); id. ("We also note that the Harwood reading of the rule ends up treating civil and criminal defendants unequally. . . . Criminal defendants, however, cannot file cross-claims, and are therefore totally dependent on the government's decision whether to admit the statement of one of the codefendants.").

Complications arise when a statement is admissible against the party who made it and that statement contains an embedded statement attributed to someone else. For example, Perez' statements that Cordova recorded contain statements that Perez attributes to Baca. Perez' statements are admissible, under rule 801(d)(2)(A), for their truth against Perez and not Baca, so they are admissible to show, as to Perez, that Baca made particular statements. Consequently, that Baca made those statements can be used against Perez for non-hearsay purposes, e.g., to show the statement's effect on the hearer. Those out-of-court Baca statements are not, however, admissible for their truth against Perez under rule 801(d)(2)(A), because Perez did not make those statements. See Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule.").

DNM 978

As against Baca, rule 801(d)(2)(A) permits any statements that Baca made -- including the Baca statements that Perez related to Cordova -- to be used against Baca for their truth notwithstanding rule 802's general hearsay prohibition.   Admitting those statements also requires, however, an evidentiary foundation that shows that the statements are what they purport to be.   See Fed. R. Evid. 901 ("[T]he proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."); Stephen A. Saltzburg, Michael M. Martin et al., Federal Rules of Evidence Manual § 901.02[1] ("[W]hen a witness testifies to statements made by someone else, the witness must be able to identify the person from whom the statements emanated so that the trier of fact is able to properly attribute the statements."); id. § 901.02[2] (stating that, without an admissible foundation, "the evidence will not be relevant"). See also; Fed. R. Evid. 901 advisory committee notes ("This requirement of showing authenticity or identity falls in the category of relevancy dependent upon fulfillment of a condition of fact and is governed by the procedure set forth in Rule 104(b)."); Fed. R. Evid. 104(b)("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist").   Because Perez' statements are admissible against only Perez under rule 801(d)(2)(A), Perez' statements cannot authenticate -- as against Baca -- the Baca statements that Perez related to Cordova unless some other rule permits those statements to be offered against Baca for their truth.   See Johnson v. Weld County, 594 F.3d 1202, 1208 (10th Cir. 2010)(Gorsuch, J.)("Because the district court couldn't consider the hearsay statements of Mr. Bogott, Ms. Burns, or Mr. Willoughby, by necessity it couldn't consider anything contained within them, including Mr. Speckman's alleged party-opponent admissions."); id. at 1209 (concluding that "Mr. Speckman's comments" were not admissible -- notwithstanding assertions that those comments were admissions of a party opponent -- because

the only way "to prove the act of Mr. Speckman's comments [wa]s through Mr. Bogott's, Ms. Burns's, and Mr. Willoughby's out-of-court hearsay statements").  See also Stephen A. Saltzburg, Michael M. Martin et al., Federal Rules of Evidence Manual § 901.02[1] ("In order for the trier of fact to make a rational decision as to authenticity, the foundation evidence must itself be admissible.").  Accordingly, Perez' statements to Cordova are not admissible against Baca.

## V.    UNDER TENTH CIRCUIT PRECEDENT, A NONTESTIMONIAL STATEMENT IMPLICATING SEVERAL DEFENDANTS CAN BE ADMITTED AGAINST ONE DEFENDANT EVEN IF IT IS NOT ADMISSIBLE AGAINST THE OTHERS.

Many United States Courts of Appeal have read Bruton v. United States as a Confrontation Clause case and concluded that it does not apply to nontestimonial statements. See United States v. Rodriguez, 591 F. App'x 897, (11th Cir. 2015)("[A]s Bruton was premised on the Confrontation Clause, its protections only apply to testimonial statements."); United States v. Vasquez, 766 F.3d 373, 379 (5th Cir. 2014); United States v. Clark, 717 F.3d 790, 814 (10th Cir. 2013)(Holmes, J.)(concluding that nontestimonial statements "fall outside the protective ambit of the Confrontation Clause and, by extension, Bruton"); United States v. Dagan, 738 F.3d 643, (4th Cir. 2013)("Bruton is simply irrelevant in the context of nontestimonial statements."); United States v. Berrios, 676 F.3d 118 (3d Cir. 2012)(Fisher, J.)("Bruton is no more than a by-product of the Confrontation Clause . . . ."); United States v. Figueroa-Cartagena, 612 F.3d 69, 85 (1st Cir. 2010)(Lipez, J., joined by Baldock, J., sitting by designation)(stating that, when applying Bruton v. United States, "[t]he threshold question in every case is whether the challenged statement is testimonial"); United States v. Johnson, 581 F.3d 320, 326 (6th Cir. 2009)(Cole, J.)("Because it is premised on the Confrontation Clause, the Bruton rule, like the Confrontation Clause itself, does not apply to nontestimonial statements."); United States v. Vargas, 570 F.3d 1004, 1009 (8th Cir. 2009)(Wollman, J.)("Garcia's statement

- 107 -

identifying Vargas as his source was not testimonial and thus did not implicate Vargas's Sixth Amendment confrontation clause right.  We find no *Bruton* error."); United States v. Pike, 292 F. App'x 108, 112 (2d Cir. 2008)(per curiam)(stating that "because the statement was not testimonial, its admission does not violate either *Crawford v. Washington* . . . or *Bruton v. United States* . . . .").

On the other hand, commentators, scholars, and the District of Columbia Court of Appeals[19] have read Bruton v. United States as a limiting-instruction case and not only as a Confrontation Clause case, i.e. as a case defining an exception to the general rule that juries obey limiting instructions.  See Fed. R. Evid. 105 advisory committee note ("In *Bruton v. United States*, 389 U.S. 818 . . . (1968), the Court ruled that a limiting instruction did not effectively protect the accused against the prejudicial effect of admitting in evidence the confession of a codefendant which implicated him."); Colin Miller, Avoiding a Confrontation -- How Courts Have Erred in Finding That Non-Testimonial Hearsay is Beyond the Scope of the Bruton Doctrine, 77 BROOK. L. REV. 625, 626 (2012)("*Bruton* focuses upon the damage to a defendant's case based upon the admission of his codefendant's statement, not the (un)reliability of that statement.  Therefore, the doctrine depends on the inadmissibility of codefendant confessions combined with their harmfulness, not their constitutional unreliability."); Jason Portwood Hipp, Redacting the Constitution: Securing Bruton's Confrontation Protections for a Codefendant During Non-Evidentiary Counsel Commentary, 44 COLUM. HUM. RTS. L. REV. 259, 264 (2012)("While *Crawford* arguably limited *Bruton* violations to testimonial hearsay, the key factor for a *Bruton* analysis is a judge's evaluation of the efficacy of jury instructions."  (footnote

_____

[19]The District of Columbia Court of Appeals is "the equivalent of a state supreme court" and is "the highest court of the District of Columbia."   More About the Court of Appeals, DISTRICT OF COLUMBIA COURTS, https://www.dccourts.gov/court-of-appeals/learn-more.

- 108 -

omitted)); Thomas v. United States, 978 A.2d 1211, 1233 (D.C. Ct. App. 2009)(Glickman, J.)(concluding that "the principles governing redaction under *Bruton* apply" to one defendant's nontestimonial statements "that were not admissible against [a codefendant] under any hearsay exception").  See also United States v. Williams, No. CR 09-0414, 2010 WL 3909480, at *5 (E.D. Va. Sept. 23 2010)(Cacheris, J.)("[T]he Court finds that the statements at issue in this case *may* implicate *Bruton,* even if they are not testimonial under *Crawford.*"  (emphasis in original))

Under the academic view, the Supreme Court's Confrontation Clause analysis in Bruton v. United States broke no new ground, because there was no doubt, when Bruton v. United States was decided, that using a non-testifying defendant's confession against a codefendant was impermissible.  See Bruton v. United States, 391 U.S. at 128 n.3 ("We emphasize that the hearsay statement inculpating petitioner was clearly inadmissible against him under traditional rules of evidence . . . .").  See also, e.g., Tong's Case, 84 Eng. Rep. 1061, 1062 (1662)(permitting, when "a conspirator be examined before a privy councellor or a justice of peace, and upon his examination without torture confess the treason," the use of that confession against that conspirator at trial even though "the confession there spoken of, is not meant a confession before the Judges at his trial, but a confession upon his examination," with the proviso that the confession "is only evidence against the party himself who made the confession, but cannot be made use of as evidence against any others whom on his examination he confessed to be in the treason."), cited in Crawford v. United States, 541 U.S. at 45.

Bruton v. United States addressed instead, again according to the academic view, whether giving a limiting instruction permits courts to admit an out-of-court confession against a declarant-defendant without admitting the confession against a codefendant it implicates.  See Bruton v. United States, 391 U.S. at 124.    That the Supreme Court "granted certiorari to

reconsider <u>Delli Paoli [v. United States</u>, 389 U.S. 818 (1957)]," <u>Bruton v. United States</u>, 391

U.S. at 125, strongly suggests that <u>Bruton v. United States</u> dealt with a limiting-instruction issue

and not a Confrontation Clause issue, because <u>Delli Paoli v. United States</u> does not even mention

the Confrontation Clause.  That case addresses only a limiting instruction's efficacy.  <u>See Delli</u>

<u>Paoli v. United States</u>, 352 U.S. at 259 ("The issue here is whether, under all the circumstances,

the court's instructions to the jury provided petitioner with sufficient protection so that the

admission of Whitley's confession, strictly limited to use against Whitley, constituted reversible

error.").  <u>See also</u> <u>Bruton v. United States</u>, 391 U.S. at 126 ("The basic premise of Delli Paoli

was that it is 'reasonably possible for the jury to follow' sufficiently clear instructions to

disregard the confessor's extrajudicial statement that his codefendant participated with him in

committing the crime." (quoting <u>Delli Paoli v. United States</u>, 352 U.S. at 239)); <u>United States v.</u>

<u>Clark</u>, 717 F.3d 790, 814 (10th Cir. 2013)(stating that "*Bruton* provides the foundation for

affirmative remedial measures -- most notably severance -- upon a proper showing that a co-

defendant's statement offered into evidence would inculpate the defendant," and that "[t]hese

measures are meant to avoid the extrinsic (i.e. collateral) damage to a defendant from the jury's

undue consideration of a co-defendant's facially inculpatory statement -- a factor that the jury

would be highly unlikely to 'disregard' and one that cannot be remedied by a curative

instruction").  <u>Bruton v. United States</u> resolves that disputed issue by holding that "the almost

invariable assumption of the law that jurors follow their instructions" does not apply when a

defendant's confession that implicates codefendants is admitted at a joint trial.  <u>Richardson v.</u>

<u>Marsh</u>, 481 U.S. at 206.  <u>See Bruton v. United States</u>, 391 U.S. at 128 ("Delli Paoli assumed that

this encroachment on the right to confrontation could be avoided by the instruction to the jury to

disregard the inadmissible hearsay evidence.  But, as we have said, that assumption has since

DNM 983

been effectively repudiated." (footnote omitted)).

Bruton v. United States' exception to the general rule that juries can and will obey limiting instructions implicates the Confrontation Clause, because, absent Bruton v. United States, courts could side-step Confrontation Clause issues in joint trials by instructing juries to use one defendants' out-of-court statements against that defendant only and not against codefendants. See Bruton v. United States, 391 U.S. at 126 ("If it were true that the jury disregarded the reference to the codefendant, no question would arise under the Confrontation Clause, because by hypothesis the case is treated as if the confessor made no statement inculpating the nonconfessor."). See also Richardson v. Marsh, 481 U.S. at 206 ("Ordinarily, a witness whose testimony is introduced at a joint trial is not considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against a codefendant."). Bruton v. United States recognizes, however, that "the practical and human limitations of the jury system" render that route around the Confrontation Clause impassible when "the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial." Bruton v. United States, 391 U.S. at 135-36. See Cruz v. New York, 481 U.S. 186, 190 (1987)(Scalia, J.)(reading Bruton v. United States to hold that the principle that "a witness whose testimony is introduced in a joint trial with the limiting instruction that it be used only to assess the guilt of one of the defendants will not be considered to be a witness 'against' the other defendants" does not "validate, under the Confrontation Clause, introduction of a nontestifying codefendant's confession implicating the defendant, with instructions that the jury should disregard the confession insofar as its consideration of the defendant's guilt is concerned"). That roundabout analysis means -- at least in pre-Crawford v. Washington cases -- that "the rule announced in Bruton v. United States . . .

forbids the prosecution to introduce a nontestifying codefendant's confession implicating [another] defendant in the crime."  Greene v. Fisher, 565 U.S. 34 (2011)(Scalia, J.).

The academic view reasons that, after Crawford v. Washington, however, the Confrontation Clause does not police the use of nontestimonial statements, so it no longer matters, for Confrontation Clause purposes, whether limiting instructions restrain how juries use nontestimonial confessions in joint trials.  See Whorton v. Bockting, 549 U.S. at 420 (stating that "the Confrontation Clause has no application to [nontestimonial] statements").  It follows that, notwithstanding Bruton v. United States, permitting the admission of nontestimonial confessions in multiple-defendant trials does not offend the Confrontation Clause, i.e., "the *Bruton* rule, like the Confrontation Clause upon which it is premised, does not apply to nontestimonial hearsay statements."  United States v. Smalls, 605 F.3d at 768 n.2.  See United States v. Clark, 717 F.3d at 816 (concluding that nontestimonial statements "fall outside the protective ambit of the Confrontation Clause and, by extension, *Bruton*.").

In the absence of binding precedent, the Court would agree with the academic view that the Supreme Court's recent Confrontation Clause decisions do not mean that Bruton v. United States is absolutely silent regarding nontestimonial statements.  The Court agrees that Crawford v. Washington's discussion of Roman law, see 541 U.S. at 43, "Marian bail and committal statutes," 541 U.S. at 44, and "the 1603 trial of Sir Walter Raleigh for treason," 541 U.S. at 44, does not impact "the practical and human limitations of the jury system," Bruton v. United States, 391 U.S. at 135, or call Bruton v. United States' rationale into question see Richardson v. Marsh, 481 U.S. at 211 (declaring that "we continue to apply *Bruton* where we have found its rationale validly applies").  Consequently, even though a nontestimonial statement's admissibility is no longer a constitutional issue, see United States v. Smalls, 605 F.3d at 780

DNM 985

("[T]he only question pertinent to the admissibility of a nontestimonial statement is whether it meets the requirements of the Federal Rules of Evidence."), Bruton v. United States' holding -- i.e., a jury may not follow a limiting instruction regarding a defendant's out-of-court statements, so they are admissible only if they are admissible against all the defendants they directly implicate -- should remain good law no matter whether a statement is testimonial until and unless the Supreme Court expressly says otherwise.

If it properly could, the Court would, thus, conclude that Bruton v. United States' language regarding the efficacy of limiting instructions applies no matter whether an evidentiary rule or a constitutional one renders a defendant's out-of-court statement inadmissible against codefendants.[20]   Accordingly, the United States would be forced to: (i) redact Perez' statements that are admissible for their truth solely under rule 801(d)(2)(A) such that they do not directly implicate Sanchez, Baca, or Herrera; (ii) try Perez alongside Sanchez, Baca, and Herrera without

---

[20]The distinction between inadmissibility premised on the Confrontation Clause and inadmissibility premised on the Federal Rules of Evidence would matter on appeal, however, because a different harmless error standard applies to constitutional and nonconstitutional errors. Compare Champan v. California, 386 U.S. 18, 24 (1967)(Black, J.)("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."), with Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)(Rutledge, J.)(concluding, "except perhaps where the departure is from a constitutional norm," that, "if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected").  See United States v. Lane, 474 U.S. 438, 460 (1986)(Brennan, J., concurring in part and dissenting in part)("[C]onstitutional errors are governed by the Due Process Clauses of the Fifth and Fourteenth Amendments rather than by [28 U.S.C.] § 2111 and Rule 52(a).  Thus, the test for harmless constitutional error is stricter than its statutory counterpart."  (citations omitted)).  Harmless error standards are immaterial to the Court's analysis, however, because, while the Defendants are "entitled to a fair trial but not a perfect one," Lutwak v. United States, 344 U.S. 604, 619 (1953)(Minton, J.), the Court is nevertheless duty-bound to strive for an error-free trial just as Sisyphus must push his boulder up the mountain, see Albert Camus, THE MYTH OF SISYPHUS (1942)("One must imagine Sisyphus happy.").

DNM 986

resort to Perez' statements that are admissible for their truth only under rule 801(d)(2)(A) and directly implicate Baca, Herrera, or Sanchez; or (iii) proceed against Perez in a single-defendant trial.

The Court is not, however, free to restrict the United States' case so severely, because it must obey Tenth Circuit precedent stating that Bruton v. United States does not apply to nontestimonial statements.  See, e.g., United States v. Clark, 717 F.3d at 816 (concluding that statements which a coconspirator made in furtherance of the conspiracy are nontestimonial, and therefore "fall outside the protective ambit of the Confrontation Clause and, by extension, *Bruton*"); United States v. Patterson, 713 F.3d at 1247 ("The admission of these two statements violated neither *Crawford* nor *Bruton* because both statements were made in furtherance of a conspiracy and were therefore nontestimonial.").  A careful examination of Tenth Circuit precedent shows that the Tenth Circuit's statements are dicta, because none of them analyzed a defendant statement that was nontestimonial and not admissible, under the Federal Rules of Evidence, against a codefendant which the statement implicated.  The defendant in United States v. Smalls was not convicted in a joint trial.  See 605 F.3d at 768 ("The district court severed the trials of Defendant Smalls and Cook as a result of an out-of-court statement Cook made to a confidential informant (CI), also an inmate at the detention center, implicating both himself and Defendant Smalls in the murder.").  Further, the nontestimonial statements at issue in United States v. Smalls were admissible for their truth as declarations against interest by an unavailable declarant no matter against whom those statements were offered.  See 605 F.3d at 785-86 (applying rule 804(3) of the Federal Rules of Evidence).  On the other hand, a coconspirator made the out-of-court statements at issue in United States v. Clark and United States v. Patterson in furtherance of the conspiracy, which rendered them both nontestimonial and admissible --

under rule 801(d)(2)(E) -- for their truth against all the defendants they implicated.  See United States v. Clark, 717 F.3d at 816; United States v. Patterson, 713 F.3d at 1247.

If the issue comes squarely before it, perhaps via an appeal taken by the Defendants in this case, the Tenth Circuit may decide that the Court took United States v. Clark, United States v. Patterson, and United States v. Smalls too literally, and instead apply Supreme Court precedent to limit their unnecessarily overbroad pronouncements regarding the application of Bruton v. United States to nontestimonial statements.  See EEOC v. BCI Coca-Cola Bottling Co., 450 F.3d 476, 488 (10th Cir. 2006)("[T]he district court in this case seems to have taken the 'rubber stamp' metaphor too literally, requiring that an explicit recommendation must cross the desk of the decisionmaker . . . ."); English v. Colo. Dep't of Corrections, 248 F.3d 1002, 1011 (10th Cir. 2001)(Ebel, J.)(stating that a plaintiff can recover on a rubber-stamp theory only if "'the decisionmaker followed [a] biased recommendation . . . without independently investigating the complaint against the employee'" (quoting Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1332 (11th Cir. 1999)).  Unless the Tenth Circuit does so, however, the Court must obey those pronouncements:

> [J]urisdiction is about *who* gets to decide.  It's about choosing the group of people who get to choose the judges, to write the rules of procedure and evidence, to supply the jury -- that is, to dispose of "all [the defendants'] worldly goods," and often their liberty to boot.  In particular, because jurisdiction includes the power to come to the *wrong* judgment, it's about choosing the people who have power to make the *wrong* choices on all these counts and who have the right to see their choices enforced anyway.

Stephen E. Sachs, Pennoyer Was Right, 95 TEXAS L. REV. 1249, 1324 (2017)(emphasis and second alteration in the original)(footnotes omitted)(quoting Burnham v. Superior Court, 495 495 U.S. 604, 623 (1990)(Scalia, J., plurality opinion)).

The Court's preferred reading of Bruton v. United States, i.e. as a limiting instruction case and not just as a direct application of the Confrontation Clause, is importantly different from

- 115 -

Sanchez' argument that "*Jackson* [v. Denno, 378 U.S. 368 (1964)] and *Bruton* clearly recognize that a criminal defendant has a Due Process right not to be convicted with inadmissible evidence." Sanchez MIL at 20. Both state and federal courts must observe due process of law, see U.S. Const. amends. V, XIV § 1, so, if Sanchez' argument rooting Bruton v. United States in due process is correct, then neither state nor federal courts can depart from that case's determination that admitting "the powerfully incriminating extrajudicial statements of a codefendant" creates a "risk that the jury will not, or cannot, follow instructions [that] is so great . . . that the practical and human limitations of the jury system cannot be ignored." Bruton v. United States, 391 U.S. at 135.

Contrary to Sanchez' argument, however, the Constitution permits state courts to admit one defendant's out-of-court statement implicating a codefendant -- even when the statement is "hearsay as to the latter, and therefore inadmissible against him under state evidence law" -- if the declarant-defendant testifies. Nelson v. O'Neil, 402 U.S. 622, 626 (1971)(Stewart, J.). But see Roberts v. Russel, 392 U.S. 293, 293-94 (1968)(concluding that state courts cannot admit a defendant's out-of-court statements that implicate a codefendant if the declarant-defendant does not testify).[21] The Supreme Court rejected the proposition that "the Federal Constitution forbids the States to assume that juries can follow instructions that tell them to wipe their minds of highly damaging, incriminating admissions of one defendant that simultaneously incriminate

---

[21]Roberts v. Russel and Nelson v. O'Neil and can be reconciled no matter whether Bruton v. United States is a Confrontation Clause case or a limiting-instruction case. If Bruton v. United States is a Confrontation Clause case, it would create problems in Roberts v. Russel and not Nelson v. O'Neil, because the declarant-defendant did not testify in Roberts v. Russel. See Roberts v. Russel, 392 U.S. at 293-94; Nelson v. O'Neil, 402 U.S. at 626-27. If Bruton v. United States is, instead, a limiting-instruction case, it would raise problems in Roberts v. Russel and not Nelson v. O'Neil, because federal law determined whether a limiting instruction cured Roberts v. Russel's Confrontation Clause problem while state law determined whether a limiting instruction cured Nelson v. O'Neil's state-law hearsay problem.

another defendant." Nelson v. O'Neil, 402 U.S. at 634 (Brennan, J., dissenting). Nelson v. O'Neil instead permits states, in crafting evidentiary rules, to depart from the federal "rule that juries are presumed to follow their instructions" and Bruton v. United States' exception to that rule. Richardson v. Marsh, 481 U.S. at 211. See Nelson v. O'Neil, 391 U.S. at 211. Consequently, "due process of law," U.S. Const. amend. XIV § 1, does not incorporate that federal rule.

## VI.  THE COURT MAKES THE FOLLOWING DETERMINATIONS REGARDING STATEMENTS THAT THE DEFENDANTS HAVE NOT SPECIFICALLY IDENTIFIED AS OBJECTIONABLE.

The Court applies its evidentiary analysis to particular statements that the United States presented during the Court's James hearing.  In the following table, the Court designates statements by both declarant and transcript citation.  That table also contains the Court's conclusions.

| Declarant(s) | Citation | The Court's Conclusions |
|---|---|---|
| Baca | Nov. 27 Tr. at 147:8-16 | Nontestimonial; rule 801(d)(2)(E) applies as against Counts 6-7 Defendants |
| Calbert and Baca | Nov. 27 Tr. at 149:17-21 | Nontestimonial; rule 801(d)(2)(E) applies as against Counts 6-7 Defendants |
| Baca | Nov. 27 Tr. at 149:17-21 | Nontestimonial; rule 801(d)(2)(E) applies as against Counts 6-7 Defendants |
| M. Rodriguez and T. Martinez | Nov. 27 Tr. at 150:11-20 | Nontestimonial; rule 801(d)(2)(E) applies as against Counts 6-7 Defendants |
| T. Martinez | Nov. 27 Tr. at 150:11-20 | Nontestimonial; rule 801(d)(2)(E) applies as against Counts 6-7 Defendants |
| Herrera | Nov. 27 Tr. at 151:1-13 | Nontestimonial; rule 801(d)(2)(A) applies as against Herrera; the Court will give a limiting instruction as to Sanchez, Baca, and Perez |
| M. Rodriguez | Nov. 27 Tr. at 152:8-24 | Nontestimonial |
| Sanchez | Nov. 27 Tr. at 153:6-10 | Nontestimonial; rule 801(d)(2)(A) applies as against Sanchez; rule 803(3) applies generally |
| Gomez | Nov. 27 Tr. at 153:19-154:5 | Nontestimonial; rule 801(d)(2)(E) applies as to Count 8 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |

DNM 990

| | | |
|---|---|---|
| Baca | Nov. 27 Tr. at 153:19-154:5 | Nontestimonial; rule 801(d)(2)(E) applies as to Count 8 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| M. Rodriguez | Nov. 27 Tr. at 155:19-159:2 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 6-7 Defendants |
| M. Rodriguez | Nov. 27 Tr. at 159:10-160:5 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 6-7 Defendants |
| M. Rodriguez | Nov. 27 Tr. at 160:6-161:4 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 6-7 Defendants |
| Sanchez | Nov. 27 Tr. at 160:6-161:4 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 6-7 Defendants |
| Sanchez | Nov. 27 Tr. at 161:5-162:13 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 6-7 Defendants |
| M. Rodriguez | Nov. 27 Tr. at 162:14-163:25 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 6-7 Defendants |
| Sanchez | Nov. 27 Tr. at 164:4-14 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 6-7 Defendants |
| Baca | Nov. 27 Tr. at 164:23-165:16 | Nontestimonial; rule 801(d)(2)(A) applies as to Baca; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Gomez | Nov. 27 Tr. at 164:23-165:16 | Nontestimonial |
| Baca | Nov. 27 Tr. at 167:5-18 | Nontestimonial; rule 801(d)(2)(A) applies as to Baca; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| C. Garcia | Nov. 27 Tr. at 167:19-169:6 | Nontestimonial; rule 801(d)(2)(E) applies as to Count 9-10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Baca | Nov. 27 Tr. at 167:19-169:6 | Nontestimonial; rule 801(d)(2)(E) applies as to Count 9-10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Sanchez | Nov. 28 Tr. at 40:23-41:8 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 6-7 Defendants |
| R. Martinez | Nov. 28 Tr. at 41:14-20 | Nontestimonial |
| Sanchez | Nov. 28 Tr. at 42:1-14 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 6-7 Defendants |
| Herrera | Nov. 28 Tr. at 42:15-21 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 6-7 Defendants |
| Sanchez | Nov. 28 Tr. at 42:22-43:14 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 6-7 Defendants |
| Perez | Nov. 28 Tr. at 43:9-14 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 6-7 Defendants |

DNM 991

| T. Martinez | Nov. 28 Tr. at 43:15-44:15 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 6-7 Defendants |
| M. Rodriguez | Nov. 28 Tr. at 43:15-44:15 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 6-7 Defendants |
| M. Rodriguez | Nov. 28 Tr. at 45:5-8 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 6-7 Defendants |
| Montoya | Nov. 28 Tr. at 45:12-15 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 6-7 Defendants |
| Sanchez | Nov. 28 Tr. at 45:15-20 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 6-7 Defendants |
| M. Rodriguez | Nov. 28 Tr. at 45:22-46:4 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 6-7 Defendants |
| Montoya | Nov. 28 Tr. at 46:5-6 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 6-7 Defendants |
| M. Rodriguez | Nov. 28 Tr. at 46:6-9 | Nontestimonial |
| Molina | Nov. 28 Tr. at 46:6-9 | Nontestimonial; rule 804(b)(2) applies |
| M. Rodriguez | Nov. 28 Tr. at 46:10-15 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 6-7 Defendants |
| Herrera | Nov. 28 Tr. at 46:10-15 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 6-7 Defendants |
| R.P. Martinez | Nov. 29 Tr. at 229:16-230:4 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 9-10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| R.P. Martinez | Nov. Tr. at 230:6-19 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 9-10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| R.P. Martinez | Nov. 29 Tr. at 230:22-232:14 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 9-10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| R. Martinez | Nov. 29 Tr. at 232:15-233:7 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 9-10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| R. Martinez | Nov. 29 Tr. at 233:7-24 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 9-10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Baca | Nov. 29 Tr. at 233:25-234:19 | Nontestimonial; rule 801(d)(2)(A) applies as to Baca; rule 803(3) applies generally |
| Baca | Nov. 29 Tr. at 234:19-25 | Nontestimonial; rule 801(d)(2)(A) applies as to Baca; the court will give a limiting instruction as to Sanchez, Herrera, and Perez |

| | | |
|---|---|---|
| Baca | Nov. 29 Tr. at 236:21-237:5 | Nontestimonial; rule 801(d)(2)(A) applies as to Baca; rule 803(3) applies generally |
| Baca | Nov. 29 Tr. at 237:15-25 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 9-10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| R. Martinez | Nov. 29 Tr. at 237:15-25 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 9-10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Baca | Nov. 29 Tr. at 238:3-11 | Nontestimonial; rule 801(d)(2)(A) applies as to Baca; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Montoya | Nov. 29 Tr. at 238:3-11 | Nontestimonial |
| Baca | Nov. 29 Tr. at 238:25-239:3 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 9-10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Baca | Nov. 29 Tr. at 239:3-8 | Nontestimonial; rule 801(d)(2)(A) applies as to Baca; rule 803(3) applies generally |
| Baca | Nov. 29 Tr. at 239:18-240:3 | Nontestimonial; rule 801(d)(2)(A) applies as to Baca; rule 803(3) applies generally |
| Baca | Nov. 29 Tr. at 240:10-15 | Nontestimonial; rule 801(d)(2)(E) applies as to Count 9 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Baca | Nov. 29 Tr. at 240:15-21 | Nontestimonial; rule 801(d)(2)(A) applies as to Baca; rule 803(3) applies generally |
| Baca | Nov. 29 Tr. at 241:3-4 | Nontestimonial; rule 801(d)(2)(E) applies as to Count 10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Baca | Nov. 29 Tr. at 241:19-21 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 9-10; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Baca | Nov. 29 Tr. at 242:11-25 | Nontestimonial; rule 801(d)(2)(E) applies as to Count 9 Defendants; the Court will give a limiting instruction as to the other Defendants |
| Baca | Nov. 29 Tr. at 243:3-18 | Nontestimonial; rule 801(d)(2)(E) applies as to Count 9 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Baca | Nov. 29 Tr.at 243:24-244:7 | Nontestimonial; rule 801(d)(2)(E) applies as to Count 9 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |

DNM 993

| Baca | Nov. 29 Tr. at 244:10-11 | Nontestimonial; rule 801(d)(2)(A) applies as to Baca; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
|---|---|---|
| Baca | Nov. 29 Tr. at 244:25-245:5 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 9-10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Baca | Nov. 29 Tr. at 245:12-17 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 9-10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Baca | Nov. 29 Tr. at 245:24-246:9 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 9-10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Baca | Nov. 29 Tr. at 247:15-25 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Baca | Nov. 29 Tr. at 248:3-7 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 9-10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Baca | Nov. 29 Tr. at 248:16-19 | Nontestimonial; rule 801(d)(2)(A) applies as to Baca; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Baca | Nov. 29 Tr. at 249:5-12 | Nontestimonial; rule 801(d)(2)(A) applies as to Baca; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Baca | Nov. 29 Tr. at 250:3-5 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 9-10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Baca | Nov. 29 Tr. at 250:11-21 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 9-10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| C. Garcia | Nov. 29 Tr. at 250:11-21 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 9-10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Baca | Nov. 29 Tr. at 250:25-251:3 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 9-10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| C. Garcia | Nov. 29 Tr. at 250:25- | Nontestimonial; rule 801(d)(2)(E) applies as to |

DNM 994

| | 251:3 | Counts 9-10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
|---|---|---|
| Baca | Nov.29 Tr. at 251:8-17 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 9-10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Baca | Nov. 29 Tr. at 252:14-21 | Nontestimonial; rule 801(d)(2)(A) applies as to Baca; rule 803(3) applies generally |
| Baca | Nov. 29 Tr. at 256:17-25 | Nontestimonial; rule 801(d)(2)(A) applies as to Baca; rule 803(3) applies generally |
| Baca | Nov. 29 Tr. at 257:7-11 | Nontestimonial; rule 801(d)(2)(A) applies as to Baca; rule 803(3) applies generally |
| Baca | Nov. 29 Tr. at 257:13-14 | Nontestimonial; rule 801(d)(2)(A) applies as to Baca; rule 803(3) applies generally |
| Baca | Nov. 29 Tr. at 257:15-16 | Nontestimonial; rule 801(d)(2)(A) applies as to Baca; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Baca | Nov. 29 Tr. at 257:17-18 | Nontestimonial; rule 801(d)(2)(A) applies as to Baca; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Baca | Nov. 29 Tr. at 257:19-21 | Nontestimonial; rule 801(d)(2)(A) applies as to Baca; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Duran | Nov. 29 Tr. at 257:20-21 | Nontestimonial |
| M. Rodriguez | Nov. 29 Tr. at 257:20-21 | Nontestimonial; rule 803(3) applies |
| Baca | Nov. 29 Tr. at 257:21-22 | Nontestimonial; rule 801(d)(2)(A) applies as to Baca; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Baca | Nov. 29 Tr. at 257:25 | Nontestimonial; rule 801(d)(2)(A) applies as to Baca; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| M Rodriguez | Nov. 29 Tr. at 257:25 | Nontestimonial |
| Baca | Nov. 29 Tr. at 258:12-20 | Nontestimonial; rule 801(d)(2)(A) applies as to Baca; rule 803(3) applies generally |
| Baca | Nov. 29 Tr. at 259:1-4 | Nontestimonial; rule 801(d)(2)(A) applies as to Baca; rule 803(3) applies generally |
| C. Garcia | Nov. 29 Tr. at 261:7-13; James Hearing Exhibit 26[22] | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 9-10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and |

---

[22]The United States indicated at the November 29, 2017 hearing that it would highlight, via Acee's testimony, portions of James Hearing Exhibit 26, "a transcript from a body wire that

|  |  | Perez |
| --- | --- | --- |
| Parker | Nov. 29 Tr. at 262:1-4 | Nontestimonial; rule 801(d)(2)(E) applies as to Counts 9-10 Defendants; the Court will give a limiting instruction as to Sanchez, Herrera, and Perez |
| Montoya | Nov 29 Tr. at 262:8-263:4 | Testimonial[23] |

**IT IS ORDERED** that: (i) Defendant Santos Gonzales' Motion for Production of Alleged Co-Conspirator Statements, Pre-Trial Hearing on Their Admissibility Pursuant to Fed.R.Evid. 801(d)(2)(E), filed May 9, 2017 (Doc. 1141), is granted; (ii) Defendant Rudy Perez's Motion for Production of Alleged Co-Conspirator Statements and for Pre-Trial Hearing on Their Admissibility, filed August 21, 2017 (Doc. 1228), is granted; (iii) the Opposed Motion for Specification of Co-Conspirator Statements and a Pre-Trial Hearing on the Statements' Admissibility, filed October 6, 2017 (Doc. 1303), is granted in part and denied in part; (iv) Motion to Prevent the Admission of Statements of Non-Testifying Codefendants Implicating Defendant Billy Garcia and for an Order for the Government to Specify Such Statements Prior to Trial, filed October 10, 2017 (Doc. 1307), is granted in part and denied in part; (v) Motion for James Hearing and Determination of Co-Conspirator Statements Admissibility at a Pre-Trial Hearing, filed October 13, 2017)(Doc. 1317), is granted; (vi) Defendant Shauna Gutierrez' Opposed Motion for a James Hearing, filed October 13, 2017 (Doc. 1321), is granted; (vii) Motion in Limine to Exclude Statement of Cooperating Government Witnesses, filed

---

Mario wore when he went to Chris Garcia's house to pick up the firearm," Nov. 29 Tr. at 260:9-11 (Acee), but it added, "I'm actually moving in the entire conversation as part of the co-conspirator statements," Nov. 29 Tr. at 260:13-15 (Castellano).

    [23]When Montoya made this statement, he was acting as confidential human source, and he was wearing a wire. See Nov. 29 Tr. at 260:2-11 (Acee). Accordingly, his statement was not made in furtherance of the conspiracy -- because Montoya, as a confidential human source -- was actively working to thwart the conspiracy. That Montoya was wearing a wire indicates that Montoya would reasonably expect his recorded statements to be introduced as evidence at a trial, so those statements are testimonial.

DNM 996

November 30, 2017 (Doc. 1514), is granted in part and denied in part; (viii) Opposed Motion in Limine to Exclude Co-Defendant's [sic] Statements, filed December 1, 2017 (Doc. 1517), is denied; (ix) Defendant Anthony Ray Baca's Motion in Limine to Prohibit the Government From Questioning Jerry Armenta About Defendant Anthony Ray Baca's Involvement in Counts 6 & 7, filed December 4, 2017 (Doc. 1540), is denied; (x) Defendant Daniel Sanchez's Motion in Limine to Preclude the Admission of Un-Confronted, Out of Court Statements Proffered by the Government at the *James* Hearing, filed January 8, 2018 (Doc. 1616), is denied; and (xi) the Joint Motion to Renew Motion to Sever Defendants Charged with Offenses in Counts 6 and 7, filed January 21, 2018 (Doc. 1664), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
  United States Attorney
Maria Ysabel Armijo
Randy M. Castellano
Matthew Beck
  Assistant United States Attorneys
United States Attorney's Office
Las Cruces, New Mexico

   *Attorneys for the Plaintiff*

Richard Sindel
Sindel, Sindel & Noble, P.C.
Clayton, Missouri

--and--

Brock Benjamin
Benjamin Law Firm
El Paso, Texas

   *Attorneys for Defendant Joe Lawrence Gallegos*

- 124 -

Patrick J. Burke
Patrick J. Burke, P.C.
Denver, Colorado

--and--

Cori Ann Harbour-Valdez
The Harbour Law Firm, P.C.
El Paso, Texas

     *Attorneys for Defendant Edward Troup*

Russel Dean Clark
Las Cruces, New Mexico

     *Attorney for Defendant Leonard Lujan*

James A. Castle
Castle & Castle, P.C.
Denver, Colorado

--and--

Robert R. Cooper
Albuquerque, New Mexico

     *Attorneys for Defendant Billy Garcia*

Douglas E. Couleur
Douglas E. Couleur, P.A.
Santa Fe, New Mexico

     *Attorneys for Defendant Eugene Martinez*
Phillip A. Linder
The Linder Firm
Dallas, Texas

--and--

Jeffrey C. Lahann
Las Cruces, New Mexico

     *Attorneys for Defendant Allen Patterson*

DNM 998

John L. Granberg
Granberg Law Office
El Paso, Texas

--and--

Orlando Mondragon
El Paso, Texas

    *Attorneys for Defendant Christopher Chavez*

Nathan D. Chambers
Nathan D. Chambers, LLC
Denver Colorado

--and--

Noel Orquiz
Deming, New Mexico

    *Attorneys for Defendant Javier Alonso*

Scott Moran Davidson
Albuquerque, New Mexico

--and--

Billy R. Blackburn
Albuquerque, New Mexico

    *Attorneys for Defendant Arturo Arnulfo Garcia*

Stephen E. Hosford
Stephen E. Hosford, P.C.
Arrey, New Mexico

--and--

Jerry Daniel Herrera
Albuquerque, New Mexico

    *Attorneys for Defendant Benjamin Clark*

Pedro Pineda
Las Cruces, New Mexico

    *Attorney for Defendant Ruben Hernandez*

DNM 999

Gary Mitchell
Mitchell Law Office
Ruidoso, New Mexico

    *Attorney for Defendant Jerry Armenta*

Larry A. Hammond
Osborn Maledon, P.A.
Phoenix, Arizona

--and--

Margaret Strickland
McGraw & Strickland
Las Cruces, New Mexico

    *Attorneys for Defendant Jerry Montoya*

Steven M. Potolsky
Jacksonville Beach, Florida

--and--

Santiago D. Hernandez
Law Office of Santiago D. Hernandez
El Paso, Texas

    *Attorneys for Defendant Mario Rodriguez*

Jacqueline K. Walsh
Walsh & Larranaga
Seattle, Washington

--and

Ray Velarde
El Paso, Texas

    *Attorneys for Defendant Timothy Martinez*

Joe Spencer
El Paso, Texas

--and--

Mary Stillinger
El Paso, Texas

    *Attorneys for Defendant Mauricio Varela*

Amy E. Jacks
Law Office of Amy E. Jacks
Los Angeles, California

--and--

Richard Jewkes
El Paso, Texas

    *Attorneys for Defendant Daniel Sanchez*

George A. Harrison
Las Cruces, New Mexico

    *Attorney for Defendant Gerald Archuleta*

B.J. Crow
Crow Law Firm
Roswell, New Mexico

    *Attorney for Defendant Conrad Villegas*

Theresa M. Duncan
Duncan, Earnest, LLC
Albuquerque, New Mexico

--and--

Marc M. Lowry
Rothstein Donatelli, LLP
Albuquerque, New Mexico

    *Attorneys for Defendant Anthony Ray Baca*

Charles J. McElhinney
McElhinney Law Firm, LLC
Las Cruces, New Mexico

    *Attorney for Defendant Robert Martinez*

DNM 1001

Marcia J. Milner
Las Cruces, New Mexico

     *Attorney for Defendant Roy Paul Martinez*

Christopher W. Adams
Charleston, South Carolina

--and--

Amy Sirignano
Law Office of Amy Sirignano, P.C.
Albuquerque, New Mexico

     *Attorneys for Defendant Christopher Garcia*

William R. Maynard
El Paso, Texas

--and--

Carey Corlew Bhalla
Law Office of Carey C. Bhalla, LLC
Albuquerque, New Mexico

     *Attorneys for Defendant Carlos Herrera*

Justine Fox-Young
Albuquerque, New Mexico

--and--

Ryan J. Villa
Albuquerque, New Mexico

     *Attorneys for Defendant Rudy Perez*

Lisa Torraco
Albuquerque, New Mexico

--and--

Donavon A. Roberts
Albuquerque, New Mexico

     *Attorneys for Defendant Andrew Gallegos*

Erlinda O. Johnson
Law Office of Erlinda Ocampo Johnson, LLC
Albuquerque, New Mexico

*Attorneys for Defendant Santos Gonzalez*

Angela Arellanes
Albuquerque, New Mexico

*Attorneys for Defendant Shauna Gutierrez*

Jerry A. Walz
Walz and Associates
Albuquerque, New Mexico

*Attorneys for Defendant Brandy Rodriguez*

DNM 1003

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 15-4268 JB |
| | ) | |
| vs. | ) | |
| | ) | |
| **ANGEL DELEON, et. al.,** | ) | |
| | ) | |
| Defendants. | ) | |

### UNITED STATES' RESPONSE TO MOTION TO EXCLUDE TESTIMONY FROM GOVERNMENT'S GANG EXPERTS AS OUTLINED IN THE UNITED STATES' SUPPLEMENTAL NOTICE OF GANG EXPERT WITNESSES' TESTIMONY [DOC. 1671]

Defendant Daniel Sanchez filed his Motion To Compel The Government To Comply With Rule 16 In Noticing Its Intent To Rely On Gang Expert Witness Testimony Or, In The Alternative, To Exclude The Government's Gang Expert Witnesses Altogether [Doc. 1671] ("Motion to Exclude") moving the Court to "exclude the government's gang experts." Motion to Exclude at 1.   Defendants tout Rule 16 of the Federal Rules of Criminal Procedure as a bases for the excluded the experts but fail to root their position in fact or support it with case law. Because these law-enforcement gang experts are testifying based on their experience, and not, like a medical or scientific expert, based on review of any hearsay-type documents, Rule 16 doesn't require a disclosure of "training manuals, debriefs, or other materials that these proffered experts are relying on to render their opinion."   Motion to Exclude at 2.   Rather, the rule's language requires a written summary of the expert's opinions, the bases and reasons for the opinions, and the qualifications. And commentary and case law that discusses this rule makes clear that, in the criminal context, as opposed to the civil context, the United States' Expert

Notice meets Rule 16's requirements. Moreover, to the extent that the Court concludes that the Expert Notice is somehow deficient, which it should not, case law supports that the Court should provide the United States time to comply, or impose a much lesser sanction than exclusion. For these reasons, the Court should deny the Motion to Exclude.

## **BACKGROUND**

The Indictment in this case charged these defendants with violent crimes in aid of racketeering (VICAR), including charges that, in relation to the defendants' membership in or association with the SNM prison gang, they conspired on several murders and assaults. Because they are charged with VICAR, in addition to proving that these acts were committed, the United States must prove that an enterprise existed at the time and were related to the enterprise. *See* 18 U.S.C. § 1959; *United States v. Smith*, 413 F.3d 1253, 1277 (10th Cir. 2005), *overruled on other grounds by United States v. Hutchinson*, 573 F.3d 1011, 1021 (10th Cir. 2009).

To meet its burden, the United States provided the defendants notice that it "intends to call Ronald Martin, Chris Cupit and Sergio Sapien of the New Mexico Corrections Department Security Threat Intelligence Unit as expert witnesses in the means and methods of operations of prison gangs." United States' Supplemental Notice of Gang Expert Witnesses' Testimony [Doc 1656] ("Expert Notice") at 2.

In relation to all three experts' opinions, the United States noticed that it expects that they will testify to opinions regarding, among other things, the purpose and structure of prison gangs, the rules of prison gangs, the methods of prison gangs' communication, prison gang tattoos, and prison gang membership norms. *See* Memorandum re Prison Gang Information [Doc. 1656-1] ("Report"). Additionally, the United States provided the defendants a written summary of the opinions that all of the gang experts may testify to, including their opinions about those topics.

2

*See id.*

Each expert witness bases his expert opinions on years of experience in the New Mexico Corrections Department's Security Threat Intelligence Unit, which is the unit responsible for classifying and monitoring prison gangs within the corrections department. Each of these witnesses base their opinions on their experience with New Mexico prison gangs throughout that time in the unit, as well as their additional time with NMCD. *Id.* Additionally, each of these witnesses base their opinions on drug-trafficking investigations inside and outside of the facilities, intelligence-gathering activities, prison security threat and risk assessments towards staff, inmates and the public, and internal security investigations. *See id.* at 7, 8, 9.

The United States also previously provided the defendants with a written summary of these experts qualifications, including the years in which they worked with NMCD, and that they've been recognized as experts in, and presented lectures and seminars within, the prison-gang field. The United States provided Defendants with curricula vitae for these experts.

Given this written summary of these gang expert witnesses' opinions, bases of those opinions, and their qualifications, the Court properly should deny the Motion to Exclude.

## **RELEVANT LAW**

Rule 16 of the Federal Rule of Criminal Procedure provides in relevant part:

**Expert witnesses.**—At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. If the government requests discovery under subdivision (b)(1)(C)(ii) and the defendant complies, the government must, at the defendant's request, give to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial on the issue of the defendant's mental condition. The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

DNM 1006

Fed. R. Crim. P. 16(a)(1)(G). This Court pointed out: "'It is not clear how much detail must be provided to satisfy this provision.'" *United States v. Goxcon-Chagal*, 886 F. Supp. 2d 1222, 1253 (D.N.M. 2012) (Browning, J.) (quoting 25 J. Moore, *Moore's Federal Practice* § 616.05[3], at 616–65 (3d ed. 2012)). Nevertheless, this Court recognized that, in the context of experiential expert witness -- or, as one court classified it, "'skilled witness[es],'" *United States v. Mejia*, 545 F.3d 179, 189 (2d Cir. 2008) -- a simple one-paragraph notice explaining the area of the expected testimony and that the testimony will be based on the law enforcement officers' "'years of training and experience in the area'" of the testimony is sufficient, "'although barely.'" *Goxcon-Chagal*, 886 F. Supp. 2d at 1253 (quoting *United States v. Jackson*, 51 F.3d 646, 651 (7th Cir.1995)).

The Advisory Committee Notes to the 1993 Amendment of Rule 16, in which amendment the expert notice requirements, including the requirements for written reports and bases of opinions, were first codified, provides guidance for what notice may be required. The Federal Criminal Rules Advisory Committee explains, in relation to a written summary of the opinion, that, in some instances, simply "a generic description of the likely witness and that witness's qualifications may be sufficient, e.g., where a DEA laboratory chemist will testify, but it is not clear which particular chemist will be available." Fed. R. Crim. P. 16, advisory committee notes to 1993 Amendment.

Likewise, federal courts uphold simple notices that comply with Rule 16 by providing the witness's opinions, the reasons and bases of those opinions, and their qualifications. *See, e.g.*, *United States v. Jackson*, 51 F.3d 646, 651 (7th Cir. 1995) (cited in *United States v. Rodriguez*, 125 F. Supp. 3d 1216, 1254 (D.N.M. 2015) (Browning, J.) (expert notice complied with Rule 16's expert notice requirements where, in the Seventh Circuit's words, it "notified the defendants

4

that the witnesses were of the opinion that certain paraphernalia and profile evidence were

frequently linked to the sale of narcotics," and provided as the reasons "that the witnesses would

be testifying from years of experience as narcotics agents").

In the Tenth Circuit, the Honorable Michael W. McConnell explained the differences

between the requirements of an expert notice in the context of the Federal Rules of Civil

Procedure, and the requirements here, in the context of the Federal Rules of Criminal Procedure.

His explanation makes clear that, here in the federal context, parties are not required to produce

to the opposing parting a separate, detailed written summary of the witness's opinions:

> Rule 16 of the Federal Rules of Criminal Procedure creates an exception to the
> usual rule that defendants need not provide notice of their intention to offer expert
> witnesses. Under Rule 16(b), if the defendant requests disclosure of certain
> evidence and the government complies, the defendant becomes obligated to make
> certain disclosures in return. Specifically, if the defendant requests and receives a
> written summary of any expert testimony the government intends to introduce, the
> defendant must provide a similar notice of any testimony he intends to offer. These
> written summaries must include a description of the witness's opinions, the bases
> and reasons for those opinions, and the witness's qualifications. The required
> "written summary," however falls far short of the "complete statement" required
> of litigants in civil cases. *In particular, Rule 16 does not require experts in
> criminal cases to provide written reports explaining their opinions or to make a
> written proffer containing the information required under the civil rules.*

*United States v. Nacchio*, 555 F.3d 1234, 1259-1262 (10th Cir. 2009) (McConnell, J. dissenting)

(emphasis added) (internal citations omitted). Judge McConnell points out that the civil

procedural rules, unlike the criminal procedural rules, require a "'complete statement'" of the

expert witness's opinions and their bases:

> [A]ny party who wishes to use a retained expert must give the opposing party in
> advance of trial a written expert report . . . containing a "complete statement" of
> the witness's opinions   and the "basis and reasons for them"; all data, other
> information, and exhibits on which the testimony is based; and the witness's
> qualifications, publications, previous testimony, and compensation statement.

*Nacchio*, 555 F.3d at 1260 (McConnell, J. dissenting) (quoting Fed. R. Civ. P. 26(a)(2).

The Tenth Circuit recognized that, if a party fails to comply with Rule 16, there are a myriad of sanctions that a Court may impose, and that exclusion of the expert witness's testimony is a sanction that should almost never be imposed:

> If a party fails to comply with Rule 16, the court may order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; grant a continuance; prohibit that party from introducing the undisclosed evidence; or enter any other order that is just under the circumstances. This court has held that it would be "a rare case where, absent bad faith, a district court should exclude evidence rather than continue the proceedings." We have noted that the sanction of exclusion of a witness's expert testimony is "almost never imposed 'in the absence of a constitutional violation or statutory authority for such exclusion.'"

*United States v. Sarracino*, 340 F.3d 1148, 1170 (10th Cir. 2003) (quoting *United States v. Golyansky*, 291 F.3d 1245, 1249 (10th Cir. 2002); *United States v. Charley*, 189 F.3d 1251, 1262 (10th Cir. 1999)) (citing Fed. R. Crim. P. 16(d)(2)(A)-(D)). To determine the proper sanction, the Tenth Circuit directs district courts to consider: "(1) the reasons the government delayed producing requested materials, including whether the government acted in bad faith; (2) the extent of prejudice to the defendant as a result of the delay; and (3) the feasibility of curing any prejudice with a continuance." *Id.* (citing *Golyansky*, 291 F.3d at 1249).

## **ARGUMENT**

### A. The United States' written supplemental notice of gang experts' testimony and other previous disclosures satisfies the requirements under Rule 16.

The defendants' misguided interpretation of Rule 16(a)(1)(G) and Rule 16(a)(1)(E) are the bases given for their request of "training manuals, debriefs, or other material" and "facts and data these experts rely upon."   Defendants provide no other legal authority in support of this broad request.   The expert notices have been litigated in this case, and the Report provided in this case complies with the Court's previous rulings for the permissible scope of gang expert

testimony in this case.

This Court pointed out that, in relation to law enforcement type expert opinions such as

those Sergeant Martin, Officer Cupit, and Captain Sapien may offer, a bare-bones written

summary, much shorter than that the United States provided here, is "'sufficient'":

> The Seventh Circuit found the following summary of expert testimony sufficient, "although barely," when the government planned to present evidence regarding a drug courier profile:
>
>> In response to your Request for Written Summary of the Government's Proposed Expert Testimony dated December 3, 1993, please be advised that Officers Emmit C. Carney, Jerry Cheung, and R.J. Kenney may testify at trial concerning the use of beepers, firearms, walkie-talkies, and Western Union wire transfers in connection with the sale of narcotics. In addition, each of these officers may testify that narcotics traffickers often secure locations such as houses or apartments to serve as a base for dealing narcotics. Each of these police officers will base their testimony on their years of training and experience in the area of drug investigations.
>
> *United States v. Jackson,* 51 F.3d 646, 651 (7th Cir.1995). The Seventh Circuit elaborated that in "cases involving technical or scientific evidence," there may be a "greater disclosure" obligation, "including written and oral reports, tests, investigations, and any other information that may be recognized as a legitimate basis for an opinion under Fed.R.Evid. 703." *United States v. Jackson,* 51 F.3d at 651 (citing Fed.R.Crim.P. 16(a)(1)(E) advisory committee's note).

*Goxcon-Chagal,* 886 F. Supp. 2d at 1253.

The United States' Expert Notice and Report meet Rule 16(a)(1)(G) requirements. Given

the depth of the written summaries provided, in contrast to those that the Advisory Rules

Committee and courts recognize are sufficient, the Court properly should deny the defendants

Motion to Exclude.

DNM 1010

**B.  The Court should not exclude the witnesses' testimony, but, if the Court somehow finds the Expert Notice insufficient under Rule 16, should simply order the United States to produce what the Court views as a sufficient written summary.**

The Court properly should conclude that the written summary in the expert notice complies with Rule 16's requirements, and complies with the Court's rulings on the permissible scope of gang experts' testimony in this case particularly. But if the Court concludes otherwise, then the Court should order to rewrite its written summary to comply with the Court's view of Rule 16's written requirements.

The Tenth Circuit holds that "it would be 'a rare case where, absent bad faith, a district court should exclude evidence rather than continue the proceedings.'" *Sarracino*, 340 F.3d at 1170 (citations omitted). Here, there is no bad faith on the government's behalf. Rather, the 10-page written summary of the experts' expected testimony, opinions, bases thereof, and their qualifications, evidence the United States' good-faith compliance with Rule 16. *Accord Goxcon-Chagal*, 886 F. Supp. 2d at 1253; *Jackson*, 51 F.3d at 651.

These disclosures have been available for an extended period of time.   The defendants have had substantial notice about what the United States' experts intend to testify. And the defendants have thousands of pages of discovery that support the experts' testimony. Although the current summary complies with the law and with this Court's orders, if the Court disagrees, then under the three factors that the Tenth Circuit identified in *Serracino*, the Court properly should simply order the United States to rewrite a written summary. *See* 340 F.3d at 1170 (citing *Golyansky*, 291 F.3d at 1249). The Court should not exclude the United States' witnesses.

## CONCLUSION

The United States' Expert Notice's written summary complies with Rule 16(a)(1)(G)'s expert notice requirements. The Court properly should deny the defendants' Motion to Exclude.

DNM 1011

Respectfully Submitted,

JAMES D. TIERNEY
First Assistant United States Attorney

***Electronically filed on 3/7/18***
MARIA Y. ARMIJO
RANDY M. CASTELLANO
MATTHEW M. BECK
Assistant United States Attorneys
200 N. Church Street
Las Cruces, NM   88001
(575) 522-2304 – Tel.

I HEREBY CERTIFY that I electronically
filed the foregoing with the Clerk of the
Court using the CM/ECF system which
will send electronic notification to defense
counsel of record on this date.

/s/ _____
MARIA Y. ARMIJO
Assistant United States Attorney

DNM 1012

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 15-4268 JB |
| | ) | |
| vs. | ) | |
| | ) | |
| **ANGEL DELEON, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**UNITED STATES' RESPONSE TO JOE GALLEGOS' MOTION TO RENEW MOTION
TO DISMISS COUNTS 4 AND 5 (PREINDICTMENT DELAY) AND MOTION FOR A
BILL OF PARTICULAR AS TO COUNTS 13 THROUGH 16 [DOC. 1808]**

Defendant Joe Gallegos moves this Court to renew his previously-filed motions to dismiss

counts 4 and 5, with prejudice, as a result of pre-indictment delay, and motion for a bill of

particulars.

Specifically, Defendant is arguing that, given he has not received a ruling on his Motion to

Dismiss for pre-indictment delay (Doc. 1318) and his Motion for Bill of Particulars (Doc. 1319),

the Court should dismiss Counts 4 and 5 with prejudice and order the United States to produce a

bill of particulars.  (Doc. 1808 at 3).

However, this Court set both motions by minute order to be heard during the motions

hearing scheduled to commence March 12, 2018.  (Doc. 1835).   As such, Defendant will receive

a ruling on his motions on or after the hearings.

Defendant additionally complains about the Government failing to provide him with a bill

of particulars as to counts 13-16.  (Doc. 1808 at 2).  However, the Court has not ordered the

Government to provide Defendant with a bill of particulars, which is not surprising given that his

motion for a bill of particulars has not been ruled on by this Court.

As such, the United States requests this Court deny this motion.  Defendant's motions will

be heard by this Court the week of March 12, 2018.

Respectfully Submitted,


JAMES D. TIERNEY
First Assistant United States Attorney

***Electronically filed on 3/7/2018***
MARIA Y. ARMIJO
RANDY M. CASTELLANO
MATTHEW M. BECK
Assistant United States Attorneys
200 N. Church Street
Las Cruces, NM  88001
(575) 522-2304 – Tel.


I HEREBY CERTIFY that I electronically
filed the foregoing with the Clerk of the
Court using the CM/ECF system which
will send electronic notification to defense
counsel of record on this date.

/s/
MARIA Y. ARMIJO
Assistant United States Attorney

2